# EXHIBIT 2

Electronically Filed
2/11/2026 10:30 AM
Steven D. Grierson
CLERK OF THE COURT

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Emily D. Anderson, Esq.
Nevada Bar No. 13814
eanderson@nvfirm.com
SCHWARTZ, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Attorneys for Plaintiff*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| TFE GAMES HOLDINGS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> STEVEN SHARIF, a Nevada resident; JOHN MOORE, a Nevada resident; DOES I through X; and ROE CORPORATE DEFENDANTS XI through XX, <br><br> Defendants. | Case No.: A-26-939022-B <br><br> Dept No.: 13 <br><br><br> **EXEMPT FROM ARBITRATION PURSUANT TO ADR RULE 5(a)(1)(J)** |

## <u>AMENDED COMPLAINT</u>

Plaintiff TFE GAMES HOLDINGS, LLC, a Delaware limited liability company ("**TFE**" or the "**Plaintiff**"), by and through its counsel of record, Schwartz, PLLC, alleges and complains as follows:

## <u>JURISDICTION AND VENUE</u>

1.      This Court possesses subject matter jurisdiction over this matter pursuant to NRS § 4.370 because the Plaintiff alleges damages in excess of $15,000.

2.      Venue is proper in this Court pursuant to NRS §§ 13.010 and 13.040, in that this is the county in which the obligations of the parties hereto were to be performed or occurred and a substantial part of the events or omissions giving rise to the claims set forth herein occurred.

1

**PARTIES**

3.     Plaintiff TFE Games Holdings, LLC, a Delaware limited liability company, was, at all times relevant to the claims herein, harmed by the conduct of residents of Clark County, Nevada.

4.     Defendant Steven Sharif ("**Defendant Sharif**"), an individual, was, at all times relevant to the claims herein, a resident of Clark County, Nevada.

5.     Defendant John Moore ("**Defendant Moore**"), an individual, was, at all times relevant to the claims herein, a resident of Clark County, Nevada.

6.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as DOES I through X, inclusive, and ROE BUSINESS ENTITIES XI through XX, inclusive, and each of them, are unknown to Plaintiff who therefore sues such Defendants by such fictitious names. Plaintiff is informed, believes and thereon alleges that each of the Defendants designated herein as a "DOE" or "ROE BUSINESS ENTITY" are agents, employees, servants and representatives of the named Defendants or persons and entities answering in concert with the named Defendants with respect to the agreement herein pled, who are liable to Plaintiff by reason thereof, and Plaintiff prays leave to amend this Complaint to insert their true names or identities with appropriate allegations when same become known.

**FACTUAL HISTORY**

7.     The Plaintiff is successor-in-interest to non-party Intrepid Studios, Inc. ("**Intrepid**").

8.     The Plaintiff became successor-in-interest to Intrepid through a private sale of collateral pursuant to section 9601 *et seq.* of the Uniform Commercial Code.

9.     Through the private sale of collateral ("**Article 9 Sale**"), the Plaintiff foreclosed on Intrepid's assets including but not limited to (collectively, "**Intrepid Assets**"):

All assets and all personal property of Debtor, wherever located and whenever acquired, including, but no [sic] limited to:

Equipment, Inventory, Fixture, Goods, Instruments, Chattel paper (including without limitation Electronic Chattel Paper), General Intangibles, payment Intangibles, Accounts and all other obligations now or hereafter owing to Grantor, all Deposit Accounts, cash, and money, certificates of deposit, Investment Property, Financial Assets, Letters of Credit Rights, all Commercial Tort Claims and any other causes of action against third parties (excluding only claims for death or personal Injury), As-

2

Extracted Collateral, Intellectual property, copyrights, trademarks trade names, all Supporting Obligations for any of the foregoing, all Proceeds (including without limitation insurance proceeds) from and products of and accessions to any of the foregoing and all books and records relating to any of the foregoing. Terms and used herein shall have the meaning provided in the applicable Uniform Commercial Code.

10.     Defendant Sharif is the former Chief Executive Officer of Intrepid.

11.     Defendant Sharif is a current shareholder of Intrepid.

12.     Defendant Moore was an employee or independent contractor for Intrepid.

13.     Defendant Moore was a shareholder of Intrepid.

14.     Defendant Moore transferred all, of a portion, of his shares in Intrepid to Defendant Sharif.

15.     Defendant Sharif is in possession of certain Intrepid Assets, including but not limited to certain books and records of Intrepid, including all receipts and invoices from the past three (3) years and payroll records going back to 2016, as well as the account information for numerous Technology Platforms,[1] Bank and Credit Card Accounts,[2] and miscellaneous Third-Party Vendors[3] (collectively, the "**Company Records**").

16.     Due to his position as Chief Executive Officer, Defendant Sharif was entrusted with Intrepid's Company Records.

17.     Defendant Sharif has refused to turnover the Company Records to the Plaintiff despite request.

18.     On January 31, 2026, Intrepid issued Notifications Under the Worker Adjustment and Re-Training Notification Act ("**WARN Act**") to its employees that "[Intrepid] has no alternative other than to undertake an entire and permanent 'plant closing' within the meaning of the WARN Act by close of business on January 31, 2026" (the "**WARN Act Notices**").

---

[1]     *See* **Exhibit 1** for a non-exhaustive list of technology platforms for which the Defendant maintains and has refused to turn over the passwords (the "**Technology Platforms**").

[2]     *See* **Exhibit 2** for a non-exhaustive list of bank and credit card accounts for which the Defendant maintains and has refused to turn over the passwords (the "**Bank and Credit Card Accounts**").

[3]     *See* **Exhibit 3** for a non-exhaustive list of miscellaneous Third-Party Vendors for which the Defendant maintains and has refused to turn over the passwords ("**Third-Party Vendors**").

3

19.    Without the Company Records, the Plaintiff cannot wind up Intrepid's business and fulfill its obligations under the WARN Act, among other obligations.

**FIRST CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**
**(Against Defendant Sharif)**

20.    The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

21.    Defendant Sharif owes fiduciary duties to Intrepid as its former Chief Executive Officer.

22.    As an officer of Intrepid, Defendant Sharif was required to perform his duties in good faith, in a manner he believed to be in the best interests of the corporation and its shareholders, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

23.    As an officer of Intrepid, Defendant Sharif has control and management over Intrepid's book and records.

24.    Defendant Sharif has breached his fiduciary duties to Intrepid by withholding and refusing to turnover the Company Records, despite the Plaintiff's rightful ownership of such records pursuant to the Article 9 Sale.

25.    Defendant Sharif's refusal to turn over the Company Records has prevented Plaintiff from (a) timely paying former Intrepid employees now employed by the Plaintiff, resulting in employees being terminated; and (b) making required payments under numerous third-party contracts.

26.    Defendant Sharif's refusal to turnover the Company Records has caused damage to Plaintiff as Plaintiff has not been able to make certain payments required pursuant to numerous third-party contracts.

27.    The Plaintiff took ownership of Intrepid's assets which included "all [of Intrepid's] Commercial Tort Claims and any other causes of action against third parties."

28.    Defendant Sharif's refusal to turnover the Company Records to the Plaintiff is intentional misconduct and a knowing violation of law as the Plaintiff is the rightful owner of the Company Records pursuant to the Article 9 Sale.

29.    Defendant Sharif received a notice from [Steam/Valve/Commerce?] on January 18, 2026, that provided Intrepid's secured creditor would be taking the $3,500,000 receivable (the "**Steam Notice**") that the Plaintiff was relying on to pay Intrepid's employees and creditors.

30.    Defendant Sharif failed to share the Steam Notice with Intrepid or the Plaintiff.

31.    Defendant Sharif resigned as Chief Executive Officer the following day, on January 19, 2026.

32.    Defendant Sharif has breached his fiduciary duties to Intrepid by authorizing and causing the payment of approximately $17,400,000 in unauthorized, personal, and/or excessive expenses from January 1, 2016, through January 31, 2026 (the "**Misappropriations**").

33.    The Misappropriations include, but are not limited to: (a) excessive personal loans to certain shareholders with no documentation and no repayment; (b) direct transfers to shareholders with no stated business purpose; (c) direct transfers to miscellaneous accounts with no stated business purpose; and (d) miscellaneous personal expenses charged to Intrepid's credit card(s) and/or Defendant Sharif's personal credit card that was then reimbursed by Intrepid.

34.    Defendant Sharif allowed bank accounts owned by Intrepid to be comingled with his personal accounts in the QuickBooks file owned by Intrepid.

35.    Defendant Sharif allowed bank accounts owned by Intrepid to be comingled with Defendant Moore's personal accounts in the QuickBooks file owned by Intrepid.

36.    Defendant Sharif's Misappropriations constituted intentional misconduct and a knowing violation of law because they were unlawful and, upon information and belief, Mr. Sharif knew the Misappropriations were unlawful.

37.    These Misappropriations left Intrepid unable to pay its debts as they became due in the ordinary course of business leading to the Article 9 Sale

38.    Defendant Sharif has breached his fiduciary duties by permitting Intrepid bank accounts to be commingled with his personal accounts and with Defendant Moore's personal

5

accounts in Intrepid's QuickBooks file.

39.    Defendant Sharif has breached his fiduciary duties by taking money from Intrepid in excess of his salary and earnings, without company or board approval, including payments to himself, Defendant Moore, other investors, employees, and friends and family.

40.    Defendant Sharif has breached his fiduciary duties by misrepresenting the investments made into Intrepid to Intrepid's shareholders, performance targets, launch dates, money required to complete Intrepid's primary asset and bring it to market – the Ashes of Creation video game ("**AOC**").

41.    Defendant Sharif disregarded advice from advisors relating to financial and business decisions.

42.    Defendant Sharif caused Intrepid to issue reimbursements for approximately $12,000,000 in purported business expenses but has refused to provide documentation to support the business nature of these expenses.

43.    Defendant Sharif's foregoing conduct constituted intentional misconduct and a knowing violation of law.

44.    Defendant Sharif's breaches of fiduciary duty rendered Intrepid unable to pay its debts as they became due in the ordinary course of business,  resulting in cessation of operations as described in the WARN Act Notices.

45.    Defendant Sharif failed to manage Intrepid's finances at a time when he knew Intrepid could not pay its bills as they became due.

46.    Defendant Sharif took money out of Intrepid in excess of his salary and earnings, without company or board approval, in breach of his fiduciary duties, by paying himself, Defendant Moore, friends and family.

47.    Upon information and belief, between $10,000,000 to 20,000,000 of the $130,000,000 raised by Defendant Sharif for the development of AOC was not used by Defendant Sharif to develop AOC, and was instead used for personal expenses, among other unlawful uses.

48.    As a direct and proximate result of Defendant Sharif's breaches of fiduciary duty, Plaintiff has suffered damages, including the loss and misappropriation of corporate assets.

6

49. As a further direct, natural, and proximate result of this conduct, the Plaintiff has been compelled to retain the services of an attorney to prosecute this action on its behalf, and, as such, is entitled to attorney's fees and costs incurred in prosecuting this matter.

50. It has become necessary for the Plaintiff to retain the services of an attorney to commence this action and, the Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

**SECOND CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(Against Defendant Sharif)**

51. The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

52. The financial records of Intrepid identify certain shareholder loans to Defendant Sharif in the approximate total amount of $362,524.15 (collectively, the "**Sharif Loans**").

53. The financial records of Intrepid were maintained, in part, by Defendant Moore so there may be additional Sharif Loans yet to be discovered by Plaintiff.

54. The Sharif Loans are valid, enforceable contracts.

55. The duties and obligations of the Sharif Loans are binding upon the Plaintiff and Defendant Sharif.

56. The financial records of Intrepid identifying the Sharif Loans evidence the parties' intent to be bound to each other.

57. The Plaintiff performed under the Sharif Loans by, among other things, delivering the funds to Defendant Sharif.

58. Defendant Sharif breached its obligations pursuant to the Sharif Loans by failing to re-pay the amounts loaned.

59. To date, Defendant Sharif has failed to pay the Plaintiff the total amount of $362,524.15 owed to re-pay the Sharif Loans.

60. Defendant Sharif's conduct has caused and continues to directly and proximately cause injury and damage to the Plaintiff, including loss of the reasonably expected benefits of its

7

bargain, loss of business opportunities, and other such losses.

61.    It has become necessary for the Plaintiff to retain the services of an attorney to commence this action and, the Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

**THIRD CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(Against Defendant Moore)**

62.    The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

63.    The financial records of Intrepid identify certain shareholder loans to Defendant Moore in the total amount of $6,680,396.98 (collectively, the "**Moore Loans**").

64.    The financial records of Intrepid were maintained, in part, by Defendant Moore so there may be additional Moore Loans yet to be discovered by Plaintiff.

65.    The Moore Loans are valid, enforceable contracts.

66.    The duties and obligations of the Moore Loans are binding upon the Plaintiff and Defendant Moore.

67.    The financial records of Intrepid identifying the Moore Loans evidence the parties' intent to be bound to each other.

68.    The Plaintiff performed under the Moore Loans by, among other things, delivering the funds to Defendant Moore.

69.    Defendant Moore breached its obligations pursuant to the Moore Loans by failing to re-pay the amounts loaned.

70.    To date, Defendant Moore has failed to pay the Plaintiff the total amount of $6,680,396.98 owed to re-pay the Moore Loans.

71.    Defendant Moore's conduct has caused and continues to directly and proximately cause injury and damage to the Plaintiff, including loss of the reasonably expected benefits of its bargain, loss of business opportunities, and other such losses.

8

72. It has become necessary for the Plaintiff to retain the services of an attorney to commence this action and, the Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

## FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(Against Defendant Sharif)**

73. The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

74. Defendant Sharif made, or caused to be made, certain unauthorized transfers to himself totaling $4,864,316, with no documentation or indication that such transfers whether such transfers were a loan, salary, fee, reimbursements, shareholder distribution, or gift (the "**Sharif Transfers**").

75. The Plaintiff asserts there was an agreement between the parties, i.e. Sharif as CEO and Sharif (in whatever capacity he received the Sharif Transfers) constituting each as a quasi-contract.

76. The Sharif Transfers were received and enjoyed by the Defendant Sharif.

77. Defendant Sharif received a benefit from the Sharif Transfers.

78. The Plaintiff has a reasonable expectation of repayment from Defendant Sharif.

79. Defendant Sharif has not repaid any portion of the Sharif Transfers despite receiving and benefiting from the Sharif Transfers.

80. Defendant Sharif received the Sharif Transfers from the Plaintiff, which is unjust for Defendant Sharif to retain without repayment.

81. To date, Defendant Sharif has failed to dispute the total amount of $4,864,316 owed for the Sharif Transfers.

82. Upon information and belief, Defendant Sharif also caused Intrepid to take out a loan to purchase real property located in San Diego, California (the "**Property**").

83. Upon information and belief, Defendant Sharif identified Intrepid's investments as revenue in order to obtain the loan to purchase the Property.

9

84.    Defendant Sharif sold the Property for $8,500,000.00, did not repay Intrepid for the loan, and retained the profits from the sale of the Property for himself.

85.    As such, the Plaintiff conferred benefits on Defendant Sharif, Defendant Sharif appreciated such benefits, and there was acceptance and retention by Defendant Sharif of such benefits under circumstances such that it would be inequitable for Defendant Sharif to retain the benefits without payment of the value thereof.

86.    It has become necessary for the Plaintiff to retain the services of an attorney to commence this action and, the Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

## FIFTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (Against Defendant Moore)

87.    The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

88.    Defendant Sharif made certain unauthorized transfers to Defendant Moore totaling $5,954,318, with no documentation or indication that such transfers whether such transfers were a loan, salary, fee, reimbursements, shareholder distribution, or gift (the "**Moore Transfers**").

89.    Defendant Sharif authorized Defendant Moore to be paid for the same services pursuant to two separate contracts.

90.    The Plaintiff asserts there was an agreement between Defendant Sharif and Defendant Moore relating to the Moore Transfers constituting each as a quasi-contract.

91.    The Moore Transfers were received and enjoyed by Defendant Moore.

92.    Defendant Moore received a benefit from the Moore Transfers.

93.    The Plaintiff has a reasonable expectation of repayment from Defendant Moore.

94.    Defendant Moore has not re-paid any portion of the Moore Transfers despite receiving and benefiting from the Moore Transfers.

95.    Defendant Moore received the Moore Transfers from the Plaintiff, which is unjust for Defendant Moore to retain without repayment.

10

96.     To date, Defendant Moore has failed to dispute the total amount of $5,954,318 owed to repay the Moore Transfers.

97.     Upon information and belief, Defendant Moore is aware that Defendant Sharif caused Intrepid to take out a loan to purchase the Property.

98.     Defendant Moore is aware that Defendant Sharif sold the Property for $8,500,000.00, did not repay Intrepid for the loan, and retained the profit from the sale of the Property.

99.     As the spouse of Defendant Sharif, Defendant Moore has also received and retained the profit from the sale of the Property.

100.    As such, the Plaintiff conferred benefits on Defendant Moore, Defendant Moore appreciated such benefits, and there was acceptance and retention by Defendant Moore of such benefits under circumstances such that it would be inequitable for Defendant Moore to retain the benefits without payment of the value thereof.

101.    It has become necessary for the Plaintiff to retain the services of an attorney to commence this action and, the Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

## SIXTH CLAIM FOR RELIEF
### INJUNCTIVE RELIEF/CLAIM AND DELIVERY
### (Against Defendant Sharif)

102.    The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

103.    The Plaintiff is the owner of the Company Records.

104.    The Defendant is wrongfully withholding the Company Records from the Plaintiff.

105.    Based on the Plaintiff's knowledge, information and belief, the Defendant refuses to recognize the Plaintiff's ownership of the Company Records despite the Article 9 Sale.

106.    The Company Records have not been taken for a tax, assessment or fine pursuant to a statute, or seized under an execution or an attachment against the property of the Plaintiff, or, if so seized, that it is by statute exempt from such seizure

107.    The Company Records are of no value to Defendant Sharif.

11

108.    The Company Records are invaluable to the Plaintiff as the Plaintiff cannot continue to operate and protect the value of the Intrepid Assets without the Company Records.

109.    Without the Company Records, the Plaintiff will be unable to timely pay the former Intrepid employees now employed by the Plaintiff, so the value of the Company Records to the Plaintiff is in excess of the payroll due to the employees.

110.    The Plaintiff is entitled to injunctive relief to obtain the Company Records.

111.    Without the Company Records, the Plaintiff cannot wind up Intrepid's business and fulfill its obligations under the WARN Act, among other obligations.

112.    The Plaintiff's inability to wind up the business is an injury that will be irreparable as monetary damages will be inadequate to compensate the Plaintiff.

113.    It has become necessary for the Plaintiff to retain the services of an attorney to commence this action and, the Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

## SEVENTH CLAIM FOR RELIEF
### CONVERSION
### (Against Defendant Sharif)

114.    The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

115.    Through the Article 9 Sale, the Plaintiff owned, possessed, and had the right to possess the Company Records of Intrepid that Defendant Sharif has in his possession, custody, or control.

116.    Defendant Sharif substantially interfered with the Company Records owned by the Plaintiff by knowingly and intentionally taking possession of the Company Records, preventing the Plaintiff from having access thereto, and refusing to remit the same after the Plaintiff's demand.

117.    Defendant Sharif wrongfully exerted a distinct and intentional act of dominion over the Company Records.

118. Defendant Sharif acted in denial of or inconsistent with the Plaintiff's use and enjoyment of the Company Records, or in derogation, exclusion, or defiance of the Plaintiff's rights or title in the Company Records.

119. The Plaintiff did not consent to Defendant Sharif's conduct relating to the Company Records.

120. The Plaintiff was harmed by Defendant Sharif's conduct relating to the Company Records.

121. Defendant Sharif's conduct was a substantial factor in causing the Plaintiff harm.

122. Defendant Sharif's conduct has caused and continues to directly and proximately cause injury and damage to the Plaintiff, including loss of the reasonably expected benefits of its bargain, loss of business opportunities, and other such losses.

123. It has become necessary for the Plaintiff to retain the services of an attorney to commence this action and the Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

### EIGHTH CLAIM FOR RELIEF
### ATTORNEYS FEES AND COSTS AS SPECIAL DAMAGES
**(Against Defendant Sharif)**

124. The Plaintiff repeats and realleges the foregoing paragraphs as though fully stated herein.

125. The Plaintiff has been compelled to retain the services of an attorney to prosecute this action on its behalf and, as a result, has incurred attorney fees as special damages as the fees incurred here are a direct, natural and proximate consequence of Defendant Sharif's wrongful conduct, including, but not limited to refusal to, turnover of the Company Records.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests judgment from the Court as follows:

A.    For general, special, and compensatory damages in excess of $15,000 against the Defendants, in an amount to be proven;

B.    For reimbursement of the Plaintiff's reasonable attorneys' fees, expenses and costs

13

incurred herein;

 C. For injunctive relief;

 D. For pre and post-judgment interest on the amounts awarded at the highest rate permitted by law; and

 E. For any further relief as the Court deems to be just and proper.

 Dated: February 11, 2026.

SCHWARTZ, PLLC

*/s/ Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Emily D. Anderson, Esq.
601 East Bridger Avenue
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*

14
