Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, and TFE GAMES HOLDING LLC,<br><br>Defendants,<br><br>and<br><br>INTREPID STUDIOS, INC.,<br><br>Nominal Defendant. | Case No.: 3:26-cv-00965-LL-JLB<br><br>**PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**<br><br>*Filed concurrently with Declaration of Jordan W. Garman; Declaration of Aaron Lovaas*<br><br>Judge:  Hon. Linda Lopez<br>Hearing Date:  March 18, 2026<br><br>Action Filed:  February 14, 2026<br>Trial Date:  Not Set |

WITHERS BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................... 1

II. BACKGROUND ................................................................................... 2

III. ARGUMENT ........................................................................................ 6

   A. Even if the Court Grants TFE's Motion to Dissolve, the TRO Must Remain Intact as to the Board Defendants ............................................... 7

   B. TFE Fails to Rebut Plaintiff's Likelihood of Success on Merits ............ 8

   C. TFE Does Not Rebut Intrepid's Irreparable Harm Absent the TRO ................................................................................................... 10

   D. The Balance of the Equities Continue to Sharply Tilt in Plaintiff's Favor ................................................................................................... 12

   E. The Public Interest Continues to Support the California TRO ............. 13

   F. TFE's Nevada Personal Jurisdiction Argument is Irrelevant to a Rule 65(b)(4) Motion and Provides No Basis to Dissolve the TRO ................................................................................................... 14

   G. TFE Failed to Provide Plaintiff with the Requisite Statutory Notice to bring the Motion to Dissolve ................................................... 15

   H. TFE's Motion to Dissolve Is Not a Genuine Rule 65(b)(4) Motion, but a Procedural End-Run Around the Preliminary-Injunction Process the Court Already Ordered that Prejudices Plaintiff ............... 15

IV. CONCLUSION ................................................................................... 16

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

WITHERS
BERGMAN LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AEG Holdco LLC v. Vazquez*,
　2021 WL 4859975 (C.D. Cal. Sept. 22, 2021)......................................................15

*Andrewphillip E. v. Dudek*,
　2025 WL 874788 (S.D. Cal. Mar. 20, 2025)..........................................................15

*Ascentium Capital LLC v. Littell*,
　583 F. Supp. 3d 1234 (W.D. Mo. 2022)...................................................................9

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health &*
　*Hum. Servs.*,
　2025 WL 1168898 (N.D. Cal. Apr. 21, 2025)...........................................................6

*Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*,
　2013 WL 2151553 (E.D. Cal. May 16, 2013)..........................................................12

*Morning Star, LLC v. Canter, Tr. of Ctr. Schoen Fam. Tr. U/D/T Mar.*
　*17, 2015*,
　2023 WL 5092764 (9th Cir. Aug. 9, 2023) ...............................................................6

*Reno Air Racing Ass'n., Inc. v. McCord*,
　452 F.3d 1126 (9th Cir. 2006)................................................................................15

*Rosenbloom v. Pyott*,
　765 F.3d 1137 (9th Cir. 2014) ...............................................................................10

*Winter v. Natural Resources Defense Council, Inc.*,
　555 U.S. 7 (2008) ......................................................................................................6

**State Statutes**

California Commercial Code § 9610(c)(2)...................................................................8

California Commercial Code § 9611(c)(1)...................................................................9

California Commercial Code § 9627(b)(1)-(3) ...........................................................9

**Rules**

Fed. R. Civ. P. 65(b)(4) ...................................................................................*passim*

Case No. 3:26-cv-00965-LL-JLB

WITHERS
BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant TFE Games Holdings, LLC ("TFE") asks, pursuant to Federal Rule of Civil Procedure 65(b)(4), for this Court to dissolve a Temporary Restraining Order (the "Motion to Dissolve") that it issued just days ago after finding that Plaintiff raised serious questions as to the merits of his claims; that Intrepid Studios, Inc. ("Intrepid), on whose behalf Plaintiff has brought derivative claims, faces imminent and irreparable harm; and that the balance of equities and public interest strongly favor preserving the status quo (the "California TRO"). TFE does not identify any changed circumstances, new facts, or intervening law as Rule 65(b)(4) requires. It fails to justify any of the statutory defects that plagued its Article 9 foreclosure and disposition of Intrepid's assets—including Intrepid's intellectual property and trade secrets—to TFE, and it wrongfully relies on its presumed ownership of the assets to argue it will be irreparably harmed if the California TRO stands, and thus that the balance of the equities favor TFE. It also proffers no response to the undisputed risk that TFE, which is admittedly owned solely by one person—Defendant Robert Dawson—will exploit or dissipate the trade secrets absent the California TRO while ownership remains unresolved.

At the threshold, even if the Court were to grant TFE's Motion to Dissolve (it should not), the California TRO must remain in effect as to the other Defendants in this matter—Robert Dawson, Theresa Fette, Ryan Ogden, and Aaron Bartels (the "Board Defendants"). Although all of the Board Defendants waived service, only TFE has appeared and moved for relief. The Board Defendants are, therefore, still bound by the California TRO's express prohibition against causing anyone, including TFE, to access, use, sell, or disseminate Intrepid's trade secrets. TFE's motion cannot dissolve restraints that bind non-appearing parties who have neither joined nor sought modification of the California TRO as against them.

Moreover, although TFE devotes substantial space to arguing that a Nevada

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

court may exercise personal jurisdiction over Plaintiff in a separate proceeding, that issue is irrelevant to a Rule 65(b)(4) motion and provides no basis to dissolve the California TRO. This Court expressly acknowledged the action TFE filed in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada Action") when issuing the California TRO and did not rely, directly or indirectly, on any assumption about Nevada jurisdiction. Instead, the California TRO rests on *this* Court's independent findings regarding likely ownership, irreparable harm, and the need to preserve the status quo pending adjudication of those issues.

TFE's Motion to Dissolve is also procedurally defective. Rule 65(b)(4) requires at least two days' notice before a party may move to dissolve a TRO absent a court-ordered extension of time. TFE provided only one day's notice and sought no advance authorization from the Court. That failure alone warrants denial of the Motion to Dissolve.

Finally, TFE's motion is not a genuine request to dissolve the California TRO. Instead, it is an attempted procedural end run around the preliminary injunction process the Court expressly ordered. With its Motion to Dissolve, TFE seeks to force a premature adjudication of the preliminary injunction on an accelerated schedule and a limited record, while inverting the Court-ordered briefing sequence in order to secure the final word for itself. The Court should reject TFE's invitation and, at minimum, decline to treat TFE's Motion to Dissolve as a substitute for the preliminary injunction process the Court has already ordered to proceed on a fully developed record.

## II.    BACKGROUND

This lawsuit is an ownership dispute over the intellectual property that Intrepid developed over the last decade underlying the Massively Multiplayer Online Role Playing Game ("MMORPG"), *Ashes of Creation*. The dispute centers around the non-judicial disposition and private sale of Intrepid's assets to TFE on January 16, 2026 (the "Foreclosure Sale"). (*See* Verified Shareholder Derivative Complaint and Direct

2

Complaint, ECF No. 1 ("Verified Compl.") ¶ 65.) Prior to this disposition, TFE and the Board Defendants failed to give notice to CommerceWest Bank, a senior secured creditor of Intrepid. (*See Id*. ¶¶ 64, 69.) Nor did they advertise the sale in industry-standard publications or platforms, involve a broker or auctioneer, or publish any marketing of the sale in any manner. (*Id*. ¶ 66.) The intellectual property and trade secrets of an MMORPG are not customarily sold on a recognized market, but Defendants pursued the sale anyway in violation of the California Commercial Code. (*Id*. ¶¶ 67, 113.) This foreclosure and disposition proximately and directly caused Intrepid harm in the form of the loss of its most valuable assets—its intellectual property and trade secrets—through a commercially unreasonable sale. (*Id*. ¶ 68.) Plaintiff filed this lawsuit on February 14, 2026, alleging Defendants unlawfully foreclosed on Intrepid's assets, including its intellectual property and trade secrets, under California Commercial Code Article 9 and siphoned them into a new entity—Defendant TFE, (the "Article 9 Claim"), thus constituting, *inter alia*, federal and state trade secret misappropriation. (*Id*. ¶¶ 85-96.)

On February 9, 2026, Defendant TFE filed the Nevada Action in the Eighth Judicial District Court, Clark County, Nevada,[1] alleging, in part, that Plaintiff has "refused to turnover" certain Intrepid records to TFE as Intrepid's purported successor-in-interest, including account information and passwords for various platforms that contain Intrepid trade secrets and intellectual property. (ECF No. 10-7 ¶¶ 15, 17; *see* ECF No. 10-2 ¶ 9; ECF No. 10-5.) Importantly, TFE buries the lede: even though its plain objective is to obtain access to Intrepid's primary assets—the intellectual property and trade secrets underlying *Ashes of Creation*—so that it can monetize them (*see* ECF No. 10-6 ¶ 6)[2], it neglects to mention the intellectual property

---

[1] Plaintiff has disputed the Nevada Court's jurisdiction in those court proceedings. (*See* March 11, 2026 Declaration of Aaron Lovaas ("Lovaas Decl."), Ex. 1.)

[2] Plaintiff is cognizant of this Court's direction to avoid duplication of exhibits, (Hon.

WITHERS BERGMAN LLP

3

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

or trade secrets *anywhere* in its Nevada complaint. Based in part on this omission, the Nevada court entered a February 24, 2026 mandatory temporary restraining order (the "Nevada TRO"), upon TFE's application, "restrain[ing] [Steven Sharif's purported agents] from withholding" records and passwords from TFE. (ECF No. 10-10 at 5.) In other words, TFE secured a seemingly innocuous order purportedly compelling records and passwords to be turned over to TFE, without mentioning that those passwords would be used to access and monetize Intrepid's trade secrets and intellectual property.

On March 2, 2026, given the exigent risk that Defendants will exploit or dissipate the trade secrets while this dispute is pending,[3] Plaintiff moved for a temporary restraining order (the California TRO) to enjoin the use, access, sale, or dissemination of Intrepid's intellectual property and trade secrets. (*See generally* ECF No. 10.) On March 4, 2026, the Court granted Plaintiff's motion for a TRO, holding that Plaintiff raises serious questions as to the merits of his claims; Intrepid stands to be irreparably harmed; the balance of the equities tip "sharply" in Plaintiff's favor; and the public interest supports granting a TRO. (*See generally* ECF No. 20.)

The California TRO enjoins all Defendants, along with any agents thereof, from "accessing, using, selling, distributing, or causing anyone to access, use, sell, or distribute the trade secrets of Intrepid," as defined therein. (*See id.* at 11.) The California TRO also orders the parties to appoint a neutral Intellectual Property Custodian to "hold and control, on a temporary and limited basis, the credentials, administrative privileges, and source-control access to the accounts, platforms, and repositories that contain Intrepid's trade secrets, for the sole purpose of preventing

Lopez Civ. Chambers R. 3.H), and therefore cites to documents already filed on the docket where able.

[3] TFE's counsel has confirmed that TFE has a potential buyer lined up for *Ashes of Creation*. (ECF No. 10-6 ¶ 6.)

Withers Bergman LLP

4

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

any access, use, sale, or dissemination of Intrepid's trade secrets until such further order of this Court." (*Id.* at 12.) That custodian "shall be empowered to grant access to Defendants on a limited basis should just cause be shown that access to the above-listed accounts is required for a reason ***other than access to Intrepid's trade secrets***." (*Id.* at 13 (emphasis added).) Pursuant to the terms of the California TRO, on March 9, 2026, the parties submitted to the Court a proposed Intellectual Property Custodian, (*see* ECF No. 32), and the Court approved that custodian on March 10, 2026, (*see* ECF No. 33). Therefore, the parties will imminently implement the custodial controls ordered by the Court to secure and restrict access to Intrepid's intellectual property and trade secrets.

The Court also ordered Defendants to show cause why a preliminary injunction should not be issued and set a briefing schedule under which Defendants would submit an opposition on March 11, 2026, and Plaintiff would submit a reply brief on March 13, 2026, ahead of a March 18, 2026, preliminary injunction hearing. (*See* ECF No. 20 at 13.) Defendant TFE[4] instead filed a Motion to Dissolve the Temporary Restraining Order (the "Motion to Dissolve"), (*see* ECF No. 24), and an application for an *Ex Parte* Order Shortening Time on its Motion to Dissolve (the "Motion to Shorten Time") requesting that the Motion to Dissolve be heard before the originally scheduled hearing for the preliminary injunction on March 18, 2026. (*See* ECF No. 25-1 ¶ 4.) TFE filed the Motion to Dissolve on only one day's notice. (*See* March 11, 2026 Declaration of Jordan W. Garman ("Garman Decl."), ¶¶ 3, 5, Ex. 1)

On March 9, 2026, in view of the California TRO, the Nevada court continued its own preliminary injunction hearing to March 26, 2026, because it was "very interested" to see what this Court would do with respect to the preliminary injunction in this case. (Lovaas Decl. ¶ 4.)

The Court granted TFE's Motion to Shorten Time, converting the preliminary

---

[4] Notably, no other Defendants have appeared or joined TFE's Motion to Dissolve.

Withers Bergman LLP

5

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

injunction hearing, scheduled for March 18, 2026, to a hearing on TFE's Motion to Dissolve the California TRO, and deferring the preliminary injunction briefing schedule and hearing. (*See* ECF 30.) Plaintiff herein opposes TFE's Motion to Dissolve.

## III.  ARGUMENT

The Court should deny TFE's Motion to Dissolve the California TRO. At the threshold, even if the Court grants TFE's Motion to Dissolve, the California TRO must remain in effect as to the Board Defendants, who have neither appeared despite providing service waivers seven days ago, (*see* ECF Nos. 13-16), nor joined TFE's motion. Importantly, the California TRO restricts the Board Defendants from "causing anyone"—including TFE—to access, use, sell, or distribute the trade secrets." (*See* ECF No. 20 at 12.)

Moreover, TFE fails to identify *any* coherent justification for dissolving the California TRO. A party moving under Federal Rule 65(b)(4) must show: "(1) a significant change in fact or law; and (2) that *in light of the significant change*, the injunction should be dissolved or modified under the legal standard that governed the issuance of the injunction in the first place." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 2025 WL 1168898, at *2 (N.D. Cal. Apr. 21, 2025) (citing *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (emphasis added). "Whether an injunction should be dissolved, just like whether it should be granted, is 'guided by' the *Winter* factors." *Morning Star, LLC v. Canter, Tr. of Ctr. Schoen Fam. Tr. U/D/T Mar. 17, 2015*, 2023 WL 5092764, at *1 (9th Cir. Aug. 9, 2023). The *Winter* factors are whether a plaintiff is: (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [plaintiff's] favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

TFE does not offer any significant change in fact or law, let alone one that

WITHERS BERGMAN LLP

6

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

justifies dissolving the California TRO. TFE argues this Court should dissolve the California TRO almost exclusively by baldly assuming that TFE owns Intrepid's assets pursuant to the Foreclosure Sale—the ***specifically disputed*** issue that is at the heart of the California TRO and the lawsuit, and an assumption this Court has ***already adjudicated*** is likely wrong. (*See* ECF No. 20 at 6 (holding Plaintiff "established "serious questions going to the merits" on his Article 9 claim); *id.* at 8 ("By showing that TFE acquired the Trade Secrets Materials through an ***unlawful Article 9 foreclosure***, Plaintiff has shown misappropriation through wrongful acquisition.") (emphasis added); *id.* at 9 ("Intrepid has already suffered harm to its business and reputation from the ***likely unlawful*** Article 9 foreclosure and sale of its assets to TFE.") (emphasis added); *id* (noting TFE's Nevada lawsuit merely "presumes that TFE is the lawful owner of Intrepid's assets.").) TFE, therefore, wholly fails to carry its burden to present any significant change in fact or law as required to succeed on its motion.

TFE's lengthy argument that the Nevada court has jurisdiction over Plaintiff does not save its motion. This Court did not rely on Nevada's jurisdiction, or lack thereof, in issuing its TRO and therefore, it is not a change in fact or law justifying dissolution of the California TRO. The Motion to Dissolve is also procedurally deficient because TFE failed to provide Plaintiff with the statutorily required notice under Rule 65(b)(4). That the Motion to Dissolve is also an attempted end-run around this Court's preliminary injunction framework set forth in the California TRO is only further reason to deny the Motion to Dissolve.

**A.    Even if the Court Grants TFE's Motion to Dissolve, the TRO Must Remain Intact as to the Board Defendants**

At the threshold, despite the fact that all Defendants have waived service of process for this lawsuit seven days ago, (ECF Nos. 13-16), only TFE has appeared and moved to dissolve the California TRO. Therefore, even if the Court grants TFE's Motion to Dissolve, the Board Defendants remain bound by the California TRO's

WITHERS BERGMAN LLP

7

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

strictures, and they may not cause "anyone else"—including TFE—to access, sell, use, or dissipate the trade secrets. *See* Fed. R. Civ. P. 65(b)(4) (permitting an "adverse party" to "appear and move to dissolve or modify the order.").

### B.   TFE Fails to Rebut Plaintiff's Likelihood of Success on Merits

TFE does not rebut Plaintiff's likelihood of success on the merits of his Article 9 and trade secrets claims. TFE argues Plaintiff is not likely to succeed because: (1) TFE purportedly legally conducted the Foreclosure Sale; (2) Intrepid purportedly consented to the Foreclosure Sale; and (3) circularly, that TFE has an immediate right to Intrepid's records as their owner. (ECF No. 24 at 14-16.) Each of TFE's arguments fails.

*First*, TFE utterly fails to refute the specific statutory deficiencies inherent in the Foreclosure Sale as raised in Plaintiff's Complaint and California TRO motion. TFE states that a "secured party [may] dispose of collateral through either a public or private sale, provided the disposition is conducted in a commercially reasonable manner," citing UCC § 9-610(b).[5] (ECF No. 24 at 14-15.) But TFE conveniently omits the very next subsection of the California Commercial Code, which clarifies that a private disposition is permissible "***only if*** the collateral is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations." Cal. Com. Code § 9610(c)(2) (emphasis added). TFE makes no argument that Intrepid's primary assets—its intellectual property and its trade secrets—are of the kind customarily sold on a recognized market or the subject of widely distributed standard price quotations because it cannot. Indeed, Plaintiff has specifically attested that they are not. (*See* ECF No. 10-2 ¶ 4 ("[T]rade secrets and other intellectual property associated with a large-scale, groundbreaking MMORPG are not fungible assets that can be bought or sold at a standardized price in the manner of publicly

---

[5] TFE cites to throughout to the UCC, which is merely a set of model laws. The relevant law here is the California Commercial Code.

WITHERS BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

traded securities.); *id.* ¶ 5 ("[A] private sale in which an entity purports to transfer trade secrets and other intellectual property to itself, particularly where no notice is provided to other interested parties, is not the usual or accepted manner by which intellectual property rights associated with an MMORPG are sold or transferred.").) *See also Ascentium Capital LLC v. Littell*, 583 F. Supp. 3d 1234, 1238 (W.D. Mo. 2022) (A "'recognized market' is 'a market[] in which there are standardized price quotations for property that is essentially fungible, such as stock exchanges.'").

Moreover, TFE does not, and cannot, argue that conducting the Foreclosure Sale without notice to Intrepid itself or senior secured lender CommerceWest Bank was proper. California Commercial Code § 9611(c)(1) requires a foreclosing party to "send a signed notification of disposition" to, among others, "the debtor" and "[a]ny other secured party" in the collateral. Cal. Com. Code § 9611(c). TFE undisputedly failed to do so. (ECF No. 10-9 at 27 (Certificate of Service of TFE's Notice of Disposition of Collateral at Private Sale omitting CommerceWest Bank and Intrepid).)

Finally, although TFE cites the correct standard for a commercially reasonable disposition under California Commercial Code Section 9-627(b) (ECF No. 24 at 15)[6] it makes **no argument** that the Foreclosure Sale met that standard. Plaintiff, on the other hand, specifically argues that the Foreclosure Sale did not meet that standard. (*See* ECF No. 10-1 at 13-16; ECF No. 10-2 ¶¶ 4-5.) Further supporting Plaintiff's argument that the Foreclosure Sale was unreasonable as self-interested, (*see* ECF No.

---

[6] TFE again cites the UCC, but the standard under the California Commercial Code is substantially similar: "A disposition of collateral is made in a commercially reasonable manner if the disposition satisfies any of the following conditions: (1) It is made in the usual manner on any recognized market. (2) It is made at the price current in any recognized market at the time of the disposition. (3) It is made otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." Cal. Com. Code § 9627(b)(1)-(3).

Case No. 3:26-cv-00965-LL-JLB

WITHERS
BERGMAN LLP

10-1 at 14-15), TFE's counsel recently disclosed to Plaintiff's counsel during a meet and confer that Defendant Robert Dawson is the 100% owner of TFE. (Garman Decl. ¶ 4.)

*Second*, TFE fails to support its conclusory argument that Intrepid supposedly consented to the Article 9 sale. TFE appears to argue that Intrepid consented because it was in default under TFE's loan, and because Plaintiff is not a creditor and is a minority shareholder and so cannot object to the Foreclosure Sale. (ECF No. 24 at 15.) However, TFE in no way explains how any of those purported facts (which are unsupported by reference to evidence) equate to Intrepid's consent. To the extent TFE suggests Plaintiff, as a minority shareholder, cannot maintain this action on Intrepid's behalf, it is wrong. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1147 (9th Cir. 2014) ("The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'") (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991)). TFE offers no law to the contrary.

*Third*, TFE's circular argument that Plaintiff will fail on the merits because TFE owns Intrepid's accounts and records (ECF No. 24 at 15)—which TFE consistently (and conveniently) fails to acknowledge include the trade secrets—presumes its success on the very issue in dispute in this lawsuit and in dispute with respect to the California TRO.[7] The Court has already found, at the very least, serious questions regarding TFE's purported ownership that required a TRO to maintain the status quo. TFE's presents no arguments that weigh against that finding.

### C. TFE Does Not Rebut Intrepid's Irreparable Harm Absent the TRO

TFE claims that it, and not Plaintiff, is the one who stands to be irreparably harmed should the TRO remain in place. Not so. *First*, TFE argues it will be

---

[7] TFE's assertion that "the validity of the [Foreclosure] [S]ale is an issue for another day[,]" (ECF No. 24 at 15), is confounding.

WITHERS BERGMAN LLP

10

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

irreparably harmed because the TRO "prevent[s] TFE from accessing, maintaining, and completing development of *Ashes of Creation*[.]" (ECF No. 24 at 17.) Because TFE wholly fails to refute the legal defects inherent in the Foreclosure Sale (*see supra* Section III.B.), it has no grounds to assert it will be harmed by an inability to access and exploit *Ashes of Creation*, which it does not own. Indeed, TFE's argument only confirms that it is actively seeking to exploit *Ashes of Creation*, thereby underscoring ***Plaintiff's*** imminent and irreparable harm pending the adjudication of the ownership dispute and, therefore, his entitlement to the California TRO.[8]

*Second*, TFE's assertion that the Nevada TRO, which purports to compel certain former Intrepid employees to provide TFE with access to accounts and records, somehow supports that TFE is harmed by the California TRO falls flat. The Nevada TRO addresses TFE's request in that lawsuit for access to accounts and records. (*See* ECF No. 10-10.) But as part of its ongoing scheme to wrongly obtain Intrepid's intellectual property and trade secrets, TFE did not tell the Nevada court that it actually seeks the records and accounts to access and imminently monetize the intellectual property and trade secrets, whose ownership Plaintiff disputes; therefore, the Nevada TRO does not require TFE to refrain from accessing, using, selling or disseminating the trade secrets, or to otherwise maintain the status quo, once it obtains access to the relevant accounts.[9] As Plaintiff argued in his California TRO motion, the California TRO does not undercut the Nevada TRO because the California TRO merely requires TFE to maintain the status quo once it obtains the relief the Nevada court provided it. (*See* ECF No. 10-1 at 21-22.) Moreover, the express terms of the

---

[8] Notably, TFE does not dispute that it is in talks with a potential purchaser for *Ashes of Creation*. (*See* ECF No. 10-6 ¶ 6.)

[9] As this Court highlighted: "[T]he Nevada case does not involve trade secrets, and it presumes that TFE is the lawful owner of Intrepid's assets" whereas "[t]his case involves a dispute over who is the lawful owner of Intrepid's assets and is primarily focused on trade secret misappropriation." (ECF No. 20 at 9.)

WITHERS BERGMAN LLP

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

California TRO permit TFE to obtain precisely what it asked for in the Nevada Action: access to (non-trade secret) accounts and records. The California TRO provides for appointment of a neutral Intellectual Property Custodian who will "grant access [to Intrepid's accounts] to Defendants on a limited basis should just cause be shown that access to the above-listed accounts is required for a reason other than access to Intrepid's trade secrets." (*See* ECF No. 20 at 13.) Indeed, the Court has already appointed the Intellectual Property Custodian. (ECF No. 33.)

*Third,* TFE again circularly argues that Plaintiff cannot be irreparably harmed by TFE's access and exploitation of the trade secrets because "TFE [is] the lawful successor to [Intrepid's] collateral under Article 9." (ECF No. 24 at 17.) That is the very issue in dispute. TFE in no way supports that it is the rightful owner of Intrepid's assets. (*See supra* Section III.B.)

For these reasons, TFE fails to rebut Plaintiff's likelihood of success on his claims. Therefore, the Court should deny TFE's Motion to Dissolve.

### D.    The Balance of the Equities Continue to Sharply Tilt in Plaintiff's Favor

TFE identifies no hardships it would suffer should the California TRO remain in place, and the balance of the equities continues to tilt sharply in Plaintiff's favor. TFE again relies on the assumption that it owns Intrepid's assets to suggest the California TRO, which precludes TFE from accessing, using, selling, or disseminating the intellectual property and trade secrets pending the ownership dispute, imposes hardship on TFE because it prevents TFE from "continu[ing] development of *Ashes of Creation*." (ECF No. 24 at 7.) As explained above, TFE's presumption of ownership is an entirely faulty premise and it does not establish any hardship to TFE. (*See supra* Section III.B.) *See Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, 2013 WL 2151553, at *14 (E.D. Cal. May 16, 2013) ("Courts have found that the balance of hardships tips in favor of a plaintiff seeking an injunction which would 'merely prohibit [the d]efendants from misappropriating the trade

WITHERS BERGMAN LLP

secrets of [the p]laintiff.'").

TFE also posits as a hardship that it will not be able to "administer Intrepid's accounts, maintain its technology platforms . . . and wind down operations of Intrepid." (ECF No. 24 at 17.) But, as above, this argument ignores the express terms of the California TRO, which provide for appointment of a neutral Intellectual Property Custodian (appointed on March 10, 2026 (ECF No. 33) who will "grant access [to Intrepid's accounts] to Defendants on a limited basis should just cause be shown that access to the above-listed accounts is required for a reason other than access to Intrepid's trade secrets." (*See* ECF No. 20 at 13.) TFE does not address this carveout, let alone show that this portion of the TRO is somehow insufficient to prevent any supposed hardship.

TFE's argument that Plaintiff will experience no hardship absent the TRO is similarly flawed. TFE asserts Plaintiff will not be harmed because Intrepid's assets "will be preserved through the Nevada TRO." (ECF No. 24 at 17.) But, as above, the Nevada TRO ***does not*** require TFE to maintain the status quo or preserve Intrepid's trade secrets or intellectual property, (*see* ECF No. 10-10 at 4-5).

Accordingly, TFE fails to rebut Plaintiff's imminent and irreparable harm unless the California TRO remains in place. Accordingly, the Court should deny TFE's Motion to Dissolve.

### E.     The Public Interest Continues to Support the California TRO

TFE offers no compelling public interest justification in support of dissolving the California TRO.[10] Instead, as its purported public interest justification, TFE claims "promot[ion of] compliance with statutory obligations [*i.e.*, Article 9]" and its inability to wind up Intrepid's business and to fulfill its obligations under the WARN

---

[10] Nor does TFE dispute the public's interest in vindicating intellectual property rights. (*See* ECF No. 10-1 at 24 (citing *Waymo LLC v. Uber Technologies, Inc.*, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017); *Earthbound Corp. v. MiTek USA, Inc.*, 2016 WL 4418013, at *10 (W.D. Wash. Aug. 19, 2016)).)

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

Act via access to "assets transferred through a lawful foreclosure process." Setting aside that its second purported justification is not a public interest justification, both of these purported interests *again* problematically rely on the presumed validity of the Foreclosure Sale. (*See* ECF No. 24 at 17.) And "compliance with statutory obligations" actually supports the California TRO, which found TFE likely did *not* comply with its Article 9 statutory obligations. (*See* ECF No. 20 at 8, 9.) Finally, in arguing inability to wind up Intrepid's affairs, TFE again ignores that the TRO provides it with access to relevant accounts and records through the Intellectual Property Custodian. (ECF No. 20 at 13; *see also id.* at 10 ("there does not appear to be a need for access to Trade Secrets Materials to" fulfill one's obligations under the WARN Act).

### F.   TFE's Nevada Personal Jurisdiction Argument is Irrelevant to a Rule 65(b)(4) Motion and Provides No Basis to Dissolve the TRO

TFE devotes the large majority of its Argument section to asserting that a Nevada court can exercise personal jurisdiction over Plaintiff. (*See* ECF No. 24 at 6–14.) That discussion is irrelevant to a motion under Rule 65(b)(4) because it does not identify any new fact or intervening law that would justify dissolving the California TRO. This Court expressly acknowledged the Nevada Action when it issued the California TRO. (ECF No. 20 at 8-9.) And far from undermining the California TRO, the Court found that the Nevada Action—through which TFE seeks access to Intrepid's trade secrets under the guise of a books-and-records request—supports a finding that Plaintiff may suffer irreparable harm absent injunctive relief from this Court. (*See* ECF No. 20 at 8–9 ("Plaintiff and TFE have both notified the Court of a related case in Nevada state court that shows the likelihood of irreparable harm in the absence of an injunction to preserve the status quo.").) Nothing in the California TRO suggests that it rested on any assumption that the Nevada court lacked personal jurisdiction. Accordingly, TFE's jurisdictional arguments do not raise any relevant

new issue of fact or law and provide no basis to dissolve the California TRO.[11, 12]

### G.   TFE Failed to Provide Plaintiff with the Requisite Statutory Notice to bring the Motion to Dissolve

Federal Rule of Civil Procedure 65(b)(4) explicitly requires that motions to dissolve a TRO pursuant to Rule 65 do so "[o]n 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court[.]" Fed. R. Civ. P. 65(b)(4). TFE provided Plaintiff with only one day's notice and did not obtain a court order allowing otherwise. (*See* Garman Decl. ¶¶ 3, 5, Ex. 1.) TFE's motion is therefore procedurally deficient and should be denied on that basis alone. *Cf. Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) (holding TRO was improperly issued due to failure to comply with Rule 65's notice requirements).

### H.   TFE's Motion to Dissolve Is Not a Genuine Rule 65(b)(4) Motion, but a Procedural End-Run Around the Preliminary-Injunction Process the Court Already Ordered that Prejudices Plaintiff

Although styled as a motion to dissolve under Rule 65(b)(4), TFE's filing is, in substance, an effort to force a premature merits adjudication of the preliminary injunction on an expedited schedule and an underdeveloped record. That is not the

---

[11] That the Nevada court has since stayed its own preliminary injunction hearing in deference to this Court's actions further supports that this Court appropriately exercised jurisdiction and correctly determined that preserving the status quo through its TRO was warranted. (*See* Lovaas Decl. ¶ 4.)

[12] To the extent TFE is attempting to argue this Court should abstain, TFE woefully fails because: (1) TFE does not anywhere actually mention abstention, let alone set forth a coherent argument in favor of abstention; and (2) the abstention analysis is much more complex than simply whether another court may maintain jurisdiction over a party. *See AEG Holdco LLC v. Vazquez*, 2021 WL 4859975, at *7 (C.D. Cal. Sept. 22, 2021) (identifying eight factors under the *Colorado River* doctrine). TFE has accordingly waived any abstention argument. *See Andrewphillip E. v. Dudek*, 2025 WL 874788, at *11 (S.D. Cal. Mar. 20, 2025) ("[A]rguments not raised by a party in its opening brief are deemed waived.") (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)).

function of Rule 65(b)(4). A motion to dissolve a TRO is a narrow procedural mechanism, not a substitute for the preliminary injunction process the Court has ordered. In its Motion to Dissolve, TFE advances the ***very same merits arguments*** it would have presented in response to the Court's order to show cause and at the then-scheduled March 18, 2026 preliminary injunction hearing. The practical effect of TFE's Motion to Dissolve, therefore, is to invert the briefing sequence the Court established; disturb the equitable status quo the Court imposed after finding likelihood of success, irreparable harm, a favorable balance of equities, and the public interest; and confer on TFE an unwarranted procedural advantage. Specifically, under the Court's TRO schedule, TFE was to respond and Plaintiff was to reply. (*See* ECF No. 20 at 13.) Under TFE's approach, however, Plaintiff is forced to oppose on an truncated timeline, while TFE—whom the Court has already found likely to have violated Article 9 and misappropriated trade secrets, (*see id.* at 8-9)—would receive the final word. (*See* ECF No. 30.) Resolving the merits of a preliminary injunction under those circumstances would substantially prejudice Plaintiff.

Accordingly, Plaintiff respectfully requests that the Court not only deny TFE's Motion to Dissolve for the reasons outlined above but also decline to treat TFE's Motion to Dissolve as a backdoor substitute for the preliminary injunction process the Court has already determined should proceed on a full record.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny TFE's Motion to Dissolve the California TRO and decline to treat TFE's Motion to Dissolve as substitute for the preliminary injunction process the Court has already determined should proceed on a full record.

DATED:  March 11, 2026          WITHERS BERGMAN LLP


By:  */s/ Jordan W. Garman*
Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (*pro hac vice* pending)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

WITHERS BERGMAN LLP

17

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TFE GAMES HOLDINGS, LLC'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER