Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, and TFE GAMES HOLDING LLC, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.: 3:26-cv-00965-LL-JLB <br><br> **PLAINTIFF STEVEN SHARIF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE TRO** <br><br> *Filed concurrently with Notice of Motion; Declaration of Steven Sharif; Declaration of Jordan W. Garman* <br><br> Judge:          Hon. Linda Lopez <br> Hearing Date:  March 18, 2026 <br><br> Action Filed:  February 14, 2026 <br> Trial Date:      Not Set |

Case No. 3:26-cv-00965-LL-JLB

PLAINTIFF STEVEN SHARIF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE TRO

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants' reply raises—for the first time—previously available facts about a purported banker-led outreach process, offered to argue (also for the first time) that TFE's[1] foreclosure was commercially reasonable despite its undisputed noncompliance with Article 9. The new facts are inaccurate: the banker was engaged years earlier to raise capital, not to market assets or conduct a foreclosure sale. And even if the banker had later sought buyers for Intrepid or *Ashes of Creation*, that would not cure TFE's failure to provide statutory notice, its improper private purchase of Intrepid's assets, or its otherwise commercially unreasonable sale. Contrary to Defendants' claims, this noncompliance prejudiced Intrepid by excluding at least one interested buyer. The new material in Defendants' reply provides no basis to dissolve the TRO.

### II.   ARGUMENT

#### A.   Defendants' Assertion that Intrepid Engaged With Aream to Find a Buyer is Factually Inaccurate

Defendants' reply introduces for the first time factual material about an alleged year-long, banker-led marketing process by Aream & Co. ("Aream"). (ECF No. 36 at 2-3, 7-9.) Defendants rely on this material to argue—also for the first time on reply—that Aream's purported outreach, which was wholly unrelated to the foreclosure process, (Mar. 16, 2026 Declaration of Steven Sharif ("Sharif Decl.") ¶ 4, Exs. 2-3 (showing Defendant Dawson advised Aream of the foreclosure only on December 27, 2025 and framed it merely as an entity change)), renders the Foreclosure Sale commercially reasonable or excuses TFE's failure to comply with Article 9.[2]

---

[1] Undefined capitalized terms herein take the meanings ascribed to them in Plaintiff's Opposition to Defendants' Motion to Dissolve the TRO. (*See* ECF No. 35.)

[2] Defendants also insinuate on reply that Plaintiff was complicit in the Foreclosure

WITHERS
BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S *EX PARTE* MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE TRO

Defendants materially mischaracterize Aream's role. Intrepid first engaged Aream in October 2022—long before the improper foreclosure—to raise equity or debt financing and to explore potential publishing partnerships. (Sharif Decl. ¶ 3; Ex. 1.) Intrepid never asked Aream to identify a buyer for Intrepid or *Ashes of Creation* as part of the Article 9 foreclosure process. (Sharif Decl. ¶ 5.)

That distinction matters. A capital-raising effort bears little resemblance to marketing a distressed asset for sale, particularly where a post-default public auction could generate competitive bidding, while private financing involves bespoke, negotiated transactions undertaken before any default. Consistent with that reality, Dawson did not inform Aream of the planned foreclosure until December 27, 2025, underscoring that Aream's outreach was not designed to obtain the highest price for a distressed company. (Sharif Decl., Ex. 2.) Accordingly, even if the use of a banker to locate Article 9 foreclosure buyers could excuse noncompliance with Article 9 (it cannot, *see infra*) that is not what occurred here.

**B.    Even if Aream Had Sought Potential Buyers, That Would Not Excuse Defendants' Noncompliance with Article 9**

Even if Aream had reached out to potential distressed asset buyers in the year preceding the Foreclosure Sale, that would not cure the statutory defects in TFE's Foreclosure Sale underlying the TRO. Defendants argue that, because Aream purportedly attempted and failed to find a buyer for Intrepid/*Ashes of Creation* in the year leading up to the Foreclosure Sale, the Court should excuse their noncompliance with (1) California Commercial Code Section 9611(b)-(c)'s requirement that a foreclosing secured creditor give notice to the debtor and other secured creditors; (2) Section 9610(c)(2)'s requirement of a public disposition absent specific circumstances that Defendants admit are not present here; and (3) Section 9610(b)'s

---

Sale. (ECF No. 36 at 3.) Plaintiff will vigorously dispute that characterization at the appropriate time.

commercial reasonableness requirement. This argument is unavailing.

*First*, Defendants seemingly argue that Aream's pre-foreclosure alleged buyer outreach substantially complied with California Commercial Code § 9611(b)-(c)'s notice provisions and obviated the need for notice to secured creditors, because that outreach was a sufficient substitute for secured creditors attending the Foreclosure Sale. (ECF No. 36 at 8-9.) This new argument fails because California courts consistently hold that a foreclosing creditor must strictly adhere to Article 9's notice requirements, which are "intended for the benefit and protection of the debtor." *Ford Motor Credit Co. v. Price*, 163 Cal.App.3d 745, 751 (Ct. App. 1985) ("Common sense tells us that the larger the attendance at a public sale of collateral, the more likely it is that there will be competitive bidding. Competitive bidding helps to assure that the purchase price approximates the fair market value of the property . . . ."). Even if Aream's efforts to purportedly find a buyer could be considered substantial compliance with Article 9 (which they cannot), substantial compliance is not enough. *Cf. id.* at 750-51 (expressly rejecting a "substantial compliance" standard for Article 9 public notice requirement under former section 9504[3] and holding that strict adherence is required to preserve creditor foreclosure remedies); *Union Safe Deposit Bank v. Floyd*, 76 Cal.App.4th 25, 30 (Ct. App. 1999) ("California law mandates strict compliance with the notice requirement of section 9504, subdivision (3)."). Aream's earlier efforts to purportedly find a buyer, thus, would not excuse Defendants' failure to give proper notice to Intrepid and to senior secured lender CommerceWest Bank.[4]

---

[3] Former California Commercial Code Section 9504(3) is Section 9611's predecessor, stating in relevant part: "[T]he secured party must give to the debtor . . . and to any other person who has a security interest in the collateral . . . a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made."

[4] Defendants' statement that "Notice of the foreclosure sale was given to . . . CommerceWest Bank" (ECF No. 36 at 9) is categorically false. (Sharif Decl. ¶ 7, Ex. 5; March 16, 2026 Declaration of Jordan W. Garman ¶ 3.) And Defendants'

This is particularly so where Defendants' failure to notify senior lender CommerceWest Bank was deliberate and purposeful. (Sharif Decl. ¶ 7, Ex. 5 (Jan. 30, 2026 text message from Defendant Fette stating: "notifying the bank would naturally accelerate any seizure notice. That limited optionality."); Verified Complaint ¶ 69 ("Dawson performed the foreclosure in an intentionally clandestine manner, and he specifically ignored his counsel's advice that Dawson must provide notice to senior secured creditors, including CommerceWest Bank.").)

*Second*, Defendants admit they did not meet the mandatory conditions under which a foreclosing creditor may purchase collateral at a private sale. *See* Cal. Com. Code § 9610(c)(2) ("A secured party may purchase collateral . . . (2) [a]t a private disposition **only if the collateral is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations**." (emphasis added)). Nowhere do Defendants attempt to argue *Ashes of Creation*—a complex multi-player video-game—is a type of collateral customarily sold on a recognized market or that is subject of standard price quotations. Instead, by attempting to substitute their prior hiring of an investment banker for later commercial reasonableness, Defendants **admit** the MMORPG/videogame market is, indeed, a "specialized market." (ECF No. 36 at 9.) This is fatal to their assertion that Plaintiff is unlikely to succeed on the merits of his Article 9 claim.

*Third*, purported sale outreach efforts via Aream, which were unrelated to the foreclosure, (*see* Sharif Decl. ¶ 4, Exs. 1-2), cannot fulfill California Commercial Code Section 9610(b)'s commercial reasonableness requirement. Defendants do not, and cannot, argue that the Foreclosure Sale falls within one of Section 9627's safe

---

suggestion that CommerceWest Bank somehow had sufficient notice because "[t]he Article 9 Sale notice expressly states it remains subject to the interest of CommerceWest Bank" (ECF No. 36 at 4) is nonsensical. Moreover, California Commercial Code Section 9611(b) requires a "**signed** notification of disposition" (emphasis added) to the debtor—*i.e.*, Intrepid—which Defendants have not shown.

harbors for commercial reasonableness. And the alleged (and factually inaccurate) fact that Defendants tried to find buyers for *Ashes of Creation* or Intrepid at some time before the contemplated Foreclosure Sale does not give them carte blanche to later execute a self-interested, private disposition in violation of Article 9.

**C.    Defendants' Failure to Comply with Article 9 Prejudiced Intrepid**

Defendants argue that Aream's process yielded no interested buyers and that Intrepid suffered no prejudice from the self-interested private sale because no other buyers would have attended the Foreclosure Sale. (ECF No. 36 at 9.) But contrary to Ms. Fette's suggestion (ECF No. 36-1 ¶ 4), at least one potential buyer expressed interest in acquiring Intrepid's assets shortly before the Foreclosure Sale. (Sharif Decl. ¶ 6, Ex. 4.) By proceeding with a closed, private sale in violation of Article 9, Defendants excluded that buyer from participating, severely prejudicing Intrepid to the benefit of Rob Dawson and TFE. *See Ford*, 163 Cal.App.3d at 751.

## III.    <u>CONCLUSION</u>

For these reasons, and those in Plaintiff's Motion for TRO (ECF. No. 10-1), and Plaintiff's Opposition to Defendants' Motion to Dissolve (ECF No. 35), Plaintiff respectfully requests this Court deny Defendants' Motion to Dissolve.

DATED:  March 16, 2026

WITHERS BERGMAN LLP

By: */s/ Jordan W. Garman*

Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*