Samuel A. Schwartz, Esq.
  (admitted *pro hac vice*)
Nevada Bar No. 10985
saschwartz@nvfirm.com
Sasha Aliakbar-Amid, Esq.
California Bar No. 334162
samid@nvfirm.com
SCHWARTZ, PLLC
601 East Bridger Avenue
Las Vegas, Nevada  89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

Samuel B. Strohbehn, Esq.
California Bar No. 257697
sstrohbehn@rosinglaw.com
Irean Z. Swan, Esq.
California Bar No. 313175
iswan@rosinglaw.com
Maddie Rudge, Esq.
California Bar No. 362727
mrudge@rosinglaw.com
ROSING POTT & STROHBEHN LLP
770 1st Avenue, Suite 200
San Diego, California  92101
Telephone: (619) 235-6000

*Attorneys for Defendants Robert Dawson, Ryan Ogden, Theresa Fette, Aaron Bartels, and TFE Games Holdings, LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT DAWSON; RYAN OGDEN; THERESA FETTE; AARON BARTELS; and TFE GAMES HOLDINGS, LLC,<br><br>Defendants,<br><br>and<br><br>INTREPID STUDIOS, INC.,<br><br>Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT OPPOSITION OF DEFENDANTS AND SCHWARTZ, PLLC TO PLAINTIFF STEVEN SHARIF'S MOTION TO DISQUALIFY SCHWARTZ, PLLC**<br><br>*Filed concurrently with Declaration of Samuel A. Schwartz, Esq.*<br><br>Judicial Officer: Hon. Linda Lopez<br>Courtroom: 14B (14th Floor)<br>Hearing Date: April 20, 2026<br>Hearing Time: N/A<br><br>Action Filed: February 14, 2026<br>Trial Date: Not Set |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Steven Sharif's (the "**Plaintiff**" or "**Sharif**") Motion to Disqualify Schwartz, PLLC (the "**Motion**") is based on a declaration by Sharif (the "**Sharif Declaration**") containing many conclusory allegations but very few relevant specifics. The Sharif Declaration also confuses any distinction between matters

1                                                          26cv00965-LL-MMP

pertaining to Sharif personally and those pertaining to Intrepid Studios, Inc. ("**Intrepid, Inc.**"). The general and vague statements in the Sharif Declaration do not provide a sufficient basis for the "drastic measure" of disqualification of counsel. This becomes all the more clear when the allegations in the Sharif Declaration are put in the proper context. The Declaration of Samuel A. Schwartz, Esq. (the "**Schwartz Declaration**"), which is being filed concurrently with this opposition, provides the accurate and full context for what was truly happening in December 2024.

In December 2024, Schwartz, PLLC (the "**Schwartz Firm**")[1] represented a lender who was in diligence with Sharif to issue a personal loan, secured by Sharif's residence. *See* Schwartz Declaration, ¶ 3. The telephone conferences Sharif references were part of the underwriting and due diligence related to that loan. *See* Schwartz Declaration, ¶ 3. The Schwartz Firm never represented Sharif personally in any capacity – either prospectively or actually. *See* Schwartz Declaration, ¶¶ 3-4. To the contrary, it represented a client on the *opposite* side of a potential transaction with Sharif. This fact was made expressly, and implicitly, clear to Sharif – a sophisticated executive of a multimillion dollar company with hundreds of employees – before the calls and no form of retainer was ever entered into or even discussed. Schwartz Declaration, ¶ 3.

Regarding the allegations of Schwartz Firm's prospective representation of Intrepid, Inc. in 2024, the discussions with Sharif actually pertained to a distinct and different entity, Intrepid Studios, LLC ("**Intrepid, LLC**"); they were brief, were of a very general nature, and were not substantially related to claims at issue in this case. *See* Schwartz Declaration, ¶ 4. As noted above, the telephone conferences referenced by Sharif evolved from a loan related to his residence, to a loan related to financing

---

[1] Schwartz, PLLC, formed on January 1, 2026, is the successor entity to Schwartz Law, PLLC. Though the allegations at issue here concern activity which occurred while Schwartz Law, PLLC was active as well as after the formation of Schwartz, PLLC, the two are considered together here as the "Schwartz Firm" for ease of reference.

26cv00965-LL-MMP

Intrepid, LLC via Chapter 11 of the Bankruptcy Code. *See* Schwartz Declaration, ¶ 4. Those brief conversations had nothing to do with this case or its subject matter, an Article 9 sale, or anything that Sharif can or does allege relates to this case. And even assuming, *arguendo*, that any form of attorney-client relationship was formed in those calls, they would have been with the entity, not with Sharif personally. Finally on this front, Intrepid, Inc. has signed a conflict waiver relating to the potential representation of the company by the Schwartz Firm in a Chapter 11 bankruptcy case. *See* Schwartz Declaration, ¶ 7.

As for Sharif's allegation concerning the Schwartz Firm's alleged dual role in or about December 2025, advising both its current clients and Intrepid, Inc. in the run-up to the private sale of Intrepid, Inc.'s collateral on January 16, 2026 (the "**Article 9 Sale**"), the Schwartz Firm's sole client during that time period was TFE Games Holdings, LLC ("**TFE**") – it did not represent Intrepid, Inc. in any capacity. Nor has Plaintiff produced any form of evidence of such representation, such as a written retainer agreement.

But even if Sharif's allegations were true, the Schwartz Firm's successive representation of TFE and the individual defendants in this case, who are all Intrepid, Inc. insiders, falls squarely within the long-recognized exception in California law to the substantial relationship basis for disqualification in closely held derivative shareholder actions. This is because all confidential information concerning Intrepid, Inc. which the Schwartz Firm might have obtained during that time period would have been obtained through the firm's current clients – who are Intrepid, Inc. insiders.

In truth, this motion is a stunt. It was filed on the eve of the hearing on TFE's Motion to Dissolve Temporary Restraining Order Pursuant to FRCP 65(b)(4) for strategic purposes, rather than due to legitimate ethical concerns, and amounts to another desperate effort by Sharif, who owns less than five percent (5%) of the shares of Intrepid, Inc., to delay and disrupt the inevitable, as TFE seeks to gain control of the Intrepid, Inc. assets, and to hide evidence of his own fraudulent actions and

mismanagement of Intrepid, Inc.. The Motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

### A.    History of Intrepid, Inc. and role of Defendants.

Intrepid, Inc. was a startup video game development company founded in or about 2015. The company's flagship project was an online role-playing video game called *Ashes of Creation.* During its early years, Intrepid, Inc. generated little to no meaningful revenue and relied almost entirely on outside financing to fund its development and operations. In or about February 2022, Sharif first met with Defendant Robert Dawson ("**Dawson**") to solicit funding for Intrepid, Inc. March 6, 2026 Declaration of Robert Dawson (the "**Dawson Declaration**"), at ECF No. 23, pg. 48 of 207, ¶ 5. On or about March 23, 2022, Dawson agreed to extend a line of credit of up to $8,000,000. In connection with that transaction, Intrepid, Inc. executed a written Convertible Line of Credit Promissory Note dated March 23, 2022 (the "**2022 Note**") in favor of Dawson in the principal amount of $8,000,000. To secure repayment of the 2022 Note plus all amounts in future notes and advances from Dawson to Intrepid, Inc., Intrepid, Inc. executed a Pledge and Security Agreement dated March 23, 2022 (the "**Security Agreement**"), granting Dawson a security interest and lien in and to substantially all assets of Intrepid, Inc. (the "**Collateral**"). Dawson Declaration, ECF No. 23, pg. 48 of 207, ¶ 12. Dawson extended a series of loans to Intrepid, Inc. between 2023 and 2025 in the aggregate principal amount of $78,480,831.54, as evidenced by multiple written promissory notes (collectively, the "**Notes**"). Dawson Declaration, ECF No. 23, pg. 48 of 207, ¶ 11. Each of the Notes was secured by the Security Agreement. Dawson also owns in excess of sixty-four percent (64%) of the equity of Intrepid, Inc. *See* Exhibit 1 to Dawson Declaration, ECF No. 23, pgs. 52-53 of 207. In addition to being the majority owner of the company, Dawson is also the Chairman of the Intrepid, Inc. board of directors and has been since September 2024.

Defendant Theresa Fette ("**Fette**") is an Intrepid, Inc. shareholder and has been

on the company's board of directors since August 2025. Defendant Ryan Ogden ("**Ogden**") has served as Intrepid, Inc.'s Chief Financial Officer since September 2024 and as a board member since on or around August 2024. Defendant Aaron Bartels ("**Bartels**," and collectively with Dawson, Fette, and Ogden, the "**Directors**") is an Intrepid, Inc. shareholder and has been on the company's board of directors since August 2025.

**B.      2024 Communications between the Schwartz Firm and Sharif.**

Samuel A. Schwartz ("**Mr. Schwartz**") of the Schwartz Firm was introduced to Plaintiff Sharif in or about November 2024 by a Schwartz Firm client, Eric Kurtzman ("**Kurtzman**"). *See* Schwartz Declaration, ¶ 3. Kurtzman was in diligence with Sharif to issue a personal loan, secured by Sharif's residence, and was negotiating with Kurtzman and was not represented by counsel. *Id.* Kurtzman brought Mr. Schwartz into the discussion as his attorney. *Id.* Mr. Schwartz made clear to Sharif that he represented Kurtzman in the loan transaction and that he was not, in any way, acting as Sharif's attorney. *Id.* On December 1, 2024, Mr. Schwartz, Kurtzman, and Sharif had a phone call concerning the personal loan Sharif was trying to obtain. *Id.* At no point did Sharif indicate that he believed Mr. Schwartz was or would potentially become his attorney. Schwartz Declaration, ¶ 3.

During a follow-up call on December 2, 2024, Sharif raised concerns about the solvency of "his" company. The company which Sharif identified was "Intrepid Studios, LLC," a separate entity from Intrepid, Inc. Schwartz Declaration, ¶ 4. It was during the short December 2, 2024 call that the potential representation of Intrepid, LLC by the Schwartz Firm in a bankruptcy filing was discussed. *Id.* The information provided by Sharif on the December 2, 2024 call was of a brief and general nature, consisting of concerns about Intrepid, LLC's solvency expressed in a generalized way. There was no discussion concerning Robert Dawson and no discussion of health issues Sharif was facing. Schwartz Declaration, ¶ 5. A proposed engagement agreement for Intrepid, LLC, *not Sharif*, was sent on December 2, 2024, but was never

signed and all communications by the Schwartz Firm with Sharif ceased thereafter. *Id.* The engagement agreement was withdrawn eight days later. *Id*. No retainer agreement was ever entered into with Sharif, nor did he ever indicate to Mr. Schwartz that he believed Mr. Schwartz represented him or would be representing him. Schwartz Declaration, ¶¶ 3-4.

### C.    Intrepid, Inc. becomes insolvent; the Schwartz Firm becomes counsel for TFE.

Over its 10 years of operation, Intrepid, Inc. was never profitable. It incurred in excess of $120,000,000 of investment and lending and was never able to pay its bills as they came due absent financing and investment. Intrepid, Inc. had over 200 employees when it failed and simply could not make payroll when the willingness of its individual private lenders and investors to fund came to an end. During 2025, Intrepid, Inc. ran a process to identify a buyer or investor with Aream & Co., a well-known video gaming investment banker. Fette personally participated in and oversaw the investment process with Aream & Co., and spoke to at least ten (10) potential investors and buyers. Not one party was willing to either invest in or purchase Intrepid, Inc.'s assets. March 6, 2026 Declaration of Theresa Fette, at ECF No. 23, pg. 59 of 207, ¶¶ 17-18.

By December 2025, it was apparent that Intrepid, Inc. would not be able to find additional investors or a buyer for *Ashes of Creation*. It became clear to the Directors that the company was insolvent, and the only way to continue development on *Ashes of Creation* was to foreclose on the company's assets. It was at this time that TFE retained the Schwartz Firm to represent it in relation to the Article 9 Sale. The Schwartz Firm did not act as counsel for or advise Intrepid, Inc. at any time during this process. Schwartz Declaration, ¶ 6.

## III.    LEGAL ARGUMENT

Disqualification of counsel is a "drastic measure" which "should only be imposed when absolutely necessary." *Concat LP v. Unilever PLC*, 350 F. Supp. 2d

796, 814 (N.D. Cal. 2004). Motions to disqualify counsel are "strongly disfavored" because they "often pose the very threat to the integrity of the judicial process that they purport to prevent." *Visa U.S.A. Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003). This is because, among other reasons, they are often used strategically "to harass opposing counsel." *Shurance v. Plan. Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988). Because disqualification deprives a party of its chosen counsel and the potential for abuse, disqualification motions are subject to "particularly strict scrutiny" and must be denied where the moving party's showing is speculative, conclusory, or attenuated. *Shurance*, 839 F.2d at 1349)(quotations omitted). A trial court's authority to disqualify an attorney derives from its inherent power to control, in furtherance of justice, the conduct of attorneys appearing before it. *Avalyn Pharma, Inc. v. Vincent*, 2021 U.S. Dist. LEXIS 213656, *8-9 (S.D. Cal. Nov. 4, 2021). Disqualification of counsel lies within the sound discretion of the district courts. *Gas-A-Tron of Arizona v. Union Oil Co.*, 534 F.2d 1322, 1325 (9th Cir. 1976).

The burden rests squarely and entirely on the moving party to establish each element of the test. To prevail, the moving party must establish: (1) the existence of a prior attorney-client relationship between the attorney sought to be disqualified and the moving party itself; and (2) that a substantial relationship exists between the prior representation and the current adverse representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). Both elements must be affirmatively proven – a failure of proof on either is fatal to the motion. *Id.* And even where a prior representation is established, "general knowledge about a client alone is insufficient to warrant disqualification." *Lewis C. Nelson & Sons, Inc. v. U.S. Dist. Ct., E. Dist. of California*, 188 F. App'x 640, 642 (9th Cir. 2006) (denying disqualification where no material confidential information was obtained by counsel).

Here, Plaintiff has failed to prove either element.

///

**A.      Sharif's vague and conclusory allegations are not an adequate basis for disqualification.**

A party seeking disqualification "must satisfy a high standard of proof." *In re Marvel*, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000), *aff'd*, 265 B.R. 605 (N.D. Cal. 2001). This requires producing "substantial evidence" of facts justifying disqualification. *Visa U.S.A.,* 241 F.Supp.2d at 1104. The asserted impropriety must be clear. *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 (9th Cir. 1981). As such, disqualification cannot be premised on general and conclusory allegations or concerns which are merely anticipatory and speculative. *Agena v. Cleaver-Brooks, Inc*., 428 F. Supp. 3d 267, 273 (D. Haw. 2019)(citations omitted).

Here, the Motion is built on the Sharif Declaration, and the Sharif Declaration is lacking in all the critical components needed to meet the "high standard of proof" required for a motion to disqualify to be successful. For instance, regarding the subject matter of Sharif's 2024 communications with Mr. Schwartz, we are told only that Sharif was "introduced to attorney Samuel Schwartz of Schwartz, PLLC by a mutual acquaintance, for aid on the legal issues I and Intrepid faced based on the pressure I was receiving from Robert Dawson and his associates, which had caused me to experience a serious health crisis." Sharif Declaration, ¶ 3. The Motion then makes the unsupported leap to claiming that Sharif provided "confidential information materially related to this dispute in December 2024" but Sharif does not specify what that information actually is nor can it be determined based on Sharif's vague statements in his declaration. Motion at pg. 10, lines 24-25. Similarly, according to Sharif, he provided "detailed," "substantial," and "extensive" confidential information to Mr. Schwartz over the course of two phone calls lasting a total of eighty-five minutes, but Sharif again provides absolutely no detail in his declaration regarding this information. The Court, apparently, is supposed to take his word for it that it was both "confidential" *and* material without knowing any of the content. It cannot be ascertained from the Sharif Declaration, or elsewhere in the Motion, what,

exactly, any of this information pertained to or whether it was truly "confidential." As such, these assertions are far from adequate as a basis for disqualification.

It is also unclear how the Article 9 sale at issue here was a known issue in 2024, or how Sharif's personal issues with Dawson (which if true are personal claims to Sharif, not Intrepid) relate to or impact the commercial claims between Intrepid, Inc. and TFE. Importantly, TFE did not exist until late 2025, so there is a missing nexus to Sharif's story, which does not address (much less mention) his prior communications with Kurtzman regarding a personal loan. Simply put, Sharif's story does not add up.

The disqualification of Defendants' chosen counsel is far too serious a measure to be taken based on the flimsy allegations in the Sharif Declaration. The Motion should be denied in its entirety on this basis alone.

**B.  There was no actual or prospective representation of Sharif, personally, at any point in time.**

The substantial relationship test presupposes actual representation, that is the existence of an attorney-client relationship that gives rise to the fiduciary duties of confidentiality and loyalty. *Faraday&Future, Inc. v. EVelozcity, Inc.*, 2018 U.S. Dist. LEXIS 222879, *15 (C.D. Cal. 2018). The Sharif Declaration seems to suggest that Sharif believed he was or may be receiving legal "aid" from the Schwartz Firm in his personal capacity. But the declaration is fatally vague on this point, as it is with almost everything else. Underscoring this point, Sharif confuses, without any detail, all distinction between himself and "Intrepid" stating that the "aid" from the Schwartz Firm would pertain to "legal issues I and Intrepid faced" and refers to the potential representation of "me and/or Intrepid." Sharif Declaration, ¶¶ 3-4. Virtually nothing can be gleaned from the Sharif Declaration concerning this supposed potential representation of Sharif personally, and there is nothing to establish that the representation would have had any direct relationship to this matter, let alone a substantial one. Sharif's assertions on this point are undermined by the draft

engagement letter, which was sent in December 2024, which makes clear that, had the representation proceeded, it would have been of Intrepid Studios, LLC, only. *See* December 2, 2024, engagement agreement, Exhibit 3 to Sharif Declaration. Thus, the representation would have been of an entity separate from any entity here, and would clearly not have been of Sharif personally.

In contrast to the vague statements in the Sharif Declaration, the Schwartz Declaration is specific about what was discussed with Sharif on each of the two calls which took place in early December 2024 and makes clear that, at no point did the Schwartz Firm represent Sharif personally, either actually or prospectively. Nor did Sharif ever indicate that he believed Mr. Schwartz was representing him. The December 1, 2024 call pertained to a personal loan secured by Sharif's residence which he was trying to obtain from a client of the Schwartz Firm, Eric Kurtzman. Mr. Schwartz made clear to Sharif that he represented Kurtzman in the loan transaction and that he was not, in any way, acting as Sharif's attorney. Schwartz Declaration, ¶ 3.

Thus, not only was there not even the slightest suggestion of the Schwartz Firm representing Sharif in this transaction, but the transaction itself had nothing to do with the present case. Sharif must prove, explicitly and clearly, that an actual representation formed, that is the existence of an attorney-client relationship that gives rise to the fiduciary duties of confidentiality and loyalty. *Faraday&Future, Inc. v. EVelozcity, Inc.*, 2018 U.S. Dist. LEXIS 222879, *15 (C.D. Cal. 2018). Because there was no attorney-client relationship between the Schwartz Firm and Sharif, and because the subject matter of the Sharif personal loan is entirely unrelated to the present case, the Schwartz Firm's communications with Sharif concerning this personal matter for him cannot serve as a basis for disqualification.

/ / /

/ / /

/ / /

**C.** **The prospective representation of Intrepid, LLC by the Schwartz Firm in December 2024 concerned a different entity than Intrepid, Inc. and, in any event, was not substantially related to the present matter.**

In the course of a ten-minute phone call on December 2, 2024, with Samuel Schwartz, Sharif raised concerns about the solvency of what he described as "his" company. The company Sharif identified was Intrepid Studios, LLC. Schwartz Declaration, ¶ 4. It was during this short December 2, 2024 call that the potential representation of Intrepid, LLC by the Schwartz Firm in a Chapter 11 bankruptcy filing was discussed. *Id.* The information provided by Sharif on the December 2, 2024 call pertained to an entity not involved in this case and was of a brief and general nature – essentially consisting of concerns about the company's solvency expressed in a generalized way. There was no discussion concerning Robert Dawson and no discussion of health issues Sharif was facing. Schwartz Declaration, ¶ 5. A proposed engagement agreement for Intrepid, LLC was sent on December 2, 2024, but was never signed and all communications with Sharif ceased thereafter. *Id.* The proposed engagement agreement was later withdrawn. *Id*.

When considering a motion to disqualify, the United States District Court for the Southern District of California considers California law. *Avalyn Pharma, Inc., supra, citing In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). In successive representation cases, under California law, disqualification of counsel is warranted under two situations: (1) the attorney in fact has adverse confidential information or (2) the attorney's acquisition of confidential information is presumed because the prior and present cases are "substantially related." *See H. F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (1991); *Faughn v. Perez*, 145 Cal. App. 4th 592, 603 (2006). In considering whether two matters are "substantially related" under the second scenario above, a "court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the

attorney's possible exposure to formulation of policy or strategy." *H. F. Ahmanson & Co.*, 229 Cal. App. 3d at 1455 (citation and quotes omitted).

Here, Sharif has not identified any specific adverse confidential information, much less *material* information, which the Schwartz Firm allegedly has due to its prospective representation of Intrepid, LLC in 2024 (because there is none). *Lewis C. Nelson & Sons, Inc. v. U.S. Dist. Ct., E. Dist. of California*, 188 F. App'x 640, 642 (9th Cir. 2006) (denying disqualification where no material information was obtained during prior representation and there was no substantial relationship between the prior representation and current representation). Rather, Sharif argues, without basis, that the prospective representation in 2024 is "substantially related" to the present case. Sharif has provided no meaningful details, however, concerning the prospective representation in 2024. The Schwartz Declaration acknowledges the prospective representation and fills in the details, which are necessarily sparse because the Schwartz Firm was never actually retained and the discussion with Sharif concerning the potential representation was exceedingly brief. As an initial matter, the prospective representation was of a separate California entity, Intrepid Studios, LLC, not of Intrepid, Inc. This fact negates Sharif's argument based on successive representation because only Intrepid, LLC can bring a motion for disqualification based on a prior representation of it. *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) ("courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification")(citing *United States v. Rogers*, 9 F.3d 1025, 1031 (2d. Cir. 1993)).

Yet, even when the *H. F. Ahmanson* factors set out above are applied to this case as if the prospective representation was of Intrepid, Inc., it is clear the Motion fails. The time spent by the Schwartz Firm concerning the potential representation is almost non-existent; the Schwartz Firm performed no actual work as it was never retained; and the Schwartz Firm had no exposure to the formulation of policy or strategy. The discussions were limited to the apparent insolvency of Intrepid, LLC

and the possibility of the Schwartz Firm acting as bankruptcy counsel for that entity. There simply is no "substantial relationship" between the fleeting potential representation in 2024 and the claims being made in this case.

### D.     The Schwartz Firm did not represent Intrepid, Inc. in 2025.

In December 2025, TFE retained Schwartz to represent it in relation to the foreclosure of the assets of Intrepid, Inc. The Schwartz Firm did not act as counsel for or advise Intrepid, Inc. as its counsel at any time during this process. Schwartz Declaration, ¶ 6.

The substantial relationship test presupposes the existence of an attorney-client relationship. *Faraday&Future, Inc.*, 2018 U.S. Dist. LEXIS 222879, *15. Here, there simply was no attorney-client relationship between the Schwartz Firm and Intrepid, Inc. The entirety of what Sharif has to say regarding the supposed dual role of the Schwartz Firm is as follows: "I was involved in discussions where Schwartz, PLLC-after having been retained by TFE-both provided advice to TFE on its supposed Article 9 foreclosure on Intrepid's assets, and also to Intrepid on winding down Intrepid's business." Sharif Declaration, ¶ 10. As with all other allegations in the Sharif Declaration, this assertion is much too vague to serve as the basis for disqualification.

### E.     Even if the Court should determine that the Schwartz Firm represented Intrepid, Inc. in a substantially related matter and that material information was obtained by the Schwartz Firm, the long-recognized exception pertaining to the representation of insiders in a derivative action applies here.

As discussed above, the Schwartz Firm has never actually or prospectively represented Intrepid, Inc. Similarly, the prospective representation of Intrepid Studios, LLC – besides being for a different entity – was not on a substantially related matter. Even if Sharif is correct, however, that the Schwartz Firm represented Intrepid, Inc. on matters substantially related to the claims in this case, it would not

serve as a basis for disqualification under California law. This is because California courts have long recognized an exception to the substantial relationship test in closely held derivative shareholder actions where a shareholder brings a derivative lawsuit on behalf of the company against the insiders who control the company. *See Forrest v. Baeza,* 58 Cal. App. 4th 65 (1997); *see also Beachcomber Mgmt. Crystal Cover LLC v. Superior Ct.,* 13 Cal. App. 5th 1105, 1118 (2017). In such cases, "even though a substantial relationship exists between the attorney's previous representation of the company and the attorney's current representation of insiders in the company's lawsuit against them," it does not bar the attorney from representing the insiders in the derivative action. *Beachcomber Mgmt.,* 13 Cal. App. 5th at 1118.

This exception "derives from a recognition that insiders are the source of a closely held company's confidential information." *Id.* at 1118-19. That is, because the insiders are usually "the repositories and source of all confidential information an attorney may receive in representing the company," it would be futile to apply the successive representation rules because the insiders could provide a new attorney with the same information their prior counsel had and would only generate unnecessary attorney's fees for a new attorney to catch up and learn the case. *Id.* In these cases, then, the attorney's representation of the insiders does not threaten the attorney's duty of confidentiality to the company because the insiders are already privy to all of the company's confidential information." *Id.* at 1112. Therefore, an "attorney who previously represented both a closely held company and its insiders [may] continue representing the insiders in a derivative lawsuit brought on the company's behalf against the insiders." *Id.* at 1118.

In *Forrest*, for instance, the trial court's order granting the motion to disqualify an attorney from representing the corporations, but denying the motion to disqualify the attorney from representing the majority shareholders, was affirmed in the context of a shareholder derivative suit brought by a minority shareholder in two closely held corporations against the majority shareholders who ran the corporations. *Forrest*, 58

Cal. App. 4th at 68-72. Similarly, in *Beachcomber Mgmt.*, it was held that the trial court erred by failing to consider the exception to the substantial relationship test in closely held derivative shareholder actions brought against a company's insiders where a shareholder derivative action was brought by three members of a limited liability company against the entity's managing member with the exclusive right to operate its business. *Beachcomber Mgmt.,* 13 Cal. App. 5th at 1112-1113. As stated by the court in *Beachcomber Mgmt*:

> … the critical inquiry focuses on the insiders' role in the company and the information to which they had access and possessed. It does not matter whether the insiders were the "sole repositories" of confidential information or that other employees or representatives also had access or possessed confidential information. Similarly, it is irrelevant that the insiders may have delegated certain tasks or responsibilities to others. Application of the *Forrest* rule turns on whether the insiders had access to the same information as the attorney who represented both the insiders and the company.

*Id.* at 1122.

Here, the Directors are Intrepid, Inc.'s controlling insiders. The company has a total of just thirteen shareholders of which Dawson is, by far, the holder of the largest number of shares, with in excess of sixty-four percent (64%) ownership. Dawson is also the chairman of Intrepid, Inc.'s board of directors. Bartels and Fette are also shareholders and board members. Ogden is a board member who has also been the company's Chief Financial Officer since September 2024. There is no information which Sharif provided to the Schwartz Firm, in either 2024 or 2025, which is not also known by and accessible by the Directors. This derivative lawsuit, brought by a shareholder owning less than five percent (5%) of Intrepid, Inc. and who is no longer a board member or officer of the company against Intrepid, Inc.'s controlling insiders, falls squarely within California's insider exception to the substantial relationship test in closely held derivative shareholder actions. Therefore, even if Sharif was correct that the Schwartz Firm represented Intrepid, Inc. on matters substantially related to the claims in this case (which it did not), it would not serve as a basis for disqualification under California law.

**F.      The alleged possibility that Mr. Schwartz will be a percipient witness is not a basis for disqualification.**

The Motion makes a brief argument that the "substantial possibility" that members of the Schwartz Firm will be percipient witnesses is a reason to disqualify the Schwartz Firm. We are told this is because it is "likely" that the Schwartz Firm "possesses independent, non-privileged factual knowledge regarding TFE's purported foreclosure." Motion at pg. 12, lines 11-23. Disqualification cannot be premised on concerns which are merely anticipatory and speculative. *In re Marvel*, 251 B.R. at 871. The argument that the Schwartz Firm should be disqualified based on assertions of the "possibility" that members of the Schwartz Firm may be percipient witnesses because it is "likely" members of the Schwartz Firm have information relevant to the claims at issue is "merely anticipatory and speculative." It is, therefore, at best, premature to make the argument and not a basis for the "drastic measure" of disqualification at present. Indeed, the vague and speculative nature of this argument in the Motion makes application of the usual factors when considering disqualification in this context unworkable, for instance: the necessity of counsel's testimony; the significance of the matters to which he might testify; the weight of the testimony; and the availability of other witness or documentary evidence. *See U.S. Equal Employment Opportunity Commission v. Bay Club Fairbanks Ranch, LLC*, 437 F. Supp. 3d 802, 804-806 (S.D. Cal. 2019). Sharif has provided no analysis of these factors in the Motion because the argument is nothing more than speculation and he, therefore, has no detail to support it. The percipient witness argument is not a basis for disqualification.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.   CONCLUSION

There is no legitimate basis for disqualification. The Motion was filed as a distraction for strategic purposes. Defendants and the Schwartz Firm respectfully request the Court deny the Motion in its entirety so that Defendants may proceed in this matter represented by the counsel they have chosen.

Dated: March 25, 2026.

By: */s/ Sasha Aliakbar-Amid*
Samuel A. Schwartz, Esq.
(admitted *pro hac vice*)
Nevada Bar No. 10985
Sasha Aliakbar-Amid, Esq.
California Bar No. 334162
SCHWARTZ, PLLC
601 East Bridger Avenue
Las Vegas, Nevada  89101

Samuel B. Strohbehn, Esq.
California Bar No. 257697
Irean Z. Swan, Esq.
California Bar No. 313175
Maddie Rudge, Esq.
California Bar No. 362727
ROSING POTT & STROHBEHN LLP
770 1st Avenue, Suite 200
San Diego, California  92101

*Attorneys for Defendants Robert Dawson, Ryan Ogden, Theresa Fette, Aaron Bartels, and TFE Games Holdings, LLC*