Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone: 415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone: 619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone: 212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., | Case No.: 3:26-cv-00965-LL-MMP |
| Plaintiff, | **PLAINTIFF STEVEN SHARIF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION** |
| v. | *Filed concurrently with; Declaration of Jordan W. Garman; Declaration of Steven Sharif* |
| ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, and TFE GAMES HOLDING LLC, | Judge: Hon. Linda Lopez<br>Hearing Date: April 2, 2026 |
| Defendants, | Action Filed: February 14, 2026<br>Trial Date: Not Set |
| and | |
| INTREPID STUDIOS, INC., | |
| Nominal Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants argue that this Court should deny injunctive relief because they have purportedly "set aside" the unlawful Article 9 sale and "returned" Intrepid's assets. That argument fails. This is now the ***second*** surreptitious, closed-door, self-interested transaction Defendants have conducted with Intrepid's core trade secret and intellectual property assets in just three months. Defendants undertook both transactions for their own benefit and without any lawful or transparent process. Far from eliminating the need for injunctive relief, Defendants' latest maneuver only underscores why the Temporary Restraining Order ("TRO") must convert into a preliminary injunction until such time as the Court can adjudicate the impact of the Defendants' latest actions and ensure that Intrepid's trade secret and intellectual property assets are safe from further misuse or dissipation.

Critically, Defendants no longer even attempt to defend the legality of the original Article 9 foreclosure sale or to argue that Plaintiff is unlikely to succeed on his Article 9 or trade secret claims. Instead, they resorted to impermissible self-help by purporting to sell Intrepid's valuable trade secrets assets back to Intrepid, which they executed while subject to a TRO requiring preservation of the status quo. This was a last-ditch effort to evade judicial review and forestall the issuance of a preliminary injunction.[1] They admittedly did this so that they could try to execute the Article 9 sale again. The factual predicates for injunctive relief, therefore, remain unchanged: Plaintiff remains likely to succeed on the merits, and Defendants' demonstrated pattern of self-interested conduct, in conjunction with their admitted intent to imminently dispose of Intrepid's trade secrets, means Intrepid is likely to

---

[1] Defendants also continue to use their briefing to paint a false narrative of Plaintiff and his time as CEO of Intrepid. These characterizations are not relevant to the issues before the Court now. And as stated in previous briefing, Plaintiff will vigorously dispute these characterizations at the appropriate time.

suffer irreparable harm. As explained below, Defendants' knowing violation of the TRO through this unauthorized "sale back" independently warrants the issuance of a civil contempt order to deter further self-help.

Defendants' unilateral "sale back" does not cure their misconduct. It not only violated the TRO, but also created a new and complex set of unresolved legal issues. Defendants engineered this new situation knowing full well that Plaintiff would have only forty-eight hours and ten pages to respond. This was an act of procedural gamesmanship that equity should not reward.

Instead, the Court should issue a preliminary injunction in substantially the same form as the TRO, including maintaining Intrepid's valuable IP assets in the possession of the IP Custodian, to prevent further irreparable harm until such time as the Court can adjudicate the impact of the Defendants' latest actions and ensure that Intrepid's trade secret and intellectual property assets are safe from further misuse or dissipation. Doing so maintains the status quo (absent any further violations by Defendants) to give the parties and the Court time to wade through the legal morass Defendants have created, and to allow Plaintiff to consider whether further relief, including a noticed motion for appointment of a receiver or other neutral oversight, is necessary. Absent a preliminary injunction, it is clear Defendants will not maintain the status quo. Once the Court's existing restraints lapse, Defendants will again be free to transfer and exploit Intrepid's core intellectual property in whatever self-interested manner they choose without consequence. At that point, no after-the-fact remedy, whether a receiver or damages, can meaningfully protect Intrepid from the harm Defendants are likely to create in doing so.

## II.   ARGUMENT

### A.   Plaintiff Remains Likely to Succeed on the Merits of His Claims, and Defendants' Recent *Second* Purported Fire Sale of Intrepid's Assets Only Underscores the Likelihood of Irreparable Harm

In their opposition, Defendants conspicuously abandon any argument that the Article 9 foreclosure sale was lawful, effectively conceding that Plaintiff is likely to succeed on his Article 9 and trade-secret claims. Rather than defend the legality of their conduct, Defendants instead violated this Court's TRO in a last-ditch effort to avert the almost certain issuance of a preliminary injunction. They now claim to have "set aside" the Article 9 sale and "returned" Intrepid's assets, (ECF No. 58 at 1), under the apparent misapprehension that a unilateral "do-over" would erase the imminent irreparable harm they created and moot the need for injunctive relief. They did so without notice to Plaintiff, Plaintiff's counsel, or the Court. (March 27, 2026 Declaration of Jordan W. Garman ("Garman Decl.") ¶ 5.) In other words, Defendants appear to have conducted *yet another* surreptitious, closed-door, self-interested transaction involving the very assets whose original disposition is at the heart of this litigation—*all while subject to a TRO requiring preservation of the status quo*.

At the outset, Defendants' conduct plainly violated the TRO, which unequivocally provides that "Defendants . . . along with any of their agents, *are enjoined from* accessing, using, *selling*, distributing, or causing anyone to access, use, sell, or distribute *the trade secrets of Intrepid*." (ECF No. 20 at 10 (emphasis added).) Although Defendants characterize their actions as a mere rescission or "undoing" of the unlawful Article 9 transaction, the documents they attach tell a different story. Defendants did not unwind anything; instead, they purported to *sell* Intrepid's trade secrets back to the Company through an "Assignment and Assumption of Assets" and a Bill of Sale. (ECF No. 58-1 at 4 ("[TFE] *sells*, transfers, conveys and assigns to [Intrepid] . . . all of [TFE's] rights, title and interests in and to [Intrepid's foreclosed on assets]." (emphasis added)); *id.* at 7 (similar).)

These actions only confirm the likelihood of irreparable harm absent continuing injunctive relief. This purported "set aside" was conducted with the hallmark "expediency-over-legality" mentality that infected the original Article 9 sale and continues to place Intrepid and its key trade secret assets at risk. Indeed, far from being corrective, the maneuver instead introduced a host of new legal problems and considerations. *First*, it is far from clear that a bare assignment transaction legally restores all parties, including other secured creditors and their liens, to their pre-sale positions under the California Commercial Code. Indeed, the extinguishment or survival of liens is governed by statute, not by contractual agreements between a debtor and secured creditor. *See, e.g.*, Cal. Com. Code § 9617(a)(3). And Plaintiff is unaware of authority within Article 9 that permits a secured party to unilaterally "unwind" a purported disposition.[2] Rather, a ***court*** may grant remedies for a noncompliant sale under California Commercial Code Sections 9625. *Second*, even if such restoration were theoretically possible, it is practically impossible as to Intrepid: in the wake of the Article 9 sale, Defendants summarily terminated all of Intrepid's employees, exposing the Company to liability (Garman Decl. ¶ 4, Ex. 3), and allowed Intrepid to accrue unpaid obligations and default judgments. (Garman Decl. ¶ 3, Exs. 1-2.) *Third*, the assignment transaction necessarily ***presumes*** that TFE possessed valid

---

[2] Defendants cite to *Pws, Inc. v. Ban*, 234 Cal. App. 3d 223 (1991) for the proposition that they can cure a botched Article 9 sale with a simple "redo," but there, the secured creditor did so to account for a simple ***mistake*** as to the sale date, not to cure ***intentional*** misconduct at issue in a contested litigation such as here. Notably, the secured creditor in *Pws* was not subject to a TRO precluding a transfer of the assets at issue, supporting the court's approval of its efforts to cure a minor defect in the Article 9 process. And there, the Court's decision was cabined to whether the defect precluded the secured creditor from pursuing a deficiency judgment; the decision does not stand for the proposition that a contractual "undoing" of an Article 9 sale legally places all parties back in the same position as though no Article 9 sale had ever occurred.

rights in the first place to "sell back" to Intrepid, thereby entrenching rather than resolving the central dispute in this case. And *finally*, the absence of any apparent consideration for the transaction raises yet another serious question about its validity. Far from simplifying matters or obviating injunctive relief, Defendants have created a deeper legal morass that must be solved conclusively before the current narrowly-tailored injunction can be lifted.

Given Defendants' track record, now involving *two* botched, self-interested dispositions of Intrepid's trade secrets, continuing the TRO through a preliminary injunction is more necessary than ever. Defendants openly acknowledge that their objective remains an *imminent disposition of Intrepid's trade secrets*, most likely to itself. (See ECF No. 58 at 3 ("With the Collateral returned, TFE can now lawfully conduct a public disposition of the Collateral pursuant to section 9610(c) of the California Commercial Code."); ECF No. 59 at 3 ("TFE seeks to gain control of the Intrepid, Inc. assets").) They must be enjoined, at least pending adjudication regarding the propriety of their latest actions, from proceeding further, both because there is every indication they cannot be trusted to conduct any such process lawfully or in good faith,[3] and because the parties and the Court require time to untangle the consequences of Defendants' latest unlawful maneuver.

For these reasons, the Court should issue a preliminary injunction in substantially the same form as the TRO, continuing to preserve the status quo and

---

[3] Indeed, just this week Defendants publicly filed Intrepid's confidential financial and operational information (ECF No. 58-1 at 11-12; ECF No. 58-2 at 4-9) in breach of their fiduciary duties to Intrepid, in an apparent effort to drive the price of Intrepid's assets down for their own benefit by advertising Intrepid's financial distress to creditors, vendors, competitors, and potential counterparties. The disclosure by Defendant Dawson (ECF No. 58-1 at 11-12) is even more egregious because he, as signatory to the Intrepid shareholder agreement, is subject to a confidentiality clause precluding him from disclosing Intrepid's financial information. (March 27, 2026 Declaration of Steven Sharif, Ex. 1.)

Withers Bergman LLP

PLAINTIFF STEVEN SHARIF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

protect Intrepid's trade secrets and intellectual property. Defendants unilaterally created a new and complex legal landscape, while subject to a TRO, knowing Plaintiff would have only forty-eight hours and ten pages to respond. Basic fairness and equity require that Plaintiff and the Court be afforded adequate time to wade through the legal morass Defendants have created and to determine the appropriate path forward, including whether a noticed motion for appointment of a receiver or other neutral oversight is warranted. Maintaining the existing injunctive protections will prevent further irreparable harm while ensuring that any future disposition of Intrepid's assets occurs, if at all, under lawful, transparent, and potentially Court-supervised conditions.

### B.      Defendants' Impermissible Self-Help Warrants a Contempt Order

Defendants' violation of the TRO warrants a civil contempt order, which this Court has the inherent power to issue. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Civil contempt may be used to compel obedience with a court order (coercive) or to compensate the contemnor's adversary for the injuries which resulted from the noncompliance (compensatory). *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).  The party alleging civil contempt must show: (1) the nonmoving party violated a court order, (2) the noncompliance was more than technical or de minimis, and (3) the nonmoving party's conduct was not based on a good faith and reasonable interpretation of the violated order. *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2018 WL 2416242, at *2 (N.D. Cal. May 29, 2018).

The elements for contempt are met. *First*, Defendants plainly violated the TRO by selling the trade secrets despite an explicit directive from this Court not to do so. *Second*, the noncompliance was deliberate and substantial, not technical or de minimis: formal transaction documents were drawn up, and a bill of sale executed. *Third*, TFE's conduct was not based on good faith and reasonable interpretation of the TRO—which cannot reasonably be interpreted to permit sale of Intrepid's trade

secrets. Indeed, TFE's maneuver here was a blatant attempt to end-run the TRO, which mandated preservation of the status quo. *See e.g., Am. Express Travel Related Servs. Co., Inc. v. D&A Corp.*, 2005 WL 8176360, at *8 (E.D. Cal. May 16, 2005) (holding defendant in contempt for violating a TRO that barred property transfers by executing a grant deed transferring his property to a co-defendant).

Additionally, a contempt order would vindicate the Court's authority and deter further self-help. This is not an isolated lapse. Defendants have repeatedly demonstrated a willingness to act first and seek forgiveness later, which threatens to render injunctive relief meaningless. Absent a contempt finding, Defendants will be incentivized to continue reshaping the factual landscape through unilateral action—even if a preliminary injunction is issued—whenever judicial oversight proves inconvenient. Here, coercive civil sanctions, such as a conditional fine, are warranted to deter Defendants' future violation of the Court's orders. *See e.g., Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) ("[C]oercive civil sanctions, intended to deter, generally take the form of conditional fines.").

## III.    CONCLUSION

For the reasons herein, Plaintiff respectfully requests that the Court issue a preliminary injunction in substantially the same form as the TRO and civil contempt order fining Defendants for their blatant violation of the TRO.

WITHERS
BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

DATED:  March 27, 2026          WITHERS BERGMAN LLP

By: */s/ Jordan W. Garman*
Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*