Samuel A. Schwartz, Esq.
  (admitted *pro hac vice*)
Nevada Bar No. 10985
saschwartz@nvfirm.com
Sasha Aliakbar-Amid, Esq.
California Bar No. 334162
samid@nvfirm.com
SCHWARTZ, PLLC
601 East Bridger Avenue
Las Vegas, Nevada  89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

Samuel B. Strohbehn, Esq.
California Bar No. 257697
sstrohbehn@rosinglaw.com
Irean Z. Swan, Esq.
California Bar No. 313175
iswan@rosinglaw.com
Maddie Rudge, Esq.
California Bar No. 362727
mrudge@rosinglaw.com
ROSING POTT & STROHBEHN LLP
770 1st Avenue, Suite 200
San Diego, California  92101
Telephone: (619) 235-6000

*Attorneys for Defendants Robert Dawson, Ryan Ogden, Theresa Fette, Aaron Bartels, and TFE Games Holdings, LLC*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT DAWSON; RYAN OGDEN; THERESA FETTE; AARON BARTELS; and TFE GAMES HOLDINGS, LLC, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP <br><br> **SUPPLEMENTAL DECLARATION OF SAMUEL A. SCHWARTZ, ESQ. IN SUPPORT OF JOINT OPPOSITION OF DEFENDANTS AND SCHWARTZ, PLLC TO PLAINTIFF STEVEN SHARIF'S MOTION TO DISQUALIFY SCHWARTZ, PLLC** <br><br> Judicial Officer: Hon. Linda Lopez <br> Courtroom: 14B (14th Floor) <br> Hearing Date: April 2, 2026 <br> Hearing Time: 10:00 AM PDT <br><br> Action Filed: February 14, 2026 <br> Trial Date: Not Set |

I, Samuel A. Schwartz, Esq., hereby declare as follows:

1. I am over the age of 18, mentally competent and unless otherwise stated, I have personal knowledge of the facts set forth herein. If called upon to testify as to the contents of this declaration, I could and would do so.

2. I am an attorney with Schwartz, PLLC (the "**Schwartz Firm**"), counsel for Defendants Robert Dawson, Ryan Ogden, Theresa Fette, Aaron Bartels, and TFE

Games Holdings, LLC ("**TFE**") in the above-referenced matter. I am admitted to practice in the Supreme Court of Nevada, the United States District Court for the District of Nevada, and the Ninth Circuit Court of Appeals, among others. I make this supplemental declaration (the "**Supplemental Declaration**") (I) in support of the *Joint Opposition of Defendants and Schwartz, PLLC to Plaintiff Steven Sharif's Motion to Disqualify Schwartz, PLLC* [ECF No. 59] (the "**Opposition**")[1] and (II) in direct response to the exhibits attached to *Plaintiff Steven Sharif's Reply in Support of Motion to Disqualify Schwartz, PLLC* [ECF No. 61] (the "**Plaintiff's Reply**") filed by Steven Sharif ("**Plaintiff**" or "**Mr. Sharif**") and the exhibits attached thereto (which clearly should have been submitted in connection with Plaintiff's disqualification motion) submitted grossly out of time in this matter. Plaintiff's election to submit readily available and not new evidence in support of Plaintiff's Reply necessitates the filing of this Supplemental Declaration.

3.     Plaintiff offered new exhibits and information in support of Plaintiff's Reply that was not submitted in support of its moving papers. Due to the incomplete, inaccurate, and/or ambiguous nature of Plaintiff's exhibits and arguments, I respectfully provide the following additional documents and information in order to provide a more complete record for the Court.

4.     The Schwartz Firm was first contacted by its longstanding client, Eric Kurtzman, on September 1, 2024, about a prospective loan between Mr. Kurtzman's company, Nevada Expansion, Inc., and Steven Sharif or one of his entities. Mr. Kurtzman has been a client of the Schwartz Firm since 2007. The original loan was to be secured by Mr. Sharif's personal residence. The initial work included obtaining a title report for Mr. Sharif's residential property and little else, none of which involved me other than I was made aware of the firm's legal work for Mr. Kurtzman and Nevada Expansion.

---

[1]     All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Opposition.

5. The transaction did not appear to be going forward until November 16, 2024, when Mr. Kurtzman contacted me to discuss the particulars of the transaction and to consider deal points. In or around late November 2024, I learned from Mr. Kurtzman that the loan funds were to be substantially used by Mr. Sharif to make payroll for his company, which was due the following week. In or around that time, Mr. Kurtzman asked me to participate in a call with him and Mr. Sharif regarding the potential use of funds and means of repayment. I undertook that call in my role as counsel for Mr. Kurtzman.

6. To that effect, I was introduced to Steven Sharif by Mr. Kurtzman on November 27, 2024. Mr. Kurtzman expressly identified me twice in an email on November 20, 2024, as his counsel prior to that call. Mr. Sharif was negotiating directly with Mr. Kurtzman prior to my involvement, and Mr. Sharif was not to my knowledge represented by counsel. Mr. Kurtzman brought me into the already ongoing negotiations with Mr. Sharif, expressly identifying me as his attorney. Attached hereto as **Exhibit 1** is a true and correct copy of an email string from December 12-14, 2024, showing Mr. Sharif and Mr. Kurtzman communicating directly about the personal loan and then, separately, Mr. Kurtzman making me aware of the potential transaction in my disclosed capacity as Mr. Kurtzman's attorney.

7. Mr. Sharif and I then had two telephone conferences in furtherance of the contemplated loan transaction between Mr. Sharif and my client Mr. Kurtzman, in part to discuss the financing and subsequently whether it was best to do that financing through a Chapter 11 reorganization for Intrepid Studios, LLC. Whatever form the transaction would ultimately take, my client, Mr. Kurtzman, would be on the other side of a transaction whereby he extended funding. The use of a Chapter 11 reorganization arose because Mr. Sharif was going to use his home as collateral to borrow money from Mr. Kurtzman, and then use the funds to finance what I understood to be his company, Intrepid Studios, LLC. This raised a number of due diligence questions into which I inquired on behalf of Mr. Kurtzman. First, if the loan

funds were going to be used to finance a failing company, there were concerns of whether the loan could be repaid absent a foreclosure of Mr. Sharif's home. Second, if the loan funds were going to Intrepid Studios, LLC, the question arose of why Intrepid Studios, LLC was not the borrower, and Mr. Sharif the guarantor of the contemplated loan from Mr. Kurtzman. The use of Chapter 11 became relevant because I understood Intrepid Studios, LLC had several creditors, several investors, unpaid payroll taxes, and other claims that can be resolved and repaid statutorily through a reorganization under the Bankruptcy Code. Plus, any lending into a financially distressed environment is safest if approved by a Bankruptcy Court with respect to lien priority and the use of the funds.

8. The principal conversation I had with Mr. Sharif was to give a general overview of the overall bankruptcy process, and understanding that payroll for Intrepid Studios, LLC may go unpaid in a week; the majority of the conversation involved me outlining to Mr. Sharif what needed to be accomplished in that week's time to file a successful Chapter 11 case such that funding could be extended by my client, Mr. Kurtzman (e.g. Bankruptcy Courts expect to see 13 week budgets to approve financing, employee payroll, and benefits need to be funded and approved by motion, professionals all need to be approved by the Bankruptcy Court pursuant to applications, etc.). In furtherance of that discussion, my office sent Mr. Sharif a form Chapter 11 checklist and general memoranda providing an overview of a Chapter 11 reorganization. These are form documents my firm sends as a matter of course in prospective Chapter 11 bankruptcies, and were not tailored to Mr. Sharif or Intrepid. Copies of the forms are attached hereto as **Exhibit 2**.

9. Put another way, my recollection of the conversation with Mr. Sharif was how best to undertake financing Intrepid Studios, LLC, which was contemplated through either Mr. Kurtzman providing (i) a personal loan to Mr. Sharif, secured by his residence, which he would then presumably invest with or lend to Intrepid Studios, LLC, or (ii) a direct loan to Intrepid Studios, LLC. The conversation did not involve

discussions of Mr. Sharif's health or personal claims, nor were any of the individual Defendants in this case mentioned, which are all aspects I would recall.

10. On December 1, 2024, after my first telephone conference, I sent Mr. Sharif an email letting him know we would draft an engagement agreement, and asking him for the proper name of the prospective client (Intrepid Studios, Inc. or Intrepid Studios, LLC), as well as a list of parties we would need to vet for conflicts.

11. On December 2, 2024, I called Mr. Sharif to inform him that the proposed engagement agreement for a Chapter 11 preparation and potential filing was sent to Intrepid Studios, LLC, as he directed, and I reminded him we needed to check for conflicts if we were to move forward and any attorney-client relationship could be formed.

12. I understood at that time the need for financing was imminent; however, Mr. Sharif and I did not speak again.

13. On December 14, 2024, Mr. Kurtzman sent an email informing me that the previously proposed financing arrangement with Mr. Sharif was again moving forward. My office was asked to draft the transaction documents.

14. On December 16, 2024, Mr. Kurtzman sent a proposed waiver of potential conflicts to Intrepid Studios, LLC, including Mr. Sharif, so that we could proceed to draft the transaction documents without incident. Mr. Sharif, like each of the other parties, was advised that he could and should seek his own counsel and counsel for Intrepid Studios, LLC, as is required under California law. At no time did Mr. Sharif personally seek to retain the Schwartz Firm. Mr. Sharif again elected not to go forward with any borrowing from Mr. Kurtzman or Nevada Expansion.

15. Outside of the two telephone conferences (again held on December 1 and 2, 2024, respectively) referenced in Mr. Sharif's papers, and the one email I sent Mr. Sharif asking for information to vet conflicts, all of my communications with Mr. Sharif related to Mr. Kurtzman's potential extension of financing, and how to execute that financing, whether through Chapter 11 or directly with Mr. Kurtzman. Nothing

in those conversations related to this case and none of the communications related to Mr. Sharif personally.

16.    The next written communication I had with Steven Sharif was on December 31, 2025, in which he was facilitating TFE's Article 9 foreclosure by reviewing and approving the list of assets to be included in the notice of sale. *See* ECF 36-2, Exhibits A and B.

17.    At no point in time during my representation of Mr. Kurtzman or my brief discussions with Mr. Sharif did Mr. Sharif make any claim(s) or allegation(s) of my role as lender's (Mr. Kurtzman's) counsel constituting a conflict, that Mr. Sharif had communicated privileged information to me on behalf of either himself or any Intrepid entity, identify me or my firm as his legal counsel (then- past, present, and/or future), or make any of the claims or arguments that now form the basis of his disqualification motion brought against my firm. Mr. Sharif's silence on these issues prevailed until February 2026, when Mr. Sharif's counsel first notified me that Mr. Sharif would be moving to disqualify me and my firm as counsel to TFE. It is only now that Plaintiff has raised such claims.

18.    I have reviewed the California secretary of state's web listings. The publicly accessible information available there disclosed a registration for Intrepid Studios LLC on November 30, 2024, listing a John Moore (Mr. Sharif's husband) as agent for service of process, and signed by a WeiSiang Su (upon information and belief, a lawyer at McLaughlin Legal, APC). *See* California Secretary of State, Document No. 202464114571. On December 4, 2024, Mr. Su filed a Certificate of Cancellation for Intrepid Studios, LLC. *Id.* Intrepid Studios, Inc. was suspended by the California Franchise Tax Board in or around April 2024. *See* California Secretary of State, Document No. BA20240627615.

19.    Further, I have reviewed available web articles and YouTube videos from the fall of 2025, which demonstrate that the mere fact that Intrepid Studios was facing financial distress was publicly known.

> Over the course of our coverage of *Ashes of Creation's* early access launch, we've alluded to ongoing accusations from some of the more unsavory corners of the internet **that *Ashes of Creation* is a scam near-bankruptcy and that the Steam release is a last-ditch effort to milk players**.

*See* https://massivelyop.com/2025/12/17/ashes-of-creation-boss-pipes-up-on-business-lawsuits-expenses-and-the-launch-ddos/ (emphasis added); *see also* https://massivelyop.com/tag/ashes-of-creation/. Similarly, a Reddit thread argued the following: Reddit thread, November 2025, r/AshesofCreation ("Why is AoC launching on steam seemingly out of nowhere. . . . They're being sued for $850,000 by their cloud service provider."). *See* https://www.reddit.com/r/AshesofCreation/comments/1pjobvr/another_aoc_lawsuit/. *See also* article dated December 19, 2025, https://unitewithpriti.co.uk/trending/the-lawsuits-circling-ashes-of-creation-tell-a-different-story/.

20.    I was introduced to Robert Dawson and the other individual Defendants in this matter on December 15, 2025. Robert Dawson is the largest shareholder and secured creditor of Intrepid Studios, Inc. I do not have any prior history with any of the Defendants in this case, and this litigation is the only matter I have with any of them today.

21.    TFE was formed on December 29, 2025. TFE is wholly owned by Mr. Dawson. At the time of TFE's formation, Mr. Sharif, represented by and through Withers Bergman LLP, and TFE, through my office, were negotiating for Mr. Sharif to be a part of TFE; however, those negotiations broke down. It was after those negotiations broke down that Mr. Sharif, again represented by Withers Bergman LLP, brought this litigation. More than a month later, Plaintiff filed his motion to disqualify counsel. At no point during those negotiations did Mr. Sharif (a) raise any objections to our representation of TFE or any other party in this case, or (b) claim that the Schwartz Firm had been his counsel. See copies of emails with counsel for Mr. Sharif attached hereto as **Exhibit 3**.

22.     Mr. Shariff has claimed he has no personal interest in the outcome of this litigation or the sale of Intrepid Studios, Inc. Attached hereto as **Exhibit 4** are emails dated March 27, 2026, from CommerceWest Bank regarding the payoff demand statement for the loan formerly secured by Mr. Sharif's personal residence and guaranteed by his husband, Mr. John Moore. These emails, which were received late on March 27, 2026, demonstrate that Mr. Sharif's representations are false. Putting CommerceWest Bank on notice that it should be vigorously pursuing its collateral benefits Mr. Sharif personally and his community estate.

23.     Mr. Sharif and his counsel, Withers Bergman LLP, have been on notice, and upon information and belief, actually aware of my firm's representation of TFE Games Holdings, LLC since its outset in December 2025. We filed the Nevada litigation on February 9, 2026, and Mr. Sharif was served by agreement on or about March 2, 2026. Mr. Sharif has not raised any of the issues about which he now complains in the Nevada litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2026.

/s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.