# EXHIBIT 2

**SCHWARTZ LAW**

Samuel A. Schwartz, Esq.
office: 702.385.5544
fax: 702.385.2741
601 E. Bridger Avenue, Las Vegas, NV. 89101

TO:    Intrepid Studios, LLC
       c/o Mr. Steven Sharif

FROM:  Schwartz Law, PLLC

DATE:  December 2, 2024

RE:    Chapter 11 Overview

---

## OVERVIEW OF CHAPTER 11 BANKRUPTCY

The following is a general description of the steps involved in a Chapter 11 case.  Preparing for Chapter 11 is key to successfully utilizing the legal tools presented in the Bankruptcy Code. Generally speaking, lack of preparation will cause a debtor to endure a "rocky road" in Chapter 11.

Chapter 11 Cases can move very quickly.  It is not unusual for major issues to arise and be resolved in a short period of time.  It is very important for a debtor to retain professionals that are familiar with the bankruptcy process.  Seasoned bankruptcy advisors and consultants can provide invaluable assistance in dealing with the pitfalls of the process.

In seeking relief before the Bankruptcy Court, a debtor should expect to disclose information that would otherwise be private.  Generally speaking, it is preferred to disclose more rather than less. Disclosure enables the debtor to earn the Court's confidence that the debtor is forthright and trustworthy.

### Commencing the Chapter 11 Case

- Voluntary Cases:  Voluntary Chapter 11 Cases are commenced by the debtor filing a voluntary petition.  The date the petition is filed is the petition date.

- Involuntary Cases:  An involuntary case is commenced by creditors filing an involuntary petition against the debtor.  In an involuntary case, the petition date is the date the Court enters an order granting the relief requested in the involuntary petition.

The petition date is a significant watershed:  debts that accrued before this date are designated as "***pre-petition claims***," and debts that accrue thereafter are designated as "***post-petition claims***."



The most significant consequence of filing a bankruptcy petition is imposition of the ***automatic stay*** that stays, with certain exceptions, all pending lawsuits and arbitration proceedings. The automatic stay only stops litigation against the debtor; the automatic stay does not impede litigation against non-debtors.

A debtor cannot pay pre-petition claims (except with explicit Court authority), and the automatic stay forbids creditors holding pre-petition claims from seeking to recover those claims outside the bankruptcy. Interest and fees do not accrue on pre-petition claims that are unsecured or under-secured, unless the debtor is solvent.

The debtor, however, must pay claims arising post-petition. Post-petition claims are entitled to "administrative expense" status and must be paid in full.

### First Day Motions

Typically, on the first day of a Chapter 11 Case, the debtor will request that the Court enter certain orders that are necessary to permit the debtor to function effectively in Chapter 11. We provided you with a separate memorandum requesting certain of the information necessary to request that the Bankruptcy Court enter those orders.

### Managing the Debtor:  The Debtor-in-Possession

An individual Chapter 11 debtor usually remains in control and possession of the estate's assets and is known as a ***debtor-in-possession (or "DIP")***. If the debtor were a corporation, the board of directors and officers of the debtor retain their right to exercise corporate governance.

For accounting purposes, a debtor-in-possession is treated as a new entity as of the petition date. In some jurisdictions, the debtor-in-possession must create a new set of books, draw lines in its existing books, or use other similar methods to differentiate between pre-petition and post-petition obligations, as well as close existing bank accounts and open new accounts that are designated as "DIP accounts."

The Bankruptcy Code permits a debtor-in-possession to operate its business in the ordinary course, subject to various rules, without Court involvement. Ordinary, day-to-day transactions are not affected by the bankruptcy case. For example, ordinary course of business sales and purchases and payment of post-bankruptcy wages will not be impacted by the bankruptcy case.

The Bankruptcy Code does, however, place some limitations on this activity. Among other things, Chapter 11 debtors are limited in their ability to (1) pledge assets to borrow money; (2) use cash collateral that was pledged pre-petition; (3) engage in certain transactions, including the sale of the estate's assets outside of the ordinary course of business; and (4) assume and reject executory contracts and leases. Generally speaking, a debtor-in-possession need only seek Court approval of matters that would otherwise require specific board approval.

During the pendency of the case, the debtor-in-possession must file ***monthly reports*** with the Court and as proscribed by the United States Trustee. In these reports, the debtor-in-possession must disclose its current balance sheets, profit and loss statements, and a statement of future

**SCHWARTZ LAW**

actions.

Chapter 11 debtors-in-possession are vested with the bankruptcy trustee's right to bring preference, fraudulent conveyance, and other causes of action to recover some of the monies paid to creditors pre-petition.

A significant right reserved for the debtor is the exclusive authority to file a plan during the *exclusivity period*. This period is the first 90-120 days after the petition date, depending on the size of the debt in the case, but may be extended by Court order. If the debtor files a plan during the 120 days after the petition date, then the debtor has the exclusive right to seek approval of that plan for the 180 days following the petition date. No other entity may file a plan or seek approval of a plan during the exclusivity period.

### Negotiating With Creditors and Equity Holders

Obtaining creditors' agreement as to how a debtor should be reorganized often is a contentious and difficult task. One should understand the motivations of, and alternative remedies available to, interested parties.

A.    Secured Creditors.

Most secured creditors are either (i) banks, insurance companies or institutional investors with liens on the debtor's principal assets, or (ii) suppliers with liens on specific assets.

In bankruptcy cases, banks and institutional lenders tend to be risk adverse and anxious to "get their money back" and terminate their relationship with the debtor. Suppliers with liens on specific assets may be over-secured. If so, they will likely behave similarly to banks as described above. Suppliers whose loans are under-secured will likely behave similarly to the trade creditors as described below.

B.    Unsecured Non-Litigation Creditors.

Unsecured creditors generally are trade creditors that supplied goods and services to the debtor. Because trade creditors' priority is below secured lenders, if the debtor liquidates, unsecured creditors may receive pennies on the dollar. Consequently, trade creditors have incentives to participate in a reorganization plan, even one based on optimistic projections.

C.    Equity Holders.

Equity holders obviously hold the most junior position and are not an issue in the case of an individual filer. The *absolute priority rule* means that, absent payment in full of all creditors' claims, equity interests must be eliminated to confirm a reorganization plan not accepted by all classes of creditors. Some courts have fashioned an exception to the absolute priority rule. This so-called "new value" exception, where accepted, enables equity holders to receive distributions under a reorganization plan if the equity holders contribute sufficient "money or money's worth" to the reorganized debtor.

**SCHWARTZ LAW**

In certain cases, equity holders can retain their stock notwithstanding a bankruptcy case. Where a debtor-in-possession is solvent, equity holders can play an important role in the bankruptcy process.

## Subchapter V

On February 19, 2019, Chapter 11 of the Bankruptcy Code was amended to include a new small business option for companies with less than $3,024,725 of debt. The Subchapter V amendments to the Bankruptcy Code were designed to promote a speedy and less costly reorganization process for small companies. There are 2 key differences between a Chapter 11 reorganization conducted under Subchapter V of the Bankruptcy Code and a typical Chapter 11 case, and they include:

- The elimination of the ***absolute priority rule***, which allows equity holders to retain ownership of a reorganized company without paying senior creditors in full; and
- The appointment of a Subchapter V trustee, who appointed by the Bankruptcy Court to help negotiate a plan of reorganization between the small business debtor and its creditors. The Subchapter V trustee does not have control over the debtor, or the right to operate the business. A Subchapter V small business is still a debtor-in-possession – meaning the company controls its reorganization.

## Sale of Assets

Before a reorganization plan is confirmed, the debtor may propose to liquidate certain assets. This liquidation can only occur with Court approval. Sales can be piecemeal or global. Sales can occur by announcing the proposed purchase price, and if no one objects within the proscribed time, the sale is consummated. Alternatively, sales can occur after an auction is concluded. If an auction format is used, the Bankruptcy Court sets the terms of the auction.

## Executory Contracts and Leases

The Bankruptcy Code empowers a debtor-in-possession to ***reject*** or ***assume*** executory contracts and unexpired leases. Executory contracts include agreements like commercial real property leases, equipment leases, management agreements, consulting and employment agreements, and shipping agreements, to name a few. For contracts that are rejected, any related breach of contract right becomes a pre-petition claim that may be dealt with in a reorganization plan. For contracts that are assumed, the debtor-in-possession must pay all amounts otherwise due on the contract.

Rejection of executory contracts and unexpired leases enables the debtor-in-possession to rid itself of unprofitable contracts and exit leased properties for minimal cost.

## The Claims Allowance Process

The debtor-in-possession must file various lists and schedules, including lists of the

**SCHWARTZ LAW**

debtor's secured creditors, unsecured creditors, and equity holders.  If the debtor lists its debts as undisputed, noncontingent and liquidated, then the claims are allowed in the scheduled amount (unless an objection to the claim is filed later) and a proof of claim need not be filed to evidence the claim.

If a proof of claim must be filed (because the claim was not scheduled, or because it was scheduled as contingent, disputed or unliquidated), then it must be filed before the **bar date**.  In a Chapter 11 Case, the Court will set the bar date after a motion is filed and a hearing is held.  Any claim filed after the bar date can be disallowed as untimely.

A proof of claim filed in the case is deemed allowed unless a party-in-interest objects.  If an objection is filed, the claim can be disallowed only after a hearing before the Court.  If a claim is disallowed, then the claimant cannot obtain a distribution from the estate or the reorganized debtor.  The claimant may collect, however, from non-debtor parties such as guarantors.

If a claim is contingent or unliquidated as of the date of the order for relief, then the Court may estimate the claim.  An estimation hearing is essentially a truncated trial to liquidate a pre-petition claim.

Claims are secured only to the extent of the value of the pledged collateral.  Accordingly, if the value of the collateral is less than the claim, the claim will be partially secured and partially unsecured.  In this instance, the creditor is entitled to "adequate protection" only to the extent of its secured claim.

During the bankruptcy case, the debtor-in-possession is given an opportunity to object to claims.  Objections may be based on, among other things, the following arguments:  (1) defenses based on state law; (2) the creditor owing money to the debtor that must be returned before the claim is allowed; or (3) the creditor filing an untimely proof of claim.

### Obtaining Approval of the Disclosure Statement

Chapter 11 requires that solicitation of a plan must be accompanied by a **disclosure statement.** The disclosure statement must contain sufficient information for the creditors to make an informed decision on whether to vote for or against the plan.  Chapter 11 further requires that the disclosure statement be approved by the Bankruptcy Court, after a hearing, before it can be used to solicit acceptance of a plan.  Disclosure Statements generally are very lengthy documents, much like a prospectus.

### Obtaining Confirmation of the Plan

**Confirmation** occurs upon the entry of a confirmation order at the conclusion of a confirmation hearing before the Court.  During the confirmation hearing, the Court must consider whether the plan satisfies certain prerequisites for confirmation and whether any objections to confirmation raised by creditors, shareholders or other constituencies have merit.

Among other things, a plan must:

**SCHWARTZ LAW**

- Classify similar claims together and treat claims within a class similarly;

- Provide that each creditor will receive more under the plan than it would if the debtor were liquidated; and

- Be feasible (i.e., confirmation of the plan is not likely to be followed by additional reorganization or liquidation).

A plan is consensual if all classes vote to accept the plan. The Bankruptcy Code provides that, for a plan to be accepted by a particular class, creditors that hold at least two-thirds in dollar amount and more than one-half in number must vote to accept the plan.

If a plan is not accepted by each class of creditors, then it may be confirmed only if (a) at least one class of impaired creditors accepts the plan, and (b) the plan is "fair and equitable," meaning that a debtor's assets are distributed in the following order of priority:  (i) secured creditors, (ii) unsecured creditors, and (iii) equity interests.  Obtaining confirmation of a non-consensual plan is generally known as *cramming down* a plan.

Upon confirmation of the reorganization plan, pre-petition debts are discharged and treated as set forth in the plan.  In effect, the plan is a group novation that rewrites each and every pre-confirmation obligation.  A confirmed plan binds the debtor and all creditors and shareholders, regardless of whether the plan impairs a claim or interest, or whether a creditor or share-holder voted to accept the plan.

Once all distributions (and other actions) provided for by the confirmed plan take place, the debtor may close the Chapter 11 Case.

**SCHWARTZ LAW**

Samuel A. Schwartz
Attorney at Law
702.802.2207 tel
saschwartz@nvfirm.com

TO:         Intrepid Studios, LLC

FROM:       Samuel A. Schwartz, Esq.

DATE:       December 2, 2024

RE:         Chapter 11 Preparation Memorandum and Document List

---

### PREPARATION MEMORANDUM AND DOCUMENT LIST

The following is a non-exclusive list of information and documents we need to fully review, analyze, and prepare a Chapter 11 voluntary petition for Intrepid Studios, LLC ("**Intrepid**"). The information and documents requested is not an exhaustive list, but an introductory request so we can vet whether a Chapter 11 petition is appropriate for Intrepid. Importantly, a bankruptcy filing cannot occur on Intrepid's behalf without a signed petition and a corporate resolution authorizing the action, and this memorandum is designed to help everyone involved determine how and whether to restructure Intrepid's liabilities.

**Voluntary Petition:**

The following is a list of items we will need to collect to prepare the Chapter 11 petition, including:

- o   all names used by Intrepid in last 6 years (include trade names);
- o   tax identification number;
- o   street and mailing address;
- o   county of residence;
- o   location of principal assets (one only);
- o   estimated number of creditors;
- o   estimated assets (may use amounts from last monthly close);
- o   estimated liabilities (may use amounts from last monthly close); and
- o   name and title of individual to sign petition (must have signing authority).

- ❖ Please provide us the following documents:
    - o   Bankruptcy Questionnaire;
    - o   Six months of bank statements for all open accounts with Intrepid's name on them;

- o   Declaration pages showing insurance coverage for all real and tangible property;
- o   Evidence of coverage of workers compensation insurance, E&O insurance, etc.;
- o   Copies of all leases or contracts to which the Intrepid is a party;
- o   Name, addresses, account number, and balance due for all creditors and vendors;
- o   Articles of Incorporation/By-laws/Shareholder Agreement;
- o   Copies of all current business licenses;
- o   Tax Returns for the current year and the previous two years;
- o   Lawsuit information for all lawsuits pending within the past year;
- o   Year-to-date financial statements for Intrepid, broken down monthly for the 6 months ending December 2023;
- o   Profit and Loss/Income Statement and Balance Sheet for 2022 and 2023;
- o   The last two year-end financial statements for the Debtor;
- o   A wire diagram (flowchart) of all entities related to the Debtor (any entity that holds, either directly or indirectly, an equity, a membership, share partnership, limited partnership, and/or management interest);
- o   A wire diagram (flowchart) of the operation, management, and control structure of the Debtor;
- o   Accounts Receivable (name, addresses, phone numbers, and invoices); and
- o   Inventory of assets, with values.

## Utility Companies:

In order to keep your utilities companies from turning off your service unannounced, please provide us the following information to complete the above-referenced document:

- ❖   Describe services Intrepid receives from utilities (e.g., gas, water, telephone, internet):
- ❖   What are the names of the utility companies and Intrepid's account numbers with these utilities?
- ❖   What facilities of Intrepid do these utilities service?
- ❖   Have any security deposits been made with any utilities?
- ❖   Are there are any defaults with respect to any prepetition utility bills?
- ❖   Does Intrepid have a history of prompt and complete payment to such utilities?
- ❖   Are there are any special reasons as to why Intrepid needs these services continued?
- ❖   What are the approximate amounts of monthly billings for each utility company?

## <u>Maintainenace of Existing Bank Accounts</u>

In order to prevent banks from closing your accounts, please provide us the following information to complete the above-referenced document:

- ❖ List the account number and location of all bank accounts maintained by Intrepid;
- ❖ Please provide location and account information for main and subsidiary concentration and specialized accounts;
- ❖ Identify the cash management system you use and how long has it been operational; and
- ❖ Please describe the procedures for transferring funds between accounts. What amounts are typically transferred and when are such transfers typically made (e.g., beginning of the day, end of the day, end of the week, etc.)?

## <u>Employment of Professionals (lawyers, accountants, etc.)</u>

All professionals working for Intrepid must be approved by the Bankruptcy Court before and the following is the information required to complete the above-referenced application:

- ❖ Please identify the "ordinary course" professionals, such as attorneys, accountants, consultants and financial and insurance advisors, whose continued services will be needed by you after a bankruptcy filing;
- ❖ Determine the services to be provided by these professionals; and
- ❖ Identify the amount normally paid to each professional per month and describe any special billing arrangements (e.g. contingency fee arrangements, existence of retainers or advanced billings).

## <u>Rejection of Contracts and Lease</u>

There may be contracts Intrepid may want to terminate or maintain, such as management contracts, utility service contracts, lease agreements or other arrangements. The following is the information required to complete the above-referenced document:

- ❖ List all existing operating contracts which are unfavorable to Intrepid, the immediate termination of which would benefit the value of the Company. Examples of such agreements include contracts in which:
  - o the original economics are no longer favorable to Intrepid;
  - o the length of the contract term is excessive; or
  - o the contract is no longer used by you, but has not expired
- ❖ List all unexpired real property leases which Intrepid no longer uses or which the company would benefit from terminating.

**Postpetition Financing:**

In order to obtain court approval of any post-petition financing for your operations, please provide the following:

- ❖ Name, website and address of the proposed lender;
- ❖ Name, website and address of the lender's legal counsel;
- ❖ List of all pending terms, including:
  - o Interest rate;
  - o Default interest rate;
  - o Loan term;
  - o Amortization rate;
  - o Collateral, including real or personal property;
  - o Repayment terms;
    - ▪ Interest paid monthly or in-kind; and
    - ▪ Prepayment allowed?
  - o Is the debt convertible to equity and on what terms?
  - o Default provisions; and
  - o Guarantors.

If the proposed lender has counsel, and the lender has provided you with a term sheet or letter of intent identifying the above terms and conditions, please provide us with the same.

**Payment of Employees**

Following is the information required to pay employees, if any:

- ❖ How many employees are employed by Intrepid:
  - o Full-time;
  - o Part-time (if any, are they retained through any employment agencies?  Do you owe these agencies any prepetition amounts?  How much?)
- ❖ What is the aggregate gross weekly payroll to all employees of each entity?
- ❖ What is the aggregate gross weekly payroll to all employees of each entity?
- ❖ Please identify any individual employees holding prepetition claims of more than $12,850 (excluding outstanding reimbursement of expenses, vacation, travel and credit card); and

Please identify any individual employees holding prepetition claims of more than $12,850 (excluding outstanding reimbursement of expenses, vacation, travel and credit card).