# EXHIBIT 17

**WARRANT TO PURCHASE MEMBERSHIP INTERESTS**
**OF**
**INTREPID STUDIOS, INC.**

**Warrant No. 1**

**Holder:  Robert D. Dawson**
**Issue Date:  January 1, 2020**
**Expiration Date:  December 31, 2025**

THIS WARRANT (the "Warrant" or the "Agreement") CERTIFIES THAT, for good and valuable consideration, Robert D. Dawson, ("Holder"), is entitled to purchase from Intrepid Studios, Inc., a California corporation (the "Company"), up to a ten percent (10%) economic and non-voting membership interest in the Company, on a fully diluted basis (the "Interests"), in exchange for the Warrant Price set forth in Section 1.1 below, subject to the provisions and upon the terms and conditions set forth in this Warrant.

SECTION 1.  WARRANTS AND EXERCISE.

1.1    Warrant Price. The exercise price for the Interests issuable under this Warrant shall be $10.00 for ten percent (10.00%) of non-voting Interest purchased hereunder (the "Warrant Price").

1.2    Method of Exercise. This Warrant may be exercised by the Holder, in whole or in part, contingent upon and at any time after the successful execution of a Shareholders' Agreement between Holder and the existing shareholders of the Company, subject to Section 2.3 hereof.

1.3    Delivery of Interests. Within two (2) business days after Holder exercises this Warrant, the Company shall cause its books and records to be updated to evidence to Holder's satisfaction that the Interests have been issued to Holder and that Holder has been admitted as a member of the Company.  The Interests shall be uncertificated unless otherwise agreed by Holder. In the case the exercise is in part only, the Company shall deliver to Holder a new warrant or warrants of like tenor, for Interests representing the remaining percentage ownership interest in the Company that may be purchased by Holder, taking into account all prior exercises made in accordance with Section 1.2.  As a condition to the issuance of the Interests, Holder agrees to execute a counterpart signature page to any Shareholders Agreement. Holder, by execution of this Warrant, constitutes and appoints the manager of the Company as Holder's true and lawful representative and attorney-in-fact, in Holder's name, place and stead to execute the Shareholders Agreement if Holder fails to do so. This power of attorney is coupled with an interest and is irrevocable during the term of this Warrant.

1.4    Replacement of Warrant. Upon the loss, theft, destruction or mutilation of this Warrant, the Company shall, within a reasonable time, execute and deliver to Holder, in lieu of this Warrant, a new warrant of like tenor and amount.

## SECTION 2.  REPRESENTATIONS. WARRANTIES AND COVENANTS OF THE COMPANY.

2.1 <u>Interests.</u>  The Company represents and warrants that all Interests which may be issued upon the exercise of this Warrant, shall, upon issuance, be duly authorized, validly issued, fully paid and non-assessable, and free of any liens and encumbrances except for restrictions on transfer provided for herein, in the Shareholders Agreement or under applicable federal and state securities laws.

2.2 <u>Major Events.</u> The Company shall provide Holder with at least ten (10) calendar days prior written notice of any of the following events (each a "<u>Major Event</u>"):

    (a)    any reclassification, exchange, combination, substitution, reorganization or recapitalization of the outstanding Interests; or

    (b)    any Sale or liquidation, dissolution or winding up of the Company; or

    (c)    any IPO.

For the purpose of this Warrant:

"<u>Sale</u>" means any transaction or series of related transactions involving: (i) the sale, lease, exclusive license, or other disposition of all or substantially all of the assets of the Company; (ii) any merger or consolidation of the Company into or with another person or entity; or (iii) any sale or other transfer of membership interests of the Company representing at least a majority of the Company's then-total outstanding combined voting power.

"<u>IPO</u>" means the Company's first underwritten public offering of any class of its securities under the Securities Act of 1933, as amended.

For the avoidance of doubt, a Qualified Financing (as defined in the Note) shall not constitute a Major Event hereunder.

2.3 <u>Expiration of this Warrant</u>.  Provided the Company has provided Holder with proper notice of the Major Event in accordance with Section 2.2 hereof, this Warrant shall terminate and be of no further force or effect upon the consummation of the Major Event, provided that the obligations of the Company under Section 1.3 hereof shall survive with respect to any valid exercise of the Warrant occurring prior to or as of the consummation of the Major Event.

## SECTION 3.  TRANSFER.

3.1 <u>Restriction on Transfer</u>.  Holder shall not, while this Agreement is in force, sell, assign, encumber, pledge, transfer, gift or otherwise dispose of the Warrant, except pursuant to, and in compliance with, the terms of this Agreement.  Any attempted transfer in violation of the terms of this Agreement shall be void *ab initio.*

3.2 <u>Transfers to Family Members.</u>  Notwithstanding anything in this Agreement to the contrary, Holder and any permitted assignee may transfer all or a portion of the Warrant prior to its expiration and during Holder's lifetime, or upon the death of the Holder pursuant to the terms of a valid

will, trust or by intestate succession, to a member (or members) of Holder's "Immediate Family" (as defined below) or to a "Family Trust" (as defined below) or to the personal representative of the Holder's or permitted assignee's estate or to the guardian of his property (if he has been judicially declared "incompetent" by a court of competent jurisdiction); provided, however, that such Immediate Family member (or members) or the trustee of such Family Trust must agree in writing to be bound by all of the terms and conditions of this Agreement and the Shareholders Agreement, including any amendments made on or prior to the date of such transfer.

(a)    Immediate Family.  For purposes of this Agreement, the Holder's "Immediate Family" shall mean only the lineal descendants and spouse of the Holder who are permitted S corporation shareholders under Subchapter S of the Code.  For purposes of determining members of Holder's Immediate Family under this Agreement, an adopted child shall be considered a natural born child of his or her adoptive parents and the adoptive parents shall be considered to be the only parents of such adopted child.  In the event the Holder is a "Family Trust" at inception, Immediate Family also shall include the grantor or creator of such Family Trust.

(b)    Family Trust.  For purposes of this Agreement, a trust shall qualify as a "Family Trust" only:  (i) if such trust is either for the exclusive benefit of the Holder and/or members of the Holder's Immediate Family; (ii) if the trustees of such Family Trust are all members of a class consisting of the Holder, members of the Holder's Immediate Family and corporate fiduciaries; and (iii) if, in the event the Issuer is (at the time of the applicable transfer) an "S" Corporation as defined in §1361(a)(1) of the Code, or any successor provision thereto, such trust is a trust described in §136l(c)(2) of the Code, including, but not limited to, a trust described in §1361(d) of the Code, the beneficiary of which has filed a valid election in accordance with §136l(d)(2) of the Code to have such trust treated as a "Qualified Subchapter S Trust," or a trust described in §1361(e) of the Code, the trustee of which has filed a valid election in accordance with §136l(e)(3) of the Code to have the trust treated as an "Electing Small Business Trust."

(c)    Definitions All Inclusive.  The definitions of "Immediate Family" and "Family Trust" set forth in Subsections 3.2(a) and (b) above, both of which relate to relationships solely with the Holder, are intended to apply for all purposes under this Agreement.  Thus, for example, a permitted transferee would not be permitted to transfer his or her interests to his or her family members unless such family members were also members of the Holder's Immediate Family.

3.3    Method of Assignment.  Notwithstanding anything in this Section 3 to the contrary, any assignment of a portion or all of the Warrant by either the Holder or by any permitted assignee of the Warrant, which assignment is otherwise permitted under Section 3.2 above, shall not be permitted, and will be null and void, unless such assignment is accomplished by delivery to the Company of a fully executed Assignment of Warrant in the form provided by the Company.

SECTION 4.  MISCELLANEOUS.

4.1    Waiver.  This Warrant and any term hereof may be changed, waived, discharged or terminated (either generally or in a particular instance and either retroactively or prospectively) only by an instrument in writing signed by the party against which enforcement of such change, waiver, discharge or termination is sought.

4.2    Binding Arbitration.  All claims and disputes arising under or relating to this Agreement are to be settled by binding arbitration in the state of California.

4.3     Counterparts; Facsimile/Electronic Signatures. This Warrant may be executed in counterparts, all of which together shall constitute one and the same agreement. Any signature page delivered electronically or by facsimile shall be binding to the same extent as an original signature page with regards to any agreement subject to the terms hereof or any amendment thereto.

4.4     Non-Severability. The parties to this Agreement intend for each provision of this Agreement to be construed and interpreted whenever possible as valid and enforceable under applicable law. Each of the terms of this Agreement is a material and integral part of it. If any provision of this Agreement is finally determined by a court or arbitration to be unenforceable or contrary to law, the entire Agreement shall be deemed null and void as of its date of execution.

5 3.    Governing Law. This Warrant shall be governed by and construed in accordance with the laws of the State of California, without giving effect to its principles regarding conflicts of law.

3.6     Headings. The headings in this Warrant are for purposes of reference only and shall not limit or otherwise affect the meaning of any provision of this Warrant.

IN WITNESS WHEREOF, the parties have caused this Warrant to be executed and delivered this 14th day of July 2023.

INTREPID STUDIOS, INC.,
a California Corporation

By:     _Steven Sharif_
Name:  Steven Sharif
Title:  CEO

Acknowledged and accepted by:

Robert D. Dawson