Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, and TFE GAMES HOLDING LLC, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP <br><br> **DECLARATION OF KAREN BOREYKO IN SUPPORT OF PLAINTIFF STEVEN SHARIF'S MOTION TO APPOINT RECEIVER** <br><br> *Filed concurrently with Plaintiffs' Motion for Appointment of Receiver* <br><br> Judge:          Hon. Linda Lopez <br> Hearing Date:  May 19, 2026 <br><br> **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** <br><br> Action Filed:  February 14, 2026 <br> Trial Date:      Not Set |

## <u>DECLARATION OF KAREN BOREYKO</u>

I, KAREN BOREYKO, declare as follows:

1.    I am a creditor of Intrepid Studios, Inc. ("Intrepid') I make this declaration voluntarily based on my personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2.    In January 2026, I participated in a Zoom call with Intrepid's board of directors and other creditors and investors. During that call, the board announced that it intended to foreclose on Intrepid's assets and move them to a new entity. The board also explained that if creditors and investors wanted their investments to move over to the new entity, they would need to put up an additional 25% of their previous investment or loan, or else be left behind in Intrepid.

3.    This announcement came as a surprise to me because it was my understanding that there was sufficient capital to complete the game on its planned timeline, and that Intrepid had recently monetized the game via an Early Access release and obtained significant funds through that release. Based on those representations, I did not understand why a foreclosure was necessary or appropriate if the Company still had runway to continue operating. I asked why additional investor/creditor money was required if the Company had sufficient capital, but I did not receive a clear answer.

4.    Around this time, there were multiple group phone calls between me, Steven Sharif, and others, where Mr. Sharif made it clear that he opposed the board's decision. Mr. Sharif was deeply distressed about the board's plan to terminate Intrepid's employees. He was visibly emotional and expressed profound concern about the impact of layoffs on his team, including employees who had families, health-insurance needs, and upcoming life events. He made clear to me that he did not want the employees laid off and felt personally responsible for their well-being.

5.    Mr. Sharif consistently expressed that he was opposed to the board's foreclosure plan. He told me more than once that he felt forced by the board to allow

the foreclosure to proceed despite his objections. He explained that he believed the plan would harm the Company, its employees, and its creditors. He also told me that he was trying to fight the board's actions, even though doing so was extremely stressful and emotionally difficult for him.

6.     Mr. Sharif made clear that he had invested years of his life and substantial personal resources into Intrepid and that he believed the Company and the game were being taken away from him against his will. From my perspective, his opposition to the board's plan was sincere, consistent, and motivated by concern for the Company and its people, not self-interest.

7.     In view of my observations of Defendants' conduct with respect to Intrepid, I support the appointment of a receiver to safeguard Intrepid's assets and act in the best interests of Intrepid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 12, 2026 at Scottsdale, Arizona.

By: _____
       Karen Boreyko