Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, and TFE GAMES HOLDING LLC, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP <br><br> **DECLARATION OF ZAC SCHUSTER IN SUPPORT OF PLAINITFF STEVEN SHARIF'S MOTION FOR RECEIVER** <br><br> *Filed concurrently with Plaintiffs' Motion for Appointment of Receiver* <br><br> Judge:          Hon. Linda Lopez <br> Hearing Date:  May 19, 2026 <br><br> **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** <br><br> Action Filed:  February 14, 2026 <br> Trial Date:      Not Set |

## DECLARATION OF ZAC SCHUSTER

I, ZAC SCHUSTER, declare as follows:

1.    I am a creditor of Intrepid Studios, Inc. ("Intrepid'). I make this declaration voluntarily based on my personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2.    I was an early investor in Intrepid and am a long-time family friend of Steven Sharif and Tom Alkazin, the latter of which is a long-time mentor and almost a second father to me and my wife. It was through these close relationships that I initially learned of Mr. Sharif's gaming project, *Ashes of Creation*. There was an opportunity for "family and friends" to invest when Mr. Sharif initially raised money, so I decided to invest and put together a small group of people who invested in Intrepid alongside Mr. Alkazin. I felt confident about this investment because Mr. Sharif is very creative and I consider him to be one of the smartest people that I know. I was also confident in his ability to lead Intrepid because he is a man of integrity who cares deeply for people. Over the years, Mr. Sharif consistently tried to do what was best for Intrepid, its employees, and the gaming community as a whole.

3.    I understood from Mr. Sharif and Mr. Alkazin that they and John Moore have received threats from Intrepid board members, including Jason Caramanis who is particularly aggressive. Mr. Caramanis' erratic behavior demonstrated recently in online live-streams discussing Intrepid is consistent with what I have understood of his behavior towards Mr. Sharif and Mr. Alkazin over the years. I also understood from Mr. Sharif that his desire to save the company and protect employees has been used against him by the board, including instances where Rob Dawson threatened to shut down the company in order to coerce Mr. Sharif into signing documents. Specifically, I understood from Mr. Sharif that, following a board meeting, Mr. Dawson cleared the room to confront Mr. Sharif, insisting he sign a document before leaving.

4.    I also understood that there were attempts by the board to bypass the

WITHERS
BERGMAN LLP

DECLARATION OF ZAC SCHUSTER  IN SUPPORT OF PLAINTIFF STEVEN SHARIF'S MOTION FOR RECEIVER

company's bank lender in connection with funds from the game launch on Steam. On or around October or November 2025, a beta version of *Ashes of Creation* launched on a platform called Steam. This launch was very successful, generating millions of dollars in sales and showing strong engagement metrics compared to other games on the Steam platform. Revenues from game-play on the Steam platform were supposed to flow into Intrepid, pursuant to agreement. Instead, the board, and Mr. Dawson in particular, attempted to have Steam pay those funds directly to a new entity, effectively bypassing the bank loan and Intrepid's existing obligations. I understood that Steam flagged this as problematic, held the funds, and ultimately began refunding players.

5.      On January 14, 2026, I attended an Intrepid investor call as representative of a group of investors with an investment totaling approximately $420,000. Outside of this call, I have had very limited communication with the board, generally limited to instances where I proactively reached out to check in on my investment. What I heard on this call was alarming—and surprising given the success of the beta launch—the company announced that it was in serious financial trouble and that the only path forward was to foreclose on Intrepid and start a new company. Investors were told that the only way to retain their investment was to contribute an additional 25% of their original investment as a "capital call." If not, we were told that our investment "might" be paid back in the future if money was ever made by the new company. We were also told that all prior contracts and existing terms with Intrepid would be voided and the new 25% investment would determine our stake in the new company. For me, this meant losing contractual interest accrued over five years on an existing convertible note. I took this to mean that the company essentially voided all prior commitments without providing concrete, reliable forward-looking terms.

6.      On the same investor call, the board presented financial projections for completing the game and reaching a targeted date in September 2026 even without a

WITHERS BERGMAN LLP

Case No. 3:26-cv-00965-LL-MMP

DECLARATION OF ZAC SCHUSTER IN SUPPORT OF PLAINITFF STEVEN SHARIF'S MOTION FOR RECEIVER

foreclosure, which was inconsistent with their preceding comments regarding the necessity to foreclose on Intrepid. It was communicated that the board required approximately $13 to $15 million to reach their fundraising goal for the new company, with Mr. Dawson supposedly contributing about $9 million. Thus, on the one hand, we were told the board was short of necessary capital with which to continue Intrepid's operations, and on the other hand, told that the company had sufficient liquidity on hand.

7.    After this call, investors were told they could reach out with questions and schedule one-on-one discussions with board members, such as Theresa Fette or Aaron Bartels. I therefore scheduled a call, seeking clarity on whether I should raise approximately $60,000 from my group of investors. In that follow-up call, it was communicated to me that the Intrepid foreclosure would occur in about a week's time and that I needed to make a decision quickly, but I was unable to receive additional information on the specific terms of this new stake.  When the call ended, I agreed to connect with the other members of my group and follow up. They also agreed to stay in touch, but I never heard anything further. Instead, the foreclosure moved ahead and I received no additional communication from the board.

8.    Prior to the foreclosure, I typically stayed updated on Intrepid through conversations with Mr. Sharif and Mr. Alkazin, rather than through official communication with the board. In late 2025, Mr. Sharif indicated that the board was considering or attempting actions he viewed as unlawful or unethical, such as large-scale layoffs without paying out required amounts to employees under California law, like PTO, owed money, and equity or stock commitments. In my view, Mr. Sharif always did his best to simultaneously act as a peacekeeper while ensuring Intrepid's compliance with legal standards.

9.    At some point, pursuant to court order, it is my understanding that the board returned foreclosed assets back into the original company. Nonetheless, it is my understanding that Intrepid has no employees, that any funds generated from Steam

have been refunded to players, and my investment is now worthless.

10. In light of the foregoing, I believe the defendants undertook the foregoing actions as part of a broader strategy to inflate the perceived weight of the company's debt to justify an Article 9 foreclosure, move all of Intrepid's assets into a new entity, and dilute existing equity to pressure investors into contributing capital to that new entity. As a result, I believe the board has attempted to take the value of Intrepid's success on Steam while leaving earlier investors behind.

11. In view of my observations of Defendants' conduct with respect to Intrepid, I support the appointment of a receiver to safeguard Intrepid's assets and act in the best interests of Intrepid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 12, 2026 at Franklin, Tennessee.

By: /s/ _____
Zac Schuster

WITHERS BERGMAN LLP

4    Case No. 3:26-cv-00965-LL-MMP

DECLARATION OF ZAC SCHUSTER IN SUPPORT OF PLAINITFF STEVEN SHARIF'S MOTION FOR RECEIVER