Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, and TFE GAMES HOLDING LLC, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP <br><br> **DECLARATION OF CHRISTOPHER WOOD IN SUPPORT OF PLAINTIFF STEVEN SHARIF'S MOTION FOR RECEIVER** <br><br> Judge:  Hon. Linda Lopez <br> Hearing Date:  May 19, 2026 <br><br> **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** <br><br> Action Filed:  February 14, 2026 <br> Trial Date:  Not Set |

## DECLARATION OF CHRISTOPHER WOOD

I, Christopher Wood, declare as follows:

1.     I am the Chief Executive Officer and founder of Tanglewood Games Limited ("Tanglewood"), a company incorporated in England and Wales. Tanglewood is a specialist game engineering studio that operates as an Unreal Engine Service Partner, providing AA and AAA game engineering services to clients internationally. I make this declaration voluntarily based on my personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2.     I submit this declaration in support of Plaintiff's Motion to Appoint a Receiver.

3.     Tanglewood is an unpaid creditor of Intrepid Studios, Inc. ("Intrepid") in the amount of £96,033 (approximately $124,000) for engineering services delivered in full pursuant to signed contracts.

4.     Tanglewood first engaged in talks with Intrepid to provide engineering services related to the development of *Ashes of Creation* in 2024.

5.     In September 2025, Tanglewood and Intrepid entered into a Master Services Agreement.

6.     Originally, Intrepid engaged Tanglewood to provide engineering support for the period of September 17, 2025 to November 14, 2025. The Tanglewood team was comprised of three engineers (a Senior Engineer, a Senior Technical Artist, and a Principal Engineer), at a monthly fee of £42,000 (approximately $57,000).

7.     On November 26, 2025, the parties extended the engagement through January 31, 2026 and refined the scope of work to include consultation and teaching services. The total value of contemplated work was £148,113 (approximately $200,000).

8.     Tanglewood delivered all services as agreed. Intrepid did not dispute or reject any services, and Intrepid did not raise any concerns regarding quality, delivery,

or scope at any time during the engagement. To the contrary, Intrepid expressed satisfaction with the work throughout.

9.      In hindsight, there were a few warning signs that Intrepid was a troubled company,  but at the time they did not strike me as overly problematic. I recall having seen online around November 2025 that at least one Intrepid vendor had sued Intrepid for unpaid services, but I figured I simply did not have the full story.

10.      Tanglewood issued five invoices over the course of the engagement. The first invoice for £7,812 (approximately $10,550) covered services rendered in September 2025. It accordingly required payment at the end of October 2025. Intrepid paid this invoice late, on November 24, 2025, only after I chased. The explanation given for the late payment was internal disruption caused by a change of Chief Financial Officer.

11.      The second invoice for £44,268 (approximately $60,000) covered services rendered in October 2025. It accordingly required payment at the end of November 2025. Intrepid also paid this invoice on November 24, 2025. Settlement of these two invoices was a precondition to the November 26, 2025 extension of the engagement.

12.      To date, three invoices remain unpaid: (1) one for services rendered in November 2025, valued at £19,530, with a payment date of December 28, 2025, (2) one for services rendered in December 2025, valued at £34,503, with a payment date of January 30, 2026, and (3) one for services rendered in January 2026, valued at £42,000, with a payment date of March 2, 2026. The total outstanding balance for those three invoices is £96,033 (approximately $124,000), excluding VAT.

13.      Between January 8, 2026 and January 30, 2026, Tanglewood repeatedly reached out to Intrepid to chase the overdue invoices.

14.      On or around February 1, 2026, I learned that Intrepid had shut down and that the company's workforce had been terminated. At that point, the three invoices remained unpaid.

15. Thereafter, I continued to reach out to Intrepid employees through email and LinkedIn. Intrepid's former IT Director, Jason Zimmerman replied to my message and provided me with the contact information for Doug Bartels and Defendant Ryan Ogden.

16. On February 9, 2025, I also communicated with Zack Strange through LinkedIn. Mr. Strange informed me that Mr. Ogden was then "running things." Prior to Intrepid's shutdown, I had never communicated with Mr. Ogden.

17. I was not invited to the January 14, 2026 investor and creditor call described in the declarations of Karen Boreyko, Tom Alkazin, and Zac Schuster. (ECF Nos. 78-52, 78-53, 78-54.) Prior to reviewing the proceedings in this case, I had never heard of or spoken with Robert Dawson. At no point did Intrepid inform Tanglewood that Intrepid was in financial distress, that Intrepid's chairperson in his dual capacity as Intrepid's purported largest creditor was planning a foreclosure on Intrepid's assets, or that Intrepid intended to cease operations.

18. Had Tanglewood been informed of the true state of affairs, including the matters now described in the court filings, I would have taken steps to protect Tanglewood's position, including the exercise of contractual termination rights.

19. The outstanding debt of £96,033 is a material sum for a studio of Tanglewood's size. The non-payment has caused direct financial harm to my business.

20. I reviewed Plaintiff Steven Sharif's Motion for Receiver, the Declaration of Steven Sharif, and the supporting witness declarations, which were filed on April 14, 2026. Upon reviewing Plaintiff's Motion for Receiver, I contacted counsel for Plaintiff, Jessica Nall and Jordan Garman of Withers Bergman, LLP, in order to file this declaration. I support the appointment of a neutral receiver to safeguard Intrepid's assets and to act in the best interests of Intrepid and all of its stakeholders, including its creditors.

21. As a creditor with no connection to either party in this dispute beyond

the unpaid commercial engagement described above, I believe a neutral receiver is necessary to ensure that any disposition of Intrepid's assets is conducted in a fair, lawful, and commercially reasonable manner that protects the interests of all creditors, not only those of the parties currently in control of the company.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 29, 2026 at Hartlepool, England.

By: _____

DocuSigned by:

F5D528E99DDB4C0

Christopher Wood