Samuel A. Schwartz, Esq.
  (admitted *pro hac vice*)
Nevada Bar No. 10985
saschwartz@nvfirm.com
Sasha Aliakbar-Amid, Esq.
California Bar No. 334162
samid@nvfirm.com
SCHWARTZ, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

Samuel B. Strohbehn, Esq.
California Bar No. 257697
sstrohbehn@rosinglaw.com
Maddie Rudge, Esq.
California Bar No. 362727
mrudge@rosinglaw.com
Amara S. Barbará, Esq.
California Bar No. 323332
abarbara@rosinglaw.com
ROSING POTT & STROHBEHN LLP
770 1st Avenue, Suite 200
San Diego, California 92101
Telephone: (619) 235-6000

*Attorneys for Defendants Robert Dawson,
Ryan Ogden, Theresa Fette, Aaron Bartels,
and TFE Games Holdings, LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC.,<br><br>                    Plaintiff,<br><br>vs.<br><br>ROBERT DAWSON; RYAN OGDEN; THERESA FETTE; AARON BARTELS; and TFE GAMES HOLDINGS, LLC,<br><br>                    Defendants,<br><br>and<br><br>INTREPID STUDIOS, INC.,<br><br>                    Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP<br><br>**DECLARATION OF DOUGLAS BARTELS IN SUPPORT OF THE OPPOSITION TO PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER**<br><br>Judicial Officer: Hon. Linda Lopez<br>Courtroom: 14B (14th Floor)<br>Hearing Date:  June 11, 2026<br>Hearing Time: N/A<br><br>Action Filed: February 14, 2026<br>Trial Date: Not Set |

## DECLARATION OF DOUGLAS BARTELS

I, DOUGLAS BARTELS, declare as follows:

/ / /

/ / /

1                                    26cv00965-LL-MMP

## I. BACKGROUND AND ROLE

1. I make this declaration in opposition to Plaintiff Steven Sharif's Motion for Appointment of Receiver [ECF 78] (the "**Motion**"). The factual assertions in the Motion are materially false and misleading.

2. I am a Chartered Financial Analyst (CFA) with undergraduate and graduate degrees from the University of Notre Dame, including an MBA in Consulting and Finance, a BBA in Accountancy, and a BA in Computer Applications. I have over two decades of executive leadership experience. Most recently, I served as Chief Operating Officer of the Wealth Management National Investment Practice at Northern Trust Corporation, a global financial institution, where I managed the overall technology and operational platform strategy. From 2018 to 2022, I served as Chief Financial Officer and Senior Vice President of Operations for Sales Benchmark Index, LLC, where I led the finance, accounting, operations, legal, and technology functions and managed the successful $150M+ sale of the firm to a private equity firm. I have additional experience at Ernst & Young, IBM, and American Management Systems.

3. I was initially brought on by the Board of Directors of TFE Games Holdings, LLC ("**TFE**") in January of 2026 to clean up the financial records of Intrepid Studios, Inc. ("**Intrepid**"). Following Mr. Sharif's voluntary resignation on January 19, 2026, the Board appointed me as the interim CEO and subsequently changed my title to the company's Restructuring Agent after the Company's shutdown, to give me the authority necessary to obtain access to the company's systems, records, and accounts.

## II. FINANCIAL IRREGULARITIES DISCOVERED

4. My role with respect to Intrepid Studios has been limited to board-level governance and financial oversight. I have not been involved in the day-to-day management of the Company's operations.

5. Based on my professional experience, I have observed a wide range of financial governance practices across companies of varying sizes and stages. I first obtained access to the Company's financial books and records on or about January 15, 2026. The irregularities I observed at Intrepid Studios are, in my experience, highly atypical.

**A. Structural Irregularities**

6. The Company utilized QuickBooks as its primary accounting platform. While QuickBooks is suitable for early-stage businesses, it does not inherently provide the level of internal controls, segregation of duties, or audit tracking typically expected for a company that has raised in excess of ▮▮▮▮▮▮. In my experience, companies of this scale typically implement more robust financial systems with enhanced controls and audit visibility.

7. Certain bank and credit card accounts—some involving substantial transaction volumes—were not fully integrated into the accounting system. This limits transparency and reduces the ability to reconcile financial activity accurately. When John Moore transitioned Quickbooks over to Ryan Ogden in and around October 2024, there were limited accounts integrated with Quickbooks. Accounts where millions of dollars were transferred to as well as credit cards that accumulated hundreds of thousands of dollars of transactions were not integrated into the financial books and records.

8. Over an extended period, significant payments were made to credit card accounts. However, I did not observe corresponding underlying transaction-level documentation sufficient to verify that such expenditures were for business purposes.

9. The former Chief Financial Officer, John Moore, appeared to have broad authority over disbursements without consistent secondary approval or independent reconciliation. In my experience, even smaller organizations typically implement dual-approval or review processes for financial transactions which do not include their spouse.

3                                    26cv00965-LL-MMP

10. Based on my review, I identified multiple entities receiving Company funds for which I was not able to verify corporate registration, ownership, or business purpose based on available records. The characteristics of these entities—including inconsistent naming, lack of verifiable registration and limited access to vendor verification documentation – are, in my experience, consistent with arrangements that warrant further inquiry, including whether such entities may be affiliated with CEO, CFO or other related party or employee.

**B. Transactional Analysis**

11. Based on my analysis of transactions entered through Quickbooks at the time when John Moore served as CFO and Steven Shariff serving as CEO, I was able to reconcile the outflows entered in Quickbooks with transactions from Intrepid Studios bank accounts. I was not able to verify the justifications of those transactions were in support of business operations from the account where they were deposited.

12. There were numerous transfers from Company accounts to an account associated with the CFO. These transactions occurred during periods when investor funds were being received and appeared to cease following the appointment of a new CFO in or around October 2024. Particularly, there were hundreds of transfers out of Intrepid Studios accounts to an account titled in John Moore's name and to his Bank of America account ending in 6009. I investigated the timing of those transfers. As evidenced in **Exhibit A** attached hereto, which I created to demonstrate the misappropriations, the transactions occurred within the window of time investor funds were being collected for the development of Ashes of Creation, and the withdrawals stopped abruptly when Mr. Moore was replaced as the CFO.

13. In what I was able to access, I did not find adequate receipts or transaction details to substantiate any business expenses supporting the transfers on **Exhibit A**.

14. Financial records reflect transactions characterized as loans, subcontractor payments or transfers to individuals and entities associated with the former CFO and CEO, including family members, related parties and investors.

4                                          26cv00965-LL-MMP

## V. THE COMPANY'S CURRENT FINANCIAL CONDITION AND INABILITY TO AFFORD A RECEIVER

15. Based on my review of the Company's financial records, as of April 30, 2026, Intrepid Studios has less than ███ in available cash—approximately ███ at Pathway Bank and ███ at CommerceWest. The Company carries total liabilities of approximately ███, including ███ in accounts payable, ███ in unpaid federal payroll taxes, ███ owed to CommerceWest Bank, ███ in accrued interest expense, and approximately ███ in convertible notes payable to investors. Total equity is negative ███.

16. The Company is currently operating at a monthly burn rate of approximately ███ to stabilize the business and support the legal process. The Company generates no revenue.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on May 7, 2026

/s/ *Douglas Bartels*
Douglas Bartels