Samuel A. Schwartz, Esq.
  (admitted *pro hac vice*)
Nevada Bar No. 10985
saschwartz@nvfirm.com
Sasha Aliakbar-Amid, Esq.
California Bar No. 334162
samid@nvfirm.com
SCHWARTZ, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

Samuel B. Strohbehn, Esq.
California Bar No. 257697
sstrohbehn@rosinglaw.com
Amara S. Barbara, Esq.
California Bar No. 323332
abarbara@rosinglaw.com
Maddie Rudge, Esq.
California Bar No. 362727
mrudge@rosinglaw.com
ROSING POTT & STROHBEHN LLP
770 1st Avenue, Suite 200
San Diego, California 92101
Telephone: (619) 235-6000

*Attorneys for Defendants Robert Dawson, Ryan Ogden, Theresa Fette, Aaron Bartels, and TFE Games Holdings, LLC*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC.,<br><br>                    Plaintiff,<br><br>vs.<br><br>ROBERT DAWSON; RYAN OGDEN; THERESA FETTE; AARON BARTELS; and TFE GAMES HOLDINGS, LLC,<br><br>                    Defendants,<br><br>and<br><br>INTREPID STUDIOS, INC.,<br><br>                    Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' COUNTER-MOTION FOR APPOINTMENT OF LIMITED RECEIVER**<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT**<br><br>Judicial Officer: Hon. Linda Lopez<br>Courtroom: 14B (14th Floor)<br>Hearing Date: June 11, 2026<br>Hearing Time: N/A<br><br>Action Filed: February 14, 2026<br>Trial Date: Not Set |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

In his pending Motion for Receiver ("**Plaintiff's Receiver Motion**"), Plaintiff Steven Sharif ("**Plaintiff**" or "**Sharif**") seeks the appointment of a "receiver over Intrepid with full equitable and exclusive powers to possess, control, preserve, or sell the assets as necessary; operate and manage the business; conduct financial

1                                    26cv00965-LL-MMP

administration and accounting; litigate claims; and ensure legal and court compliance." Plaintiff's Receiver Motion at Page 29 of 30, lines 10-13.[1] As set out in the opposition to Plaintiff's Receiver Motion [ECF No. 98] (the "**Opposition**"), which is being concurrently filed with this counter-motion (the "**Counter-Motion**"), Defendants maintain that Plaintiff's Receiver Motion is substantively and procedurally deficient and that Plaintiff has not made the necessary showing for the appointment of a receiver. By filing this Counter-Motion, Defendants are not conceding that a receiver is necessary and it is their position that a receiver is not necessary. Rather, following the Court's direction in its *Order Denying Plaintiff's Ex Parte Motion For Order Shortening Time On Plaintiff's Receiver Motion For Receiver* [ECF No. 87] (the "**Order Denying OST**") that the parties "meet and confer… in a good faith effort to resolve [the receiver issue] as expeditiously as possible… for instance… [by] a compromise on the role of a potential receiver—for example, to oversee an Article 9 sale", Defendants, after having met and conferred with Plaintiff's counsel on this issue on multiple occasions, now submit this Counter-Motion as a proposed solution in a good faith effort to avoid further erosion of the assets of Intrepid Studios, Inc. ("**Intrepid**"). Accordingly, Defendants are willing to stipulate to the appointment of a limited receiver, and hereby move the Court for the appointment of a limited receiver, entrusted only with:

a) marshaling, preserving and safeguarding Intrepid's intellectual property and related assets;

b) monitoring any Article 9 foreclosure process; and

---

[1] On May 6, 2026, Plaintiff filed his *Notice of Plaintiff Steven Sharif's Narrowed Request for Relief on Motion to Appoint Receiver, ECF No. 78* [ECF No. 95] (the "**Notice**"), which somewhat reins in the scope of his proposed receivership. The receivership requested by Plaintiff in the Notice remains unnecessarily broad, however, including an investigation of validity of the liens on which the foreclosure is based (liens which Plaintiff admitted are valid in his Verified Complaint) and authorizing legal action against non-party Jason Caramanis, who is the plaintiff in a separate lawsuit brought against Mr. Sharif. The arguments in favor of the appointment of a limited receiver on the terms set out in this Counter-Motion are, therefore, not changed by the Notice.

c) issuing a report to the Court as to the propriety of the Article 9 foreclosure process.

Defendants would be willing to fund such a limited receivership pursuant to a lien against Intrepid's assets in an amount not to exceed $65,000.

Plaintiff's proposed unfettered receivership, by contrast, is not only unnecessary, but would be prohibitively expensive and, of course, Plaintiff is not offering to fund it. This lawsuit was initiated by Plaintiff to contest the validity of the January 16, 2026, foreclosure (the "**First Foreclosure**") of Intrepid's assets by Defendant TFE Games Holdings, LLC ("**TFE**"). The First Foreclosure was rescinded on March 25, 2026 (the "**Rescission**") and substantially all assets of Intrepid (the "**Collateral**") were returned to Intrepid. The limited receivership sought by Defendants allays any legitimate concerns about the process and assets at issue in a second foreclosure on the Collateral. Indeed, there is significant overlap between the scope of the receivership sought in this Counter-Motion with that sought in Plaintiff's Receiver Motion. Where Defendants do not follow Plaintiff is to the creation of a receivership that amounts to a roving commission, tasked, among other things, with investigating the validity of Defendants' liens and to start legal challenges against Defendants and others (presumably at Defendants' expense). Defendants do not agree to such a broad scope and will not agree to fund it. Again, Defendants do not agree that there are grounds for the appointment of a receiver here, but rather are moving this Court as a court of equity for the appointment of a limited receiver to monitor the foreclosure process in order to quiet any concerns and to avoid dealing with the inevitable arguments from Sharif (no matter how a second foreclosure is actually conducted) that the foreclosure was not done properly. Defendants are consensually seeking the appointment of a receiver whose mandate is limited to the tasks set out above, with the practical goal of proceeding to a second foreclosure without the unnecessary dissipation of Intrepid's assets.

/ / /

26cv00965-LL-MMP

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As set out in detail in the "Statement of Facts" in the concurrently filed Opposition, which is incorporated by reference in this Counter-Motion, Sharif induced loans and investments with false representations and wasted and misappropriated the assets of Intrepid for years before the First Foreclosure. It was only after Sharif's numerous false promises that *Ashes of Creation* was about to launch, amid other dishonest and obstructionist acts, that Defendants looked to foreclose on the Collateral. The assertions of "impatience" on the part of Defendants "with the long development timelines inherent to MMORPGs" which are made in Plaintiff's Receiver Motion are disingenuous. The appointment of a receiver "with full equitable and exclusive powers" - as sought by Plaintiff - will only further delay Intrepid's operations while further dissipating its assets.

Defendants set out below additional procedural history of particular relevance to the present Counter-Motion.

### A. The Verified Complaint

On February 14, 2026, Sharif, as an individual and derivatively on behalf of Intrepid, filed his Verified Shareholder Derivative Complaint and Direct Complaint (the "**Verified Complaint**") against Robert Dawson, Ryan Ogden, Theresa Fette, Aaron Bartels (collectively, the "**Individual Defendants**") and TFE (together with the Individual Defendants, the "**Defendants**"). The Verified Complaint is largely built around attacking and seeking to invalidate the First Foreclosure. *See, e.g.,* the first, second and third claims for relief at Pages 24-31 of 39, ECF No. 1. The First Foreclosure was "wrongful", according to the Verified Complaint, because of the process by which it was done and, in particular, the fact that it was a private sale. The Verified Complaint repeatedly acknowledges, however, that TFE "held a valid security agreement against Intrepid securitized by Intrepid's assets" and that, therefore, the underlying basis for the Foreclosure was sound. ECF No. 1 at Page 30 of 39, ¶ 110; *see also* Page 3 of 39, ¶ 4; Page 5 of 39, ¶ 12; Page 17 of 39, ¶ 51; Page

18 of 39, ¶ 53; Page 19 of 39, ¶ 61; Page 32 of 39, ¶ 118). Indeed, the Verified Complaint leaves no room for equivocation on this issue, stating that: "On May 13, 2024, Dawson securitized his debt against all assets and personal property of the Company, including intellectual property, which includes the Trade Secret Materials." ECF No. 1 at Page 15 of 39, ¶ 44.

**B. The Rescission**

On March 25, 2026, TFE returned the Collateral to Intrepid through an Assignment Agreement and Bill of Sale, which stopped the conduct complained of by Plaintiff. (*See* ECF No. 58-1 at Pages 1-9 of 12). As such, Intrepid (not TFE) now owns and controls the Collateral, including *Ashes of Creation*, subject to TFE's extant and legally enforceable security interests in the same (the "**TFE Lien**"). With the Collateral returned, TFE can now lawfully conduct a public disposition of the Collateral pursuant to section 9610(c) of the California Commercial Code, as admitted by Sharif. *See*, *e.g.*, ECF No. 53, pg. 3 of 7, lines 6-9 and 17-25; pg. 4 of 7, lines 9-17).

**C. Plaintiff's Receiver Motion and Order Denying OST**

Plaintiff's Receiver Motion was filed April 14, 2026. Sharif's positions in Plaintiff's Receiver Motion are dramatically different from what they were in the Verified Complaint. Most notably, the TFE Lien, which is admittedly valid in the Verified Complaint, is now variously described in Plaintiff's Receiver Motion as "questionable", "purported", "clouded", of "dubious validity" or "nonexistent or overstated". According to Sharif, a receiver must be appointed to "investigate lien validity". *See, e.g.,* ECF No. 78, pg. 5 of 30, line 19; pg. 6 of 30, line 16; pg. 21 of 30, line 17; pg. 24 of 30, line 21; pg. 24 of 30, line 27.

Plaintiff sought an order shortening time concerning his receiver motion. On April 20, 2026, this Court issued the Order Denying OST which, in addition to denying Plaintiff's Ex Parte Motion for an order shortening time, ordered:

the parties to further meet and confer in person or by video conference

on the issue of a receiver on or before April 27, 2026, in a good faith effort to resolve this as expeditiously as possible. If, for instance, the parties can reach a compromise on the role of a potential receiver—for example, to oversee an Article 9 sale—this would be more efficient for the parties and the Court.

ECF No. 87, Page 3 of 3.

### D. Meet and Confer Process and Counter-Motion

The parties discussed Plaintiff's Receiver Motion during an April 22, 2026 meet-and-confer via Zoom. *See Joint Status Report On Parties' Meet And Confer Efforts Regarding Appointment Of Receiver* [ECF No. 90] (the "**Joint Status Report**"). During the April 22, 2026 meet-and-confer and subsequent email correspondence, Plaintiff's counsel expressed a willingness to engage with a Magistrate Judge concerning the receiver dispute and to more broadly mediate the disputes in this case and, more specifically, indicated Plaintiff would agree to the appointment of a receiver with the following powers: (1) preserving Intrepid's intellectual property and related assets; (2) overseeing and monitoring a foreclosure sale, and reporting to the Court on the propriety of any such sale; (3) investigating on Intrepid's behalf Defendant Dawson's and Defendant TFE's right to proceed with a foreclosure sale (including by analyzing relevant loan documents and related amendments and agreements), as part and parcel of ensuring the propriety of any such sale; and (4) intervening to stop ongoing actions by shareholder and suspected agent of Defendants Mr. Caramanis that are harming the value of Intrepid's assets. *Id.* Defendants' counsel responded that Defendants would agree to a receiver only for the purposes of marshaling and preserving Intrepid's assets; monitoring a foreclosure sale; and reporting on the propriety of the foreclosure sale to the Court. Defendants further indicated that they do not agree to financing the receiver to investigate the validity of the debt under which TFE plans to foreclose. Defendants also object to the receiver being empowered to take legal action against non-party Jason Caramanis, Mr. Caramanis's actions are separate from the instant proceeding and beyond Defendants' control. *Id.* At the time of the initial meet-and-confer process, Defendants

did not agree to fund the receiver. *Id.*

Also discussed during the April 22, 2026, meet-and-confer and in subsequent emails were the inconsistencies between statements in the Verified Complaint and Plaintiff's posture in Plaintiff's Receiver Motion, most notably the numerous admissions concerning the validity of the TFE Lien in the Verified Complaint, contrasted with the assertions in Plaintiff's Receiver Motion that the TFE Lien is of "dubious validity". These discussions led to the filing of the *Joint Motion To Approve Parties' Stipulation Permitting Plaintiff To Amend Complaint And Adjusting Defendants' Response Deadline* [ECF No. 88] on April 23, 2026, and to the order granting same which was issued the next day. *See* ECF No. 89.

On May 4, 2025, the parties discussed this Counter-Motion during a meet-and-confer via Zoom. The terms of the receivership sought in this Counter-Motion are the same as those proposed by Defendants during the earlier meet-and-confer process except that, upon further consideration, Defendants are willing to fund a limited receivership under their proposed terms up to $65,000. The proposed terms were not accepted by Plaintiff, resulting in the filing of this Counter-Motion.

## III.   LEGAL ARGUMENT

This Court has broad discretion to appoint a receiver under its equitable powers. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009); *see also* Fed. R. Civ. P. 66. However, the appointment of a "receiver is an extraordinary equitable remedy, which should be applied with caution." *Id.* at 844.

The extraordinary circumstance justifying the Court's use of its equitable powers to grant the specific relief requested in this Counter-Motion is that the parties who will be directly impacted by the appointment of the limited receiver, Defendants, are the same parties requesting the relief in this Counter-Motion. This makes the Counter-Motion fundamentally different than Plaintiff's Receiver Motion in which Plaintiff seeks to impose a receiver against his counterparties in this case. Defendants are not doing this because they believe that a receiver is necessary. To the contrary,

for the reasons discussed above and in more detail in the "Legal Argument" section of the Opposition, which is incorporated in its entirety by reference here, Defendants do not agree that there are grounds for the appointment of a receiver in this case. The impetus for this Counter-Motion, rather, is a good faith effort to follow this Court's directive in the Order Denying OST that the parties meet and confer regarding the appointment of a receiver. Exiting that process without an agreement, Defendants now move this Court as a court of equity for the appointment of a limited receiver to oversee the foreclosure process in order to quiet any concerns about that process and to short circuit the inevitable arguments from Sharif that a foreclosure not overseen by a receiver was not done properly. Defendants are, therefore, consensually seeking the appointment of a receiver, whose mandate is limited to: marshaling, preserving and safeguarding Intrepid's intellectual property and related assets; monitoring any Article 9 foreclosure process; and issuing a report to the Court as to the propriety of the Article 9 foreclosure process. Defendants will fund such a limited receivership up to $65,000. This Counter-Motion is being filed with the practical goal of a limited receiver being appointed so that a second foreclosure may take place as expeditiously as possible without the further, unnecessary dissipation of Intrepid's assets.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court issue an order:

1. appointing a limited receiver, entrusted only with:

   a. marshaling, preserving and safeguarding Intrepid's IP and related assets;

   b. monitoring any Article 9 foreclosure process; and

   c. issuing a report to the Court as to the propriety of the Article 9 foreclosure process; and

2. stating that Defendants shall fund the receiver up to $65,000; and

3. granting such further relief as the Court may deem is appropriate under the circumstances.

Dated: May 7, 2026.

By: */s/ Sasha Aliakbar-Amid*
Samuel A. Schwartz, Esq.
 (admitted *pro hac vice*)
Nevada Bar No. 10985
Sasha Aliakbar-Amid, Esq.
California Bar No. 334162
SCHWARTZ, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101

Samuel B. Strohbehn, Esq.
California Bar No. 257697
Amara S. Barbara, Esq.
California Bar No. 323332
Maddie Rudge, Esq.
California Bar No. 362727
ROSING POTT & STROHBEHN LLP
770 1st Avenue, Suite 200
San Diego, California 92101

*Attorneys for Defendants Robert Dawson, Ryan Ogden, Theresa Fette, Aaron Bartels, and TFE Games Holdings, LLC*