# EXHIBIT E

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER THE SECURITIES LAWS OF ANY STATES IN THE UNITED STATES. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE ACT AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE ISSUER TO THE EFFECT THAT ANY PROPOSED TRANSFER OR RESALE IS IN COMPLIANCE WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## INTREPID STUDIOS, INC.

### CONVERTIBLE PROMISSORY NOTE

Date of Note:  May 12, 2023
Principal Amount of Note:    $670,000.00

FOR VALUE RECEIVED, Intrepid Studios, Inc., a California corporation (the "**Company"),** hereby promises to pay to the order of Robert. D. Dawson (the "**Holder")** the principal amount of Six Hundred Seventy Thousand Dollars ($670,000.00) plus twelve percent (12%) interest under the terms and subject to the conditions set forth in this Convertible Line of Credit Promissory Note (the "**Note").**

1.        **Maturity; Payment.** If not sooner paid or converted according to the terms hereof, the outstanding principal amount of the Note, and all accrued and unpaid interest thereunder, shall be due and payable upon the written demand by the Holder at any time after the earlier of: (a) the date that is one hundred and eighty (180) days after the date on which this Note is issued, (b) the closing date of an Acquisition (as defined below), or (c) the date of an Event of Default (as defined in Section 5 below) (the "**Maturity Date").** All payments shall be made in lawful money of the United States at such place as the Holder may from time to time designate in writing to the Company. Payment shall be credited first to any fees and expenses due and payable under this Note, then to the accrued interest and the remainder applied to principal. At any time prior to or after the Maturity Date, in lieu of demanding repayment of the outstanding principal amount and accrued and unpaid interest in cash as otherwise required under the Note, the Holder may elect in writing to extend the Maturity Date to a date mutually agreed between the Parties. "**Acquisition"** shall mean (i) a sale, lease or other disposition (or a series of sales, leases or other dispositions) of fifty-one percent (51%) or more assets or properties of the Company (and its subsidiaries, if any, calculated on a consolidated basis), in each case other than sales of inventory in the ordinary course of business, consistent with past practices, or (ii) any transaction, or series of transactions, in which any Person (defined below) shall directly or indirectly acquire from the holders thereof, by purchase or in a merger, consolidation or other transfer or exchange of outstanding capital stock, ownership of or control over capital stock of the Company (or securities exchangeable for or convertible into such stock or interests) entitled to elect a majority of the Company's Board of Directors or representing at least fifty-one percent (51%) of the number of shares of Common Stock outstanding. "**Person"** means any individual, firm, corporation, partnership, limited liability

company, incorporated or unincorporated association, joint venture, joint stock company, governmental agency or instrumentality or other entity of any kind.

2.      **Interest.** Interest shall accrue on the outstanding principal amount of this Note from the date hereof until the date this Note is paid in full at the rate of twelve percent (12%) per annum (subject to the default rate set forth below) or the maximum rate permissible by law, whichever is less. Interest shall be due and payable on the Maturity Date, unless earlier paid in full, and shall be calculated on the basis of a 365-day year for the actual number of days elapsed. The Company shall pay all accrued interest in cash upon repayment of the principal amount of this Note, provided that upon the conversion of this Note pursuant to Section 4 below the Holder may elect that some or all of any accrued interest may be converted into the shares of Common Stock of the Company into which the Note is converted, at the same conversion price. In connection with such conversion, the Company shall have the right to set a reference date for the conversion of any accrued interest by Holder that is within ten (10) days of the conversion date, such that interest accrued through such reference date will be converted and the balance of such accrued interest through the conversion date will be paid in cash, provided that Holder may elect to waive any such remaining accrued interest that is not converted.  In the Event of Default, as defined in Section 5 below, default interest shall accrue on the outstanding principal and accrued but unpaid interest at a rate of eighteen percent (18%) per annum or the maximum permissible rate by law, wherever is less, compounded annually.

3.      **Prepayment.** Prior to the Maturity Date, the Company may not prepay the Note, in whole or in part, without written approval by the Holder, except in the event of an Acquisition.

4.      **Limited Conversion.**

(a)      **Optional Maturity Date Conversion.** Upon the Maturity Date, Holder may elect, in its sole discretion, by written notice to the Company ("**Conversion Notice"),** to convert the then outstanding principal amount of the Note and any amount of accrued and unpaid interest as Holder may elect (such amount, the "**Conversion Amount")** into shares of the Company's common stock ("**Common Stock")** at the Conversion Price (defined below). The number of shares of Common Stock issuable upon such conversion ("**Conversion Shares")** shall be rounded down to the nearest whole share (no fractional shares shall be issued) and the Company shall pay to Holder cash in lieu of any such fraction as set forth herein. The date on which such conversion shall be effected shall be the date of the Company's receipt of the Conversion Notice unless the Company and the Holder agree in writing to another date (such date, the "**Conversion Date").** The Company shall take all action necessary to ensure that it has sufficient authorized shares of Common Stock to accommodate such conversion and the issuance of the Conversion Shares. In lieu of issuing a fraction of a share of Common Stock upon the conversion of this Note, the Company shall pay the Holder of this Note for any fraction of a share of Common Stock otherwise issuable upon the conversion of this Note, cash equal to the same fraction of the then current per share Conversion Price. For the avoidance of doubt, upon such conversion, the Holder hereof shall cease to have any right to repayment of the Conversion Amount or conversion hereof under Section 4.

(b)    **Procedure for Limited Conversion.** Upon conversion of this Note in accordance with Section 4(a) above, (i) the Holder shall surrender this Note to the Company and deliver to the Company any documentation reasonably required by the Company to evidence the conversion, and (ii) the Company shall issue and deliver to Holder (1) a stock certificate representing the Conversion Shares, (2) if agreed to by the parties, any documentation reasonably required by the Holder to evidence the conversion, and (3) in lieu of any fractional shares to which the Holder would otherwise be entitled, the Company shall pay the Holder cash equal to such fraction multiplied by Conversion Price. Notwithstanding anything to the contrary in the immediately preceding sentence, the Company shall not be required to issue or deliver the Conversion Shares until the Holder has surrendered (or destroyed and certified such destruction to the Company) this Note to the Company and delivered to the Company any such documentation described in the immediately preceding clause (i). To secure the Holder's obligations to execute and deliver the documentation required by this Section, the Holder hereby appoints the Chief Executive Officer of the Company as the Holder's true and lawful attorney, with the power to act alone and with full power of substitution, to execute and deliver all such documentation required by this Section if, and only if, the Holder fails to execute or deliver such documentation as required by this Section within thirty (30) days of written notice from the Company. The power granted by the Holder pursuant to this Section is coupled with an interest and is given to secure the performance of the Holder's duties under this Note, and is irrevocable and will survive the death, incompetency, disability, merger or reorganization of the Holder.

(c) **Conversion Price; Valuation Cap.** For purposes of this Note, "**Conversion Price**" means, subject to adjustment, if any, pursuant to the immediately subsequent sentence, an amount (rounded to the nearest tenth of a cent) equal to the quotient resulting from dividing Eighty Million Dollars ($80,000,000) by the number of outstanding shares of Common Stock of the Company as of the Conversion Date (including, for this purpose, the conversion of all securities convertible into Common Stock and exercise of all outstanding options and warrants, but excluding the shares of equity securities of the Company issuable upon the conversion of Notes or other convertible securities issued for capital raising purposes (the **"Fully Diluted Shares"**), multiplied by a fraction equal to the amount of principal on the Note (and any converted interest) outstanding as of the Conversion Date over the total principal amount of the Note (plus any converted interest). In the event the Company: (i) pays a dividend in Common Stock or makes a distribution in Common Stock, (ii) subdivides its outstanding Common Stock into a greater number of shares, (iii) combines its outstanding Common Stock into a smaller number of shares or (iv) increases or decreases the number of shares of Common Stock outstanding by reclassification of its Common Stock (including a recapitalization in connection with a consolidation or merger in which the Company is the continuing corporation), then the Conversion Price on the record date of such division or distribution or the effective date of such action shall be adjusted by multiplying such Conversion Price by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately before such event and the denominator of which is the number of shares of Common Stock outstanding immediately after such event. Whenever the Conversion Price is adjusted, as herein provided, the Company shall deliver to the Holder a certificate of the Company's Chief Financial Officer setting forth, in reasonable detail, the event requiring the adjustment and the method by which such adjustment was calculated (including, without limitation, a description of the basis on which the Company's Board of Directors determined the fair value of any evidences of indebtedness, other securities or

O4096797.v1

property or warrants, options or other subscription or purchase rights) and specifying the Conversion Price after giving effect to such adjustment. Until the Maturity Date, the Company shall not create any class of stock with greater preferences or rights than those attributable to the holders of Common Stock.

5.     **Event of Default.** For purposes of this Note, an "**Event of Default**" shall be deemed to have occurred if: (a) the Company fails to pay this Note in full when due, provided the parties have not otherwise mutually agreed to extend the Maturity Date; (b) the Company breaches any representation, warranty or covenant contained in this Note which breach (to the extent of a nature that is capable of being cured) continues for fifteen (15) days after notice of breach from the Holder; (c) an default or event of default occurs under the terms of or in respect of Senior Indebtedness; (d) the Company voluntarily files for bankruptcy protection or makes a general assignment for the benefit of creditors, or (e) the Company is the subject of an involuntary bankruptcy petition and such petition is not dismissed within ninety (90) days. If an Event of Default occurs and is continuing, the Holder may by written notice to the Company declare the outstanding principal amount of, and all unpaid accrued interest under, this Note in default and immediately due and payable.  In the event of a claim or allegation of default in respect of any Senior Indebtedness, the Company will notify Holder within ten (10) days after notice of such claim or allegation of default is received by the Company.

6.     **Warrants**.  As an additional inducement to extend the loan set forth herein, the Company shall issue to Holder (or its designee) a non-dilutable warrant equal to 0.838% of the Company's common stock to be issued at direction of Holder.

7.     **Unsecured Obligation; Senior Indebtedness.** The indebtedness represented by this Note is unsecured and subordinated in right of payment to the prior payment in full of any Senior Indebtedness in existence on the date of this Note or hereafter incurred. "**Senior Indebtedness**" shall mean, unless expressly subordinated to or made on a parity with the amounts due under this Note, all amounts due in connection with: (i) indebtedness of the Company to banks or other lending institutions regularly engaged in the business of lending money (excluding venture capital, investment banking or similar institutions and their affiliates, which sometimes engage in lending activities but which are primarily engaged in investments in equity securities), and (ii) any such indebtedness or any debentures, notes or other evidence of indebtedness issued in exchange for such Senior Indebtedness, or any indebtedness arising from the satisfaction of such Senior Indebtedness by a guarantor. Nothing in this paragraph shall preclude or prohibit the Holder from receiving any payment or converting this Note into Company's Common Stock hereunder unless and until the Holder has received a default notice from any lender of Senior Indebtedness.

8.     **Representations and Warranties.** As a material inducement to the Holder, the Company hereby makes the representations and warranties contained in Exhibit A attached hereto and incorporated herein by this reference. As a material inducement to the Company, the Holder hereby makes the representations and warranties contained in Exhibit B attached hereto and incorporated herein by this reference.

9.     **Notices.** All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5)

O4096797.v1

calendar days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (iii) one (1) business day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the other party hereto at such party's address hereinafter set forth on the signature page hereof, or at such other address as such party may notify the other party pursuant hereto. If notice is given to Company, a copy (which copy shall not constitute notice) shall also be given to Interactive Entertainment Law Group, Attn: Patrick Sweeney, 3868 Carson Street, Suite 110, Torrance, CA 90503.

10.     **Governing Law.** This Note shall be governed by and construed under the laws of the State of California, without giving effect to its choice of law rules.

11.     **Transfer; Successors and Assigns.** The rights and obligations of the Company and the Holder shall be binding upon and shall inure to the benefit of their successors, assigns and transferees. Notwithstanding the foregoing, (i) the Holder may not assign, pledge, or otherwise transfer this Note without the prior written consent of the Company; provided that this Note may be assigned, conveyed or transferred without the prior written consent of the Company to any wholly-owned affiliate of Holder or any trust of Holder that executes and delivers to the Company an acknowledgement that such wholly-owned affiliate or trust agrees to be subject to, and bound by, all the terms and conditions of this Note, and (ii) the Company may not assign, pledge, or otherwise transfer this Note without the prior written consent of the Holder. Subject to the immediately preceding sentence, this Note may be transferred only in compliance with any applicable laws, and upon surrender of the original Note for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Company, a new note for the same principal amount and interest will be issued to, and registered in the name of, the transferee. Interest and principal are payable only to the registered holder of this Note.

12.     **Modification; Waiver.** Any term of this Note may be amended or waived only upon the written consent of the Company and the Holder.

13.     **Expenses.** Company and Holder shall each bear its respective expenses and legal fees incurred with respect to the negotiation, execution and delivery of this Note and the transactions contemplated herein; provided that if any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party will be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

14.     **Stockholders, Officers and Directors Not Liable.** In no event shall any stockholder, officer or director of the Company be liable for any amounts due or payable pursuant to this Note.

15.     **No Rights of a Stockholder.** Nothing contained in this Note shall be construed as conferring upon the Holder or any other person the right to vote or consent or to receive notice as a stockholder in respect of meetings of stockholders for the election of directors of the Company

O4096797.v1

or any other matters or any rights whatsoever as a stockholder of the Company prior to the time that this Note is converted in accordance with the terms of this Note.

16.    **Further Assurances.** The Holder agrees and covenants that at any time and from time to time the Holder will promptly execute and deliver to the Company such further instruments and documents and take such further action as the Company may reasonably require in order to carry out the full intent and purpose of this Note and to comply with state or federal securities laws or other regulatory approvals.

17.    **Titles and Subtitles.** The titles and subtitles used in this Note are used for convenience only and are not to be considered in construing or interpreting this Note.

18.    **Interpretation.** Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under all applicable laws and regulations. If, however, any provision of this Note shall be prohibited by or invalid under any such law or regulation in any jurisdiction, it shall, as to such jurisdiction, be deemed modified to conform to the minimum requirements of such law or regulation, or, if for any reason it is not deemed so modified, it shall be ineffective and invalid only to the extent of such prohibition or invalidity without affecting the remaining provision of this Note, or the validity or effectiveness of such provision in any other jurisdiction.

19.    **Entire Agreement.** This Note constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof, and no party shall be liable or bound to any other party in any manner by any representations, warranties, covenants and agreements except as specifically set forth herein.

20.    **Counterparts.** This Note may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

21.    **California Corporate Securities Law.** THE SALE OF THE SECURITIES WHICH ARE THE SUBJECT OF THIS NOTE HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE CONSIDERATION THEREFOR PRIOR TO SUCH QUALIFICATION OR IN THE ABSENCE OF AN EXEMPTION FROM SUCH QUALIFICATION IS UNLAWFUL. PRIOR TO ACCEPTANCE OF SUCH CONSIDERATION BY THE COMPANY, THE RIGHTS OF ALL PARTIES TO THIS NOTE ARE EXPRESSLY CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED OR AN EXEMPTION FROM SUCH QUALIFICATION BEING AVAILABLE.

*[signature page follows]*

O4096797.v1

The parties have executed this Convertible Promissory Note as of the date first written above.

**COMPANY:**
**Intrepid Studios, Inc.**


By: _Steven Sharif_

Name: Steven Sharif
Title: Chief Executive Officer

E-mail: StevenSharif@IntrepidStudios.com

Address:     3721 Valley Centre Dr. Ste. 200
             San Diego, CA 92130


**HOLDER:**
**Robert D. Dawson**


E-mail: ▮▮▮▮▮▮▮▮

Address: ▮▮▮▮▮▮▮▮

04096797 v1

## EXHIBIT A

The Company hereby represents and warrants to the Holder, as of the date of this Note, as follows:

1. *Organization and Good Standing.* The Company is a corporation duly organized and validly existing under the laws of the State of California. The Company has the requisite corporate power and authority to own its properties and assets and to carry on its business as presently conducted. The Company is presently qualified to do business as a foreign corporation in each jurisdiction where the failure to be so qualified could reasonably be expected to have a material adverse effect on the Company's financial condition or business.

2. *Authorization.* The Company has all right, power and authority necessary to issue this Note, and all required corporate action on the part of the Company and its directors necessary for issuance of this Note and the performance of the Company's obligations under this Note has been taken. This Note is the valid, binding and enforceable obligation of the Company, subject to the laws of general application relating to bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity. Shares of equity securities of the Company issued upon conversion of this Note, when issued in compliance with the provisions of this Note, will be validly issued, fully paid and nonassessable, and will be free of any liens or encumbrances.

3. *Non-Contravention.* The issuance by the Company of this Note and the performance and consummation of the transaction contemplated hereunder does not and will not: (i) violate the Company's Certificate of Incorporation or Bylaws, each as amended to date or any material judgment, order, writ, decree, statute, rule or regulation applicable to the Company; (ii) violate any provision of, or result in the breach or the acceleration of, or entitle any other person or entity to accelerate (whether after the giving of notice or lapse of time or both), any material mortgage, indenture, agreement, instrument or contract to which the Company is a party or by which it is bound; or (iii) result in the creation or imposition of any lien upon any property, asset or revenue of the Company or the suspension, revocation, impairment, forfeiture, or nonrenewal of any material permit, license, authorization or approval applicable to the Company, its business or operations, or any of its assets or properties.

4. *Approvals.* No consent, approval, order or authorization of, or registration, declaration or filing with, any governmental authority or other Person is required in connection with the issuance of this Note and the performance and consummation of the transactions contemplated hereby except as may be necessary to increase approved shares for the purpose of Conversion or to otherwise comply with the terms of this Note.

5. *No Violation or Default.* The Company is not in violation of or in default with respect to: (i) any material judgment, order, writ, decree, statute, rule or regulation applicable to the Company; or (ii) any material mortgage, indenture, agreement, instrument or contract to which the Company is a party or by which it is bound.

O4096797.v1

6. *Intellectual Property.* The Company owns (or possesses sufficient legal rights to) all patents, trademarks, service marks, trade names, copyrights, trade secrets, licenses, information, processes and other intellectual property rights necessary for its business without any conflict with, or infringement of the rights of, others.

7. *Litigation.* There is no claim, action, suit, proceeding, arbitration, complaint, charge or investigation pending or to the Company's knowledge, currently threatened in writing (i) against the Company that would reasonably be expected to be material to the Company; or (ii) that questions the validity of this Note or the right of the Company to enter into this Note, or to consummate the transactions contemplated by this Note.

O4096797.v1

## EXHIBIT B

The Holder hereby represents and warrants to the Company, as of the date of this Note, as follows:

1. *Securities Law Compliance.* Holder has been advised that the Note and the underlying securities have not been registered under federal and state securities laws and cannot be resold unless they are registered under applicable securities laws or unless an exemption from such registration requirements is available. Holder is aware that the Company is under no obligation to effect any such registration or to file for or comply with any exemption from registration. Holder has not been formed solely for the purpose of making this investment and is purchasing the Note for its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof. Holder has no present intention of selling, granting any participation in, or otherwise distributing the Note. Holder has such knowledge and experience in financial and business matters that Holder is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment without impairing Holder's financial condition and is able to bear the economic risk of such investment for an indefinite period of time. Holder is an "accredited investor" as such term is defined in Rule 501 of Regulation D under the Securities Act and will submit to the Company such further assurances of such status as may be reasonably requested by the Company.

2. *Access to Information.* Holder acknowledges that the Company has given Holder access to the corporate records and accounts of the Company and to all information in its possession relating to the Company, has made its officers and representatives available for interview by Holder, and has furnished Holder with all documents and other information required for Holder to make an informed decision with respect to the purchase of the Note.

3. *Forward-Looking Statements.* With respect to any forecasts, projections of results and other forward-looking statements and information provided to the Holder, the Holder acknowledges that such statements were prepared based upon assumptions deemed reasonable by the Company at the time of preparation. There is no assurance that such statements will prove accurate, and the Company has no obligation to update such statements.

4. *Restrictions on Resales.* Holder acknowledges that the securities must be held indefinitely unless subsequently registered under the Securities Act or an exemption from such registration is available. Holder is aware of the provisions of Rule 144 promulgated under the Securities Act, which permit resale of shares purchased in a private placement subject to the satisfaction of certain conditions, which may include, among other things, the availability of certain current public information about the Company; the resale occurring not less than a specified period after a party has purchased and paid for the security to be sold; the number of shares being sold during any three-month period not exceeding specified limitations; the sale being effected through a "broker's transaction," a transaction directly with a "market maker" or a "riskless principal transaction" (as those terms are defined in the Securities Act or the Securities Exchange Act of 1934, as amended, and the rules and regulations

O4096797.v1

promulgated thereunder); and the filing of a Form 144 notice, if applicable. Holder acknowledges and understands that the Company may not be satisfying the current public information requirement of Rule 144 at the time Holder wishes to sell the Securities and that, in such event, Holder may be precluded from selling the Securities under Rule 144 even if the other applicable requirements of Rule 144 have been satisfied. Holder acknowledges that, in the event the applicable requirements of Rule 144 are not met, registration under the Securities Act or an exemption from registration will be required for any disposition of the Securities.

5. *No Public Market.* Holder understands and acknowledges that no public market now exists for any of the securities issued by the Company and that the Company has made no assurances that a public market will ever exist for the Company's securities.

6. *Brokers or Finders.* Holder has not engaged any brokers, finders or agents, and the Company has not incurred and will not incur, directly or indirectly, as a result of any action taken by Holder, any liability for brokerage or finders' fees or agents' commissions or any similar charges in connection with the transactions contemplated by this Note.

7. *Tax Advisors.* Holder has reviewed with his, her or its own tax advisors the U.S. federal, state and local and non-U.S. tax consequences of this investment and the transactions contemplated by this Agreement. With respect to such matters, Holder relies solely on any such advisors and not on any statements or representations of the Company or any of its agents, written or oral. Holder understands that he, she or it (and not the Company) will be responsible for his, her or its own tax liability that may arise as a result of this investment and the transactions contemplated by this Agreement.

O4096797.v1

## SCHEDULE A

| DATE OF ADVANCE | AMOUNT OF ADVANCE | Initials of Officer of Maker, Acknowledging Receipt of Advance |
|---|---|---|
| | | |
| May 12, 2023 | $670,000.00 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

O4096797.v1