# EXHIBIT Z

## INTREPID STUDIOS, INC.

## CONVERTIBLE NOTE ASSIGNMENT AND CONVERSION AGREEMENT

This Convertible Note Assignment and Conversion Agreement (this "*Agreement*") is dated as of June __, 2024 (the "*Effective Date*") by and among Intrepid Studios, Inc. (the "*Company*"), Robert Dawson as assignor (the "*Assignor*") and Intrepid Creations, LLC (the "*Holder*"). Reference is hereby made to the convertible note agreements, pledge agreements or other convertible or debt security agreements, including amendments, as set forth on Schedule I (collectively, the "*Note*") issued by the Company. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Note.

### RECITALS

A.  The Assignor desires to assign the Note to the Holder as provided herein.

B.  The Holder desires to convert the Note as provided herein.

C.  Notwithstanding anything to the contrary set forth in the Note, the Company and the Holder agree that the Outstanding Principal Amount (as defined below) shall be converted in whole without any further action by the Holder into 162.30 shares of Class B Common Stock of the Company (the "*Shares*").

D.  Notwithstanding anything to the contrary set forth in the Note, the Company and the Holder agree that the Cash Amount (as defined below) shall be paid in cash by the Company to the Holder in equal monthly payments during a twenty-four (24) month period, with the first payment beginning on the six (6) month anniversary of the date of the official launch of Ashes of Creation.

E.  Immediately following the Conversion (as defined below), the Company, the Holder and certain of the equityholders of the Company, are entering into the .

### AGREEMENT

The undersigned agrees for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as follows:

1.  **Assignment of the Note**. Immediately prior to the Conversion (as defined below), the Assignor hereby assigns to the Holder all amounts owed and convertible under the Note, which is equal to an outstanding principal amount of $14,000,000 (the "*Outstanding Principal Amount*") and accrued interest amount of $1,775,238.57 (the "*Cash Amount*") as of March 15, 2024.

2.    **Conversion of Outstanding Principal Amount.** By signing and delivering this Agreement to the Company, the Holder hereby agrees to convert the Outstanding Principal Amount as of the date hereof, into the Shares (the "***Conversion***").

3.    **Payment of Cash Amount.** By signing and delivering this Agreement to the Holder, the Company hereby agrees to pay the value of the Holder's accrued and unpaid interest under the Note, which the Company and Holder agree is equal to the Cash Amount, to the Holder in cash in equal monthly payments during a twenty-four (24) month period, with the first payment beginning on the six (6) month anniversary of the date of the official launch of Ashes of Creation.

4.    **Cancellation**. The Holder hereby (a) agrees that upon the Conversion, the Note shall be cancelled in its entirety and shall be of no further force or effect and all obligations set forth in the Note will be terminated and shall be of no further force or effect (whether or not the original Note is delivered to the Company) and (b) authorizes the Company to take all actions reasonably necessary to accomplish the foregoing.  Other than the Holder's right to receive the Shares in connection with the Conversion and the Cash Amount, the Holder hereby irrevocably waives any and all demands, claims, suits, actions, causes of action, proceedings, assessments and rights in respect of the Note, including, without limitation: (i) any right to receive principal or interest payments due under the Note as of the date hereof in excess of the amount of the Shares to be distributed in connection with the Conversion and the Cash Amount to be paid by the Company to the Holder, (ii) any right to notice of conversion of the Note and (iii) any right arising from any past or present default or event of default under the Note.

5.    **Additional Agreements**.  In connection with the Conversion, the Holder (to the extent not already a party thereto) shall enter into the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

6.    **Representations and Warranties of Holder**.  The Holder hereby represents and warrants to the Company as follows:

(a)    The Holder has full power and authority to enter into this Agreement and to perform its obligations hereunder.  This Agreement constitutes the Holder's valid and legally binding obligation, enforceable in accordance with its terms.

(b)    Upon consummation of the assignment set forth in Section 1 hereof, the Holder and the Assignor are the sole owners of the Note being delivered to the Company as consideration for the issuance of the Shares and payment of the Cash Amount.  Except as contemplated in Section 1 hereof, the Holder has never sold, assigned, pledged, hypothecated, negotiated, factored, discounted or otherwise transferred the Note or any interest therein. The Note is being delivered to the Company free and clear of any and all liens, charges, encumbrances, security agreements, pledge agreements, conditional sales agreements and other obligations relating to the sale or transfer thereof.

(c)    The Holder is experienced in evaluating and investing in securities of growth companies such as the Company, has such knowledge and experience in financial, tax and

2

business matters and in making investments of this type that the Holder is capable of evaluating the merits and risks of the Holder's investment in the Shares, is able to bear the economic risk of the investment and is prepared to hold the Shares for an indefinite period of time.

(d)    The Holder is acquiring the Shares for the Holder's own account, for investment and not with a view to the distribution or resale thereof, and the Holder has no present intention of selling or distributing the Shares. The Holder understands that the Shares to be issued to the Holder in connection with the Conversion have not been registered under the Securities Act of 1933, as amended (the "*Securities Act*"), by reason of one or more exemptions from the registration provisions of the Securities Act which depends upon, among other things, the bona fide nature of the Holder's investment intent as expressed herein. The Holder is an "accredited investor" as such term is defined in Rule 501(a) promulgated by the Securities and Exchange Commission under the Securities Act.

(e)    The Holder has received all information that the Holder considers necessary or appropriate for deciding whether to accept the Shares and Cash Amount in exchange for the Note. The Holder has had an opportunity to ask questions and receive answers from the Company's management.

5.    **Representations and Warranties of the Company**.  The Company hereby represents and warrants to the Holder as follows:

(a)    The Company has full corporate power and authority to enter into this Agreement and to perform its obligations hereunder. This Agreement constitutes the Company's valid and legally binding obligation, enforceable in accordance with its terms.

(b)    The Shares, when issued upon the Conversion in accordance with the terms hereof, will be validly issued and outstanding, fully paid and nonassessable.

6.    **Acknowledgments**.

(a)    The Holder hereby acknowledges each of the following: (i) the fair market value of the Shares is highly speculative and unknown at this time; (ii) this Agreement may not reflect the fair market value of the Shares; and (iii) the fair market value of the Shares may increase or decrease dramatically following the date hereof.

(b)    The Holder hereby acknowledges that the Holder has been advised to, and has been afforded the opportunity to, consult with an attorney regarding legal matters concerning this Agreement and to consult with the Holder's independent financial and tax advisors regarding the financial and tax consequences of entering into this Agreement.

7.    **Counterparts.**    This Agreement may be executed and delivered in one or more counterparts (including facsimile, .PDF or other electronic counterparts), each of which, when taken together, shall constitute one and the same agreement.

[**SIGNATURE PAGES FOLLOW**]

3

DocuSign Envelope ID: 584BD9FE-5843-4C1C-9804-B59D07FDD4FB

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the Effective Date.

COMPANY:

INTREPID STUDIOS, INC.

By: _Steven Sharif_____

Name: Steven Sharif
Title: Chief Executive Officer

[*Signature Page to Convertible Note Conversion Agreement*]

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the Effective Date.

**HOLDER:**

**Intrepid Creations, LLC**

By: _Robert Dawson_
Name: Robert Dawson
Title: Manager

**ASSIGNOR:**

_Robert Dawson_

Robert Dawson

[*Signature Page to Convertible Note Conversion Agreement*]

DocuSign Envelope ID: 584BD9FE-5843-4C1C-9894-B59D07FDD4FB

## Schedule I

Schedule of Notes

1. Convertible line of Credit Promissory Note ("**Promissory Note**"), dated November 30, 2020, by and between Robert Dawson and Intrepid Studios, Inc., as amended by the First Amendment to Promissory Note, dated December 1, 2022, Second Amendment to Promissory Note, dated December 30, 2022, Third Amendment to Promissory Note, dated January 11, 2023, and Fourth Amendment to Promissory Note, dated January, 11, 2023.