# EXHIBIT II

Gail C. Lin (SBN 212334)
RAISNER ROUPINIAN LLP
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: gcl@raisnerroupinian.com

Jack A. Raisner (*pro hac vice forthcoming*)
René S. Roupinian (*pro hac vice forthcoming*)
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: jar@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiffs, on behalf of themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB BURDECKI and ZAKARY STRANGE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>INTREPID STUDIOS, INC., STEVEN SHARIF, RYAN OGDEN, AARON BARTELS, THERESA FETTE, ROBERT D. DAWSON, and TFE GAMES HOLDING, LLC,<br><br>    Defendants. | CASE NO. 3:26-cv-00728-AGS-JLB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATION OF WARN ACT 29 U.S.C. § 2101, ET SEQ.,**<br><br>**(2) VIOLATION OF CALIFORNIA LABOR CODE § 1401 ET. SEQ.,**<br><br>**(3) VIOLATION OF CALIFORNIA LABOR CODE § 201 ET. SEQ.,**<br><br>**(4) VIOLATION OF OHIO REVISED CODE § 4113.15, and**<br><br>**(5) VIOLATION OF CALIFORNIA LABOR CODE §§ 201, 203, 206, 226, 227.3, 558.1** |

Plaintiffs Jacob Burdecki and Zakary Strange ("Plaintiffs") allege on behalf of themselves and the putative class of those similarly situated as follows:

## NATURE OF THE ACTION

1. Defendant, Intrepid Studios, Inc., is a company in the gaming and entertainment industry based in San Diego, California. Defendants Steven Sharif, Ryan Ogden, Aaron Bartels, Theresa Fette, Robert D. Dawson and TFE Games Holdings, LLC (together with Intrepid Studios, Inc., "Defendants") were and are variously owners, board members and successors of the company.

2. Plaintiffs and the other similarly situated former employees worked for Defendants until about February 2, 2026, when they were notified that they were terminated effective the next day.

3. Plaintiffs, along with an estimated 200 other similarly situated employees, were terminated without 60 days' advance written notice.

4. The employees were not paid for their final weeks of work.

5. The employees were not paid for their accrued paid time off (i.e., vacation).

6. Plaintiffs bring this action on behalf of themselves and the other similarly situated former employees who worked for Defendants and who were terminated without cause, as part of, or as the result of, the mass layoffs, plant closings, or termination of a covered establishment ordered by Defendants on or about February 2, 2026 and within thirty (30) days of that date, and who were not provided 60 days' advance written notice of their terminations by Defendants, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, and the California Labor Code § 1401 *et. seq.* ("CAL-WARN Act") (together, the "WARN Acts").

7. Plaintiffs, on behalf of themselves and all similarly situated employees, seek to recover damages and penalties from Defendants pursuant to California Labor Code §§ 201, 203, 206, 226, 227.3, and 558.1.

8. Plaintiffs, on behalf of themselves and all similarly situated employees, seek to be paid their accrued paid time off ("PTO") and unpaid wages for all employees under the laws of California and Ohio.

9. Plaintiffs, on behalf of themselves and all similarly situated employees, also seek to recover under California and Ohio state law for Defendants' failure to pay wages owed for their final weeks of work, unused paid time off, and to issue a final paystub, and waiting time penalties.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367, 29 U.S.C. § 2104(a)(5).

11. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

12. The Court has jurisdiction over Defendants because they did business in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

### *Plaintiffs*

13. Plaintiff Jacob Burdecki was employed by Defendants as a Gameplay Engineer I and worked remotely, and reported to and received assignments from Defendants' facility located at 3721 Valley Centre Drive, Suite 200, San Diego, California (the "Facility") from January 2025 until his termination on or about February 2, 2026.

14. Plaintiff Burdecki is a resident of the state of Ohio.

15. Plaintiff Zakary Strange was employed by Defendants as a technical director and worked at Defendants' facility located at 3721 Valley Centre Drive, Suite 200, San Diego, California (the "Facility") from January 2025 until his termination on or about February 2, 2026.

16. Plaintiff Strange is a resident of the state of California.

17. Plaintiffs were both terminated without 60 days' written notice.

18. Plaintiffs were both terminated without cause.

19. On information and belief, an estimated 200 similarly situated former employees who worked at or reported to the Facility, as defined by the WARN Act and CAL-WARN Act, were also terminated on or about February 2, 2026, without 60 days' written notice.

-3-                                         3:26-cv-00728-AGS-JLB
                                 FIRST AMENDED CLASS ACTION COMPLAINT

***Defendants***

20.     Upon information and belief, Defendant Intrepid Studios, Inc. ("Intrepid Studios" or "Intrepid"), is a California registered corporation with its headquarters in San Diego, California.

21.     Upon information and belief, Intrepid Studios was co-founded by Steven Sharif in 2015 to produce video games and related products in the entertainment industry.

22.     Upon information and belief and at all relevant times, the following individuals were members of Intrepid Studio's Board of Directors and/or officers of Intrepid Studios: Steven Sharif ("Sharif"), Ryan Ogden ("Ogden"), Aaron Bartels ("Bartels"), Theresa Fette ("Fette"), and Robert D. Dawson ("Dawson") (together, Sharif, Ogden, Bartels, Fette and Dawson are collectively referred to as the "Individual Defendants" or "Board Members").

23.     Upon information and belief, and at all relevant times, Defendant Sharif was the founder, Chief Executive Officer, member of the Board of Directors and Creative Director of Intrepid Studios, and owned 4.888% of its shares.

24.     Upon information and belief, and at all relevant times, Defendant Ogden was Chief Financial Officer, a member of the Board of Directors of Intrepid Studios and owned 1.155% of its shares.

25.     Upon information and belief, Defendant Fette was a member of the Board of Directors of Intrepid Studios and owned .237% of its shares.

26.     Upon information and belief, Defendant Dawson was a member of the Board of Directors of Intrepid Studios and a secured lender and owner of 65.688% of its shares, having provided Intrepid Studios outstanding loans or equity capital infusions totaling approximately $80 million.

27.     On or about January 7, 2026, Defendant Dawson amended a UCC financing statement securing all the assets belonging to Intrepid Studios and changing the name of the secured lender from Robert Dawson to TFE Games Holdings, LLC.

28.     Defendant TFE Games Holdings, LLC ("TFE"), is a Delaware limited liability company, which, on information and belief, Dawson controlled and created to receive and deploy

-4-

Intrepid's assets.

29. On information and belief, Dawson, with the knowledge of the other Board Members, caused TFE to foreclose on the Intrepid Studios assets.

30. Upon information and belief, on or about January 16, 2026, TFE acquired ownership of all the assets belonging to Intrepid, including its shares, in a UCC Article 9 private sale.

31. On information and belief, the Defendants recognized that in light of Intrepid Studio's illiquidity and the foreclosure sale, the mass layoff of its employees would be necessary.

32. On information and belief, the Defendants caused Intrepid to issue WARN Act notices announcing the termination of Intrepid Studio's workforce on or about January 31, 2026, and terminated the employees on or about February 2, 2026, without 60 days' advance notice.

33. In terminating the employees, the Defendants neither paid employees for their final two weeks of work nor paid their accrued paid time off.

34. Until on or about February 2, 2026, Plaintiffs and the similarly situated employees were employed by Defendants and worked at or reported and received assignments from the Facility.

35. Upon information and belief, Defendants terminated Plaintiffs and the other similarly situated employees on or about February 2, 2026.

36. Defendants failed to provide sixty (60) days' advance written notice (or any advance notice at all) to Plaintiffs and the similarly situated employees of their impending terminations.

## WARN ACT CLASS ALLEGATIONS UNDER 29 U.S.C. § 2104(a)(5)

37. Plaintiffs are aggrieved representative "person(s)" authorized by Congress to "sue either for [themselves] or for other persons similarly situated, or both[.]" 29 U.S.C. § 2104(a)(5).

38. Plaintiffs bring this representative action on behalf of themselves and all other similarly situated former employees of Defendants who worked at or reported to the Facility and were terminated without cause beginning on or about February 2, 2026 and within 30 days of that date, or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendants on that date, pursuant to 29 U.S.C. § 2104(a)(5).

39.     The persons in the Class identified above ("WARN Class Members"), are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

40.     On information and belief, the identity of the WARN Class Members and their recent residence addresses is contained in the books and records of Defendants.

41.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in Defendants' books and records.

42.     There are questions of law and fact common to the WARN Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a)     whether the Class Members were employees of the Defendants who worked at or reported to the Facility;

(b)     whether Defendants terminated the employment of the Class Members without cause on their part and without giving them 60 days' advance written notice; and

(c)     whether Defendants paid the Class members 60 days' wages and benefits as required by the WARN Act.

43.     Plaintiffs' claims are typical of those of the WARN Class. Plaintiffs, like other WARN Class members, worked at or reported to the Facility and were terminated without cause on or about February 2, 2026, due to the mass layoffs ordered by Defendants.

44.     Plaintiffs will fairly and adequately protect the interests of the WARN Class. Plaintiffs have retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

45.     Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the

context of WARN Act litigation where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

46. Concentrating all the potential litigation concerning the WARN Act rights of the members of the WARN Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

47. Plaintiffs intend to send notice to all members of the WARN Class to the extent required by Rule 23.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy – particularly in the context of WARN Act litigation, where the individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants.

## CALIFORNIA WARN CLASS ALLEGATIONS, CAL. LABOR CODE § 1401

49. Plaintiffs bring the Second Claim for Relief for violation of Labor Code § 1401 on behalf of themselves and a class of similarly situated persons pursuant to Labor Code § 1404 and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or were assigned and reported to Defendants' Facility and were terminated without cause beginning on or about February 2, 2026 (the "CAL WARN Class")

50. The persons in the CAL WARN Class identified above ("CAL WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

3:26-cv-00728-AGS-JLB
FIRST AMENDED CLASS ACTION COMPLAINT

51.    On information and belief, the identity of the members of the class and the recent residence address of each of the CAL WARN Class Members is contained in Defendants' books and records.

52.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each CAL WARN Class Member at the time of his/her termination is contained in the books and records of Defendants.

53.    Common questions of law and fact exist as to members of the CAL WARN Class, including, but not limited to, the following:

      (a)    whether the members of the CAL WARN Class were employees of the Defendants;

      (b)    whether Defendants unlawfully terminated the employment of the members of the CAL WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the CAL WARN Act; and

      (c)    whether Defendants unlawfully failed to pay the CAL WARN Class members 60 days wages and benefits as required by the CAL WARN Act.

54.    CAL-WARN Class Plaintiff Zakary Strange's claims are typical of those of the CAL-WARN Class.  The CAL-WARN Class Plaintiff, like other CAL WARN Class members, worked at or reported to one of the Facility and were terminated on or about February 2, 2026, due to the terminations ordered by Defendants.

55.    CAL WARN Class Plaintiff Strange will fairly and adequately protect the interests of the CAL WARN Class.  The CAL WARN Class Plaintiff has retained counsel competent and experienced in complex class actions on behalf of employees, including the CAL WARN Act, the federal WARN Act, other similar state laws, and employment litigation.

56.    Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the CAL WARN Class predominate over any questions affecting only individual members of the CAL WARN Class, and because a class action superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of CAL WARN Class Act litigation, where individual plaintiffs may lack

the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants, and damages suffered by individual CAL WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

57.     Concentrating all the potential litigation concerning the CAL WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the CAL-WARN Act rights of all the members of the Class.

58.     The CAL WARN Class Plaintiff intends to send notice to all members of the CAL-WARN Class to the extent required by Rule 23.

## SUCESSOR LIABILITY ALLEGATIONS AS TO TFE

59.     Upon information and belief, Defendant TFE impliedly or expressly assumed Intrepid Studio's liability to the employees when it foreclosed on all the assets belonging to Intrepid.

60.     Defendant TFE represented to the Clark County, Nevada District Court that it is a "successor-in-interest" to Intrepid and that, without Intrepid Studio's records, Defendant TFE would not be able to "fulfill its obligations under the WARN Act, among other obligations."

61.     Upon information and belief, Dawson caused TFE to foreclose on Intrepid Studio's assets with the intention of continuing Intrepid Studio's operations and launching Intrepid Studio's game, *Ashes of Creation*.  Shortly before the foreclosure, he told the other Board Members that "we need to terminate all [employees] and hire employees we are keeping in the new entity" and that "the game needs another 14 mil to get to a successful launch."

62.     Upon information and belief, Defendant Intrepid Studios cannot provide adequate relief to the Plaintiffs.

3:26-cv-00728-AGS-JLB
FIRST AMENDED CLASS ACTION COMPLAINT

63.     Upon information and belief, Defendant TFE was either on notice of Intrepid Studio's WARN and CAL WARN liability when foreclosing on Intrepid Studio's assets, or caused that liability after the foreclosure.  Before the foreclosure, Dawson discussed with the other Board Members the potential WARN liability resulting from the layoffs.

**FIRST CLAIM FOR RELIEF**
**FEDERAL WARN ACT, 29 U.S.C. § 2104 ET SEQ.**

64.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

65.     At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

66.     At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639.3(a)(1).

67.     At all relevant times, Plaintiffs and the other similarly situated former employees were employees of Defendants as that term is defined by 29 U.S.C. §2101.

68.     On or about February 2, 2026, and within 30 days thereafter, Defendants ordered mass layoffs and/or plant closing at the Facility, as that term is defined by 29 U.S.C. § 210l(a)(2).

69.     The mass layoffs at the Facility resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty of Defendants' employees as well as more than 33% of Defendants' workforce at the Facility, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8).

70.     Plaintiffs and the Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs ordered by Defendants at the Facility.

71.     Plaintiffs and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 210l(a)(5).

72. Defendants were required by the WARN Act to give Plaintiffs and the Class Members at least 60 days' advance written notice of their terminations.

73. Defendants failed to give Plaintiffs and the Class members written notice that complied with the requirements of the WARN Act.

74. Plaintiffs, and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

75. Defendants failed to pay Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, incentives, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to make the pension and 401(k) contributions and provide employee benefits under ERISA, other than health insurance, for 60 days from and after the dates of their respective terminations.

76. In the alternative, Defendant TFE assumed Intrepid's liabilities when it foreclosed on Intrepid's assets, intending to continue Intrepid's operations and with notice of the WARN violation.

77. On information and belief, Intrepid is unable to provide adequate relief to the WARN Class members.

78. As such, Defendant TFE is liable for the WARN violation as a successor to Intrepid.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF CALFORNIA WARN ACT, CAL. LAB. CODE, § 1401 et. seq.

79. Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

80. Plaintiffs bring the Second Claim for Relief for violation of Lab. Code § 1401 on behalf of themselves and a class of similarly situated persons pursuant to Lab. Code § 1404 and Federal Rules of Civil Procedure 23(a) and (b), who worked at, reported to, or received assignments from the Facility and were terminated without cause on or about February 2, 2026 and within 30 days of that date (the "CAL-WARN Class").

81. All putative class members in this action are members of the WARN Class, the CAL WARN Class, or both.

82.     Pursuant to Lab. Code § 1401(b), "'[e]mployer' means any person . . . who directly or indirectly owns and operates a covered establishment.   A parent corporation is an employer as to any covered establishment directly owned and operated by its corporate subsidiary."

83.     Upon information and belief and at all relevant times, Defendants were an employer of the CAL-WARN Class as that term is defined by Lab. Code § 1401(b) that directly or indirectly owned and operated at least one covered establishment in San Diego, California that employed an estimated 200 employees.

84.     Defendants violated CAL-WARN by terminating Plaintiffs' employment and the employment of other similarly situated employees pursuant to a "mass layoff," "relocation" or "termination" as defined in Lab. Code § 1401 on or about February 2, 2026 or thereafter,  without giving written notice at least 60 days before the order took effect to: (1) the employees affected by the order and (2) the Employment Development Department and local officials.

85.     As a result of Defendants' violation of Lab. Code § 1401, Plaintiffs and the other similarly situated employees are entitled to 60 days of back pay under Lab. Code § 1402(a-b).

86.     In the alternative, Defendant TFE assumed Intrepid's liabilities when it foreclosed on Intrepid's assets, intending to continue Intrepid's operations and with notice of the CAL WARN violation.

87.     On information and belief, Intrepid is unable to provide adequate relief to the CAL WARN Class members.

88.     As such, Defendant TFE is liable for the WARN violation as a successor to Intrepid.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF CALFORNIA WAGE LAWS,  CAL. LAB. CODE, §§ 201, 203, 206, 226, 227.3, 558.1

89.     Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

-12-

3:26-cv-00728-AGS-JLB

FIRST AMENDED CLASS ACTION COMPLAINT

90.     Plaintiffs seek to recover under California state law for the Defendants' failure to pay wages owed for their final weeks of work, pay unused paid time off, to issue final paystubs, to maintain accurate work records and failure to provide wage statements. Plaintiffs also seek waiting time and related penalties for Defendants' failure to pay earned wages immediately upon termination, in violation of Cal. Lab. Code §§ 201, 206, 226 and 227.3.

91.     Upon information and belief, the Individual Defendants, together with Defendant Intrepid Studios and Defendant TFE, exercised control over the workers' wages (including the decision over whether to pay out the vacation wages upon termination), hours, or working conditions, (b) suffered and permitted them to work, and/or (c) engaged them, thereby creating a common law employment relationship.

92.     Pursuant to Cal. Lab. Code §§ 201 and 227.3, upon the discharge of Plaintiffs and the other similarly situated former employees on February 2, 2026, their earned and unpaid wages, including unused vacation pay, became due and payable immediately.

93.     Pursuant to Cal. Lab. Code § 203, Defendants' failure to issue to Plaintiffs and the other similarly situated former employees their final paychecks, in full and itemized statements upon discharging them from their employment, as required by Cal. Lab. Code § 201, renders Defendants liable for waiting time penalties.

94.     Defendants' failure to pay accrued vacation wages upon termination represents a violation of Cal. Labor Code §§ 201 and 227.3 (and IWC Wage Order 8) and as such are liable under Cal. Labor Code § 203 and 256 for waiting time penalties of up to 30 days' wages.

95.     In violation of Cal. Lab. Code § 206, the Individual Defendants caused Defendant Intrepid Studios and Defendant TFE to fail to immediately pay Plaintiffs and the other similarly situated former employees their undisputed wages in a dispute.

96.     Upon information and belief, the Individual Defendants caused Defendant Intrepid Studios and Defendant TFE to fail to provide itemized wage statements to Plaintiffs and the other similarly situated former employees accurate itemized statements in compliance with Cal. Labor Code § 226(a), which requires writings showing: (1) gross wages earned, (2) total hours worked

3:26-cv-00728-AGS-JLB
FIRST AMENDED CLASS ACTION COMPLAINT

by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of their social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Cal. Labor Code § 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

97.     Plaintiffs were personally harmed by Individual Defendants' intentional and willful violation of Cal. Labor Code § 226's requirement to provide detailed wage statements and are seeking remedies for themselves and all others similarly situated pursuant to 226.6.

98.     The Individual Defendants, as officers, agents, employees, fiduciaries, or other persons who had the control, receipt, custody, or disposal of, or pays, the wages due to Plaintiff and those similarly situate, and who knowingly and intentionally participated or aided in the violation of Cal. Lab. Code §226, are each liable pursuant to Cal. Labor Code § 226.6.

99.     Pursuant to Cal. Labor Code § 558.1 (a), "[a]ny employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation."

100.     The Individual Defendants, each of whom was a natural person who was an owner, director, officer, or managing agent of the employer Intrepid Studios, who violated, or caused to be violated, Section 203 and 226, are each liable as the employer for such violations, pursuant to Cal. Labor Code § 558.1.

-14-                                          3:26-cv-00728-AGS-JLB

101.   Plaintiffs will seek to certify a subclass of these similarly situated individuals to the extent necessary.

102.   In the alternative, Defendant TFE assumed Intrepid Studio's liabilities when it foreclosed on Intrepid Studio's assets, intending to continue Intrepid Studio's operations and with notice of the Labor Code violations.

103.   On information and belief, Intrepid is unable to provide adequate relief to the class members.

104.   As such, Defendant TFE is liable for the Labor Code violations as a successor to Intrepid.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF OHIO WAGE LAWS: OHIO REVISED CODE § 4113.15**

105.   Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

106.   Plaintiffs seek to recover under Ohio state law for Defendants' failure to pay wages owed for their final weeks of work, unused paid time off, and to issue a final paystub, and waiting time penalties, for themselves and the other similarly situated employees who worked in Ohio.

107.   Pursuant to Ohio Revised Code § 4113.15, upon the discharge of Plaintiffs and the other similarly situated former employees on February 2, 2026, their earned and unpaid wages, commissions, bonuses, and unused vacation pay (unless a clear, written, enforceable policy for forfeiture of unused vacation exists), became due and payable by the next scheduled payday or within 15 days, whichever is later.

108.   Defendants were also required, pursuant to Ohio law, to issue to Plaintiff Jacob Burdecki and the other similarly situated former employees their final paychecks, in full and itemized statements, upon discharging them from their employment on February 2, 2026, but failed to do so.

109.   Defendants, as the employer that willfully failed to pay in accordance with Ohio Revised Code § 4113.15, are liable to Plaintiff Burdecki and the other similarly situated former employees for damages and penalties.

-15-

3:26-cv-00728-AGS-JLB
FIRST AMENDED CLASS ACTION COMPLAINT

110. Plaintiffs will seek to certify a subclass of these similarly situated individuals to the extent necessary.

111. In the alternative, Defendant TFE assumed Intrepid Studio's liabilities when it foreclosed on Intrepid Studio's assets, intending to continue Intrepid Studio's operations and with notice of the Ohio Wage Law violations.

112. On information and belief, Intrepid is unable to provide adequate relief to the class members.

113. As such, Defendant TFE is liable for the Ohio Wage Law violations as a successor to Intrepid.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs, on behalf of themselves and all other similarly situated persons, pray for the following relief as against Defendants:

A. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b), Plaintiffs and the other similarly situated former employees constitute a single class;

B. Designation of the Plaintiffs as Class Representatives;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment in favor of Plaintiffs and each of the "affected employees" equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(4), California Labor Code § 1402(a), Ohio Revised Code § 4113.15, and all relevant state laws;

E. A judgment in favor of Plaintiffs and each similarly situated employee whose rights under Cal. Lab. Code §§ 201, 206, 226, and 558.1, for wages owed, waiting time penalties, and all associated remedies, including without limitation, unpaid principal

amounts, penalties, injunctive relief, interest and attorney's fees and costs, under the Labor Code §§ 203, 226(e), 226(h), 226.3, 226.6, 227.3, and 558.1;

F.      A judgment in favor of all similarly-situated employees for any unpaid wages and accrued vacation or paid time off benefits, under the laws of the respective states in which they worked prior to their termination on or about February 2, 2026.

G.      Interest as allowed by law on the amounts owed under the preceding paragraphs;

H.      Plaintiffs' reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6), Cal. Lab. Code § 1404, and all relevant state laws; and

I.      Such other and further relief as this Court may deem just and proper.

DATED: February 20, 2026          Respectfully submitted,

By: /s/ *Gail C. Lin*
Gail C. Lin (SBN 212334)
RAISNER ROUPINIAN LLP
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: gcl@raisnerroupinian.com

Jack A. Raisner (*pro hac vice forthcoming*)
René S. Roupinian (*pro hac vice forthcoming*)
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: jar@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiffs and the other similarly situated former employees*

3:26-cv-00728-AGS-JLB
FIRST AMENDED CLASS ACTION COMPLAINT