# EXHIBIT B

PLEDGE AND SECURITY AGREEMENT

THIS PLEDGE AND SECURITY AGREEMENT **("Agreement"),** dated as of March 23, 2022, is made by Intrepid Studios, Inc. **("Borrower"),** in favor of Robert D Dawson and Intrepid Creations, LLC (the **"Secured Party"),** with reference to the following facts:

RECITALS

A.    Intrepid Studios, Inc. is the borrower in the concurrently executed Promissory Note ("Note") dated March 23, 2022 by and between Borrower and Secured Party. As collateral for all sums borrowed by Borrower under the Notes from Secured Party, the Borrower pledges a lien and security interest in certain assets belonging to Borrower. The Borrower warrants and represents that he has the power and authority to pledge an ownership/lien interest in Borrower's assets to Secured Party.

B.    Pursuant to the Note, Borrower owes Secured Party a total of $8,000,000.00, plus all sums set forth in future notes and advances to Borrower from Secured Party, plus accrued interest ("Loan").

C.    Secured Party requires that, as security for repayment of the Note, Borrower, by and through the Borrower, pledges to Secured Party a lien and ownership interest in the following assets that may be perfected and executed upon in the event of default under the Note. Such lien and security interest shall allow Secured Party the full right to sell any and all assets that are listed as collateral below in order to satisfy any amounts owing to Secured Party by Borrower.

D.    Secured Party shall be allowed to file a UCC-1 Financing Statement against the Borrower pursuant to this Agreement.

E.    NOW, THEREFORE, in order to induce Secured Party to enter into the Note, and for other good and valuable consideration, the receipt and adequacy of which hereby is acknowledged, Borrower hereby represents, warrants, covenants, agrees, pledges and grants as follows:

1.    Definitions. Terms used in this Agreement and not otherwise defined in this Agreement shall have the meanings given those terms in the Note.

2.    Grant of Security Interest. As security for the payment and performance of the Obligations (as hereinafter defined), Borrower hereby pledges to the Secured Party, and grants to Secured Party a security interest and lien in and to, all of the following (collectively, the **"Pledged Collateral"):**

(a)    All assets belonging to the Borrower, including, but not limited to, shares, intellectual property, software, all real property, personal property, trademarks, licenses, cash, accounts and notes receivable, inventory, equipment, and any and all other assets, intangible or tangible, belonging to Borrower.

(b)    All proceeds of the foregoing, whether voluntary or involuntary.

3.    Obligations Secured.  The security interest granted hereunder secures the prompt payment and performance of each of the following (collectively, the **"Obligations"):**

(a)    All obligations of the Borrower under the Note;

(b)    Borrower obligations under this Agreement;

(c)    All other obligations owing by Borrower and Borrower to the Secured Party, but only to the extent that any such obligation is described or referred to in a document, executed by Borrower at the request of the Secured Party, which states that such obligation is secured hereby;

(d)    All interest that accrues on all or any part of any of the Obligations including without limitation interest that accrues after the filing of any petition or pleading by or against Borrower or Borrower any other person or entity for a proceeding under any bankruptcy or debtor relief law;

(e)    Any and all amendments, extensions and other modifications of any of the foregoing, including, without limitation, amendments, extensions and other modifications that are evidenced by new or additional documents or that change the rate of interest on any Obligation.

4.    Representations and Warranties of Borrower.  Borrower represents, warrants and agrees to and with the Secured Party that:

(a)    Borrower has good title to the Pledged Collateral, free from any liens, encumbrances, defenses or other claims or restrictions whatsoever;

(b)    The security interest in the Pledged Collateral created hereby constitutes a first, prior and indefeasible security interest;

(c)    Borrower has the right to grant a security interest in the Pledged Collateral pursuant to this Agreement without restriction, and the Pledged Collateral has been duly and validly pledged with the Secured Party in accordance with all applicable laws;

(d)    Borrower has all requisite power and authority to execute and deliver, and to perform all of its obligations under, this Agreement:

(e)    The execution and delivery by Borrower of, and the performance by Borrower of each of its obligations under, this Agreement have been duly authorized by all necessary action and do not and will not:

(i)    require any consent or approval not heretofore obtained of any beneficiary or creditor of Borrower;

(ii)    result in or require the creation or imposition of any lien or right of others upon or with respect try the Pledged Collateral, other than as provided in this Agreement;

-2-

          (iii)     violate any provision of any law, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Borrower; or

          (iv)     result in a breach of or constitute a default under, or cause or permit the acceleration of any obligation owed under, any indenture or loan or credit agreement or any other material agreement, lease or instrument to which Borrower is a party or by which Borrower or any property of Borrower is bound or affected;

          (f)     No authorization, consent, approval, order, license, permit or exemption from, or filing with, registration or qualification with, any governmental agency is or will be required under applicable law to authorize or permit the execution and delivery by Borrower of, and the performance by Borrower of all of its obligations under, this Agreement; and

          (g)     This Agreement constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms.

5.        <u>Further Assurances.</u> Borrower agrees that at any time, and from time to time, at its own expense Borrower will promptly execute, deliver and file or record all further instruments and documents, and will take all further actions, including, without limitation, executing, delivering, filing or taking other actions, that Secured Party may reasonably request in order to perfect and protect any pledge or security interest granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Pledged Collateral and to preserve, protect and maintain the Pledged Collateral and the value thereof, including, without limitation, payment of all taxes, assessments and other charges imposed on or relating to the Pledged Collateral. Borrower hereby consents and agrees that the issuers of, or obligors on, the Pledged Collateral, or any registrar, transfer agent, depository or trustee for any of the Pledged Collateral, shall be entitled to accept the provisions of this Agreement as evidence of the right of the Secured Party to effect any transfer or exercise any right hereunder, notwithstanding any other notice Borrower or any other Person to such issuers or such obligors or to any such registrar or transfer agent or trustee. Borrower hereby agrees that the Secured Party may, without further notice to, consent or authorization by or signature of Borrower, file financing statements with respect to the security interest granted pursuant to this Agreement.

      6.        <u>Release of Collateral.</u> So long as there is no Event of Default, and once all sums due under the Note are paid, Secured Party will no longer have any rights under this Agreement.

      7.        <u>Secured Party May Perform Obligations:</u> If Borrower fails to perform any obligation contained herein, Secured Party may, but without any obligation to do so and without notice to or demand upon Borrower, perform the same and take such other action as Secured Party may deem necessary or desirable to protect the Pledged Collateral or Secured Party's security interests therein, Secured Party being hereby authorized (without limiting the general nature of the authority hereinabove conferred) to pay, purchase, contest and compromise any lien which in the reasonable judgment of Secured Party appears to be prior or superior to the Secured Party's security interests, and in exercising any such powers and authority to pay necessary expenses, employ counsel and pay reasonable attorneys' fees. In any such event, Borrower hereby agrees to repay immediately upon demand all sums so expended by Secured Party,

together with interest from the date of expenditure at the default rate provided for in the Note. Secured Party shall not be under any duty or obligation to (i) preserve, maintain or protect the Pledged Collateral or any of any Borrower's rights or interest therein, (ii) exercise any rights, powers and elections with respect to the Pledged Collateral, or (iii) except as provided to the contrary herein, make or give any notices of default, presentments, demands for performance, notices of nonperformance or dishonor, protests, notices of protest or notice of any other nature whatsoever in connection with the Pledged Collateral on behalf of Borrower or any other Person having any interest therein; and the Secured Party does not assume and shall not be obligated to perform the obligations of Borrower, if any, with respect to the Pledged Collateral.

8.      Transfers and Other Liens. Borrower agrees that it shall not (i) assign, exchange, transfer or otherwise dispose of, or contract to assign, exchange, transfer or otherwise dispose of, or grant any option with respect to, any of the Pledged Collateral, (ii) create or permit to exist any lien upon or with respect to any of the Pledged Collateral, except for liens created hereunder in favor of the Secured Party, or (iii) take any action with respect to the Pledged Collateral which would materially impair the Secured Party's rights hereunder. Borrower shall, at Borrower's sole cost and expense, defend any claim that may be made against the Pledged Collateral or the Secured Party• s security interests therein.

9.      INTENTIONALLY DELETED

10.     Events of Default and Remedies.

(a)     Events of Default. The occurrence of any of the following, whatever the reason therefor, shall constitute an Event of Default:

(i)      the occurrence of an "Event of Default" under the Note; or

(ii)     failure by Borrower to perform any obligation under this Agreement or

(iii)    any representation or warranty in this Agreement proves to be incorrect in any material respect when made.

(b)     Rights Upon Event of Default. Upon the occurrence of an Event of Default under this Agreement, the Secured Party shall have all rights and remedies that are available to the Secured Party under this Agreement, under applicable law and/or in equity in any jurisdiction where enforcement is sought. In addition, the Secured Party shall have all rights and remedies of a secured party under the Uniform Commercial Code as enacted in any such jurisdiction, and shall also have the following rights and remedies, all of which may be exercised with or without further notice to Borrower:

(i)      to enforce payment and prosecute any action or proceeding with respect to any and all of the Pledged Collateral and take or bring, in the Secured Party's name or in the name of Borrower, all steps, actions, suits or proceedings reasonably deemed by the Secured Party to be necessary or desirable to effect collection of or to realize upon the Pledged Collateral;

(ii)    in accordance with applicable law, to take possession of the Pledged Collateral with or without judicial process;

(iii)    to transfer any or all of the Pledged Collateral into the name of the Secured Party or its nominee or nominees; and

(iv)    in accordance with applicable law, to foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Pledged Collateral by any available judicial procedure or without judicial process, and, in accordance with the terms of this Agreement, to assign or otherwise dispose of the Pledged Collateral or any part thereof, with or without representations or warranties, and upon such terms as shall be acceptable to Secured Party;

all at the sole option of and in the sole discretion of Secured Party.

11.    Reserved.

12.    Notice. All notices, requests and other communications required or permitted to be given hereunder shall be in writing and shall be deemed given (i) upon receipt, if given by personal delivery, (ii) upon confirmation of delivery, if given by electronic mail and (iii) upon the third business day following mailing, if mailed by deposit in the United States mail, with certification and postal charges prepaid.

Any party may change the address or telecopy number or email address to which notices are to be sent to it by giving written notice of such change of address or telephone number to the other parties in the manner above provided for giving notice.

13.    Other Agreements. Nothing in this Agreement shall in any way modify or limit the effect or terms or conditions set forth in any other security or other agreement executed by **Borrower in connection with the Obligations, but each and every term and condition hereof shall** be in addition thereto.

14.    Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition of unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15.    No Waivers; Cumulative Remedies. The Secured Party shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies hereunder and no waiver shall be valid unless in writing, signed by Secured Party, and then only to the extent therein set forth. A waiver by the Secured Party of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any future occasion. No failure to exercise nor any delay in exercising any right, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein

provided are cumulative and may be exercised singly or concurrently, and are not exclusive of any rights or remedies provided by law.

16.    Amendments; Applicable Law; Successors and Assigns. None of the terms or provisions of this Agreement may be altered, modified or amended except by an instrument in writing. duly executed by Secured Party and Borrower. This Agreement and all obligations of Borrower hereunder shall be binding upon the permitted successors and assigns of Borrower, and shall, together with the rights and remedies of the Secured Party hereunder, inure to the benefit of the Secured Party and its successors and assigns. This Agreement shall be governed by, and be construed, enforced and interpreted in accordance with, the internal laws of the State of California. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties.

17.    Costs, Expenses and Attorneys' Fees. All payments, advances. charges, costs and expenses, including reasonable attorneys' fees, made or incurred by the Secured Party in exercising any right, power or remedy conferred by this Agreement or in the enforcement thereof shall be paid to the Secured Party by Borrower immediately and without demand, together with interest at the default rate per annum specified in the Note.

**[Remainder of Page Intentionally Left Blank]**

THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN AND AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, Borrower has caused this Agreement to be duly executed as of the date first above written.

**BORROWER:**

By: _____

Steven Sherif, CEO/President of Intrepid Studios, Inc.

**SECURED PARTY:**

By: _____

Intrepid Creations, LLC, by
Robert D. Dawson, Manager

By: _____

Robert D. Dawson, Individually

-7-