Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDING LLC, and JASON CARAMANIS,<br><br>Defendants,<br><br>and<br><br>INTREPID STUDIOS, INC.,<br><br>Nominal Defendant. | Case No.: 3:26-cv-00965-LL-MMP<br><br>**PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER**<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT**<br><br>Judge:  Hon. Linda Lopez<br>Hearing Date: June 11, 2026<br><br>Action Filed: February 14, 2026<br>Trial Date:  Not Set |

WITHERS
BERGMAN LLP

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................................1

II.  ARGUMENT ................................................................................................................2

    A.  Defendants' Counter-Motion Requests Substantially the Same Relief as Plaintiff Seeks ......................................................................................2

    B.  Defendants Fail to Show a Receiver is Unnecessary............................5

    C.  Defendants' Factual Allegations Against Plaintiff Demonstrate the Need for a Receiver..........................................................................8

III.  CONCLUSION ...........................................................................................................10

WITHERS BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This dispute no longer turns on whether a receiver should be appointed over Intrepid Studios, Inc. ("Intrepid" or the "Company")—it turns on ensuring that the receiver has the authority necessary to meaningfully protect the Company and its assets. Through meet and confer efforts and subsequent filings, the parties have converged on the central premise that a neutral, limited receiver is appropriate to preserve Intrepid's intellectual property, monitor any Article 9 foreclosure process, and report to the Court on the propriety of any such sale. Defendants' Counter-Motion, in substance, seeks the same core relief Plaintiff has requested.

What remains is not a genuine disagreement over whether a receiver is necessary, but an attempt by Defendants to narrow the receiver's authority in a manner that would undermine the very protections a receiver would offer. That effort fails for two independent reasons. First, the limited additional receiver's authority Plaintiff seeks—particularly with respect to confirming the validity of Defendants' asserted liens and ensuring the propriety of any foreclosure—is inherent in, and indispensable to, the receiver's agreed-upon duties. Second, Defendants' own conduct, including their admitted role in a prior improper foreclosure and their stated intention to pursue another, underscores the ongoing and imminent risk to Intrepid's assets absent neutral oversight.

This case presents precisely the circumstances in which equitable intervention is warranted. Plaintiff brings this action derivatively on behalf of Intrepid to remedy and prevent further harm arising from Defendants' breaches of fiduciary duty and self-interested conduct. Appointment of a receiver is not an end in itself; it is a necessary mechanism to preserve the status quo until Plaintiff's claims, including equitable claims, are heard on their merits; safeguard the Company's assets; and ensure that any future transactions affecting Intrepid occur under the supervision of a neutral fiduciary accountable to this Court.

WITHERS
BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

Defendants' attempts to recast the issues, including through extended factual accusations against Plaintiff, do not alter this analysis. At most, they confirm the depth of the parties' disagreements and the corresponding need for a neutral party to oversee Intrepid's affairs during the pendency of this action. Without such oversight, Intrepid remains exposed to the very risks—conflicted decision-making, asset dissipation, and unlawful foreclosure—that gave rise to this litigation in the first place.

## II.    ARGUMENT

Defendants fail to rebut Plaintiff's arguments that the Court should appoint a receiver with the powers to protect Intrepid's assets, oversee any Article 9 sale, and investigate the validity of Defendants' liens prior to a foreclosure. First, Defendants ignore that, through the meet and confer process, the parties have essentially agreed on the same powers and duties for a receiver. The only remaining dispute—whether or not the receiver should be empowered to investigate the propriety of Defendants' alleged liens—is artificial, as confirming of the validity of the liens is a duty inherent in the receiver's duties to oversee any Article 9 foreclosure and sale. Second, Defendants also fail to demonstrate that a receiver with this particular power is unnecessary. To the contrary, appointment of a receiver is a necessary means to protect Intrepid against future harm from Defendants' self-interested actions while Plaintiff's claims are considered on their merits. Last, Defendants' litany of accusations against Plaintiff, even if true, are irrelevant and do nothing to detract from Defendants' own bad acts. Plaintiff and Defendants differing factual assertions further confirm that a neutral receiver is necessary to protect Intrepid. The Court should grant Plaintiff's Motion and appoint a receiver.

### A.    Defendants' Counter-Motion Requests Substantially the Same Relief as Plaintiff Seeks

Plaintiff's[1]  and Defendants' respective Receiver Motions now seek

---

[1] Undefined capitalized terms herein take the meanings ascribed to them in

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

substantially the same relief following productive meet and confers. The parties expressly agree on at least three of the receiver's duties and powers: (1) preservation of Intrepid's intellectual property and related assets; (2) monitoring of any Article 9 foreclosure and sale; and (3) reporting to the Court on the propriety of any foreclosure sale. As Plaintiff explained in his Notice of Narrowed Request for Relief on Motion to Appoint Receiver, (ECF No. 95 at 2-3), Plaintiff seeks appointment of a receiver with significantly more limited powers and responsibilities than initially requested. Specifically, Plaintiff seeks appointment of "a limited, neutral receiver over Intrepid with the following powers and duties: (1) to preserve Intrepid's intellectual property and related assets; (2) to oversee and monitor any foreclosure sale of Intrepid's assets, and to report to the Court on the propriety of any such sale; (3) to investigate on Intrepid's behalf Defendant Robert Dawson's and Defendant TFE Games Holding, LLC's right to proceed with a foreclosure sale (including by analyzing relevant loan documents and related amendments and agreements), pursuant to the receiver's duties to ensure the propriety of any foreclosure sale; and (4) to take any actions required, including legal action, to halt ongoing actions undertaken by any party, or by non-party shareholder Jason Caramanis, and any of their agents or representatives, that are harming the value of Intrepid's assets (including, but not limited to, public disparagement of Intrepid and its assets and associated parties, along with public disclosure of Company confidential information)." (*Id.*) And Defendants state they are "willing to stipulate to the appointment of a limited receiver" with the following powers: (1) "marshaling, preserving, and safeguarding Intrepid's intellectual property and related assets"; (2) "monitoring any Article 9 foreclosure process"; and (3) "issuing a report to the Court as to the propriety of the Article 9 foreclosure process." (ECF No. 104 at 2-3.)

The remaining differences in the parties' positions have either been mooted

Plaintiff's Motion for Receiver (ECF No.78.)

WITHERS BERGMAN LLP

3

Case No. 3:26-cv-00965-LL-MMP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

based on recent developments, or are subsumed within the agreed-upon relief sought by both parties. As to the first difference, Defendants "object to the receiver being empowered to take legal action against non-party Jason Caramanis" because "Mr. Caramanis' actions are separate from the instant proceeding and beyond Defendants' control." (*Id.* at 6.) But Mr. Caramanis is now a party in this action—Plaintiff named Mr. Caramanis in his Amended Complaint. (ECF No. 112.) Plaintiff, on behalf of Intrepid, asserts an aiding-and-abetting breach of fiduciary duty claim against Mr. Caramanis, alleging he aided and abetted Defendants' breach of duty by "accept[ing] and publicly disseminat[ing]" Intrepid's "confidential . . . records . . . to defame Plaintiff, damage Intrepid, and depress the value of the Company's assets." (*Id.* ¶ 204.) Therefore, the receiver would no longer need to take independent action to halt Mr. Caramanis' disparagement of Intrepid. Thus, Plaintiff's request that the receiver be empowered to do so has been mooted.

As to the second difference in the parties' positions, Defendants object to Plaintiff's request that the receiver have the power to "investigate on Intrepid's behalf Defendant Robert Dawson's and Defendant TFE Games Holding, LLC's right to proceed with a foreclosure sale (including by analyzing relevant loan documents and related amendments and agreements), pursuant to the receiver's duties to ensure the propriety of any foreclosure sale[.]" (ECF No. 95 at 2-3.) However, the receiver's powers and duties to investigate the validity of liens assertedly exercised for a foreclosure and subsequent sale are part and parcel of monitoring any Article 9 foreclosure sale and reporting to the Court on the propriety of any such sale—which duties the parties expressly agree on. Indeed, in advising the Court that any foreclosure sale was proper, the receiver would necessarily need to confirm the purportedly secured debt being foreclosed on was proper. Accordingly, there is no material daylight between the parties' proposals at this juncture.

Having the receiver confirm the validity of Defendants' purportedly secured debt should not be controversial. As Plaintiff explained to Defendants, and noted in

WITHERS
BERGMAN LLP

Case No. 3:26-cv-00965-LL-MMP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

the parties' Joint Status Report, (ECF No. 90 at 4), doing so will not "forestall any sale process because review and analysis of the loans and related documents would constitute a discrete task" aided by "limited assistance from outside counsel." (*Id.*) Defendants also have not, and cannot, assert any harm from such analysis. If Defendants' liens are valid—as they claim—then the receiver will confirm them, and any foreclosure and sale can proceed promptly. Regardless, granting the receiver the power to determine lien validity proactively is prudent to avoid likely future disputes on Defendants' anticipated foreclosure sale.

## B.    Defendants Fail to Show a Receiver is Unnecessary

Beyond that there is no material daylight between the parties' proposals anymore, Defendants also fail to rebut a need for a receiver. They ignore the crux of what is at stake—that, absent a receiver's oversight, the self-interested Board Defendants, who *admittedly* engaged in an unlawful foreclosure, could abuse their Intrepid Board positions to abscond with Intrepid's assets again even without having established a legal right to do so, and before the Court can consider the merits of Plaintiff's claims. That risk arising from Defendants' prior bad behavior is exactly why Plaintiff seeks appointment of a receiver as a means, not an end, as required, *cf. Kelleam v. Maryland Casualty Co.*, 312 U.S. 377, 380 (1941*)*, and contrary to Defendants' assertions. The Board Defendants—all while owing fiduciary duties to Intrepid—engaged in a litany of bad acts, including "facilitating Defendant Dawson's 'ping-pong' of Intrepid's capital structure between purported debt, equity, and back to purported debt; engineering and approving a wrongful Article 9 foreclosure and credit bid sale in favor of Defendant TFE's purported junior secured lien despite the lack of a sufficient secured interest, thereby misappropriating Intrepid's trade secrets; diverting or attempting to divert Company revenues to Defendant Dawson's affiliated entity, Defendant TFE; … [and] approving or allowing conflicted and self-interested transactions" all in an effort to "position[] themselves to personally profit from the continued exploitation or sale of *Ashes of Creation* and its underlying intellectual

WITHERS BERGMAN LLP

5

Case No. 3:26-cv-00965-LL-MMP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

property at the direct expense of their fiduciary beneficiary, Intrepid." (ECF No. 112 ¶ 193.) In response to these bad acts, Plaintiff seeks equitable remedies to protect Intrepid from Defendants' likely further misconduct. Specifically, "Plaintiff, on behalf of the Company, . . . seeks equitable relief to remedy and prevent further harm arising from those breaches, including appropriate corporate governance, compliance, and oversight reforms, such as removal of the Board Defendants from Intrepid's Board; enhanced board-level oversight mechanisms; *institution of a receiver*; revised policies governing risk management, internal controls, or compliance; changes to executive compensation, clawback, or incentive structures; and board or committee reconstitution and independence measures." (*Id.* ¶ 197 (emphasis added).) Plaintiff includes the same requested equitable relief in his Prayer, along with establishing a constructive trust. (*Id.* at 68-69.) Plaintiff's equitable relief would be meaningless if Defendants were allowed unfettered control over Intrepid's assets and intellectual property. A limited receiver, therefore, is a means to accomplish the precise relief requested in view of Defendants' alleged bad acts, and is not an end unto itself.

Further, Intrepid faces the near certainty that Defendants will seek to again assert Mr. Dawson's and TFE's purported security interests to force another foreclosure sale. Defendants have admitted as much in their Counter-Motion, stating that they seek appointment of a limited receiver "so that a second foreclosure may take place as expeditiously as possible without the further, unnecessary dissipation of Intrepid's assets." (ECF No. 104 at 8.) As Plaintiff previously argued, allowing Defendants to "proceed[] with a foreclosure based on a nonexistent or overstated lien"—a sale made without regard to their fiduciary duties to Intrepid—would lead to "post-hoc litigation by a patchwork of injured parties" that would cause irreparable harm through "lost competition" and "depressed asset value." (ECF No. 78-1 at 20.) Defendants are wrong that "[t]he very premise of [Plaintiff's] receiver motion — that assets need to be protected from a foreclosure sale — has been rendered moot by" Defendants' asserted unwinding of the previous foreclosure. (ECF No. 119 at 16.)

WITHERS BERGMAN LLP

6

Case No. 3:26-cv-00965-LL-MMP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

Plaintiff's Motion is not limited to preventing a *single* past unlawful foreclosure. Plaintiff seeks to protect Intrepid from the *ongoing* risk of self-interested dealings and foreclosures that would irreparably harm Intrepid before this case can be heard on its merits. A receiver with the power to monitor an Article 9 sale, report to the Court on the propriety of such sale, and, as part of that undertaking, necessarily confirm the validity of Defendants' purported secured debt, would prophylactically quell the serious doubts as to the propriety of Mr. Dawson's asserted security interests, (ECF No. 112 ¶ 45 (Each "[o]f the 20 executed Notes between [Mr.] Dawson and Intrepid that Plaintiff possesses . . . ***expressly disclaims*** any secured status, stating that the obligations are 'unsecured and subordinated' to senior indebtedness.")), and avoid subsequent disputes over any forthcoming Article 9 sale.[2]

Therefore, contrary to Defendants' assertion, appointing a receiver with sufficient authority to act here is not "an end in itself." (*See* ECF No. 119 at 21.) Instead, the Court should appoint a receiver as a means to preserve Intrepid pending further equitable relief needed to restrain the self-interested Board Defendants.

Defendants attempt to rebut the need for a receiver by devoting several pages analogizing this case to an 84-year-old Supreme Court case, *Kelleam v. Maryland Casualty Co.*, 312 U.S. 377 (1941). *Kelleam* does not move the needle. As the Court in that case explained, "[t]he surety [who was seeking to appoint a receiver] had *no stake in the outcome of the dispute*," which rendered appointment of a receiver unrelated to the core dispute and relevant "only in the sense that it was protective of the surety whatever the future outcome of the [primary] controversy between the heirs." *Id.* at 380 (emphasis added). Therefore, the surety had "no accrued right" and, indeed, had other means to "adequately protect[]" its interests through other

---

[2] Defendants do not even attempt to explain how TFE's lien remains valid after the first foreclosure, or engage with Plaintiff's arguments and legal citations showing a party cannot simply "unwind" an Article 9 foreclosure and grant itself a do-over on a whim. (*See* ECF No. 78-1 at 21.)

WITHERS BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

proceedings. *Id.* at 381. Intrepid's plight is different. Intrepid sits at the mercy of Defendants, who have already shown a clear disregard for Intrepid's interests and who are poised to conduct a *second* unlawful foreclosure sale. And Plaintiff here represents Intrepid's interests in bringing suit derivatively on the Company's behalf. Unlike the surety in *Kelleam*, Plaintiff seeks a receiver to preserve Intrepid's assets and neutrally manage any further action as a means to serve the ends of the equitable claims Plaintiff has brought on Intrepid's behalf. A receiver is necessary to protect Intrepid against Defendants' further breaches of fiduciary duties and a foreclosure spearheaded by Intrepid's self-interested Board based on liens that are questionable at best.

**C.    Defendants' Factual Allegations Against Plaintiff Demonstrate the Need for a Receiver**

Defendants spend nearly 14 pages launching allegations of bad acts against Plaintiff. This diatribe does not moot the need for a receiver for two reasons: (1) although Plaintiff strongly disputes Defendants' false characterization of the facts, and will contest those characterizations at the appropriate time, even if true, they do not negate Defendants' bad acts requiring a receiver; and (2) the factual disputes Defendants' brief creates merely underscores the crucial need for a neutral moderator.

*First*, any supposed bad acts by Plaintiff do not negate Defendants' bad acts that necessitate a receiver, and Defendants fail to otherwise dispute their own bad acts. They claim that the balance of the equities (*Canada Life*[3] factor five) favors their side based on Plaintiff's purported unclean hands and their own desire to place "blame for Intrepid's current state of affairs . . . at Plaintiff's feet." (ECF No. 98 at 23.) But they do nothing to rebut the evidence of their "pattern of self-interested behavior and efforts to take control of and sell Intrepid's assets," (ECF No. 78-1 at 24), outlined extensively in Plaintiff's Receiver Motion (ECF No. 78-1 at 2-13) and Plaintiff's Amended Complaint (ECF No. 112 at 15-23). Nor do they counter Plaintiff's

---

[3] *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009).

WITHERS BERGMAN LLP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

argument that Defendants would not be harmed (*Canada Life* factor three) by a receiver who would oversee any sale *and* investigate Defendants' asserted liens because "[t]he only risk to Defendants . . . is that they will not be able to pursue a ***self-interested*** sale at the expense of Intrepid, which is not cognizable harm." (ECF No. 78-1 at 24). And they do not rebut the litany of facts Plaintiff sets forth showing their fraudulent conduct (*Canada Life* factor two), including (1) "making unlawful, extortionate threats against Mr. Sharif"; (2) "playing fast-and-loose with company books and finances" including "double counting [Mr. Dawson's] debt versus equity interests" to aid in an unlawful foreclosure; (3) "attempting to divert the approximately $4 million in Steam funds, owed to Intrepid . . . to TFE"; and (4) "deliberately filing false documents with the California Secretary of State." (ECF No. 78-1 at 23.) Instead, they wrongly assert "[t]he entirety of Plaintiff's fraud claims rest on the unwound foreclosure sale." (ECF No. 119 at 22.)

*Second*, the factual disputes asserted in the parties' Motions show precisely why a *neutral* receiver is necessary. Plaintiff has alleged that Defendants (1) did not properly have a security interest in the first place; (2) still proceeded with an unlawful Article 9 foreclosure and sale; (3) purportedly unwound that sale, without legal basis while unlawfully purporting to retain their security interest; and (4) now seek to *again* foreclose on and sell Intrepid's assets. Beyond the foreclosure, Plaintiff has alleged that Defendants engaged in a pattern of self-dealing and bad faith to harm Intrepid, its employees, and *Ashes of Creation* for their own benefit and to manufacture the circumstances necessary to unlawfully seize Intrepid's assets. Defendants, of course, offer the different narrative that Mr. Sharif mismanaged Intrepid and engaged in other actions that caused financial difficulties. Plaintiff disputes such assertions. The clear factual disputes between Plaintiff (derivatively representing Intrepid) and Intrepid's Board (the Defendants in this suit) underscore why a *neutral* receiver is necessary to manage and protect Intrepid's assets, oversee any sale, and to ensure that any foreclosure is based on valid liens.

WITHERS BERGMAN LLP

9    Case No. 3:26-cv-00965-LL-MMP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

## III.   **CONCLUSION**

For the foregoing reasons, and for the reasons asserted in his motion, Plaintiff respectfully requests the Court grant Plaintiff's motion and appoint a neutral, limited receiver over Intrepid with the following powers and duties: (1) to preserve Intrepid's intellectual property and related assets; (2) to oversee and monitor any foreclosure sale of Intrepid's assets, and to report to the Court on the propriety of any such sale; and (3) to investigate on Intrepid's behalf Defendant Robert Dawson's and Defendant TFE Games Holding, LLC's right to proceed with a foreclosure sale (including by analyzing relevant loan documents and related amendments and agreements), pursuant to the receiver's duties to ensure the propriety of any foreclosure sale.

WITHERS BERGMAN LLP

10                                    Case No. 3:26-cv-00965-LL-MMP

PLAINTIFF STEVEN SHARIF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' COUNTER-MOTION AND REPLY IN SUPPORT OF MOTION FOR RECEIVER

DATED:  May 28, 2026

Respectfully submitted,

WITHERS BERGMAN LLP


By: */s/ Jessica Nall*

Jessica Nall (SBN 215149)
Jessica.Nall@withersworldwide.com
Withers Bergman LLP
909 Montgomery Street, Suite 300
San Francisco, California 94133
Telephone:  415.872.3200

Leslie Evans (SBN 173010)
Leslie.Evans@withersworldwide.com
4250 Executive Square, Suite 540
La Jolla, CA 92037
Telephone:  619.329.6454

Jordan W. Garman (admitted *pro hac vice*)
Jordan.Garman@withersworldwide.com
430 Park Avenue, 10th Floor
New York, NY 10022
Telephone:  212.848.9882

*Attorneys for Plaintiff Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.*

11

Case No. 3:26-cv-00965-LL-MMP