Theresa C. Becerra, Esq. (State Bar No. 205338)
**SPENCER FANE LLP**
201 Santa Monica Blvd., Suite 550
Santa Monica, California 90401
Telephone: (424) 217-1830
Fax: (424) 217-1854
Email:      tbecerra@spencerfane.com

Vincent J. Aiello, Esq. *(Pro Hac Vice Forthcoming)*
Tyler B. Thomas, Esq. *(Pro Hac Vice Forthcoming)*
Jason Smith, Esq. *(Pro Hac Vice Forthcoming)*
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3419
Fax: (702) 408-3401
Email:   vaiello@spencerfane.com
         tthomas@spencerfane.com
         jsmith@spencerfane.com

*Attorneys for Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDINGS LLC, and JASON CARAMANIS, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.   **3:26-cv-00965-LL-MMP** <br><br> **INTREPID STUDIOS, INC.'S CROSS-COMPLAINT AGAINST STEVEN SHARIF AND THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES** <br><br> **JURY TRIAL DEMANDED** <br><br> **Action Filed:**   02/14/2026 <br> **Jud. Officer:**   Hon. Linda Lopez |
| INTREPID STUDIOS, INC., a California Corporation, <br><br> Cross-Claimant, <br><br> v. <br><br> STEVEN SHARIF, an individual <br><br> Cross-Defendant. | |

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

1

INTREPID STUDIOS, INC., a California Corporation,

Third-Party Plaintiff,

v.

JASON ZIMMERMAN an individual, JOHN MOORE an individual, MATTHEW RHOADES an individual, DOES INDIVIDUALS 1-10; and ROE ENTITIES I-X

Third-Party Defendants.

Nominal Defendant Intrepid Studios, Inc. ("Intrepid" or the "Company"), by and through its counsel, Spencer Fane LLP, as Cross-Claimant against Plaintiff Steven Sharif ("Sharif") and as Third-Party Plaintiff against Jason Zimmerman ("Zimmerman"), John Moore ("Moore"), Matthew Rhoades ("Rhoades"), DOES Individuals 1-10 (collectively "Does 1-10"); and ROE Entities I-X (collectively "Roes I-X"), alleges as follows:

## I.   NATURE OF THE ACTION

1.   This action arises from a years-long course of misconduct by Intrepid's founder and former Chief Executive Officer, Sharif, in concert with his spouse and former Chief Financial Officer, Moore, through which Sharif and Moore systematically diverted corporate assets and deceived investors and Intrepid's Board of Directors (the "Board") about Intrepid's financial condition and business prospects.

2.   Upon information and belief, during the final stages of Sharif's tenure with Intrepid, Sharif facilitated and participated in the unauthorized removal of Company assets, including physical property and computer equipment, the withholding of digital credentials, and the destruction of corporate records by his subordinates, Zimmerman, Intrepid's former Director of Information Technology, and Rhoades, Intrepid's former Information Technology Manager.

3.    Sharif and Moore represented to the Board, to lenders, and to investors that Intrepid was on the cusp of a commercial launch which would generate substantial investment returns. These representations induced lenders to make over $80 million in loans to Intrepid.  From these loans, Sharif and Moore siphoned approximately $10-12 million dollars for personal use, funding their lifestyle and personal real estate debts from money that was supposed to be used  to fund Intrepid's business operations.

4.    Sharif and Moore further used loan proceeds and investor funds to make approximately $3.7 million in payments to family members and personal associates. They also authorized approximately $21 million in additional transactions for which no receipts, supporting documentation, or other evidence has been produced demonstrating a legitimate business purpose or approval by the Board.

5.    Under Sharif's leadership, Intrepid failed to file required federal and state payroll tax returns for the years 2017 through 2019.

6.    In the days preceding his resignation, Sharif received material communications from Intrepid's commercial lender, CommerceWest Bank ("CommerceWest"), regarding potential adverse action affecting Intrepid's loan accounts. Sharif failed to disclose those communications to the Board of Directors and resigned the day after receiving the notice, leaving the Board unaware of CommerceWest's concerns and contemplated actions.

7.    Following his resignation and without authorization from the Board of Directors, Sharif communicated with CommerceWest in a manner that resulted in CommerceWest placing a lien on funds owed by Steam to TFE HOLDINGS, LLC ("TFE") and immediately freezing those assets. The resulting loss of liquidity impaired Intrepid's ability to meet payroll obligations and substantially contributed to Intrepid's immediate operational shutdown.

///

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

3

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.  3:26-cv-00965-LL-MMP

8. Sharif, through Zimmerman and Rhoades, then encouraged and/or facilitated the withholding of essentially every corporate intellectual property belonging to Intrepid, including its credentials for certain domain accounts, source code repository, payment systems, distribution platforms, communications channels, and physical assets that were required to continue Company operations. Not only did these actions delay Intrepid's progress, the action caused the accrual of over $100,000 in direct vendor costs.

9. This has resulted in Intrepid being without access to its own intellectual property, software source code, payment systems, website domain, customer-facing platforms, or commercial distribution channels. These are the very assets that this Court found warranted protection through the appointment of an Intellectual Property Custodian on March 10, 2026. See Docket [ECF No. 33].

10. Intrepid is named as Nominal Defendant in this action. Despite being previously named as the real party in interest in the derivative claims asserted by Sharif, he has failed to do anything to protect and promote the ongoing viability of Intrepid. Rather, Sharif has reduced certain assets of Intrepid by removing interested parties' access to various channels, including Discord and Reddit in particular.

11. Through this pleading, and consistent with the corporate-neutrality framework established under California law, Intrepid does not respond to the merits of Sharif's derivative claims. Rather, it asserts its own direct, affirmative claims against Sharif, as set forth below.

***Cross-Claim Against Cross-Defendant Steven Sharif.***

12. By way of cross-claim pursuant to Federal Rule of Civil Procedure 13(g), Intrepid asserts claims against Cross-Defendant Steven Sharif, individually. Each cross-claim arises out of the transactions and occurrences that are the subject matter of this action, the business failures and the intellectual property that is the subject matter of this action, including the trade secrets, source code, credentials, and physical assets identified in this Court's March 10, 2026, Order Appointing

4

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES    Case No.  3:26-cv-00965-LL-MMP

Intellectual Property Custodian. [ECF No. 33]. Intrepid's cross-claim against Sharif arises from the same transactions or occurrences at issue and relates to the same corporate property, satisfying Rule 13(g).

***Third-Party Complaint Against Third-Party Defendants Moore, Zimmerman, Rhoades, DOES Individuals 1-10, and ROE Entities I–X.***

13. By way of third-party complaint pursuant to Federal Rule of Civil Procedure 14(a)(1), Intrepid asserts claims, outlined below, against the following Third-Party Defendants: John Moore, the former Chief Financial Officer of Intrepid; Jason Zimmerman, the former Director of Information Technology of Intrepid; Matthew Rhoades, the former Information Technology Manager of Intrepid; Does 1-10; and Roes I-X. Each Third-Party Defendant is or may be liable to Intrepid for all or part of Sharif's claims against  for the injuries to Intrepid alleged herein. None of the Third-Party Defendants is presently a party to this action.

***Intrepid's Statutory and Legal Authority to Assert These Claims.***

14. Intrepid possesses the statutory and common-law authority to assert each of the claims set forth herein. California Corporations Code section 300(a) vests the Board of Directors with the power to manage the business and affairs of Intrepid, including the authorization and prosecution of litigation on behalf of Intrepid. California Corporations Code section 309 establishes the fiduciary duties owed to Intrepid by its directors, and applicable common law establishes the fiduciary duties owed by its officers, and together these supply the substantive basis for Intrepid's breach-of-fiduciary-duty claims. California Civil Code sections 1709 and 1710 provide the statutory basis for fraud and negligent misrepresentation. California Penal Code section 496(c) provides Intrepid with a civil cause of action for theft and embezzlement of corporate property, with mandatory treble damages and attorney's fees, as confirmed in *Siry Investment, L.P. v. Farkhondehpour,* 13 Cal. 5th 333, 347-48 (2022). California Civil Code section 3294 authorizes punitive damages for oppressive, intentional, or fraudulent conduct. Intrepid's declaratory-relief claim is

5

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES     Case No.  3:26-cv-00965-LL-MMP

authorized by 28 U.S.C. section 2201 and Federal Rule of Civil Procedure 57. Intrepid's contract-based claims arise under California common law as supplemented by the express terms of the relevant employment, confidentiality, non-disclosure, and non-recruiting agreements.

## II.    JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over Intrepid's claims pursuant to 28 U.S.C. § 1331 as a result of Intrepid's federal claim under the Defend Trade Secrets Act, 18 U.S.C. sections 1836 *et seq* ("DTSA"). The Court also has supplemental jurisdiction over Intrepid's state law claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as the DTSA claim and share a common nucleus of operative facts with the current case, including common facts of Sharif's tenure as Chief Executive Officer of Intrepid, the alleged mismanagement of Intrepid's assets and finances, and the post-resignation withholding, destruction, and misuse of Intrepid's intellectual property.

16.    Further, Federal Rule of Civil Procedure 13(g) authorizes Intrepid's cross-claims against Cross-Defendant Sharif because the claims arise out of the same transaction or occurrence that is the subject matter of this action and relate to property that is the subject matter of this action. Federal Rule of Civil Procedure 14(a)(1) authorizes Intrepid's third-party complaint against Third-Party Defendants Moore, Zimmerman, Rhoades, Does 1-10, and Roes I-X. each of whom is or may be liable to Intrepid for all or part of Sharif's claims against it. Federal Rule of Civil Procedure 18(a) permits joinder of all Intrepid's claims against each Third-Party Defendant, which arise from the same nucleus of operative facts. This Court has supplemental jurisdiction over Intrepid's state-law claims under 28 U.S.C. section 1367(a) because they form part of the same case or controversy as Sharif's federal claims.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in the Southern District of California. Intrepid maintains its principal place

6

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

of business in this District, and the financial misconduct, diversion of intellectual property, and other wrongful conduct alleged herein were directed toward and caused injury to Intrepid in this District. In addition, Intrepid's operations are hosted through third-party data center services provided by ScaleMatrix Hosting, Inc. ("ScaleMatrix") in this District, and a substantial portion of the conduct of Cross-Defendant and the Third-Party Defendants either occurred within this District or had a substantial detrimental effect here.

18.    This Court has personal jurisdiction over Cross-Defendant Sharif and Third-Party Defendants Moore, Zimmerman, and Rhoades. Sharif currently resides in San Diego, California, and formerly served as Intrepid's Chief Executive Officer. Moore currently resides in San Diego, California, and formerly served as Intrepid's Chief Financial Officer. Upon information and belief, Rhoades currently resides in San Diego, California, and Zimmerman currently resides in Travis County  State of Texas. During the relevant time period, however, Zimmerman lived and worked in California as Intrepid's Director of Information Technology, exercised control over Company systems, digital assets, and credentials associated with Intrepid's California operations, and purposefully directed conduct toward this District, including conduct involving Intrepid's headquarters and the ScaleMatrix data center. Likewise, Rhoades lived and worked in California as Intrepid's Information Technology Manager and engaged in the conduct alleged herein within this District, including conduct involving Intrepid's headquarters and the ScaleMatrix data center. Through such activities, Zimmerman and Rhoades purposefully availed themselves of the privileges and benefits of conducting business in California, and the claims asserted herein arise directly from those contacts.

## III.    PARTIES

19.    Cross-Claimant and Third-Party Plaintiff Intrepid Studios, Inc. is a California corporation headquartered in San Diego County, California. Intrepid is the developer of the multiplayer online role-playing game *Ashes of Creation*.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

7

20. Cross-Defendant Sharif is the founder and former Chief Executive Officer of Intrepid. Sharif served on Intrepid's Board of Directors from Intrepid's inception on or about May 20, 2015, through his resignation on January 19, 2026. He is the spouse of Third-Party Defendant John Moore. Sharif resides in San Diego County, California, and is the Plaintiff in this action.

21. Third-Party Defendant Moore was the former Chief Financial Officer ("CFO") for Intrepid. He served as CFO from 2016 through October 2024, when he was subsequently replaced. Moore is the spouse of Cross-Defendant Sharif. Upon information and belief, Moore resides in San Diego County, California.

22. Third-Party Defendant Zimmerman was the former Director of Information Technology for Intrepid. He was responsible for Intrepid's technology infrastructure, source code repositories, data center operations, and credential administration. Zimmerman executed an Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement and Employee Acknowledgment with Intrepid on January 3, 2022, which he has violated by failing to turnover, surrender and release access to Company intellectual property. Upon information and belief, Zimmerman resides in Travis County, Texas.

23. Third-Party Defendant Rhoades is the former Information Technology Manager of Intrepid. Rhoades reported to Zimmerman. Rhoades executed an Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement and Employee Acknowledgment with Intrepid on June 20, 2023, which he has violated by failing to turnover, surrender and release access to Company intellectual property. Upon information and belief, Rhoades resides in San Diego County, California.

24. Third-Party Defendants **Does 1–10** are individuals, the true names and capacities of which are unknown to Intrepid at this time, who participated in the financial diversions, credential withholding, evidence destruction, or other wrongful conduct alleged herein. Intrepid will seek leave to substitute their true names and capacities upon identification through discovery.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

8

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES     Case No. 3:26-cv-00965-LL-MMP

25.     Third-Party Defendants **Roes I–X** are entities, the true names and capacities of which are unknown to Intrepid at this time, that received corporate funds through the transactions identified herein lacking documentation supporting a legitimate corporate purpose. This designation includes without limitation entities identified in Intrepid's financial records under names such as "310 House LLC," "Nutrition LLC," and "Gore Oil Company," and other entities associated with Sharif, Moore, or their family members. Intrepid will seek leave to substitute their true names and capacities upon identification through discovery.

## IV.   FACTUAL ALLEGATIONS

### A.   Sharif's Role and Fiduciary Duties to Intrepid.

26.     From Intrepid's inception on May 20, 2015, until the Board was expanded in 2024-2025, Shariff and Moore served as directors, and Shariff maintained controlling authority over Intrepid's operations.

27.     Robert Dawson ("Dawson") and Ryan Ogden ("Ogden") joined Intrepid's on September 4, 2024. Theresea Fette joined the Board in or around August 2025.

28.     Sharif, as the CEO and controlling director from Intrepid's inception until his resignation, controlled Intrepid's day-to-day operations, executed all material agreements on behalf of Intrepid, directed all financial reporting, managed all investor relations, and bore ultimate responsibility for Intrepid's legal and regulatory compliance.

29.     As CEO and director of Intrepid, Sharif owed Intrepid the fiduciary duties of care, loyalty and competency under California Corporations Code § 309 and applicable common law.

30.      As Intrepid's founder, Sharif had complete visibility of Intrepid's technical development, financial position, and business relationships, and therefore Sharif occupied a position of unique trust and responsibility for the integrity of representations made to the Board, to investors, and to lenders.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

9

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.  3:26-cv-00965-LL-MMP

**B.    Sharif's False and Misleading Representations to Lenders and the Board.**

31.    Beginning in or around February 2021 and continuing through his resignation, Sharif made numerous specific and quantifiable representations concerning Intrepid's financial condition, development progress, anticipated product release timelines, profitability, and business relationships. These representations were material to Intrepid's operations and decision-making and were communicated to the Board, investors, lenders, and other stakeholders.

32.    These representations were directed to investors, lenders, and, after the Board was expanded, Board members, with the intent that they be relied upon as the basis for continued capital investment.

33.    In February 2021, Sharif provided to Dawson, then a prospective lender and investor, financial projections representing specific product release dates and revenue figures, showing a positive cash position by year-end 2021, and a commercial launch date for the *Ashes of Creation* game to occur in approximately April 2022.

34.    However, *Ashes of Creation* did not launch commercially in 2022.

35.    The projected revenues never materialized in 2022, 2023, 2024, 2025 or 2026 and *Ashes of Creation* never launched to the commercial market.

36.    Sharif represented to Dawson and others that Intrepid had a strategic relationship with Riot Games at a "high 9-figure valuation."

37.    No such relationship existed at the represented valuation.

38.    The representations Sharif made in his capacity as CEO were materially overstated or fabricated. They misled lenders, investors and Board members.

39.    Sharif also publicly and falsely represented that Intrepid's funding came entirely from Sharif personally.

40.    In truth, Intrepid was raising capital from third-party investors, including Dawson and others, who, together, contributed in excess of $130 million.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

10

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

41.    On May 31, 2024, Sharif sent a text message to then-investor Theresa Fette ("Fette") concerning Intrepid's capital needs. Sharif represented that the company would generate between $24 and $45 million in revenue within two months of the anticipated August 2024 commercial launch of *Alpha Two*— the first version of the game available for online purchase by consumers. Sharif further projected an additional $16 million to $24 million in revenue during the following six months, while representing that Intrepid's monthly burn rate was approximately $2.8 million and that the game would achieve profit margins of "88–90%."

42.    *Alpha Two* did not launch in August 2024.

43.    In fact, *Alpha Two* did not launch until the end of 2025, approximately sixteen months after the date Sharif represented.

44.    When *Alpha Two's* Phase 3 Early Access Launch occurred in August 2025, the revenues generated were a fraction of the percent of Sharif's projections.

45.    Each of these representations was made at a time when Sharif had complete visibility and control over Intrepid's development pipeline, development capacity, cash burn rate, and operational status.

46.    No CEO with Sharif's direct knowledge could have held a reasonable belief in the truth of these representations at the times they were made as they were erroneous at best and patently false and misleading at worse.

**C.    Sharif and Moore's Systematic Diversion of Corporate Assets.**

47.    From approximately 2016 through October 2024, Sharif and Moore, while serving as Intrepid's Chief Executive Officer and Chief Financial Officer, respectively, caused Company funds and other corporate assets to be transferred in a systematic pattern that benefitted themselves, their family members, and personal associates. Upon information and belief, many of these transfers lacked a legitimate corporate purpose, were not authorized by the Board of Directors, and were unsupported by adequate documentation or business records.

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

11

48. A preliminary accounting review of Intrepid's bank records and QuickBooks files identified, to date, the following categories of unauthorized transfers and self-dealing:

a. **Conversion and Embezzlement By Sharif and Moore.** Approximately $4.6 million in payments were made to Sharif and Moore directly, or to family members and personal associates. Approximately $1.9 million in direct transfers were made to Sharif and lacked documentation establishing any legitimate corporate purpose. Additional payments, purportedly for subcontracted services, included approximately $227,500 paid to Sharif, as well as approximately $662,500 paid to two investors, Thomas Alkazin and Bethany Alkazin.

b. **CFO Shareholder Loans.** Moore, as CFO, took approximately $2.6 million in shareholder loans from Intrepid for personal use between March 2020 and October 2024. Those loan disbursements were systematically timed to coincide with investor capital contributions. Bank records confirm transfers from Intrepid operating accounts to Moore's personal Bank of America account ending in 6009. The disbursements ceased in October 2024, the same month Moore was replaced as CFO, confirming Moore's personal control over and responsibility for the pattern.

c. **Family Member Payments.** There were payments made to Sharon Sharif (Sharif's mother), Thomas and Bethany Alkazin, totaling approximately $662,500, characterized as subcontracted services. Additionally, various shareholder loans were found in the financial records between 2021 and 2024 showing loans to Sharon Sharif for $1,315,000, Bethany Alkazin for $75,000 and Sharif himself for

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

12

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

$325,024. On June 30, 2020, Sharif executed a promissory note in the principal amount of $1.5 million in favor of his brother, Tim Sharif. Sharif signed the note personally as the Borrower; Intrepid was not a party to the note. As of December 31, 2024, the outstanding balance under that note was approximately $1.1 million principal plus approximately $255,835 in accrued interest. Sharif subsequently characterized this personal debt to third parties as an obligation of Intrepid, in further misrepresentation of Intrepid's liabilities.

d. **Personal Real Estate Funding Through Corporate Accounts.** Multiple Company accounts were used to fund Sharif and Moore's personal real estate obligations. The Company's books contained entries coded as "Gore Oil Company," a codename for Sharif and Moore's personal California residence. QuickBooks records show approximately $125,000 in shareholder loan disbursements on or around April 2, 2024, coinciding with the closing date of a house purchased by Moore and Sharif.

e. **Unsupported Personal Expense Reimbursements.** Approximately $1.8 million in reimbursements were made to Sharif and Moore for personal credit card expenditures, including approximately $200,000 in DoorDash charges over five years, approximately $764,000 in Amazon purchases over four years lacking corresponding receipts, $20,000 in charges at MGM properties, and other personal expenditures without supporting documentation establishing corporate purpose.

f. **Total Unsupported Transactions.** Preliminary auditing review done by Intrepid identified approximately $21 million in outflows from Intrepid lacking supporting documentation

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

13

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

and/or establishing a legitimate business purpose. A forensic review is ongoing and Intrepid expects this figure to increase.

g.   **Net Negative Capital Account.** Per Intrepid's financial records maintained by Moore as CFO, approximately $12 million was reimbursed to Sharif and Moore collectively while only approximately $7 million was contributed, producing a net negative capital account of approximately $5 million attributable to Sharif and Moore.

### D.   Booking Investor Contributions as Revenue to Secure Commercial Financing.

49.   Sharif caused Intrepid's financial records to mischaracterize investor equity contributions as revenue or profit in connection with Intrepid's application for a commercial loan from CommerceWest.

50.   This mischaracterization materially inflated Intrepid's apparent operating performance and was used to qualify Intrepid for the CommerceWest loan.

51.   This conduct exposed Intrepid to civil and potentially criminal liability.

### E.   Failure to File Payroll Tax Returns (2017-2019).

52.   Under Sharif's leadership as CEO, Intrepid failed to file required federal and state payroll tax returns for the years 2017 through 2019.

53.   This failure exposed and continues to expose Intrepid to tax liability, penalties, and interest.

54.   The failure also reflects a fundamental breach of Sharif's duty to ensure Intrepid's legal compliance with tax laws.

### F.   Audit Obstruction (May-July 2025).

55.   On May 28, 2025, July 10, 2025, and July 19, 2025, Intrepid's incoming Chief Financial Officer Ryan Ogden sent Sharif three separate written requests requesting Sharif to corroborate approximately $10.15 million in personal transfers identified in Intrepid's QuickBooks records.  Sharif failed and/or refused to do so.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

14

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

56. Ogden's email requests attached workbooks summarizing the transactions in detail. Sharif did not respond to any of the three requests.

## G. CommerceWest Default Notice and Sharif Concealment.

57. On or about January 18, 2026, Sharif received material adverse communications from CommerceWest, including a default notice transmitted by email.

58. Sharif did not disclose those communications to Intrepid's Board of Directors.

59. Sharif resigned from the Board on January 19, 2026, the day after receiving the CommerceWest notice.

60. On January 30, 2026, in a text message exchange with Fette, Sharif admitted, "[i]t was probably sometime around Jan 18th. They sent me a default notice by email and Jason [Zimmerman] said he received a FedEx at the office."

61. In the same exchange, Fette responded that notifying the bank "would naturally accelerate any seizure notice. That limited optionality."

62. Sharif does not deny that he communicated with CommerceWest after his resignation and without Board authority.

## H. Sharif's December 30, 2025, Restructuring Communication and the Dice Delay Cost.

63. On December 30, 2025, Sharif sent a text message to Fette concerning the timing of layoffs in connection with the DICE Summit (February 10–13, 2026).

64. Sharif counter-proposed delaying layoffs until after the DICE conference (February 10–13, 2026), estimating that delay would "basically cost 600k above and beyond the current severance proposal."

65. In other words, Sharif was a decision-maker in the layoff process and personally quantified the cost of the delay.

/ / /

/ / /

Spencer Fane LLP
Attorneys at Law
Santa Monica

15

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES        Case No.   3:26-cv-00965-LL-MMP

**I.    Unauthorized Removal of Server Hardware from ScaleMatrix.**

66.    On January 30, 2026, Intrepid announced workforce reductions necessitated by Intrepid's financial condition.

67.    That same day, the Board issued a directive that employee access to Intrepid's source code be restricted.

68.    The directive did not authorize the removal of any physical assets from Intrepid's data center facility at ScaleMatrix.

69.    Notwithstanding the absence of any authorization, on January 30, January 31, and February 1, 2026, Zimmerman and Rhoades together accessed ScaleMatrix on four separate occasions and removed computer equipment and server hardware belonging to Intrepid from the facility.

70.    The cases that were ultimately returned to storage were empty, with the valuable computing components, processors, motherboards, memory modules, and storage media having been removed from the chassis.

71.    The present location of the removed components is unknown to Intrepid.

72.    Access logs, surveillance records, and physical inventory documentation from ScaleMatrix confirm Zimmerman and Rhoades' identities and the timing of their entry into the facility.

73.    Neither Zimmerman nor Rhoades disclosed to Intrepid's Board or management at any time that they removed equipment from ScaleMatrix.

**J.    Zimmerman's Withholding of Credentials to More Than Twenty Critical Systems.**

74.    Sharif filed this action on February 14, 2026.

75.    On March 10, 2026, this Court entered an Order Appointing Intellectual Property Custodian (ECF No. 33) identifying twenty-four (24) categories of "accounts, platforms, and repositories" containing Intrepid's trade secrets, including without limitation.  Additional platforms have been identified since the court order

16

Spencer Fane LLP
Attorneys at Law
Santa Monica

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

including but not limited to:

     a.     Amazon Web Services (AWS)—core cloud infrastructure and game hosting;

     b.     Atlassian (Confluence) – workforce collaboration tools;

     c.     Bitwarden – password vault containing additional credentials;

     d.     Boomlibrary and Waves – audio asset libraries;

     e.     Cloudfare;

     f.     Confluence;

     g.     DB Scheme – database design tools;

     h.     Discord – social media site;

     i.     Docker – containerization platform;

     j.     Docusign – company documentation library;

     k.     Duo;

     l.     GitKraken – development tools;

     m.     GoDaddy – website;

     n.     Google Workspace (g-suite) – company email and collaboration platform;

     o.     Incident.io – operational incident management;

     p.     JetBrains – development environments;

     q.     Jira – development collaboration;

     r.     Lens – Kubernetes management;

     s.     Miro – collaborative design platform;

     t.     MongoDB – primary game database;

     u.     Okta – development tools;

     v.     Perforce – primary version control system for the Ashes of Creation source code;

     w.     Playfab – development tools;

     x.     Reddit – social media site;

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

17

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES    Case No.  3:26-cv-00965-LL-MMP

y.      Resemble.ai – voice synthesis services;

z.      Sentry – development tools;

aa.     Unifi / UI.com / UBIQUITI INC. – development tools;

bb.     Universal Foundry – development tools and collaborator;

cc.     Veeam – development tools;

dd.     VMWare / VSphere – development tools;

ee.     Xsolla – development tools;

ff.     Miscellaneous artificial intelligence tools (Claude, Chat GPT, etc)

76.     The accounts and systems enumerated in the March 10, 2026 Order do not constitute an exhaustive list of the credentials Zimmerman withheld and/or continues to withhold.

77.     Following Intrepid's closure announcement, Zimmerman, with encouragement and facilitation from Sharif,  refused to provide Intrepid's Board, management, and the court-appointed Intellectual Property Custodian with credentials for systems essential to Intrepid's ability to develop, operate, distribute, and monetize *Ashes of Creation*.

78.     Additional systems for which Zimmerman has refused to provide credentials include two-factor authentication recovery codes, or backup access information including, without limitation: (1) GoDaddy (domain registrar for AshesofCreation.com, IntrepidStudios.com, and all related domains maintained and paid for by Intrepid since 2016); (2) Cloudflare; Steam (primary commercial distribution platform); (3) Discord (primary player communication platform with hundreds of thousands of subscribers); (4) Okta; (5) PlayFab; (6) Stripe, (7) Xsolla (payment processing); (8) Reddit; (9) Sentry; (10) VMware/vSphere; and (11) Unifi/Ubiquiti.

79.     As of the date of this filing, the court-appointed Intellectual Property Custodian has been able to obtain functional access to only a small fraction of the

18

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

credentials despite the Court's Order, and remaining credentials are inaccessible due being under Zimmerman's control for which  he has failed to transition to Intrepid.

**K.      Zimmerman's Spoliation of Communications with Slack.**

80.     Intrepid maintained automated weekly data with Slack as exports for corporate record-keeping.

81.     The exports were generated automatically and required multiple deliberate steps to delete.

82.     Audit logs from Slack confirm that Zimmerman deleted the automated exports for the weeks of February 9, 2026, and February 16, 2026, eliminating Intrepid's communication archive for the time period between February 3 and February 15, 2026, which was a critical window of communications that occurred following Intrepid's closure announcement.

83.     Slack audit logs further confirm that on March 11, 2026, after entry of the Temporary Restraining Order in this action and after the appointment of the Intellectual Property Custodian, Zimmerman deleted multiple public and private Slack channels and explored additional means of deleting messages.

84.     The audit log identifies Zimmerman as the actor for each deletion event.

85.     During the same period, external users who should have been removed from Slack (per representations made to the Custodian) remained active with administrator-level permissions, enabling continued evidence destruction.

86.     Notably, Slack records show a near-total absence of posts from Sharif during the relevant period, consistent with targeted deletion of communications from key individuals.[1]

/ / /

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

---

[1] Intrepid is prepared to move for spoliation sanctions in this dispute. Spoliation sanctions are not pleaded as an independent claim for relief but are reserved for ad-judication by motion. Verification is still pending as to whether spoliation occurred on other platform.  Potential deleting of audit logs, records, etc., might still be occurring

19

**I.    Sharif's Encouragement and Facilitation of Zimmerman and Rhoades' Conduct.**

87.    Throughout the period following his resignation, Sharif, with full knowledge of the appointment of the Intellectual Property Custodian, the entry of the Temporary Restraining Order, and the critical operational nature of the withheld assets, communicated with Zimmerman and Rhoades to encourage and/or facilitate the withholding of credentials, retention of physical assets, and destruction of records.

88.    Previously, Zimmerman's counsel made factually inaccurate representations to the court-appointed Intellectual Property Custodian regarding the status of credential provision, including with respect to GoDaddy and Google Workspace credentials. These representations were inconsistent with the factual record subsequently confirmed by the Custodian.

89.    Zimmerman sent a company-wide communication to former Intrepid personnel during this period using the legal term, "*nihil dicit,*" a Latin legal term denoting deliberate non-response to legal claims.

**N.    Rhoades' Contractual Obligations and Breaches Thereto.**

90.    On June 20, 2023, Rhoades executed an Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement (the "Rhoades NDA") with Intrepid.

91.    Section 9 of the Rhoades NDA required Rhoades, upon termination of employment for any reason, to: (a) deliver to Intrepid all records, files, and electronic data containing Company Trade Secrets or Confidential Information; (b) deliver all tangible property belonging to Intrepid; (c) allow Intrepid's representative to inspect Rhoades' personal devices for Company Trade Secrets or Confidential Information; and (d) execute the Certificate of Compliance attached as Exhibit A to the NDA.

92.    Rhoades also executed an Employee Acknowledgment confirming his at-will employment status and his obligation to comply with all Intrepid policies.

20

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES    Case No.  3:26-cv-00965-LL-MMP

93. Rhoades has failed to comply with each of the Section 9 obligations.

94. He has not delivered the physical components removed from the ScaleMatrix data center, has not executed the Certificate of Compliance, and has not made his personal devices available for inspection.

95. Based on the entire foregoing, Intrepid avers and pleads as follows:

## CROSS-CLAIM AGAINST CROSS-DEFENDANT STEVEN SHARIF

### FIRST CLAIM FOR RELIEF
**Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* "DTSA"**
*(Against Cross-Defendant Steven Sharif)*

96. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

97. Intrepid owns trade secret information within the meaning of the Defend Trade Secrets Act (DTSA), 18 U.S.C. section 1839(3).

98. Intrepid's trade secrets include confidential and proprietary information relating to *Ashes of Creation*, including without limitation: source code; technical implementation architecture; server-side simulation logic; distributed event-processing systems; dynamic resource-allocation algorithms; backend systems governing world persistence, territory control, and economic dependencies; server-meshing and distributed-networking systems; PvP risk-reward scaling algorithms; Node-system engine logic; development tools; event tools; seasonal environmental systems; trade and caravan systems; class implementation logic; stat-balancing systems; compiled builds; deployment pipelines; infrastructure configurations; production environments; credentials; authentication information; and related technical, operational, and business information.

99. Intrepid's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or use, including competitors, former employees, vendors, platform operators, and potential purchasers or developers of competing game technology.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

21

100.    Intrepid took reasonable measures to maintain the secrecy of its trade secrets, including use of Company-controlled systems, source-code repositories, credentialed access, password and authentication controls, employment confidentiality obligations, non-disclosure obligations, restrictions on access to source code and Company systems, and the use of secure platforms and repositories for development, infrastructure, and production operations.

101.    Intrepid's trade secrets relate to *Ashes of Creation*, a massively multiplayer online role-playing game, which was developed and intended to be distributed in interstate and foreign commerce, including through online platforms.

102.    Sharif acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization.

103.    Among other things, Sharif encouraged, facilitated, ratified, or participated in the withholding of credentials, source-code access, repositories, authentication information, platform access, and other Company systems necessary to access, preserve, develop, operate, distribute, and monetize *Ashes of Creation*.

104.    Sharif knew or had reason to know that the trade secrets, credentials, repositories, systems, and related access information belonged to Intrepid, were confidential, were acquired or retained under circumstances giving rise to duties to maintain their secrecy and return them to Intrepid, and could not be retained, withheld, disclosed, used, or controlled for any purpose adverse to Intrepid.

105.    Sharif's conduct constitutes misappropriation under the DTSA, including acquisition, disclosure, use, retention, or threatened use or disclosure of Intrepid's trade secrets by improper means and without Intrepid's consent.

106.    Sharif's misappropriation was willful and malicious because it was undertaken knowingly, intentionally, and in conscious disregard of Intrepid's ownership rights, operational needs, court-ordered preservation measures, and right to exclusive control over its trade secrets, credentials, source code, repositories, and

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

22

related systems.

107.    As a direct and proximate result of Sharif's misappropriation, Intrepid has suffered and continues to suffer harm, including loss of control over trade secrets, loss or impairment of exclusive access to source code and technical systems, operational disruption, impairment of its ability to develop, operate, distribute, commercialize, license, or monetize *Ashes of Creation*, diminution of asset value, increased risk of disclosure or dissemination, forensic and credential-recovery costs, custodian costs, investigation costs, attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g) to the extent recoverable by contract, statute, or applicable law, and other damages in an amount to be proven at trial.

108.    Intrepid is entitled to all remedies available under DTSA, including injunctive relief, damages for actual loss, damages for unjust enrichment not addressed in computing actual loss, reasonable royalties where applicable, exemplary damages for willful and malicious misappropriation, and attorneys' fees and costs to the fullest extent permitted by 18 U.S.C. section 1836(b)(3) and other applicable law.

**SECOND CLAIM FOR RELIEF**
**Misappropriation of Trade Secrets, Under California's Uniform Trade Secret Act, Cal Civ. Code §§ 3426,** *et seq.* **"CUTSA"**
*(Against Cross-Defendant Steven Sharif)*

109.    Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

110.    Intrepid owns trade secret information within the meaning of the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code section 3426.1(d).

111.    Intrepid's trade secrets include confidential and proprietary information relating to *Ashes of Creation*, including without limitation: source code; technical implementation architecture; server-side simulation logic; distributed event-processing systems; dynamic resource-allocation algorithms; backend systems

23

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES       Case No.   3:26-cv-00965-LL-MMP

governing world persistence, territory control, and economic dependencies; server-meshing and distributed-networking systems; PvP risk-reward scaling algorithms; Node-system engine logic; development tools; event tools; seasonal environmental systems; trade and caravan systems; class implementation logic; stat-balancing systems; compiled builds; deployment pipelines; infrastructure configurations; production environments; credentials; authentication information; and related technical, operational, and business information.

112.	Intrepid's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or use, including competitors, former employees, vendors, platform operators, and potential purchasers or developers of competing game technology.

113.	Intrepid took reasonable measures to maintain the secrecy of its trade secrets, including use of Company-controlled systems, source-code repositories, credentialed access, password and authentication controls, employment confidentiality obligations, non-disclosure obligations, restrictions on access to source code and Company systems, and the use of secure platforms and repositories for development, infrastructure, and production operations.

114.	Intrepid's trade secrets relate to *Ashes of Creation*, a massively multiplayer online role-playing game, which was developed and intended to be distributed in interstate and foreign commerce, including through online platforms.

115.	Sharif acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization. Among other things, Sharif encouraged, facilitated, ratified, or participated in the withholding of credentials, source-code access, repositories, authentication information, platform access, and other Company systems necessary to access, preserve, develop, operate, distribute, and monetize *Ashes of Creation*.

/ / /

Spencer Fane LLP
Attorneys at Law
Santa Monica

24

116.    Sharif knew or had reason to know that the trade secrets, credentials, repositories, systems, and related access information belonged to Intrepid, were confidential, were acquired or retained under circumstances giving rise to duties to maintain their secrecy and return them to Intrepid, and could not be retained, withheld, disclosed, used, or controlled for any purpose adverse to Intrepid.

117.    Sharif's conduct constitutes misappropriation under CUTSA, including acquisition, disclosure, use, retention, or threatened use or disclosure of Intrepid's trade secrets by improper means and without Intrepid's consent.

118.    Sharif's misappropriation was willful and malicious because it was undertaken knowingly, intentionally, and in conscious disregard of Intrepid's ownership rights, operational needs, court-ordered preservation measures, and right to exclusive control over its trade secrets, credentials, source code, repositories, and related systems.

119.    As a direct and proximate result of Sharif's misappropriation, Intrepid has suffered and continues to suffer harm, including loss of control over trade secrets, loss or impairment of exclusive access to source code and technical systems, operational disruption, impairment of its ability to develop, operate, distribute, commercialize, license, or monetize *Ashes of Creation*, diminution of asset value, increased risk of disclosure or dissemination, forensic and credential-recovery costs, custodian costs, investigation costs, attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g) to the extent recoverable by contract, statute, or applicable law, and other damages in an amount to be proven at trial.

120.    Intrepid is entitled to all remedies available under CUTSA, including injunctive relief, damages for actual loss, damages for unjust enrichment not addressed in computing actual loss, reasonable royalties where applicable, exemplary damages for willful and malicious misappropriation, and attorneys' fees and costs to the fullest extent permitted by California Civil Code sections 3426.2, 3426.3, and 3426.4 and other applicable law.

25

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

**THIRD CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
*(Against Cross-Defendant Steven Sharif)*

121.   Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

122.   As founder, CEO, and director of Intrepid from Intrepid's inception through his resignation, Sharif owed Intrepid the fiduciary duties of care and loyalty under California Corporations Code § 309 and applicable common law.

123.   A fiduciary duty imposes on a corporate officer a duty to act with the utmost good faith in the best interests of the corporation.

124.   Sharif breached these duties through the conduct alleged herein, including without limitation: (a) causing Intrepid to mischaracterize investor capital contributions as revenue to secure commercial financing; (b) systematically diverting corporate assets for personal benefit, family member benefit, and personal real estate funding; (c) authorizing approximately $21 million in transactions lacking documentation establishing a legitimate corporate purpose; (d)  failing to file required payroll tax returns; (e) obstructing Ogden's audit of personal transfers; (f) resigning on January 19, 2026 without disclosing material adverse communications received from CommerceWest the prior day; (g) communicating with CommerceWest after his resignation without Board authority for personal benefit; (h) and encouraging or facilitating the post-resignation withholding of company credentials, source code access, and physical assets by Zimmerman and Rhoades.

125.   As a direct and proximate result of Sharif's breaches, Intrepid has suffered damages in an amount to be proven at trial, presently estimated to exceed $21 million in unsupported personal and non-business transactions plus approximately $10–12 million in net personal extraction of Company cash, plus consequential damages including operational losses, regulatory exposure from unpaid payroll taxes, and the cost of restoring credential access and physical infrastructure.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

26

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

126. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

127. In addition, Sharif's breaches were intentional, and oppressive within the meaning of California Civil Code § 3294, entitling Intrepid to punitive damages in an amount sufficient to punish and deter such conduct.

## FOURTH CLAIM FOR RELIEF
### Intentional Misrepresentation
*(Against Cross-Defendant Steven Sharif)*

128. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

129. Sharif made representations of material fact to Intrepid, its Board, and its investors and lenders that Sharif either knew were false at the time made or made with reckless disregard for their truth.

130. These representations include without limitation: (a) the February 2021 cash flow projections and April 2022 launch timeline provided to Dawson and others; (b) the "high 9-figure valuation" representation regarding Riot Games; (c) the public representation that Intrepid's funding came entirely from Sharif personally; (d) the May 31, 2024 representation to Board member Fette of $24–45 million in revenue within two months of an August 2024 launch; (e) and the contemporaneous representations to investors and the Board concerning Intrepid's development progress and commercial readiness to offer the game to the public in 2024 and 2025.

131. Sharif made these representations with the intent that they be relied upon to induce continued capital investment, lender forbearance, and Board acquiescence in his continued operational control of Intrepid.

132. Sharif knew the falsity of, or acted with reckless disregard for the truth of, each representation at the time made.

///

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

27

133. Intrepid, its Board, and its investors and lenders justifiably relied on these representations.

134. Reliance by the Board and investors was reasonable because Sharif was the only person with complete visibility into Intrepid's development status and financial condition.

135. Therefore, Intrepid's reliance on Sharif's representations were a substantial factor in causing Intrepid's harm.

136. As a direct and proximate result of Sharif's false representations, Intrepid accumulated in excess of $78 million in capital obligations on a false premise.

137. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

138. As a direct and proximate result of Sharif's fraud, Intrepid has suffered damages in an amount to be proven at trial. Sharif's conduct was intentional, fraudulent, and oppressive, entitling Intrepid to punitive damages under California Civil Code section 3294.

## FIFTH CLAIM FOR RELIEF
### Negligent Misrepresentation
*(Against Cross-Defendant Steven Sharif (Pleaded in the Alternative to the Fourth Claim))*

139. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

140. This claim is pleaded in the alternative to the Second Claim for Relief pursuant to Federal Rule of Civil Procedure 8(a)(3).

141. Intrepid does not waive its claim of intentional fraud by pleading in the alternative.

142. In the event the trier of fact concludes that Sharif did not act with the scienter required for intentional misrepresentation, Intrepid pleads in the alternative that Sharif is liable for negligent misrepresentation.

28

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

143. Under California Civil Code § 1710(2) and applicable common law, negligent misrepresentation consists of: (a) a representation of past or existing material fact; (b) made without reasonable grounds for believing it to be true; (c) with the intent to induce reliance on the fact misrepresented; (d) justifiable reliance on the misrepresentation; and (e) resulting damage. *See Ragland v. U.S. Bank National Assn.*, 209 Cal. App. 4th 182, 197 (2012).

144. The representations identified in the Second Claim above were each representations of past or existing material fact concerning the then-current state of Intrepid's development progress, financial condition, and business relationships.

145. The 2021 financial projections were representations about Intrepid's then-existing trajectory and development pipeline.

146. The April 2022 commercial launch representation was about the then-existing development status.

147. The Riot Games representation was a statement about an existing business relationship.

148. The May 31, 2024, representation to then-investor Fette was about the then-existing commercial readiness of the game.

149. Sharif lacked reasonable grounds for believing the truth of each of these representations at the time they were made.

150. As CEO and founder with complete real-time visibility into Intrepid's development pipeline, team capacity, burn rate, and historical delays, Sharif could not have held a reasonable belief that an April 2022 commercial launch would occur, that $24–45 million in revenue would be generated within two months of an August 2024 launch, or that the represented Riot Games relationship existed at the stated valuation.

151. Further, with respect to the obstruction conduct that occurred from May–July 2025, where Sharif refused to corroborate $10.15 million in personal transfers when formally requested by the sitting CFO on three separate occasions,

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

29

further establishes that Sharif lacked reasonable grounds for his representations to lenders and the Board concerning Intrepid's financial integrity.

152. Sharif made each representation with the intent that Intrepid, its Board, its lenders, and its investors rely on them as the basis for continued capital investment, lender forbearance, and continued operational control of Intrepid.

153. Intrepid, its Board, and its investors and lenders justifiably relied on these representations.

154. Intrepid's reliance was reasonable because Sharif was the only person with complete visibility into Intrepid's development status and financial condition.

155. As a direct and proximate result of Sharif's negligent misrepresentations, Intrepid suffered damages in an amount to be proven at trial, including capital costs, operational losses, restructuring and wind-down costs, regulatory exposure, unpaid payroll-tax exposure, and loss of going-concern value. Compensatory damages under this claim are co-extensive with the damages sought under the Second Claim.

156. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## SIXTH CLAIM FOR RELIEF
### Corporate Waste
*(Against Cross-Defendant Steven Sharif)*

157. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

158. As Chief Executive Officer and director, Sharif caused Intrepid to transfer corporate assets for no consideration or grossly inadequate consideration without rational business purpose at Intrepid's expense.

159. The transfers, individually and in the aggregate, constitute corporate waste under California law.

///

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

30

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES        Case No.  3:26-cv-00965-LL-MMP

160. The wasted assets include without limitation: (a) the approximately $21 million in transactions lacking supporting documentation; (b) the $10–12 million in net personal extractions; (c) the $3.7 million in payments to family members, select investors and personal associates; (d) the $1.8 million in unsupported credit-card reimbursements; (e) the $1,263,000 in vendor payments to related entities, select investors and employee spouses; (f) and the funds applied to personal real-estate obligations coded to "Gore Oil Company."

161. These assets were necessary for the successful operation and development of Intrepid's assets and were used for Sharif's personal benefit.

162. No businessperson of ordinary sound judgment could conclude that Intrepid received adequate consideration for the above-mentioned wasted assets or that there was a reasonable business need for these expenditures.

163. Intrepid is entitled to recover the full value of all corporate assets wasted by Sharif, together with pre-judgment interest and costs of forensic accounting required to identify and quantify the waste.

164. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## SEVENTH CLAIM FOR RELIEF
### Conversion
*(Against Cross-Defendant Steven Sharif)*

165. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

166. Intrepid owns or has the right to possess: the source code for *Ashes of Creation*; all website domains paid for and maintained by Intrepid; all credentials, access tokens, and authentication information for the systems identified in the March 10, 2026 Order Appointing Intellectual Property Custodian [ECF No. 33] and the additional systems identified herein; all physical server hardware and components located at or removed from the ScaleMatrix data center; all corporate funds,

31

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

including the approximately $10–12 million in diverted personal expenditures and the approximately $2.6 million in undocumented shareholder loans; and all other tangible Company property in the possession or control of Sharif.

167. Sharif intentionally exercised dominion over Intrepid's property inconsistent with Intrepid's ownership rights through the financial diversions described herein and by encouraging or facilitating the post-resignation withholding of credentials, digital assets, and physical assets by Zimmerman and Rhoades.

168. Sharif had full knowledge of the appointment of the Intellectual Property Custodian and the entry of the Temporary Restraining Order, yet continued to direct or facilitate the wrongful retention of Company property.

169. Intrepid has been damaged by Sharif's conversion and is entitled to recover the value of all converted property, lost profits and revenue caused by the conversion, and consequential damages including the cost of the court-appointed Intellectual Property Custodian and all related forensic and recovery costs.

170. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## EIGHTH CLAIM FOR RELIEF
### Breach of Contract
*(Against Cross-Defendant Steven Sharif)*

171. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

172. Sharif was party to an employment relationship with Intrepid as its Chief Executive Officer, and that relationship was subject to the terms set forth in any written or oral confidentiality, intellectual-property agreements existing between Intrepid, its Board of Directors and Sharif as CEO for Intrepid.

173. In addition, where an expressly written contract is absent, California Civil Code §§1621 and 1622 recognize implied or oral contracts, which here govern the relationship between Sharif as CEO, Intrepid and its Board of Directors

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

32

obligating Sharif to act in Intrepid's best interests.

174. The existence and terms of Intrepid's and Shariff's contractual relationship is evidenced by the parties' conduct, including Intrepid's conferral of executive authority, compensation, access to corporate accounts, corporate assets, confidential information, trade secrets, source-code repositories, business records, investor communications, lender communications, and operational control over Intrepid, and Sharif's acceptance and exercise of that authority on Intrepid's behalf.

175. Intrepid duly performed or substantially performed all of its obligations under any agreement between Intrepid and Sharif.

176. The precise terms of any such written, oral, or implied-in-fact agreements will be confirmed in discovery.

177. The Company also asserts breach of the implied terms of Sharif's employment relationship, including obligations under California Labor Code § 2860, which specifically states "[e]verything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

178. Sharif materially breached his contractual and employment-based obligations through the financial diversions, audit obstruction, post-resignation interference with credential and asset transition, and violations of court orders alleged in this Cross Complaint.

179. As a direct and proximate result of Sharif's breaches, Intrepid suffered damages in an amount to be proven at trial, including but not limited to diverted or unsupported corporate funds, loss or impairment of Company assets, loss of access to credentials, systems, records, and intellectual property, operational disruption, forensic recovery costs, investigation costs, restructuring and wind-down costs, regulatory exposure, and other consequential damages.

///

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES      Case No.   3:26-cv-00965-LL-MMP

180.   Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## NINTH CLAIM FOR RELIEF
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
*(Against Cross-Defendant Steven Sharif)*

181.   Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

182.   Every contract in California contains an implied covenant of good faith and fair dealing. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988).

183.   Where an expressly written contract is absent, California Civil Code 1621 and 1622 recognizes implied or oral contracts.

184.   Intrepid and Sharif entered into one or more valid and enforceable contracts governing Sharif's relationship with Intrepid, including but not limited to a CEO employment, confidentiality, or intellectual property assignment agreement.

185.   Intrepid performed all obligations required of it under those agreements, except to the extent any such obligations were excused, waived, prevented, or rendered impossible by Sharif's conduct.

186.   Sharif unfairly interfered with Intrepid's right to receive the benefits of those agreements by, among other things, representing to investors and the board that corporate capital was being deployed for game development while causing corporate funds to be diverted for personal benefit; withholding material CommerceWest communications from the board and timing his resignation to coincide with those adverse communications; and continuing, after resignation, to undermine Intrepid's efforts to recover corporate assets, credentials, records, and property.

187.   As a direct and proximate result of Sharif's conduct, Intrepid was harmed in an amount to be proven at trial, including damages arising from converted

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

34

corporate funds, impaired access to company assets and information, and other consequential damages.

188.    Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g).

**TENTH CLAIM FOR RELIEF**
**Negligence / Breach of the Duty of Care**
*(Against Cross-Defendant Steven Sharif)*

189.    Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

190.    As CEO and director, Sharif owed Intrepid a duty of care to act with the care, skill, and diligence of a reasonably prudent person in a like position and under similar circumstances. California Corporation Code § 309(a).

191.    The business-judgment rule does not shield actions taken without a reasonable inquiry, with improper motives, or as a result of a conflict of interest. *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1045 (2009).

192.    Moreover, the business-judgment rule's presumption of propriety is rebutted where there is evidence of fraud, bad faith, overreaching, or an unreasonable failure to investigate material facts. *Id.*

193.    Sharif breached his duty of care by, among other things, failing to maintain adequate financial controls, books, and records, which permitted approximately $21 million in unsupported transactions; failing to ensure that Intrepid filed required payroll tax returns for 2017 through 2019; causing or permitting Intrepid to mischaracterize investor capital as revenue in connection with the CommerceWest loan; failing to disclose the CommerceWest default notice and related adverse communications to the Board; and making material development, launch, revenue, and business-prospect representations to investors, lenders, and the Board without a reasonable factual basis.

194.    The alleged misconduct involved inadequate inquiry, concealment of material facts, self-interested conduct, misuse or diversion of corporate assets, and

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

failures of basic corporate compliance and oversight.

195. Those allegations rebut any presumption that Sharif acted on an informed basis, in good faith, and in the honest belief that his conduct served Intrepid's best interests.

196. As a direct and proximate result of Sharif's breaches, Intrepid suffered damages in an amount to be proven at trial, including but not limited to unsupported or diverted corporate funds, tax liabilities, penalties, interest, costs of investigation and forensic review, lender-related harm, impairment of corporate governance, and other consequential damages.

197. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

**ELEVENTH CLAIM FOR RELIEF**
**Civil Theft — California Penal Code Section 496(c)**
*(Against Cross-Defendant Steven Sharif)*

198. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

199. California Penal Code § 496(a) prohibits any person from receiving, concealing, or withholding property that has been obtained in any manner constituting theft, knowing the property to have been so obtained.

200. California Penal Code § 484 defines theft to include embezzlement, larceny, larceny by trick, and obtaining property by false pretenses.

201. California Penal Code § 503 defines embezzlement as the fraudulent appropriation of property by a person to whom it has been entrusted.

202. California Penal Code § 496(c) creates a civil cause of action for any person injured by a violation of section 496(a), providing for mandatory treble damages, costs of suit, and reasonable attorney's fees. See *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 347-48 (2022).

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

36

203.    As a fiduciary entrusted with the funds and assets of Intrepid, Sharif fraudulently appropriated property in his care through the diversions, related-party payments, unsupported reimbursements, and personal real-estate funding alleged herein.

204.    Each transfer for which there was no rational corporate purpose constitutes embezzlement under California Penal Code § 503 and property obtained in a manner constituting theft under §§ 484 and 496(a). Sharif's post-resignation retention and concealment of Company funds and assets also constitutes withholding of stolen property under § 496(a).

205.    Intrepid has been damaged by Sharif's violations of section 496(a) in an amount to be proven at trial. Pursuant to section 496(c), Intrepid is entitled to recover three times the amount of actual damages sustained.

206.    Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## TWELFTH CLAIM FOR RELIEF
### Aiding and Abetting Breach of Fiduciary Duty
*(Against Cross-Defendant Steven Sharif)*

207.    Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

208.    Moore, Zimmerman, and Rhoades owed fiduciary or employment position-based duties to Intrepid arising from their respective roles, authority, access, and responsibilities within the company.

209.    Moore, Zimmerman, and Rhoades breached those duties through the conduct alleged herein, including Moore's deficient financial controls and unsupported transfers; Zimmerman's withholding of credentials and failure to preserve or transition Company records and access; and Rhoades' unauthorized removal and retention of Company hardware and property.

///

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

37

210. Sharif had actual knowledge of those breaches, including Moore's financial-record and transfer practices, Zimmerman's withholding of credentials and access, and Rhoades' removal or retention of Company property.

211. Upon information and belief, Sharif substantially assisted or encouraged those breaches through communications and conduct that facilitated, ratified, concealed, or failed to correct the withholding, misuse, diversion, or retention of Company assets, credentials, records, and property.

212. Sharif's knowing assistance and encouragement was a substantial factor in causing harm to Intrepid, including diverted or unsupported corporate funds, loss or impairment of Company assets, loss of access to critical systems and records, operational disruption, forensic recovery costs, investigation costs, and other damages in an amount to be proven at trial.

213. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## THIRTEENTH CLAIM FOR RELIEF
### Disgorgement / Unjust Enrichment / Restitution
*(Against Cross-Defendant Steven Sharif)*

214. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

215. Sharif received funds, assets, benefits, profits, or other value from Intrepid through the conduct alleged herein, including unauthorized transfers, unsupported reimbursements, related-party payments, personal real-estate funding, and other benefits obtained from corporate assets.

216. Sharif received and retained those benefits at Intrepid's expense.

217. It would be unjust for Sharif to retain those benefits because they were obtained through the alleged breaches of fiduciary duty, financial diversions, misrepresentations, conversion, civil theft, and other wrongful conduct alleged herein.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

38

218. Intrepid is entitled to restitution and disgorgement of all funds, assets, benefits, profits, or other value wrongfully obtained, retained, diverted, or concealed by Sharif, in an amount to be proven at trial.

219. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

### FOURTEENTH CLAIM FOR RELIEF
#### Accounting
*(Against Cross-Defendant Steven Sharif)*

220. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

221. Sharif owed Intrepid fiduciary and position-based duties arising from his role as founder, Chief Executive Officer, director, and controlling corporate officer, including duties concerning Intrepid's corporate funds, books, records, accounts, investor communications, lender communications, assets, and financial condition.

222. Sharif exercised control over Intrepid's corporate funds, accounts, assets, financial records, investor communications, lender communications, and related-party transactions.

223. The transactions alleged herein include unsupported transfers, personal reimbursements, shareholder-loan transactions, personal real-estate funding, and other financial activity for which the full amount, recipients, purpose, authorization, and disposition cannot be determined without an accounting.

224. A balance is due from Sharif to Intrepid, including funds, assets, benefits, or value wrongfully obtained, retained, diverted, concealed, or caused to be transferred by Sharif or for Sharif's benefit.

225. The amount due from Sharif cannot be fully ascertained without an accounting because the relevant information is within Sharif's knowledge or control, is reflected in financial records and transaction histories requiring examination, and

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

39

includes related-party transactions, undocumented transfers, and personal-benefit transactions not fully ascertainable from Intrepid's current records.

226. Intrepid therefore seeks an accounting from Sharif of all Intrepid funds, assets, benefits, reimbursements, transfers, payments, liabilities, records, and transactions received, directed, authorized, concealed, retained, or caused by Sharif, including all amounts traceable to unauthorized transfers, unsupported reimbursements, related-party payments, shareholder-loan transactions, personal real-estate funding, and other personal benefits obtained at Intrepid's expense.

227. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## FIFTEENTH CLAIM FOR RELIEF
### Declaratory Relief
*(Against Cross-Defendant Steven Sharif)*

228. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

229. An actual and justiciable controversy exists between Intrepid and Cross-Defendant Sharif concerning the ownership and right to possession of Company assets, the personal-versus-corporate character of certain obligations, and Sharif's authority to act with respect to Company property after his resignation. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Intrepid seeks a judicial declaration that:

a. All source code, trade secrets, and intellectual property developed by Intrepid employees and contractors in the course of their employment including but not limited to the categories of trade secrets enumerated in the March 10, 2026 Order Appointing Intellectual Property Custodian (ECF No. 33) belongs exclusively to Intrepid Studios, Inc. and should be turned over to Intrepid;

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

40

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.  3:26-cv-00965-LL-MMP

b.    All website domains paid for and maintained by Intrepid since 2016, including without limitation AshesofCreation.com and IntrepidStudios.com, are the property of Intrepid Studios, Inc.;

c.    All corporate funds extracted from Intrepid through the transactions identified herein lacking supporting documentation establishing a legitimate corporate purpose are property of Intrepid Studios, Inc. and are subject to recovery from the recipients;

d.    The June 30, 2020 promissory note in the principal amount of $1.5 million from Sharif to Tim Sharif is the personal obligation of Steven Sharif and is not an obligation of Intrepid Studios, Inc.; and

e.    Cross-Defendant Sharif has no right to direct, encourage, facilitate, or ratify the withholding of any Company asset, credential, or property by any former employee, third party, or other person and should ensure turn over all of Intrepid's intellectual property.

## **PRAYER FOR RELIEF ON CROSS-CLAIM**

WHEREFORE, Cross-Claimant Intrepid Studios, Inc. respectfully requests that this Court enter judgment in its favor and against Cross-Defendant Steven Sharif on each of the foregoing Cross-Claims and grant the following relief:

**A.**    For general, special and compensatory damages against Cross-Defendant Sharif on the First through the Fourteenth Cross-Claims in an amount to be proven at trial, presently estimated to exceed $21 million in unsupported transactions plus approximately $10–12 million in net personal extractions, plus consequential damages including operational losses, regulatory exposure from unpaid payroll taxes, restructuring costs, the loss of going-concern value, the cost of

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

41

the court-appointed Intellectual Property Custodian, and the cost of forensic accounting and credential-recovery operations;

**B.** For treble damages on the Eleventh Cross-Claim against Cross-Defendant Sharif pursuant to California Penal Code § 496(c), together with reasonable attorney's fees and costs as expressly provided by that section;

**C.** For punitive and exemplary damages against Cross-Defendant Sharif pursuant to California Civil Code § 3294 for intentional, fraudulent, and oppressive conduct, in an amount sufficient to punish and deter such conduct; and for willful and malicious misappropriation to the fullest extent permitted by 18 U.S.C. § 1836(b)(3) and California Civil Code § 3426.3

**D.** For restitution and/or disgorgement of all funds, benefits, assets, or other value wrongfully obtained by Cross-Defendant Sharif through the conduct alleged herein;

**E.** For declaratory relief against Cross-Defendant Sharif as set forth in the Fifteenth Cross-Claim above;

**F.** For injunctive relief enjoining Cross-Defendant Sharif from directing, encouraging, facilitating, or ratifying any further withholding, destruction, transfer, use, disclosure, dissemination misappropriation or dissipation of Company assets, trade secrets, source code, intellectual property, credentials, or records by any person;

**G.** For attorney's fees and costs to the fullest extent provided by FRCP 9(g) and applicable contract, statute, or law;

**H.** For pre-judgment and post-judgment interest at the maximum rate permitted by law; and

**I.** For an accounting of all sums taken from Intrepid and such other and further relief against Cross-Defendant Sharif as the Court deems just and proper.

/ / /

Spencer Fane LLP
Attorneys at Law
Santa Monica

42

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.  3:26-cv-00965-LL-MMP

## THIRD-PARTY COMPLAINT AGAINST
## JOHN MOORE, JASON ZIMMERMAN, MATTHEW RHOADES, DOES 1-10 and Roes I-X

### FIRST CLAIM FOR RELIEF
**Defend Trade Secrets Act, 18 U.S.C. §§ 1836,** *et seq.* **"DTSA"**
*(Against Third-Party Defendant John Moore)*

230. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

231. Intrepid owns trade secret information within the meaning of the Defend Trade Secrets Act, 18 U.S.C. section 1839(3).

232. Intrepid's trade secrets include confidential and proprietary information relating to *Ashes of Creation*, including without limitation: source code; technical implementation architecture; server-side simulation logic; distributed event-processing systems; dynamic resource-allocation algorithms; backend systems governing world persistence, territory control, and economic dependencies; server-meshing and distributed-networking systems; PvP risk-reward scaling algorithms; Node-system engine logic; development tools; event tools; seasonal environmental systems; trade and caravan systems; class implementation logic; stat-balancing systems; compiled builds; deployment pipelines; infrastructure configurations; production environments; credentials; authentication information; and related technical, operational, and business information.

233. Intrepid's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or use, including competitors, former employees, vendors, platform operators, and potential purchasers or developers of competing game technology.

234. Intrepid took reasonable measures to maintain the secrecy of its trade secrets, including use of Company-controlled systems, source-code repositories, credentialed access, password and authentication controls, employment confidentiality obligations, non-disclosure obligations, restrictions on access to

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

43

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES        Case No.   3:26-cv-00965-LL-MMP

source code and Company systems, and the use of secure platforms and repositories for development, infrastructure, and production operations.

235. Intrepid's trade secrets relate to *Ashes of Creation*, a massively multiplayer online role-playing game that was developed and intended to be distributed in interstate and foreign commerce, including through online platforms.

236. Moore acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization by participating in or facilitating the diversion, concealment, misuse, or withholding of Company assets, records, credentials, access information, financial records, and other confidential Company information obtained through his position as Chief Financial Officer.

237. Zimmerman acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization by withholding credentials, administrative access, two-factor authentication information, recovery information, source-code access, repositories, platform access, Company records, and access to systems necessary to preserve, develop, operate, distribute, and monetize Ashes of Creation; and by participating in or directing conduct involving the removal of Intrepid's equipment located at the ScaleMatrix data center, and the withholding of access to and control over Company systems and assets.

238. Rhoades acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization by participating in the unauthorized removal and retention of Company hardware and components from the ScaleMatrix data center; failing to return Company property, records, files, electronic data, confidential information, and trade-secret materials; and failing to comply with post-termination obligations requiring return, inspection, and certification of compliance.

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

44

239. Moore, Zimmerman, and Rhoades knew or had reason to know that the trade secrets, credentials, repositories, systems, hardware, data, and related access information belonged to Intrepid, were confidential, were acquired or retained under circumstances giving rise to duties to maintain their secrecy and return them to Intrepid, and could not be retained, withheld, disclosed, used, or controlled for any purpose adverse to Intrepid.

240. The conduct of Moore, Zimmerman, and Rhoades constitutes misappropriation under the DTSA, including acquisition, disclosure, use, retention, or threatened use or disclosure of Intrepid's trade secrets by improper means and without Intrepid's consent.

241. The misappropriation by Moore, Zimmerman, and Rhoades was willful and malicious because it was undertaken knowingly, intentionally, and in conscious disregard of Intrepid's ownership rights, operational needs, court-ordered preservation measures, contractual rights, and right to exclusive control over its trade secrets, credentials, source code, repositories, hardware, and related systems.

242. As a direct and proximate result of Moore's, Zimmerman's, and Rhoades' misappropriation, Intrepid has suffered and continues to suffer harm, including loss of control over trade secrets, loss or impairment of exclusive access to source code and technical systems, operational disruption, impairment of its ability to develop, operate, distribute, commercialize, license, or monetize Ashes of Creation, diminution of enterprise and asset value, increased risk of disclosure or dissemination, forensic and credential-recovery costs, custodian costs, investigation costs, attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g) to the extent recoverable by contract, statute, or applicable law, and other damages in an amount to be proven at trial.

243. Intrepid is entitled to all remedies available under the DTSA, including injunctive relief, damages for actual loss, damages for unjust enrichment not addressed in computing actual loss, reasonable royalties where applicable,

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

45

exemplary damages for willful and malicious misappropriation, and attorneys' fees and costs to the fullest extent permitted by 18 U.S.C. section 1836(b)(3) and other applicable law.

**SECOND CLAIM FOR RELIEF**
**Misappropriation of Trade Secrets, Under California's Uniform Trade Secret Act, Cal Civ. Code §§ 3426, *et seq.* "CUTSA"**
*(Against Third-Party Defendant John Moore)*

244. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

245. Intrepid owns trade secret information within the meaning of the California Uniform Trade Secrets Act, California Civil Code section 3426.1(d).

246. Intrepid's trade secrets include confidential and proprietary information relating to *Ashes of Creation*, including without limitation: source code; technical implementation architecture; server-side simulation logic; distributed event-processing systems; dynamic resource-allocation algorithms; backend systems governing world persistence, territory control, and economic dependencies; server-meshing and distributed-networking systems; PvP risk-reward scaling algorithms; Node-system engine logic; development tools; event tools; seasonal environmental systems; trade and caravan systems; class implementation logic; stat-balancing systems; compiled builds; deployment pipelines; infrastructure configurations; production environments; credentials; authentication information; and related technical, operational, and business information.

247. Intrepid's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or use, including competitors, former employees, vendors, platform operators, and potential purchasers or developers of competing game technology.

248. Intrepid took reasonable measures to maintain the secrecy of its trade secrets, including use of Company-controlled systems, source-code repositories,

46

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

credentialed access, password and authentication controls, employment confidentiality obligations, non-disclosure obligations, restrictions on access to source code and Company systems, and the use of secure platforms and repositories for development, infrastructure, and production operations.

249. Intrepid's trade secrets relate to *Ashes of Creation*, a massively multiplayer online role-playing game was developed and intended to be distributed in interstate and foreign commerce, including through online platforms.

250. Moore acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization by participating in or facilitating the diversion, concealment, misuse, or withholding of Company assets, records, credentials, access information, financial records, and other confidential Company information obtained through his position as Chief Financial Officer.

251. Zimmerman acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization by withholding credentials, administrative access, two-factor authentication information, recovery information, source-code access, repositories, platform access, Company records, and access to systems necessary to preserve, develop, operate, distribute, and monetize Ashes of Creation; and by participating in or directing conduct involving the removal of Intrepid's equipment located at the ScaleMatrix data center, and the withholding of access to and control over Company systems and assets.

252. Rhoades acquired, used, disclosed, retained, or threatened to use or disclose Intrepid's trade secrets through improper means and without Intrepid's authorization by participating in the unauthorized removal and retention of Company hardware and components from the ScaleMatrix data center; failing to return Company property, records, files, electronic data, confidential information, and trade-secret materials; and failing to comply with post-termination obligations

47

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

requiring return, inspection, and certification of compliance.

253. Moore, Zimmerman, and Rhoades knew or had reason to know that the trade secrets, credentials, repositories, systems, hardware, data, and related access information belonged to Intrepid, were confidential, were acquired or retained under circumstances giving rise to duties to maintain their secrecy and return them to Intrepid, and could not be retained, withheld, disclosed, used, or controlled for any purpose adverse to Intrepid.

254. The conduct of Moore, Zimmerman, and Rhoades constitutes misappropriation under the CUTSA, including acquisition, disclosure, use, retention, or threatened use or disclosure of Intrepid's trade secrets by improper means and without Intrepid's consent.

255. The misappropriation by Moore, Zimmerman, and Rhoades was willful and malicious because it was undertaken knowingly, intentionally, and in conscious disregard of Intrepid's ownership rights, operational needs, court-ordered preservation measures, contractual rights, and right to exclusive control over its trade secrets, credentials, source code, repositories, hardware, and related systems.

256. As a direct and proximate result of Moore's, Zimmerman's, and Rhoades' misappropriation, Intrepid has suffered and continues to suffer harm, including loss of control over trade secrets, loss or impairment of exclusive access to source code and technical systems, operational disruption, impairment of its ability to develop, operate, distribute, commercialize, license, or monetize Ashes of Creation, diminution of enterprise and asset value, increased risk of disclosure or dissemination, forensic and credential-recovery costs, custodian costs, investigation costs, attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g) to the extent recoverable by contract, statute, or applicable law, and other damages in an amount to be proven at trial.

257. Intrepid is entitled to all remedies available under the CUTSA, including injunctive relief, damages for actual loss, damages for unjust enrichment

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES    Case No. 3:26-cv-00965-LL-MMP

not addressed in computing actual loss, reasonable royalties where applicable, exemplary damages for willful and malicious misappropriation, and attorneys' fees and costs to the fullest extent permitted by California Civil Code sections 3426.2, 3426.3, and 3426.4 and other applicable law.

## THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty
*(Against Third-Party Defendant John Moore)*

258. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

259. As Chief Financial Officer of Intrepid from 2016 through October 2024, Moore owed Intrepid the fiduciary duties of care and loyalty under California Corporations Code section 309 and applicable common law.

260. A fiduciary duty imposes on a corporate officer a duty to act with the utmost good faith in the best interests of the corporation.

261. As CFO, Moore had signatory authority over corporate accounts, controlled Intrepid's QuickBooks records, managed payroll, and was responsible for financial reporting and compliance.

262. Moore breached these duties by: (a) converting, wasting and or embezzling approximately $2.6 million in shareholder loans from Intrepid between March 2020 and October 2024 without adequate authorization; (b) timing those disbursements to coincide with investor capital contributions; (c) transferring corporate funds to his personal Bank of America account ending in 6009; (d) authorizing payments to family members, including Sharif's mother-in-law Sharron Sharif and sister-in-law Kristin Sharifnezad; (e) authorizing personal credit-card reimbursements aggregating approximately $1.8 million without supporting documentation; (f) causing approximately $125,000 in shareholder loans to be issued coincident with the closing of a residence purchased by Moore and Sharif; (g) and maintaining financial records that mischaracterized investor capital contributions as revenue in connection with the CommerceWest loan application.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

49

263. As a direct and proximate result of Moore's breaches, Intrepid has suffered damages in an amount to be proven at trial. Moore's breaches were intentional, fraudulent, and oppressive, entitling Intrepid to punitive damages under California Civil Code section 3294.

264. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## FOURTH CLAIM FOR RELIEF
### Corporate Waste
*(Against Third-Party Defendant John Moore)*

265. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

266. As CFO, Moore was the executor and architect of the financial diversions alleged herein. Moore caused Intrepid to transfer corporate assets for no consideration or grossly inadequate consideration without rational business purpose, including the related-party payments, family-member payments, and personal-expense reimbursements detailed in the Factual Allegations.

267. Each transfer, individually and in the aggregate, constitutes corporate waste under California law.

268. No business person of ordinary sound judgment could conclude that Intrepid received adequate consideration for the above mentioned wasted assets.

269. Intrepid is entitled to recover the full value of all corporate assets wasted by Moore, including disgorgement of any benefit Moore retained, together with pre-judgment interest and forensic-accounting costs.

270. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

/ / /

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

50

## FIFTH CLAIM FOR RELIEF
### Conversion
*(Against Third-Party Defendants John Moore, Jason Zimmerman, and Matthew Rhoades)*

271. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

272. Intrepid owns or has the right to possess: all corporate funds and accounts, including the approximately $2.6 million in undocumented shareholder loans taken by Moore; all source code, credentials, access tokens, physical server hardware, and authentication information, identified in the March 10, 2026, Order [ECF No. 33] and all website domains paid for and maintained by Intrepid. Intrepid also owns or has the right to possess all physical server hardware, player data, and operational databases maintained on Company platforms.

273. Moore intentionally exercised dominion over corporate funds inconsistent with Intrepid's ownership through the diversions described in the First and Second Third-Party Counts.

274. Zimmerman and Rhoades intentionally exercised dominion over Intrepid's property inconsistent with Intrepid's ownership rights by removing physical server hardware components from the ScaleMatrix data center on January 30, January 31, and February 1, 2026, without authorization, retaining those components in undisclosed locations, and refusing to return them.

275. Zimmerman additionally exercised and continue to exercise wrongful dominion by withholding credentials and access information for the systems enumerated in the March 10, 2026, Order and the additional systems identified herein.

276. Intrepid has been damaged by the wrongful retention of its property and the resulting inability to operate, develop, distribute, and monetize *Ashes of Creation*.

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

51

277. Intrepid is entitled to recover the value of all converted property, lost profits and revenue caused by the conversion, and consequential damages including any cost incurred from the court-appointed Intellectual Property Custodian and all related forensic and recovery costs.

278. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g), to the extent recoverable by contract, statute, or applicable law.

## SIXTH CLAIM FOR RELIEF
### Breach of Contract
*(Against Third-Party Defendants John Moore, Jason Zimmerman, and Matthew Rhoades)*

279. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

280. Zimmerman executed an Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement (the "Zimmerman NDA") and Employee Acknowledgment with Intrepid on January 3, 2022.

281. Rhoades executed an Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreement (the "Rhoades NDA") and Employee Acknowledgment with Intrepid on June 20, 2023.

282. Section 9 of each NDA required the employee, upon termination of employment for any reason, to: (a) deliver to Intrepid all records, files, and electronic data containing Company Trade Secrets or Confidential Information; (b) deliver all tangible property belonging to Intrepid; (c) allow Intrepid's representative to inspect personal devices for Company Trade Secrets or Confidential Information; and (d) execute the Certificate of Compliance attached as Exhibit A.

283. Section 2(d) provides that all Trade Secrets and Confidential Information remain at all times the sole property of Intrepid.

284. Section 1 imposed a duty of loyalty.

/ / /

Spencer Fane LLP
Attorneys at Law
Santa Monica

52

285.  Section 14(b) provides for recovery of attorney's fees and costs by the prevailing party.

286.  Zimmerman materially breached the Zimmerman NDA by failing to deliver Company property upon termination; failing to surrender credentials, source-code access, and authentication information; deleting Slack records and channels; and failing to execute the Certificate of Compliance.

287.  Rhoades materially breached the Rhoades NDA by participating in the unauthorized removal of physical hardware from the ScaleMatrix data center, failing to return the components, failing to make personal devices available for inspection, and failing to execute the Certificate of Compliance.

288.  In addition, where an expressly written contract is absent, California Civil Code 1621 and 1622 recognizes implied or oral contracts.

289.  Intrepid and Moore entered into a valid and enforceable agreement, whether written, oral, or implied-in-fact, governing Moore's service as Intrepid's Chief Financial Officer.

290.   The existence and terms of that agreement are evidenced by the parties' conduct, including Intrepid's conferral of executive financial authority, compensation, access to corporate accounts and financial records, and responsibility for maintaining Intrepid's books and records, and Moore's acceptance and exercise of that authority on Intrepid's behalf.

291.  The precise terms of any such written, oral, or implied-in-fact agreements will be confirmed in discovery.

292.  In the alternative, Intrepid asserts breach of the implied terms of Moore's employment relationship, including obligations under California Labor Code section 2860, which specifically states "[e]verything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

53

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST
JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.  3:26-cv-00965-LL-MMP

293. Moore breached his employment obligations through the systematic financial self-dealing alleged herein.

294. Intrepid duly performed all or substantially performed all its obligations under any applicable agreement it held with Zimmerman, Rhoades, and Moore.

295. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g),and is entitled to all damages flowing from the breaches and to recovery of attorney's fees and costs to the fullest extent provided by NDA Section 14(b) and applicable law.

### SEVENTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
*(Against Third-Party Defendants John Moore, Jason Zimmerman, and Matthew Rhoades)*

296. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

297. Every contract in California contains an implied covenant of good faith and fair dealing. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988).

298. Where an expressly written contract is absent, California Civil Code 1621 and 1622 recognizes implied or oral contracts.

299. Moore breached the implied covenant and unfairly interfered with Intrepid's right to receive the benefits of the agreement by systematically extracting corporate funds for personal benefit while maintaining financial records that obscured, concealed, or failed to properly document those diversions, thereby depriving Intrepid of the benefit of faithful financial management, accurate books and records, and the proper use of corporate funds.

300. Zimmerman breached the implied covenant and unfairly interfered with Intrepid's rights to its intellectual property and other assets by deliberately withholding the credentials necessary for Intrepid to operate, knowing Intrepid could not develop, distribute, or monetize *Ashes of Creation* without them, and by providing false factual representations through counsel to the court-appointed

54

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

Custodian.

301.    Rhoades breached the implied covenant and unfairly interfered with Intrepid's rights by participating in the unauthorized removal of physical hardware holding Intrepid's intellectual property and other assets and refusing to return it.

302.    As a direct and proximate result of Moore's, Zimmerman's, and Rhoades' conduct, Intrepid was harmed in an amount to be proven at trial, including but not limited to damages arising from diverted corporate funds, loss of access to Company assets and information, loss or impairment of Company property, forensic recovery costs, investigation costs, and operational disruption.

303.    Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g),

### EIGHTH CLAIM FOR RELIEF
### Negligence / Breach of the Duty of Care
*(Against Third-Party Defendants John Moore, Jason Zimmerman, and Matthew Rhoades)*

304.    Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

305.    Each Third-Party Defendant owed Intrepid a duty of care commensurate with their position and the authority, access, and responsibilities entrusted to them.

306.    Moore, as CFO, owed Intrepid a duty to maintain adequate financial controls and accurate financial records.

307.    Zimmerman, as Director of Information Technology, owed Intrepid a duty to maintain secure, transferable credential management and to preserve Company records.

308.    Rhoades, as Information Technology Manager, owed Intrepid a duty to act within the scope of his authority with respect to Company physical assets.

309.    Moore breached his duty of care by maintaining inadequate financial controls that permitted systematic self-dealing to go undetected for years, by failing

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

55

to file required federal and state payroll tax returns for 2017–2019, and by maintaining records that mischaracterized investor capital contributions as revenue.

310.    Zimmerman breached his duty of care by allowing critical credentials to be tied to personal authentication methods without Company-controlled backup access, by failing to implement credential-transition protocols upon departure, and by failing to preserve Company records during the TRO period.

311.    Rhoades breached his duty of care by participating in the unauthorized removal of physical assets from the ScaleMatrix data center and by failing to comply with post-termination return obligations.

312.    These breaches proximately caused Intrepid damages in an amount to be proven at trial.

313.    Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g).

### NINTH CLAIM FOR RELIEF
### Civil Theft — California Penal Code Section 496(c)
*(Against Third-Party Defendants John Moore, Jason Zimmerman, and Matthew Rhoades)*

314.    Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

315.    California Penal Code section 496(a) prohibits any person from receiving, concealing, or withholding property that has been obtained in any manner constituting theft, knowing the property to have been so obtained.

316.    California Penal Code section 484 defines theft to include embezzlement;

317.    California Penal Code section 503 defines embezzlement as the fraudulent appropriation of property by a person to whom it has been entrusted.

318.    California Penal Code section 496(c) creates a civil cause of action for any person injured by a violation of section 496(a), providing for mandatory treble damages, costs of suit, and reasonable attorney's fees. See *Siry Investment, L.P. v.*

56

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

*Farkhondehpour*, 13 Cal. 5th 333, 347-48 (2022).

319. Moore, as a fiduciary entrusted with the funds and assets of Intrepid, fraudulently appropriated property in his care through the diversions, related-party payments, unsupported reimbursements, and personal real-estate funding alleged herein.

320. Zimmerman and Rhoades intentionally received, concealed, and withheld physical Company property the server hardware components removed from the ScaleMatrix data center with knowledge that the property belonged to Intrepid and that they were not authorized to take or retain it.

321. Zimmerman has further withheld Company credentials and digital assets constituting property of Intrepid.

322. Intrepid has been damaged in an amount to be proven at trial. Pursuant to section 496(c), Intrepid is entitled to recover three times the amount of actual damages sustained against each of Moore, Zimmerman, and Rhoades.

323. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g).

### TENTH CLAIM FOR RELIEF
#### Accounting
*(Against Third-Party Defendant John Moore)*

324. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

325. Moore owed Intrepid fiduciary and position-based duties arising from his role as Chief Financial Officer, including duties concerning Intrepid's corporate funds, accounts, books, records, payroll, financial reporting, accounting treatment, reimbursements, shareholder-loan transactions, related-party payments, and corporate liabilities.

326. Moore exercised control over Intrepid's corporate accounts, QuickBooks records, payroll records, financial reporting, accounting entries, reimbursements, shareholder-loan transactions, related-party payments, and records

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

57

concerning corporate funds.

327. The transactions alleged herein include unsupported transfers, personal reimbursements, related-party payments, shareholder-loan transactions, personal real-estate funding, and other financial activity for which the full amount, recipients, purpose, authorization, accounting treatment, and disposition cannot be determined without an accounting.

328. A balance is due from Moore to Intrepid, including funds, assets, benefits, or value wrongfully obtained, retained, diverted, concealed, recorded, mischaracterized, or caused to be transferred by Moore or for Moore's benefit.

329. The amount due from Moore cannot be fully ascertained without an accounting because the relevant information is within Moore's knowledge or control, is reflected in financial records and transaction histories requiring examination, and includes related-party transactions, undocumented transfers, accounting entries, shareholder-loan transactions, and personal-benefit transactions not fully ascertainable from Intrepid's current records.

330. Intrepid therefore seeks an accounting from Moore of all Intrepid funds, assets, benefits, reimbursements, transfers, payments, liabilities, records, accounting entries, and transactions received, directed, authorized, recorded, mischaracterized, concealed, retained, or caused by Moore, including all amounts traceable to unauthorized transfers, unsupported reimbursements, related-party payments, shareholder-loan transactions, personal real-estate funding, and other personal benefits obtained at Intrepid's expense.

331. Intrepid further seeks attorneys' fees and costs as special damages under Federal Rule of Civil Procedure 9(g).

/ / /

/ / /

/ / /

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

58

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

## ELEVENTH CLAIM FOR RELIEF
### Declaratory Relief
*(Against Third-Party Defendants John Moore, Jason Zimmerman, Matthew Rhoades, Does 1-10 and Roes I-X)*

332. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

333. An actual and justiciable controversy exists between Intrepid and the Third-Party Defendants regarding the ownership and right to possession of Company assets.

334. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Intrepid seeks a judicial declaration that:

    a.    All credentials, access tokens, two-factor authentication recovery codes, backup email addresses, recovery phone numbers, and authentication information for the systems enumerated in the March 10, 2026 Order and the additional systems identified herein belong exclusively to Intrepid Studios, Inc. and must be surrendered and turned over to Intrepid unconditionally by Zimmerman, Rhoades and Moore;

    b.    All physical server hardware removed from the ScaleMatrix data center by Zimmerman, Rhoades, or any other former employee belongs to Intrepid Studios, Inc. and must be returned in complete and unmodified condition together with a sworn inventory identifying each component by make, model, and serial number;

    c.    Zimmerman, Rhoades and Moore have no lien, claim, or other legal right to withhold any Company asset, credential, or property as security for any alleged compensation claim or other obligation;

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

d.    All funds extracted from Intrepid by Moore through the transactions identified in the Cross-Complaint and Third-Party Complaint lacking supporting documentation establishing a legitimate corporate purpose are property of Intrepid Studios, Inc. and are subject to recovery from Moore; and

e.    All entities identified as Doe individuals 1–10 and Roe entities I–X who received corporate funds to which they have no legal entitlement and are obligated to return such funds to Intrepid Studios, Inc.

## TWELFTH CLAIM FOR RELIEF
### Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)
*(Against Third-Party Defendants Jason Zimmerman and Matthew Rhoades)*

335.    Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

336.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2), prohibits intentionally accessing a protected computer without authorization and thereby obtaining information.

337.    Intrepid's computer systems, platforms, and digital accounts are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B) because they are used in and affect interstate and foreign commerce and communication.

338.    Zimmerman's and Rhoades' authorization to access Intrepid's computer systems terminated upon their termination of employment on F 30, 2026. Any access to or control over Intrepid's systems after that date was "without authorization" within the meaning of the CFAA.

339.    Following their termination, Zimmerman and Rhoades retained credentials, administrative privileges, two-factor authentication devices, and access to Intrepid's protected computer systems, including but not limited to AWS, Perforce, GitHub, MongoDB, Google Workspace, Slack, Bitwarden, and numerous

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

60

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES          Case No.   3:26-cv-00965-LL-MMP

other platforms identified in the Court's TRO and IP Custodian Orders.

340. Zimmerman continued to exercise unauthorized control over these systems, and on or about March 11, 2026, deleted Slack channels and communications belonging to Intrepid while the Temporary Restraining Order was in effect.

341. As a direct and proximate result of Zimmerman's and Rhoades' unauthorized access and control, Intrepid has suffered loss aggregating at least $5,000 in a one-year period, within the meaning of 18 U.S.C. § 1030(c)(4)(A)(i)(I), including but not limited to the costs of responding to the unauthorized access, conducting damage assessments, retaining the IP Custodian, engaging forensic investigators, and remediating systems—as well as revenue lost and other consequential damages incurred because of the interruption of service to Intrepid's operations.

342. Intrepid is entitled to compensatory damages, injunctive relief, and other equitable relief under 18 U.S.C. § 1030(g).

### THIRTEENTH CLAIM FOR RELIEF
### Violation of California Penal Code § 502
*(Against Third-Party Defendants Jason Zimmerman and Matthew Rhoades)*

343. Intrepid incorporates by reference each preceding paragraph as if fully set forth herein.

344. California Penal Code § 502(c) prohibits knowingly and without permission accessing any computer, computer system, or computer network. Section 502(e)(1) provides a civil cause of action for compensatory damages, injunctive relief, and other equitable relief to any person who suffers damage or loss by reason of a violation.

345. Zimmerman and Rhoades knowingly and without permission accessed, and continue to retain unauthorized control over, Intrepid's computer systems, computer networks, and computer data after the termination of their employment. This conduct violated § 502(c)(1), (c)(2), (c)(4), and (c)(7).

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

61

346. As a direct and proximate result of Zimmerman's and Rhoades' violations of § 502, Intrepid has suffered damage and loss, including but not limited to the costs of investigating and remediating the unauthorized access, retaining the IP Custodian, forensic recovery efforts, and lost revenue from the inability to operate its systems. Intrepid is entitled to compensatory damages, injunctive relief, and other equitable relief under § 502(e)(1).

## PRAYER FOR RELIEF ON THIRD-PARTY COMPLAINT

WHEREFORE, Third-Party Plaintiff Intrepid Studios, Inc. respectfully requests that this Court enter judgment in its favor and against Third-Party Defendants John Moore, Jason Zimmerman, Matthew Rhoades, and Does 1-10 and Roes I-X on each of the foregoing Third-Party Counts and grant the following relief:

**A.** For general, special and compensatory damages against Third-Party Defendant Moore in an amount to be proven at trial, including recovery of all unauthorized shareholder loans, family-member payments, personal expense reimbursements, and all other diverted funds, plus consequential damages including the cost of forensic accounting required to identify and quantify the diversions together with actual loss, unjust enrichment, reasonable royalty damages and all other damages recoverable under DTSA and CUTSA;

**B.** For general, special and compensatory damages against Third-Party Defendant Zimmerman in an amount to be proven at trial, including the value of physical hardware components removed from the ScaleMatrix data center, the cost of credential-recovery operations and the court-appointed Intellectual Property Custodian, the cost of forensic data-recovery operations relating to deleted Slack communications, and all revenue lost due to Intrepid's inability to operate its digital infrastructure, together with actual loss, unjust enrichment, reasonable royalty damages and all other damages recoverable under DTSA and CUTSA

**C.** For general, special and compensatory damages against Third-Party Defendant Rhoades in an amount to be proven at trial, including the value of physical

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES    Case No.  3:26-cv-00965-LL-MMP

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

hardware components removed from the ScaleMatrix data center and consequential damages, together with actual loss, unjust enrichment, reasonable royalty damages and all other damages recoverable under DTSA and CUTSA

**D.** For general, special and compensatory damages against Third-Party Defendants Does 1-10 and Roes I-X in amounts to be proven at trial reflecting their respective participation in the conduct alleged herein;

**E.** For treble damages against Third-Party Defendants Moore, Zimmerman, and Rhoades pursuant to California Penal Code section 496(c), together with reasonable attorney's fees and costs as expressly provided by that section.

**F.** For punitive and exemplary damages against Third-Party Defendants Moore and Zimmerman pursuant to California Civil Code section 3294 for intentional, fraudulent, and oppressive conduct;

**G.** For exemplary damages for willful and malicious misappropriation to the fullest extent permitted by 18 U.S.C. section 1836(b)(3) and California Civil Code section 3426.3

**H.** For declaratory relief against the Third-Party Defendants as set forth in the Eighth Third-Party Count above;

**I.** For injunctive relief compelling Zimmerman and Rhoades to provide all credentials, 2FA recovery information, account access, and physical assets for all systems and property enumerated herein and in the March 10, 2026 Order (ECF No. 33), within forty-eight (48) hours of the order or such other time frame ordered by the Court;

**J.** For an order freezing any proceeds derived from the sale, transfer, disclosure, use, misappropriation, or dissipation of any Intrepid asset, trade secret, source code, intellectual property, credential, confidential information, or Company property or use of any Intrepid asset by any Third-Party Defendant pending resolution of this action;

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

63

**K.** For an order compelling Third-Party Defendants Zimmerman and Rhoades to provide a complete sworn accounting of all physical assets removed from the ScaleMatrix data center, identifying their present location and condition;

**L.** For attorney's fees and costs to the fullest extent provided by NDA Section 14(b), California Penal Code section 496(c), 18 U.S.C. section 1836(b)(3), California Civil Code section 3426.4, and any other applicable contractual or statutory authority;

**M.** For restitution and/or disgorgement of all funds, benefits, assets, or other value wrongfully obtained by any Cross-Defendant or Third-Party Defendant through the conduct alleged herein;

**N.** For pre-judgment and post-judgment interest at the maximum rate permitted by law;

**O.** For leave to substitute the true names and capacities of all Does and Roes upon identification through discovery; and

**P.** For such other and further relief against the Third-Party Defendants as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

64

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Intrepid demands a trial by jury on all claims and issues triable of right by a jury.

Dated: June 24, 2026        Respectfully submitted,

**SPENCER FANE LLP**

By: */s/ Theresa C. Becerra*
Theresa C. Becerra, Esq.
**SPENCER FANE LLP**
201 Santa Monica Blvd., Suite 550
Santa Monica, California 90401
Telephone: (424) 217-1830
Fax: (424) 217-1854
Email: tbecerra@spencerfane.com

Vincent J. Aiello, Esq. *(Pro Hac Vice Forthcoming)*
Tyler Thomas, Esq. *(Pro Hac Vice Forthcoming)*
Jason Smith, Esq. *(Pro Hac Vice Forthcoming)*
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3419
Fax: (702) 408-3401
Email:   vaiello@spencerfane.com
       tthomas@spencerfane.com
       jsmith@spencerfane.com

*Attorneys for Intrepid Studios, Inc.*

SPENCER FANE LLP
ATTORNEYS AT LAW
SANTA MONICA

INTREPID'S CROSS-COMPLAINT AGAINST STEVEN SHARIF & THIRD-PARTY COMPLAINT AGAINST JASON ZIMMERMAN, JOHN MOORE & MATTHEW RHOADES     Case No.   3:26-cv-00965-LL-MMP