Theresa C. Becerra, Esq. (State Bar No. 205338)
**SPENCER FANE LLP**
201 Santa Monica Blvd., Suite 550
Santa Monica, California 90401
Telephone: (424) 217-1830
Fax: (424) 217-1854
Email: tbecerra@spencerfane.com

Vincent J. Aiello, Esq. *(Pro Hac Vice Forthcoming)*
Tyler B. Thomas, Esq. *(Pro Hac Vice Forthcoming)*
Jason Smith, Esq. *(Pro Hac Vice Forthcoming)*
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3419
Fax: (702) 408-3401
Email:    vaiello@spencerfane.com
          tthomas@spencerfane.com
          jcsmith@spencerfane.com

*Attorneys for Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDINGS LLC, and JASON CARAMANIS,<br><br>Defendants,<br><br>and<br><br>INTREPID STUDIOS, INC.,<br><br>Nominal Defendant. | Case No.   3:26-cv-00965-LL-MMP<br><br>**MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY**<br><br>Date:          07/29/2026<br>Courtroom:    14B (14th Floor)<br>Time:    PER CHAMBERS RULE, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>**Action Filed:    02/14/2026**<br>**Jud. Officer:    Hon. Linda Lopez** |
| INTREPID STUDIOS, INC., a California Corporation,<br><br>Cross-Claimant,<br><br>v.<br><br>STEVEN SHARIF, an individual<br><br>Cross-Defendant. | |

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 1 -

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY    Case No.   3:26-cv-00965-LL-MMP

INTREPID STUDIOS, INC., a California Corporation,

Third-Party Plaintiff,

v.

JASON ZIMMERMAN an individual, JOHN MOORE an individual, MATTHEW RHOADES an individual, DOES INDIVIDUALS 1-10; and ROE ENTITIES I-X

Third-Party Defendants.

Nominal Defendant Intrepid Studios, Inc. ("Intrepid" or the "Company"), by and through its counsel, Spencer Fane LLP, as Cross-Claimant against Plaintiff Steven Sharif ("Sharif") and as Third-Party Plaintiff against Jason Zimmerman ("Zimmerman"), Matthew Rhoades ("Rhoades"), and John Moore ("Moore"), to the extent he possesses or controls any of Intrepid's intellectual property, hereby moves on an emergency basis for an order compelling the immediate turnover of Intrepid's source code, trade secrets, intellectual-property credentials, administrative privileges, source-control access, authentication information, platform accounts, confidential information, and physical computing assets, including the server hardware components removed from ScaleMatrix (the "IP Assets"). In support of this Motion, Intrepid states as follows:

## I.   INTRODUCTION

Intrepid Studios Inc. brings this Motion to compel the immediate turnover of the Company's trade secret materials, intellectual property, source code, website domain access, administrative privileges, credentials, repositories, and all related technical assets identified in the Court's Order Appointing Intellectual Property Custodian (the "IP Custodial Order") entered on March 10, 2026 (hereinafter referred to as "IP Assets"). ECF No. 33, Sect. 2-3. Intrepid's "IP assets" further include the following:

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 2 -

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY   Case No.   3:26-cv-00965-LL-MMP

(a)  Amazon Web Services (AWS)—core cloud infrastructure and game hosting;

(b)  Atlassian (Confluence) – workforce collaboration tools;

(c)  Bitwarden – password vault containing additional credentials;

(d)  Boomlibrary and Waves – audio asset libraries;

(e)  Cloudfare;

(f)  Confluence;

(g)  DB Scheme – database design tools;

(h)  Discord – social media site;

(i)  Docker – containerization platform;

(j)  Docusign – company documentation library;

(k)  Duo

(l)  GitKraken – development tools;

(m)  GoDaddy – website;

(n)  Google Workspace (g-suite) – company email and collaboration platform;

(o)  Incident.io – operational incident management;

(p)  JetBrains – development environments;

(q)  Jira – development collaboration;

(r)  Lens – Kubernetes management;

(s)  Miro – collaborative design platform;

(t)  MongoDB – primary game database;

(u)  Okta – development tools;

(v)  Perforce – primary version control system for the Ashes of Creation source code;

(w)  Playfab – development tools;

(x)  Reddit – social media site;

(y)  Resemble.ai – voice synthesis services;

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

(z)   Sentry – development tools;

(aa)  Unifi / UI.com / UBIQUITI INC. – development tools;

(bb)  Universal Foundry – development tools and collaborator;

(cc)  Veeam – development tools;

(dd)  VMWare / VSphere – development tools;

(ee)  Xsolla – development tools;

(ff)  Miscellaneous artificial intelligence tools (Claude, Chat GPT, etc)

Exhibit 1 Declaration of Doug Bartels ¶¶14a-ff

These assets belong to Intrepid. They are not personal property of any shareholder, officer, former employee, or litigation adversary. Yet they have been wrongfully converted, withheld, and retained by Cross-Defendant Sharif, and Third-Party Defendants Moore, Zimmerman and Rhoades. By way of background, Zimmerman and Rhoades were former Intrepid employees who signed intellectual property and non-disclosure agreements requiring them to protect, surrender, and return the Company's intellectual property and confidential materials. *See* Exhibits 2 & 3.  Instead, Moore, Zimmerman and Rhoades worked in concert with Sharif to conceal, abscond with, and withhold those assets from the Company, which has resulted in immediate and ongoing harm to Intrepid and its shareholders. As a result, the Company has been hamstrung. Without access to the IP Assets, the Company cannot commercialize its products because its source code, credentials, domain access, administrative privileges, and related intellectual property remain outside Company control and vendor expenses continue to accrue. This situation benefits no shareholder. Rather, it undermines the interests of the Company's shareholders and investors by preventing the Company from operating and generating revenue. As a result, the Company is forced to devote substantial time and resources to litigating access to its own intellectual property instead of focusing on business operations and growth.

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

This Motion is not about resolving the parties' broader disputes over control, governance, or ultimate liability under the respective causes of action. Those issues can (and will be) be litigated in due course. Instead, this Motion seeks a practical and necessary order to preserve the Company's IP Assets so they may be properly secured by the Court-appointed intellectual property custodian and used for the benefit of Intrepid and its shareholders while the litigation proceeds.

Accordingly, Intrepid seeks an order compelling Sharif, Moore Zimmerman, Rhoades, and anyone acting in concert with them to immediately turn over all Company trade secret materials, intellectual property, source code, repositories, credentials, administrative access, domain access, website access, software development materials, legal documentation, technical documentation, and related assets identified in, or subject to, the Court's IP Custodial Order. ECF No. 33. This relief simply restores and preserves the status quo that should have existed throughout this litigation by ensuring that the Company's intellectual property and related assets remain under Company control and are available for use in furtherance of its business operations and the interests of its shareholders.

## II.    RELEVANT PROCEDURAL HISTORY

This action arose as a result of Plaintiff Steven Sharif's ("Plaintiff") Complaint and subsequent Ex Parte Motion for Temporary Restraining Order ("TRO Motion"). ECF No. 10. The TRO Motion sought to enjoin Intrepid's Board of Directors Robert Dawson ("Dawson"), Ryan Ogden ("Ogden"), Theresa Fette ("Fette"), Aaron Bartels ("Bartels"), and TFE Games Holdings LLC ("TFE") (hereinafter collectively "Defendants"),[1] and their agents from "accessing, using, selling, distributing, or causing anyone to access, use, sell, or distribute Intrepid's trade secrets, including any accounts or applications containing the trade secrets". ECF No. 10 at 2.

---

[1] Defendant Jason Caramanis was not a named defendant at the time Sharif was seeking the TRO and is therefore excluded from the defined term "Defendants" for the purposes of this Motion.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

The TRO Motion also separately requested the appointment of a "neutral intellectual-property custodian or escrow agent to hold and control, on a temporary and limited basis, the credentials, administrative privileges, and source-control access to the accounts, platforms, and repositories that contain Intrepid's trade secrets, for the sole purpose of preventing any access, use, sale, or dissemination of those trade secrets pending adjudication of the parties' ownership dispute." ECF No. 10 at 2.

The Court granted temporary relief and recognized the sensitivity of the same categories of company property at issue here, including source code, backend systems governing world persistence, territory control, economic dependencies, and other similar property. ECF No. 20 at 2.

The parties then jointly proposed the appointment of Michael Kunkel ("Kunkel") as the Intellectual Property Custodian (the "IP Custodian") during the pendency of the TRO. ECF No. 32. The Court appointed Kunkel as the IP Custodian, and its IP Custodial Order reflected the parties' mutual understanding that the subject trade secrets belong to Intrepid, which were also defined in-depth in sections 2 and 3 of that order. ECF No. 33 at 2-4[2]. Shortly thereafter, the Court  Plaintiff's motion for preliminary injunction, and the temporary restraining order (the "TRO") has expired.[3] ECF No. 73.

As a result, Kunkel's authority as IP Custodian is unclear. Kunkel's appointment as IP Custodian was specifically limited to the pendency of the TRO, but he was instructed to hold and control the subject intellectual property/trade secrets until further ordered. ECF No. 33 ¶ 1. And the docket does not contain any other order that would otherwise address the disposition of materials obtained by Kunkel in his role as IP Custodian. Nor does the IP Custodial Order contain any

---

[2] *See also* ECF No. 10 at 1 (the Court recognizing the subject intellectual property and trade secrets are the property of Intrepid).

[3] The TRO was to remain in effect until the date and time of the preliminary injunction hearing. ECF No. 20 ¶ 9.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY   Case No.   3:26-cv-00965-LL-MMP

provision to expressly authorize Kunkel or any other party to surrender and return to Intrepid all the IP Assets to Intrepid, or an order confirming that Kunkel's custodial authority has terminated.

Accordingly, the current procedural posture is that the TRO has expired, the scope and continuing authority of the temporary Intellectual Property Custodian remain unclear, and no order has yet resolved the return, access, or control of Intrepid's IP Assets.

## III.    FACTUAL BACKGROUND

### A.    Zimmerman and Rhoades' Roles and Access to Intrepid's Systems and Their Post-Termination Obligations.

Zimmerman and Rhoades each executed Employee Confidentiality, Non-Disclosure, and Non-Recruiting Agreements with Intrepid (hereinafter referred to as the "NDA" and "NDAs"). They also received an Employee Handbook which contained provisions governing intellectual property use, and agreed to comply with those provisions. See Exhibit 2 Zimmerman NDA and Handbook; Exhibit 3 Rhoades NDA and Handbook.

Zimmerman was employed by Intrepid on January 3, 2022, and served as its Director of Information Technology. In that role, Zimmerman was responsible for Intrepid's technology infrastructure, source-code repositories, data-center operations, credential administration, and access controls for systems necessary to develop, preserve, operate, distribute, and monetize *Ashes of Creation*. *See* Exhibit 1 ¶ 3.

Rhoades was employed by Intrepid on June 20, 2023, as an Information Technology Manager, and reported directly to Zimmerman. *See id.* ¶ 4.

Through their respective roles, Zimmerman and Rhoades routinely accessed Intrepid's source code, source-code repositories, platform accounts, and data-center infrastructure. They also maintained control over server and website authentication credentials, administrative privileges, and other critical Company systems. *See id.* ¶13.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY    Case No.   3:26-cv-00965-LL-MMP

The Company notified both Zimmerman and Rhoades on January 30, 2026 of their termination with the appropriate WARN act notice period.

Although they were notified of their termination, Zimmerman and Rhoades' employment agreements imposed continuing confidentiality and post-termination return obligations concerning Intrepid's Intellectual Property. Specifically, Section 9 of their respective NDAs provide that if their employment with Intrepid is terminated for any reason, whether voluntarily or involuntarily, they shall promptly:

(a) Inform Company of and deliver to Company all records, files, electronic data, documents, plans, reports, books, notebooks, notes, memoranda, correspondence, contracts, and the like in Employee's possession, custody, or control that contain any of Company's Trade Secrets or Confidential Information that Employee prepared, used, or came in contact with while employed by Company;

(b) Inform Company of and deliver to Company all records, files, electronic data, documents, plans, reports, books, notebooks, notes, memoranda, correspondence, contracts, and the like in Employee's possession, custody, or control that pertain in any way to the business of Company and that Employee prepared, used, or came in contact with while employed by Company;

(c) Deliver to Company all tangible property in Employee's possession, custody, or control belonging to Company, including but not limited to key cards, office keys, cell phones, pagers, personal digital assistants, external hard drives, thumb drives, Zip drives, laptop computers, and desktop computers;

(d) Allow Company's representative to inspect Employee's personal desktop computer, laptop computer, thumb drive, Zip drive, and any other external hard drive in order to determine whether any of Company's Trade Secrets or Confidential Information reside on that computer or drive and to remove any Trade Secrets or Confidential Information; and

(e) Sign the Certificate of Compliance Post-Termination attached to this Agreement as Exhibit "A" *Id*.

As such, Zimmerman's and Rhoades' contractual obligations were clear, unambiguous, and remained binding following the termination of their employment.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 8 -

Among other things, they were required to return all Company records, files, electronic data, tangible property, confidential information, and trade-secret materials in their possession, custody, or control. They were further obligated to cooperate with Intrepid's post-employment compliance procedures, including permitting inspection of their personal devices for Intrepid's trade secrets and confidential information and executing a certificate of compliance.

Despite these obligations, Zimmerman and Rhoades have failed to return Intrepid's IP Assets, continue to retain possession and control of its IP Assets (as explained in greater detail below), have refused to permit inspection of their devices, and have failed to execute the required certificate of compliance.

## B. Zimmerman and Rhoades Remove Physical Server Hardware from ScaleMatrix.

On January 30, 2026, Intrepid announced workforce reductions necessitated by the Company's financial condition. See Exhibit 1 ¶ 7. That same day, the board directed that employee access to the Company's source code would be restricted. *Id*. ¶ 9, and did not permit the removal of physical assets from the Company's data-center facility at ScaleMatrix. *Id*.

On the evening of January 30 after termination notice was provided and during the days of January 31 and February 1, 2026, Zimmerman and Rhoades accessed the ScaleMatrix data center on four separate occasions and removed computer equipment and server hardware from the facility. *Id*. ¶ 10; *see also* Exhibit 4 Photos of Zimmerman and Rhoades Removing Intrepid Property. The server chassis later returned to Intrepid were empty when access to a storage locker was provided on May 14, 2026, and valuable computing components—including processors, motherboards, memory modules, and storage media—had been removed. *Id*. ¶ 11. Zimmerman claims that all of the equipment that was removed remains in a storage facility in San Diego, California and has demanded Intrepid pay Zimmerman's storage fees in exchange for access to its own IP Assets. Zimmerman's counsel

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

justified the removal of the equipment from ScaleMatrix as necessary actions to protect the assets of Intrepid.  Exhibit 5 Photos of Equipment in Storage Facility; Exhibit 6 Zimmerman's Counsel Demanding Storage Fees for Access to Intrepid Property.  Intrepid has no independent means of verifying the condition, completeness, or security of the removed equipment and components. Currently, Intrepid has only Zimmerman's word that all of the Intrepid IP Assets taken by him and Rhoades remain safely in the storage facility and have not otherwise been tampered with, altered, damaged, or interfered with.

**C. Zimmerman and Rhoades' Withholding of Intrepid's Credentials, Software Source Code Access, Source-Control Access, and Administrative Privileges.**

In addition, Zimmerman has refused to provide Intrepid's board, management, and the court-appointed IP Custodian with the software source code, as well as the complete credentials and access information for systems essential to the Company's operations. See Exhibit 1 ¶ 13. Those systems include, *inter alia*, Amazon Web Services ("AWS"), Perforce, GitHub, MongoDB, Google Workspace, Slack, Bitwarden, ScaleMatrix, CDW/HPE, and other platforms identified in the Court's prior TRO and IP Custodial Order. ECF No. 20 at 10-12; ECF No. 33 at 2-4. Moreover, other systems remain inaccessible or incompletely transitioned, including but not limited to GoDaddy, Cloudflare, Steam, Discord, Okta, PlayFab, Stripe, Xsolla, Reddit, Sentry, VMware/vSphere, and Unifi/Ubiquiti. *See* Exhibit 1,. ¶ 14. And other credentials are inaccessible because of two-factor authentication security protocols that are tied to email addresses, phone numbers, and other methods controlled by Zimmerman. *Id*. ¶ 15.

As a result, Intrepid has been deprived of control of most of its source-code repositories, authentication methods, platform accounts, administrative privileges, payment systems, customer-facing platforms, and commercial distribution channels, all of which are essential to the continued operation of Intrepid's business. *Id*. ¶ 16.

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY    Case No.   3:26-cv-00965-LL-MMP

## D.    Present Status of Intrepid's IP Assets.

From the outset of this litigation, Intrepid's IP Assets have remained in the possession of Sharif, Zimmerman, Rhoades, and other parties, leaving Intrepid's intellectual property and trade secrets unprotected and unavailable for the benefit of Intrepid and its shareholders. Sharif, acting in concert with Zimmerman, Rhoades, and others, has continued to obstruct Intrepid's access to its own IP Assets.

Therefore, Intrepid seeks an order compelling the immediate return of, and restoration of access to, its IP Assets, together with such other additional relief requested in the conclusion of this Motion. Additionally, Intrepid seeks order compelling the reconstruction of assets to the state they were in on January 29, 2026.

## IV.    LEGAL ARGUMENT

Intrepid seeks preservation, turnover, and possession of its IP Assets under three independent and overlapping sources of authority.

**First,** the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA") authorize injunctive relief to prevent actual or threatened misappropriation of Intrepid's trade secrets.

**Second,** the employment agreements, Employee Handbook acknowledgments, and non-disclosure agreements executed by Zimmerman and Rhoades provide an independent contractual basis for specific performance requiring the return of Company property, confidential information, credentials, source-code access, and other tangible and intangible assets belonging to Intrepid.

**Third,** California's claim-and-delivery statutes provide a provisional remedy for recovery of the physical server components removed from ScaleMatrix.

The Court's prior TRO and IP Custodial Order further support the requested relief, as they identified the very categories of intellectual property, trade secrets, credentials, platforms, and physical infrastructure that remain at issue in this case and required safeguarding. ECF No. 20 at 10-12; ECF No. 33 at 2-4.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 11 -

## A.   Injunctive Relief Under DTSA and CUTSA.

The DTSA authorizes a district court to grant an injunction "to prevent any actual or threatened misappropriation" of a trade secret. 18 U.S.C. § 1836(b)(3)(A)(i). Federal Rule of Civil Procedure 65 governs the issuance of injunctive relief under the DTSA. To obtain a temporary restraining order or preliminary injunction under Rule 65 and the DTSA, a plaintiff must show: (1) likelihood of success on the merits; (2) immediate and irreparable injury will result without relief; (3) the balance of equities tips in the plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); see also *Protection Techs., Inc. v. Ribler*, 2017 WL 923912, at *1 (D. Nev. 2017) (applying four-factor Rule 65 standard to DTSA and Nevada Trade Secrets Act TRO). The Ninth Circuit's sliding-scale variant additionally permits relief where serious questions go to the merits and the balance of hardships tips sharply in favor of the movant. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The DTSA also provides for ex-parte seizure of property "necessary to prevent the propagation or dissemination of the trade secret" where traditional injunctive relief would be inadequate. 18 U.S.C. § 1836(b)(2)(A)(i).

Courts in the Ninth Circuit applying the DTSA and CUTSA concurrently have held that the standards for issuing a TRO and preliminary injunction are the same and follow the four- factor *Winter* test. *OOO Brunswick Rail Mgmt. v. Sultanov*, No. 5:17-CV-00017-EJD, 2017 WL 67119, at *2 (N.D. Cal. Jan 6. 2017).

In *Waymo LLC v. Uber Techs., Inc.*, the court restated the Ninth Circuit's hybrid formulation: "'serious questions going to the merits' and a balance of hardships that tips sharply in [plaintiff's] favor can support issuance of a preliminary injunction so long as [plaintiff] also shows a likelihood of irreparable injury and that the injunction is in the public interest." No. C 17-00939 WHA, 2017 WL 2123560, at *5 (N.D. Cal. May 15. 2017). Both the DTSA and CUTSA "offer essentially the

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 12 -

same definitions" for purposes of injunctive relief analysis. *Id.* at *7. The DTSA expressly authorizes injunctive relief against not only actual misappropriation, but also *threatened* misappropriation. 18 U.S.C. § 1836(b)(3)(A)(i). The statute also authorizes exemplary damages up to twice the actual damages for willful and malicious misappropriation, § 1836(b)(3)(C), and attorney's fees for willful misappropriation, § 1836(b)(3)(D).

Courts have found that "theft of trade secrets, and allowing the thieves to retain and use the confidential information they purloined, undermines business development and stability; preventing such conduct is in the public's interest." *Earthbound Corp. v. MiTek USA, Inc.*, No. C16-1150 RSM, 2016 WL 4418013, at *10 (W.D. Wash. Aug. 19. 2016). The DTSA does not preempt CUTSA. 18 U.S.C. § 1838. Both statutes provide an independent basis for relief. Because Intrepid seeks to compel the affirmative turnover of Company property, the requested relief is in part a mandatory injunction. To the extent the requested relief is prohibitory—that is, preventing Sharif, Rhoades, and Zimmerman from further accessing, using, disclosing, or destroying Company trade secrets and IP—the standard *Winter* test applies. *PlayMedia Systems, Inc. v. America Online, Inc.*, 171 F. Supp. 2d 1094 (C.D. Cal. 2001) (heightened mandatory standard applies only to the mandatory portion of the relief).

Here, Intrepid meets the standard for requiring a permanent injunction because: (1) the law clearly favors Intrepid, as the Court has already recognized that the Company's source code and technical architecture constitute trade secrets (ECF No. 20 at 8), and both the DTSA and CUTSA authorize injunctive relief to prevent misappropriation, 18 U.S.C. § 1836(b)(3)(A); Cal. Civ. Code § 3426.2; (2) extreme and very serious damage will result absent relief, because Intrepid's core product (*Ashes of Creation*) cannot be developed, deployed, or maintained while its source code, credentials, and infrastructure remain in the hands of terminated employees who have already demonstrated willingness to delete records; and (3) monetary

damages alone cannot remedy the ongoing harm, because trade secrets lose their protected status once disclosed and the continuing inability to access Intrepid's own systems causes irreversible operational harm that cannot be quantified or compensated after the fact.[4]

The requested relief also preserves, rather than alters, the status quo. A preliminary injunction is intended to maintain "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Before this dispute arose, Intrepid possessed and controlled its own source code, credentials, accounts, and server infrastructure. The relief sought simply restores that control to the Company and prevents former employees and officers from continuing to withhold Company property. Indeed, the Court has already rejected Sharif's attempt to obtain control over Company assets for his own benefit by denying his motion for preliminary injunction. In doing so, the Court determined those assets did not belong to Sharif, and Intrepid's former employees or officers did not have a right to possession of Company property. In fact, the Court previously recognized that these categories of information expressly constituted Intrepid's trade secrets. ECF No. 20 at 8. Returning those assets to Intrepid is therefore consistent with the Court's prior rulings and serves the interests of Intrepid and its shareholders.

### i.    *Likelihood of Success on the Merits.*

The Court may analyze DTSA and CUTSA claims together because the elements are substantially similar. *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). To succeed, the moving party must prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade

---

[4] This case is distinguishable from *Sitrus Technology Corp. v. Le*, 600 F. Supp. 3d 1106 (C.D. Cal. 2022), where turnover relief was denied because the company could not show what devices or information the former officer actually possessed. Here, the Court's own TRO and IP Custodial Order identified 24 categories of platforms and assets. Zimmerman himself has acknowledged possessing Company server hardware by demanding that Intrepid pay his storage fees in exchange for access.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY    Case No.   3:26-cv-00965-LL-MMP

secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *Id.* at 657–58. To show misappropriation for the purposes of stating a DTSA/CUTSA claim, a plaintiff must show one of two categories: (1) wrongful acquisition, or (2) disclosure or use of the trade secret without consent. *Implicit Conversions, Inc. v. Stine*, No. 24-CV-03744-WHO, 2024 WL 4112335, at *9 (N.D. Cal. Sept. 6, 2024).

**First,** Intrepid has a protectable trade secret in its intellectual property. In fact, the Court has already recognized that Intrepid has a protectable trade secret when it granted the TRO. *See* ECF No. 20 at 8. The disputed software source code is not merely an ancillary business record or generic technical information. It is the core intellectual property necessary to operate, complete, commercialize, and monetize Intrepid's product. The source code, development environment, repositories, credentials, deployment files, backend systems, platform accounts, and related technical materials are confidential Company assets developed for, maintained on behalf of, and used to advance Intrepid's business. These materials derive independent value from not being generally known and are central to the Company's ability to preserve, operate, distribute, and commercialize *Ashes of Creation*.

Any assertion that ownership of the source code is disputed does not defeat this element. Intrepid does not ask the Court to adjudicate ultimate title; it asks the Court to preserve the asset with a neutral custodian pending adjudication, which lowers the showing of proof required and removes ownership from the present inquiry. In any event, the IP Assets are Company property as a matter of law. Intrepid funded, directed, and maintained the development of *Ashes of Creation* through its personnel; the resulting source code, repositories, and credentials are Company assets, not the personal property of any founder, officer, or former employee. Put simply, a shareholder dispute does not convert Company property into private leverage.

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY    Case No.  3:26-cv-00965-LL-MMP

**Second,** Intrepid is likely to establish misappropriation through wrongful retention and continued withholding of the Company's trade-secret materials and access credentials. Zimmerman and Rhoades were entrusted with access to Intrepid's software, development environment, technical materials, repositories, credentials, and related systems solely because of their employment with the Company. Sharif and Moore likewise had access through his fiduciary and managerial role. Those roles did not give them a personal right to retain exclusive control over Intrepid's source code, credentials, administrative privileges, or related technical assets nor physical assets. Once their relationship with the Company ended, or once a dispute arose regarding control or entitlement, they had no lawful basis to deny Intrepid access to the intellectual property necessary to continue Company operations. Their continued withholding of source-code access, credentials, authentication information, repositories, technical documentation, deployment materials, and related systems as well as physical assets constitutes wrongful retention and threatened misuse of Intrepid's trade secrets.

Zimmerman has conditioned the Company's access to its own server hardware on payment of storage fees that he unilaterally incurred, evidencing intent to leverage and withhold the assets rather than return them. As such, the risk of misuse and destruction is not hypothetical, especially when relevant Company communications were deleted while the temporary restraining order was in effect. Upon inspection of the storage locker, Intrepid identified assets contained in pictures provided by Zimmerman and his council were no longer within the storage unit. *See* Exhibit 1 ¶ 11. Each fact independently satisfies the DTSA's threatened-misappropriation standard. 18 U.S.C. § 1836(b)(3)(A)(i).

**Third,** Intrepid is likely to establish actual and threatened harm. In fact, Intrepid is already harmed because it is not in possession of its own IP Assets and vendors continue to accrue fees on those platforms and storage facilities. Intrepid cannot secure, develop, operate, commercialize, or monetize its own product while

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 16 -

its source code, credentials, repositories, platform accounts, and physical computing assets remain outside Company control. That lack of access threatens the integrity and confidentiality of Intrepid's trade secrets, creates a risk of alteration, deletion, misuse, unauthorized transfer, or disclosure, and prevents the Company from using its own intellectual property for the benefit of Intrepid and all shareholders. This harm is not speculative, as the Company's ability to preserve its source code, maintain operations, and continue development depends on immediate access to and control over the disputed IP Assets.

Therefore, for the foregoing reasons, Intrepid is likely to succeed on the merits for its DTSA and CUTSA claims.

### ii. Immediate and Irreparable Harm

Intrepid faces immediate and irreparable injury because, without its source code, Intrepid cannot meaningfully operate, commercialize its product, complete development, correct defects, respond to customers, demonstrate the technology to investors, protect the software, or bring the product to market. As stated above, the harm is not speculative. It is occurring now. Intrepid's principal asset is unavailable to the Company, and every day that access is withheld prevents the Intrepid from moving forward with its business.

In addition, monetary damages would be inadequate because the withholding of Intrepid's source code deprives it of control over its core intellectual property and prevents the business from functioning. The Company cannot reliably calculate its full losses caused by delayed commercialization, lost market timing, lost investor confidence, lost customers, lost development momentum, loss of goodwill, and the degradation of the product's competitive position. Those injuries are difficult, if not impossible, to measure after the fact.

It would not be an exaggeration to state that the source code is the functional heart of the Company. Without it, Intrepid cannot make any money because it cannot finalize the product, deploy updates, troubleshoot performance issues, verify

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

security, onboard customers, support users, or build enterprise value. Intrepid is forced to spend time and resources arguing about access to its own property instead of developing and monetizing its product.

Moreover, the risk of spoliation independently supports a finding of irreparable harm. Zimmerman deleted Slack channels and communications belonging to Intrepid on or about March 11, 2026, while the TRO was still in effect and after the IP Custodian had been appointed. Intrepid does not have access to other systems and code to be able to assess if actions have been taken on other platforms as well.  Sharif has continued to remove individuals interested in *Ashes of Creation* from Intrepid social media accounts at Discord and Reddit. This is direct evidence that Intrepid's records are being destroyed. The Court's inherent authority to preserve evidence supports immediate turnover to the IP Custodian before further destruction occurs. Zimmerman also conditioned the Company's access to its own server hardware on payment of storage fees that he unilaterally incurred after removing the equipment without authorization. This is functionally a lien on converted property—evidence of bad faith and leveraging that supports a finding of willful and malicious misappropriation under both the DTSA and CUTSA. Finally, the Zimmerman and Rhoades NDAs (Intrepid has not identified an NDA for Sharif and Moore unlike other employees) each contain a provision expressly acknowledging that unauthorized disclosure or use of trade secrets or confidential information would cause "immediate and irreparable harm" to the Company. While a contractual stipulation of irreparable harm is not dispositive, it is entitled to weight in the equitable analysis because the parties themselves bargained for this understanding at the outset of their employment.

### iii.   Balance of the Equities

The balance of equities strongly favors Intrepid. The requested injunction does not unfairly prejudice the former employees or Sharif because it does not strip them of any proven ownership interest, adjudicate ultimate damages, or prevent

- 18 -

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

them from asserting claims in this litigation. It merely requires them to return or provide access to Intrepid so that the IP Assets can be preserved and used for the benefit of the Company.

By contrast, the harm to Intrepid from continued withholding is severe for reasons stated above. Therefore, equity favors placing the source code with the IP Custodian, because that remedy readily protects everyone's interests. It ensures that the IP Assets are preserved, prevents unauthorized use or destruction, and allows Intrepid to continue operating while the parties litigate any remaining disputes. If Sharif or any former employee believes they have a claim to compensation, ownership, or other relief, those claims can be resolved later. But they should not be permitted to immobilize the Intrepid's IP Assets in the interim.

### iv.    Public Interest

"[I]t is well settled that the public interest is served by the protection of trade secrets." *Implicit Conversions, Inc. v. Stine*, No. 24-CV-03744-WHO, 2024 WL 4112335, at *12 (N.D. Cal. Sept. 6, 2024). Allowing "thieves to retain and use the confidential information they purloined undermines business development and stability; preventing such conduct is in the public interest." *Earthbound Corp.*, 2016 WL 4418013, at 10.

Here, the public interest strongly favors the requested relief. Requiring the return and preservation of Intrepid's source code, credentials, and related infrastructure protects valuable trade secrets, preserves corporate assets, and promotes orderly corporate governance while this litigation proceeds. The source code and associated digital assets constitute Intrepid's principal business assets and form the foundation of the product that Intrepid wants to develop and commercialize. Ensuring that those assets remain secure, accessible, and under neutral control protects not only Intrepid, but also its shareholders, employees, customers, and other stakeholders.

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

Conversely, the public interest is not served by allowing former officers or employees to retain exclusive control over Company property and use that control to impede Intrepid's operations, diminish enterprise value, or obtain leverage in a corporate dispute. The requested injunction simply preserves and protects the Intrepid's assets until ownership and control issues can be adjudicated on the merits.

## B.    Contractual Specific Performance and No-Bond Provisions.

"[S]pecific performance of an obligation may be compelled." Cal. Civ. Code § 3384. "A party who has signed a written contract may be compelled specifically to perform it." Cal Civ. Code § 3388. In setting the amount of a bond, district courts are generally afforded wide discretion, and the bond amount may be zero where there is no evidence that a party will suffer damages from the issuance of an injunction. *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, n.11 (N.D. Cal. 2003) (internal citations omitted).

Zimmerman and Rhoades executed confidentiality, non-disclosure, and employee acknowledgment agreements requiring return of Company property and information. *See* Exhibit 2 and Exhibit 3 respectively. Both NDAs are governed by California law. *Id.* Section 14(a).

Those NDAs require, among other things, return of company records, files, electronic data, tangible property, trade secrets, confidential information, and post-termination compliance materials. *Id.* Section 9. The agreements further require departing personnel to certify compliance with their return obligations, including confirming that all company property, including without limitation intellectual property, trade secrets, and equipment have been returned and that no company materials remain in their possession. *Id.*

The NDAs expressly entitle Intrepid to injunctive relief in the event of a breach, or even a threatened breach, and further assumes irreparable harm where Intrepid's trade secrets or confidential information is used in an unauthorized matter or otherwise disclosed without Intrepid's authorization. NDA Section 10.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 20 -

Specifically, Section 10 of the NDA states:

Employee acknowledges and agrees that if Company's Trade Secrets or Confidential Information were disclosed to a competing business or used in an unauthorized manner as provided herein, such unauthorized disclosure or use would cause immediate and irreparable harm to Company and would give a competing business an unfair business advantage against Company for which Company may not have an adequate remedy at law. Therefore, Employee agrees that, in addition to any other remedies available to Company at law or in equity, Company shall be entitled to any proper injunction, including but not limited to any temporary, preliminary, or final injunction, any temporary restraining order, and any temporary protective orders, to enforce Sections 2, 3, 4, and 5 of this Agreement in the event of breach or threatened breach by Employee. The restrictive covenants contained in this Agreement are independent of any other obligations between the parties, and the existence of any other claim or cause of action against Company is not a defense to enforcement of those covenants by injunction.

Therefore, Intrepid's requested relief is specific performance of a written contract with return obligations they each accepted as a condition of their employment. Both Zimmerman and Rhoades do not have any legitimate interest in Intrepid's IP Assets, nor can they claim any compensable harm from being ordered to return property and convey access that they were already required to provide upon their termination. For this reason, no bond is warranted. Any burden on Zimmerman and Rhoades arises from their own existing contractual obligations. With regard to any claimed storage fees from Zimmerman, those fees are exclusively borne out of his own actions. Intrepid did not instruct Zimmerman nor Rhoades to remove and place its IP Assets into the storage facility. Rather, the removal of Intrepid's IP Assets was the result of their own volition or at the direction of Sharif who sought to prevent Intrepid's board members from accessing Intrepid's IP Assets.

## C.    California Claim and Delivery for Tangible Server Components.

California's claim and delivery statute is the state's codification of replevin and provides a provisional remedy for recovery of specific tangible personal property

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

prior to judgment.[5] A writ of possession issues upon a showing that: (1) plaintiff has a right to possession; (2) defendant is wrongfully detaining the property; (3) the property is described with reasonable particularity along with a statement of its value; (4) its location is stated if known; and (5) the claim has probable validity, meaning it is more likely than not the plaintiff will obtain a judgment for possession. Cal. Code Civ. Proc. §§ 511.090, 512.010, 512.060; *Pillsbury, Madison & Sutro v. Schectman*, 55 Cal.App.4th 1279, 1285 (1997) (recognizing relief under the claim-and-delivery statutes, Code Civ. Proc. §§ 511.010–516.050 and describing the remedy as "statutory replevin"). Claim and delivery is available in federal court directly through Rule 64, which makes state provisional remedies available without an independent jurisdictional basis for the remedy itself. *See* 28 U.S.C. §1367(a); *Waffer Internat. Corp. v. Khorsandi*, 69 Cal.App.4th 1261, 1271 (1999). An ex parte writ may issue under Cal. Code Civ. Proc. § 512.020(b) where the defendant gained possession by feloniously taking the property.[6]

Here, California's claim and delivery statutes provide an independent basis for the Court to grant Intrepid relief. The computers, servers, hard drives, storage devices, mobile devices, access tokens, and related hardware used to develop, store, access, and commercialize the Company's software are Company property. Zimmerman and Rhoades possessed those assets solely by virtue of their employment with Intrepid. In other words, any right to possess those assets was

_____

[5] The accompanying declaration satisfies California Code of Civil Procedure § 512.010 by establishing, under oath: (1) that Intrepid owns and is entitled to possession of the property; (2) that the property is wrongfully detained, together with the basis of Intrepid's claim and the manner in which Zimmerman and Rhoades came into and retained possession; (3) a particular description of the property and a statement of its value; (4) the location of the property to the extent known; and (5) that the property has not been taken for any tax, assessment, or fine, or seized under an execution against Intrepid. *See* Exhibit 1, [Board Member] Decl.

[6] Here, California's claim and delivery statute is applicable given the unauthorized removal of computing components from the ScaleMatrix data center, conduct that potentially constitutes grand theft under Cal. Penal Code § 487, and receipt or concealment of stolen property under Cal. Penal Code § 496(a).

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 22 -

limited to Company purposes and ended once Zimmerman and Rhoades were terminated.

Intrepid's claim is also valid. The physical devices at issue are not merely replaceable hardware. They contain, or provide access to, Intrepid's source code, development environments, credentials, deployment tools, technical documentation, and other proprietary information. As a result, withholding the devices effectively prevents Intrepid from accessing, preserving, securing, and commercializing its own product.

The wrongful-detention element is likewise satisfied. Zimmerman and Rhoades continue to retain assets necessary for the Company's operations while simultaneously denying the Company access to them. Claim and delivery exists to prevent precisely this type of deprivation of specific personal property pending resolution of the underlying dispute.

Accordingly, the Court should order that all Intrepid-owned computers, servers, storage media, mobile devices, access tokens, and other tangible assets used to develop, store, access, test, deploy, or commercialize the Company's software be returned to Intrepid or delivered to the Court-appointed IP Custodian for preservation and control during this litigation.

Additionally, the Court should order that communications on personal devices used for Intrepid communications should be surrendered. This included text messages, WhatsApp messages or other communications means so as to provide transparency into the communications that Sharif, Moore, Zimmerman and Rhoades had as well as communications they had with other employees on Intrepid matters be provided so as to provide the court and Intrepid an understand the various acts and corroboration which may have occurred.

/ / /

/ / /

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 23 -

### i.    The Undertaking Requirement Is Satisfied or Should Be Set at a Nominal Amount.

California Code of Civil Procedure § 515.010 requires a plaintiff seeking a writ of possession to file an undertaking, but the court fixes the amount and may dispense with it where the defendant has no interest in the property. Cal. Code Civ. Proc. § 515.010(b). Zimmerman and Rhoades have no ownership or possessory interest in Company hardware that they were contractually obligated to return upon termination, and the storage fees Zimmerman now invokes arose solely from his own unauthorized removal of the equipment. Intrepid is prepared to post any undertaking the Court directs and submits that it should be set at zero or a nominal sum because no legitimate interest can be damaged by the return of Company property. This provisional-remedy undertaking is distinct from, and not duplicative of, any Federal Rule of Civil Procedure 65(c) security, which the Court may likewise set at zero in its discretion.

### ii.    Alternatively, the Court May Enter a Turnover Order or Mandatory Injunction.

Even if the Court determines that a writ of possession is not the exclusive or preferred procedural vehicle, the Court should issue an alternative order compelling turnover of the same assets. The Company is entitled to equitable relief that requires the defendants, cross-defendants, and third-party defendants to return Company property and stop withholding the assets necessary for the Company to operate.

The requested order would not decide the final merits of any ownership or compensation dispute. It would simply preserve and restore Company property so the Company can function. Any party claiming a personal ownership interest, compensation right, lien, reimbursement claim, or equity interest can litigate that claim later. But no party should be allowed to hold Company-owned computers, storage media, credentials, or development assets hostage while the Company's product remains frozen.  The turnover order should require immediate delivery of:

- 24 -

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

| Category | Relief Requested | Why It Matters |
|---|---|---|
| Computers, Servers and laptops | Return to Company or IP custodian | May contain source code, build environments, credentials, technical documentation, and Company files |
| Hard drives, SSDs, USB drives, and external media | Return and forensic preservation | May contain repositories, backups, source-code branches, product files, or deleted/restorable Company data |
| Servers and development hardware | Return or transfer administrative control | Necessary to host, test, deploy, or maintain the product |
| Mobile devices and authentication devices | Return or transfer Company data/access | May control two-factor authentication, cloud access, repository access, or administrative credentials<br>May contain additional communications on Intrepid matters |
| Credentials, passwords, admin accounts, tokens, and keys | Immediate disclosure or transfer | Necessary to access repositories, cloud systems, deployment tools, and security controls |
| Prototype devices and commercialization materials | Return to Company control | Needed to test, demonstrate, market, and commercialize the product |
| Technical documentation and records | Return in native format | Needed to understand, maintain, secure, and improve the product |
| Company legal documentation and records | Return in native format or extracted PDFs | Needed to understand, maintain, secure, and understand vendor and employment agreements under Intrepid (individual Docusign and other e-signature platforms) |
| Company documentation and Artificial Intelligence Tools | Return in native format or extracted PDFs | Need to understand proprietary decisions and analysis performed for Intrepid actions |

### *iii.* *The Relief Requested Benefits the Company and All Shareholders.*

The purpose of the requested relief is not to advantage one faction over another. It is to protect the Company. The Company owns these assets and is entitled

- 25 -

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

to secure them so they can be used for the Company's business. Returning the computers, devices, storage media, and related assets to the Company or the IP Custodian benefits all shareholders, because it allows the Company to preserve its property, continue development, commercialize the product, generate revenue, and build enterprise value.

No shareholder benefits from the continued detention of Company property; from a stalled product launch; or from forcing the Company to spend time and money litigating access to its own computers, devices, source code, and development infrastructure. The value of the Company increases only if its assets are secured and used for the Company's benefit.

The Court should therefore issue a writ of possession under California's claim-and-delivery statutes, or alternatively, enter a mandatory turnover order, requiring the defendants, cross-defendants, and third-party defendants to immediately deliver all Company-owned physical assets, computers, devices, storage media, credentials, and related technical property to the Company's designated IP custodian.

## V.    CONCLUSION

For the foregoing reasons, Intrepid respectfully requests that the Court grant this Motion and enter the relief set forth above. The relief preserves the Company's core assets with a neutral custodian, restores the status quo that existed before this dispute, and protects Intrepid and its shareholders, including Sharif, while the parties litigate their remaining disputes. No party with a genuine claim to ownership or compensation is prejudiced; and each may pursue their claims in the ordinary course. Accordingly, Intrepid requests that the Court grant its Motion in full.

/ / /

/ / /

/ / /

/ / /

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY    Case No.  3:26-cv-00965-LL-MMP

DATED: June 24, 2026.

Respectfully Submitted,

**SPENCER FANE LLP**

*/s/ Theresa C. Becerra*
Theresa C. Becerra, Esq.
201 Santa Monica Blvd., Suite 550
Santa Monica, California 90401
Telephone: (424) 217-1830
Fax: (424) 217-1854
Email: tbecerra@spencerfane.com

Vincent J. Aiello, Esq. *(Pro Hac Vice Forthcoming)*
Tyler Thomas, Esq. *(Pro Hac Vice Forthcoming)*
Jason Smith, Esq. *(Pro Hac Vice Forthcoming)*
SPENCER FANE LLP
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3419
Fax: (702) 408-3401
Email:   vaiello@spencerfane.com
         tthomas@spencerfane.com
         jsmith@spencerfane.com

*Attorneys for Intrepid Studios, Inc.*

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

- 27 -