William F. Small (Cal. SBN: 253443)
will@smalllawcorp.com
Kelly Ann Tran (Cal SBN: 254476)
kelly@smalllawcorp.com
**SMALL LAW PC**
402 W. Broadway, Ste. 1720
San Diego, CA 92101
Tel.: (619) 430-4793
Facsimile: (619) 664-4278

*Attorneys for Plaintiff/Cross-Defendant,*
STEVEN SHARIF

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDINGS LLC, and JASON CARAMANIS, <br><br>     Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br>     Nominal Defendant. <br><br> AND RELATED CROSS-ACTIONS. | Case No. 3:26-cv-00965 LL-MMP <br><br> **PLAINTIFF AND CROSS-DEFENDANT STEVEN SHARIF'S OPPOSITION TO MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY** <br><br> **Date: 08/11/2026** <br><br> **Courtroom: 14B (14th Floor)** <br><br> **Action Filed:  02/14/2026** <br> **Jud. Officer:  Hon. Linda Lopez** |

1

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Plaintiff/Cross-Defendant Steven Sharif ("Plaintiff" or "Sharif") hereby opposes in part the "Motion To Compel Turnover Of Intrepid's Intellectual Property" filed by Nominal Defendant/Cross-Claimant/Third-Party Plaintiff Intrepid Studios, Inc. ("Intrepid") [ECF No. 136] ("the Turnover Motion").[1]

---

[1] Sharif and Intrepid, through their counsel, met and conferred regarding the issues presented by the Turnover Motion after its filing, but were unable to reach an agreement to resolve the motion, necessitating this opposition. Declaration of William F. Small in Support of Opposition to Turnover Motion, ¶ 3-5. To allow further meet and confer efforts, Intrepid and Plaintiff agreed to allow each other an additional day to file their respective opposition and replies to this motion, which is why this Opposition is being filed 13 days before the hearing date. *Id.*

2

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

## TABLE OF CONTENTS

I.  INTRODUCTION ……………………………………………………….. 5

II.  BACKGROUND ……………………………………………………….. 7

   A. Sharif Brought This Action, In Part, To Protect Intrepid's Assets ……… 7

   B. The Court Appointed a Neutral IP Custodian ……………………………. 8

   C. Sharif and/or Moore Own the Founder-owned Assets …………………… 9

      1. The Domain Account …………………………………………………….. 9

      2. The Social Media Accounts ……………………………………………….. 10

III.  ARGUMENT …………………………………………………………. 11

   A. Intrepid Has No Ownership Rights in the Founder-owned Assets …….. 11

   B. Intrepid Cannot Obtain Relief Under DTSA or CUTSA ……………….. 12

      1. Intrepid Has Not Demonstrated a Likelihood of Success on the Merits.. 12

      2. Intrepid Has Not Demonstrated a Likelihood of Irreparable Harm…… 15

      3. The Balance of Equities do not Favor Intrepid…………………………. 15

      4. Intrepid Has Not Established a Showing of Public Interest…………… 16

   C. There is No Contract to Order Specific Performance as to Sharif or Moore …………………………………………………………………… 16

   D. There is No Basis for Claim and Delivery as to Sharif or Moore……….. 17

   E. There is No Basis for Intrepid's Request for Personal Devices…………. 17

   F. Access to Sharif's Email Account Should Be Restricted………………… 18

IV.  CONCLUSION ………………………………………………………. 18

# TABLE OF AUTHORITIES

*Aamer v. Obama,* 742 F.3d 1023, 1038 (D.C. Cir. 2014) …………………….…… 12

*Alaska ex rel. Yukon Flats Sch. Dist. v. Native Vill. of Venetie,* 856 F.2d 1384 (9th Cir. 1988) …………………………………………………………………..…….… 12

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 944 (9th Cir.2013) …………………………………………………………………….… 12

*DISH Network Corp. v. F.C.C.,* 653 F.3d 771, 776-77 (9th Cir.2011)………………... 12

*Farris v. Seabrook,* 677 F.3d 858, 864 (9th Cir. 2012)…………………………....… 12

*Garcia v. Google, Inc.* (9th Cir. 2015) 786 F.3d 733, 740…………………..…… 6, 12

*Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*, No. 8:20-cv-02114-JLS-ADS, 2021 U.S. Dist. LEXIS 54940, at *20 (C.D. Cal. Mar. 23, 2021) …………………….…… 13

*Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020)……. 13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir.2009) …………………………………………………………………..…… 6

*Skye Orthobiologics, Ltd. Liab. Co. v. CTM Biomedical, Ltd. Liab. Co.*, 351 F.R.D. 155, 160 (C.D. Cal. 2026) …………………………………………………………..… 13

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)………………….... 12

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This case is a shareholder dispute concerning Intrepid Studios, Inc., and the MMORPG (Massively Multiplayer Online Role Playing Game) known as *Ashes of Creation*, which was created by Sharif. (Exhibit 1, Declaration of Steven Sharif, ¶ 2.)

Intrepid's Turnover Motion is heavy on unfounded, serious allegations but light on any evidence to support them. It is also unclear as to the exact relief it requests. As an example, the Turnover Motion includes multiple, differing lists of purported assets that it seeks to be turned over. In addition, the motion is not clear if it requests for the assets to be turned over to a Court-appointed IP Custodian or to Intrepid. Nor does the motion state if assets are returned to Intrepid, whether they would be accessible to the Defendant board members of Intrepid.[2]

Setting aside the ambiguity of the requested relief, Intrepid submits no evidence that Plaintiff possesses or controls any of the assets or that he has prevented Intrepid's access to any of them. Rather, the Turnover Motion merely levies conclusory, defamatory attacks against Plaintiff (and Third-Party Defendants Jason Zimmerman, Matthew Rhoades and John Moore[3]) without evidentiary support. For example, Intrepid asserts that Zimmerman deleted Slack channels and communications belonging to Intrepid. But none of the supporting evidence submitted by Intrepid substantiates that alleged deletion. Likewise, Intrepid asserts that Sharif removed individuals from Intrepid

---

[2] Despite the occasional ambiguity, the motion ultimately concedes that Intrepid's assets should be returned to the Court-appointed IP Custodian, stating "Intrepid respectfully requests that the Court grant this Motion and enter the relief set forth above. The relief preserves the Company's core assets **with a neutral custodian**, restores the status quo that existed before this dispute, and protects Intrepid and its shareholders, including Sharif, while the parties litigate their remaining disputes." (ECF No. 136, p. 26, ll. 18-22 [emphasis added].)

[3] Plaintiff notes that Intrepid has submitted no proof of service of the Turnover Motion on Zimmerman or Rhoades. In addition, Moore has not yet appeared in this action.

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

social media accounts at Discord and Reddit, claiming that was destruction of company "records". But neither the motion nor the single supporting declaration identifies <u>any</u> factual basis supporting that accusation.

In addition, the Turnover Motion seeks mandatory affirmative relief. Mandatory injunctive relief is disfavored and requires the moving party to show that "the law and facts clearly favor her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). An injunction requiring a party to affirmatively provide information or turn over property is mandatory relief because it "orders a responsible party to 'take action.'" *Id.* (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir.2009)). Intrepid has not made that showing as to Sharif because it has not submitted an iota of evidence that Sharif possesses or controls any of the assets at issue – or that he has done anything wrongful at all.

Accordingly, the Court should deny the Turnover Motion as to Sharif, or, at most, order continued neutral preservation of the Assets through the existing IP Custodian – <u>with the exception of the following assets</u> over which Plaintiff and Third-Party Defendant John Moore claim ownership rights:

- the GoDaddy account for the related domain of www.ashesofcreation.com ("the Domain Account");
- the Ashes of Creation Reddit account ("the Reddit Account");
- the Ashes of Creation Discord account ("the Discord Account");
- the Ashes of Creation YouTube account ("the YouTube Account"); and
- the Ashes of Creation X account ("the X Account") (collectively, the aforementioned accounts shall be referred to as the "Founder-owned Assets").

For the reasons detailed herein, the Court should deny the motion completely as to the Founder-owned Assets.

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

Nonetheless, Plaintiff does <u>not</u> oppose the Court-appointed IP Custodian receiving and preserving any of the *other* assets identified in the Turnover Motion. And, as to the Founder-owned Assets, Sharif is willing to provide Intrepid limited access to those platforms and the Domain to the extent that it is necessary for Intrepid to conduct the business of Intrepid, so long as Sharif and/or Moore retain possession, custody and control of the Founder-owned Assets. Sharif is willing to meet and confer with Intrepid regarding such limited access.[4]

To the extent that the Turnover Motion seeks other relief (e.g., "surrender" of personal communication devices [see ECF No. 136, p. 23, ll. 19-20] or turnover of any assets to the individual board member Defendants), Plaintiff respectfully opposes the motion for the reasons set forth herein.

## II.   BACKGROUND

### A. Sharif Brought This Action, In Part, To Protect Intrepid's Assets.

Sharif brought this action individually and derivatively on behalf of Intrepid after Defendants allegedly attempted to obtain and exploit Intrepid's intellectual property and trade secrets through a disputed Article 9 foreclosure. Sharif filed this action asserting direct claims on his own behalf and derivative claims as a shareholder on behalf of Intrepid to enjoin Defendants from continuing a course of conduct designed to dismantle and strip Intrepid of its assets, including its intellectual property and trade secrets comprising *Ashes of Creation*.

After filing this case, Sharif sought emergency relief to preserve Intrepid's assets, not transfer of control. Sharif's motion for a temporary restraining order ("TRO") requested an order enjoining Defendants from accessing, using, selling, distributing, or

---

[4] Sharif notes that Intrepid repeatedly states that the Turnover Motion does not seek to resolve any questions of ownership as to any assets at issue in the motion. Sharif does not concede that Intrepid or any other party has ownership rights over any specific asset and reserves all rights in that regard.

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

causing anyone to access, use, sell, or distribute Intrepid's trade secrets, including accounts or applications containing those trade secrets. Sharif also requested appointment of a neutral intellectual-property custodian or escrow agent to hold and control credentials, administrative privileges, and source-control access on a temporary and limited basis for the sole purpose of preventing access, use, sale, or dissemination of trade secrets pending adjudication of the parties' ownership dispute.

Sharif's TRO memorandum emphasized that the requested relief was narrow and did not seek turnover or an ownership determination. Sharif stated that the requested TRO "does not require any turnover, any operational interference, any ownership determination, or any restriction on access records or platforms that do not impact the trade secrets." Sharif further explained that the requested relief was "limited specifically to prevent Defendants' access, use, sale, or dissemination of the trade secret assets."

**B. The Court Appointed a Neutral IP Custodian.**

On March 4, 2026, the Court granted Sharif's ex parte TRO application. (ECF No. 33.) The Court enjoined Defendants and their agents from accessing, using, selling, distributing, or causing anyone to access, use, sell, or distribute Intrepid's trade secrets. The Court also appointed a neutral Intellectual Property Custodian, Michael Kunkel, to hold and control credentials, administrative privileges, and source-control access to accounts, platforms, and repositories containing Intrepid's trade secrets, for the sole purpose of preventing access, use, sale, or dissemination of those trade secrets "until … further order of the Court." (ECF No. 33, p. 2.)

The Court's Order further provides that Mr. Kunkel shall control passwords to various accounts that might contain Intrepid's trade secrets and may grant Defendants limited access only upon a showing of just cause for a reason other than access to Intrepid's trade secrets. (*Id.,* p. 4.) The Order identified specific accounts, including AWS, Perforce, Github, Miro, MongoDB, g-suite/Google, Google Workspace, Microsoft, Slack, Boomlibrary, Waves, Bitwarden, Resemble.ai, DB Scheme,

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

GitKraken, JetBrains, incident.io, Lens, Autodesk, Adobe, Docker, ScaleMatrix, CDW/HPE, and Universal Foundry.

The Order appointing the IP Custodian did <u>not</u>, however, list any of the Founder-owned Accounts. The Court has not issued any order to terminate the IP Custodian's authority or directed transfer of assets to Intrepid.

**C. Sharif and/or Moore Own the Founder-owned Assets.**

The Turnover Motion treats the Founder-owned Accounts as undisputed Company assets. They are not.

*1. The Domain Account*

Third-Party Defendant John Moore maintains a personal GoDaddy registrar account under his personal login, recovery information, multi-factor authentication ("MFA"), and billing credentials (the GoDaddy Account). (Declaration of John Moore, Exhibit 4, ¶ 5; Exhibit 1, ¶ 10.) The GoDaddy Account currently administers the following domains: www.IntrepidStudios.com and www.AshesofCreation.com. (Exhibit 4, ¶ 5; Exhibit 1, ¶ 10.) The GoDaddy Account is not registered to Intrepid, nor does it have an Intrepid login. (Exhibit 4, ¶ 5; Exhibit 1, ¶ 10.)

On March 19, 2024, Intrepid and its founders, Moore and Sharif, executed a Founders' Intellectual Property License Agreement between Intrepid, Sharif and John Moore ("the License Agreement"). (Exhibit 1, ¶ 11; Exhibit 2; Exhibit 4, ¶ 8.)

The License Agreement identifies Sharif and Moore collectively as the founders of Intrepid. The Agreement recites that, before Intrepid's organization on May 20, 2015, Sharif and Moore developed and continued to develop certain intellectual property for which they retained intellectual property rights. The License Agreement expressly includes domain names within the intellectual property subject to the license. The License Agreement defines "Intellectual Property" to include, among other things, "domain names." The License Agreement also defines "Licensed IP" as intellectual property owned by either or both Founders and licensed to Intrepid under the License Agreement.

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

The License Agreement *specifically* identifies the Ashes of Creation domain as IP owned by Sharif and Moore, as Exhibits A, B and C of the License Agreement identify "Ashes of Creation - MMORPG set in a high fantasy world called Verra. Phoenix Logo and name, www.AshesofCreation.com" as Licensed IP.

The License Agreement granted Intrepid a license, not ownership. Thus, while the License Agreement provided Intrepid a "nonexclusive, worldwide, royalty-bearing, nontransferable license" to reproduce, exploit, and use the Licensed IP in connection with online video games and reasonable ancillary uses, it also states that the Licensors retain all right, title, and interest in the Licensed IP and that the License Agreement "does not transfer ownership right of any Licensed IP or any derivative works created thereof."

Indeed, the License Agreement also provides that it shall remain in effect "as long as both Founders remain continuously employed by the Company." Neither Sharif nor Moore are currently employed by Intrepid. (Exhibit 2, p. 2.) Accordingly, by the terms of the License Agreement, Intrepid has no license rights to the GoDaddy Account – much less any ownership rights that would justify the injunctive relief it requests from the Court.

### 2. The Social Media Accounts

Sharif personally created the accounts that own the Ashes of Creation-branded X account (@AshesofCreation), YouTube channel, Reddit community, and Discord server. (Exhibit 1, ¶ 12.) Sharif has continuously retained ultimate administrator and recovery control over those accounts. (*Id.*; see also, Exhibit 3 [account login information for Founder-owned Accounts].) Although Sharif allowed other Intrepid personnel to post, moderate, or otherwise use those accounts for ordinary Company purposes, Sharif has not assigned the accounts, master credentials, recovery methods, or owner-level rights to Intrepid or any other party. (*Id.*, ¶ 13.)

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

As to these accounts, the Turnover Motion submits no evidence that Intrepid has any right to own, possess or access them.[5]

## III.   ARGUMENT

Intrepid characterizes its motion as seeking multiple forms of relief: (1) injunctive relief under the DTSA and CUTSA, (2) contractual specific performance, and (3) California claim-and-delivery. Each remedy is governed by distinct standards, but all share a common requirement: Intrepid bears the burden of demonstrating entitlement to the extraordinary relief it seeks. Intrepid cannot meet that burden under any of its theories as to Sharif or Moore.

### A. Intrepid Has No Ownership Rights in the Founder-owned Assets.

As a threshold issue, inherent in any of the relief that Intrepid requests is Intrepid having a right to possess or control the assets. As to the Founder-owned Assets, Intrepid cannot demonstrate this. Moreover, Intrepid claims it wants to maintain the status quo, but – as to the Founder-owned Assets – the Turnover Motion would **change** the status quo. Namely, it would require Sharif and Moore to turn over the Domain Account, the X Account, the Reddit Account, the Discord Account and the YouTube Account, all of which are held in Sharif or Moore's personal name on accounts they personally hold.

In short, there is no basis for granting this motion as to the Founder-owned Accounts. Sharif and Moore are willing to meet and confer with Intrepid to provide Intrepid with limited *access* to the Founder-owned Accounts if Intrepid truly intends to resume operations, but they object to "turning over" the accounts and control to Intrepid – which would inherently require them to be turned over to the board member Defendants at this time.

---

[5] Intrepid maintained separate Company communication properties, including its own Reddit presence, X account @AshesofCreationSupport, a separate Discord presence, Instagram, Vanilla Forums, Mailchimp, and Steam Community forums. Sharif does not possess credentials or administrator rights for those accounts; thus, Sharif has nothing to turn over as it relates to them. (Exhibit 1, ¶ 15.)

11

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

**B. Intrepid Cannot Obtain Relief Under DTSA or CUTSA.**

The Supreme Court has emphasized that preliminary injunctions are an "extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). The district court correctly identified that Garcia must satisfy *Winter's* four-factor test. "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook,* 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter,* 555 U.S. at 20, 129 S.Ct. 365).

The first factor under *Winter* is the most important — likely success on the merits. *Aamer v. Obama,* 742 F.3d 1023, 1038 (D.C. Cir. 2014) ("We begin with the first and most important factor: whether petitioners have established a likelihood of success on the merits."). Because it is a threshold inquiry, when "a plaintiff has failed to show the likelihood of success on the merits, we 'need not consider the remaining three [*Winter* elements].' " *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 944 (9th Cir.2013) (quoting *DISH Network Corp. v. F.C.C.,* 653 F.3d 771, 776-77 (9th Cir.2011)).

Moreover, when the requested relief is mandatory rather than prohibitory—requiring affirmative action rather than maintaining the status quo—courts apply heightened scrutiny and require the moving party to make an even stronger showing. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under the Ninth Circuit's alternative formulation, a movant may obtain relief by showing serious questions on the merits combined with a balance of hardships tipping sharply in the movant's favor, but only if irreparable injury and public interest are also established. *Alaska ex rel. Yukon Flats Sch. Dist. v. Native Vill. of Venetie*, 856 F.2d 1384, 1390 (9th Cir. 1988).

*1. Intrepid Has Not Demonstrated a Likelihood of Success on the Merits.*

To prevail on a trade secret misappropriation claim under the DTSA, a plaintiff must prove three elements: (1) the plaintiff possessed a trade secret; (2) the defendant

12

misappropriated the trade secret; and (3) the misappropriation caused or threatened damage to the plaintiff. *Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*, No. 8:20-cv-02114-JLS-ADS, 2021 U.S. Dist. LEXIS 54940, at *20 (C.D. Cal. Mar. 23, 2021). Intrepid has not demonstrated a likelihood of prevailing on any of these elements.

**First**, a trade secret must be identified with sufficient particularity to separate it from matters of general knowledge or special knowledge of skilled persons in the trade. *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020); *Skye Orthobiologics, Ltd. Liab. Co. v. CTM Biomedical, Ltd. Liab. Co.*, 351 F.R.D. 155, 160 (C.D. Cal. 2026). Plaintiffs may not rely on catchall phrases, identify categories of trade secrets they intend to pursue, or cite and incorporate hundreds of documents by reference. *Inteliclear, supra*, 978 F.3d at 658. The identification of a trade secret is a question of fact that requires an iterative discovery process. *Skye Orthobiologics, supra*, 351 F.R.D. at 160.

Here, Intrepid's motion provides multiple, sprawling lists of software platforms, cloud services, development tools and more "assets." These lists include commercially available services like Amazon Web Services, Google Workspace, Discord, Reddit, and ChatGPT. Intrepid does not explain what allegedly secret information resides on these platforms, what makes that information valuable or unknown to competitors, or what reasonable measures it took to maintain secrecy.

The distinction between a platform and the information it contains is critical. Access credentials to AWS are not themselves trade secrets—they are security measures. The question is what protectable information, if any, resides in the systems those credentials access. Intrepid has not answered that question. Its scatter-shot list of platforms, tools, and other items, without identification of specific protectable content, is precisely the kind of inadequate "catchall" identification courts reject.

Intrepid claims that the Court already ruled that the Assets were trade secrets in the Court's ruling on the TRO in this case. But Intrepid has expanded the asset list beyond the accounts identified in the TRO and Custodian Order. Intrepid's current list

13

includes Discord, GoDaddy, Google Workspace, Reddit, and miscellaneous artificial intelligence tools such as Claude and ChatGPT. By contrast, the TRO's account list did not include GoDaddy, Reddit, Discord, or artificial intelligence tools. Thus, Intrepid should not merely be able to rely on the Court's prior TRO order in support of the instant relief.

**Second,** even if Intrepid had adequately identified trade secrets, it has presented no evidence that Sharif or Moore misappropriated them. Misappropriation requires either wrongful acquisition or unauthorized disclosure or use. 18 USCS § 1836, 18 USCS § 1839. Intrepid's motion contains no allegations that Sharif or Moore:

- Acquired any trade secret through improper means;
- Disclosed any trade secret to unauthorized persons;
- Used any trade secret for competitive purposes; or
- Personally possesses any of the contested materials.

Instead, Intrepid only alleges – without any evidence – that Sharif "worked in concert" with Zimmerman and Rhoades to "conceal, abscond with, and withhold" Company assets. In fact, they did not. (Exhibit 1, ¶ 4-7; Exhibit 4, ¶ 3-4.)

These conclusory allegations, unsupported by any factual showing of Sharif's specific actions, cannot establish misappropriation. Intrepid does not allege that Sharif directed Zimmerman or Rhoades to remove equipment, communicated with them about withholding access, or took any action to prevent the Company from accessing its systems. It provides no evidence at all to prove Sharif or Moore took any action to misappropriate any trade secrets. In fact, Sharif has cooperated with the IP Custodian to provide him with the assets as required by the Court's TRO. (Exhibit 1, ¶ 7.)[6]

---

[6] Notably, Intrepid did not provide any declaration from the IP Custodian that indicates that Sharif or Moore have taken any actions to prevent his taking access to the assets pursuant to the Court's TRO.

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

Moreover, as to the Founder-owned Assets specifically, Sharif and Moore hold those accounts personally through proper means. Thus, Intrepid cannot prove that Sharif or Moore misappropriated any of those assets.

**Third,** while the Motion has not proven any misappropriation by Sharif or Moore, it also has not proven any damages. The declaration of Doug Bartels does not state that Intrepid intends to restart its operations or efforts to further commercialize or monetize the Ashes of Creation game. It does not state that Intrepid intends to hire a workforce to operate. Indeed, Mr. Bartels' title of Corporate *Restructuring* Agent, might imply the Company does not intend to resume its normal operations. In sum, Intrepid has not shown a likelihood that it has suffered any damages.

Because Intrepid has failed to show a likelihood of prevailing on any of the elements for trade secrets misappropriation, it cannot obtain the injunctive relief it seeks under the trade secret statutes.

### 2. Intrepid Has Not Demonstrated a Likelihood of Irreparable Harm.

Furthermore, Intrepid has failed to show a likelihood of irreparable harm for the same reasons that it failed to show a likelihood of suffering damages by any alleged misappropriation. Intrepid has not demonstrated that it is operating for any purpose beyond this litigation. Thus, there is no compelling showing of irreparable harm here.

Intrepid attempts to bolster its argument of irreparable harm by claiming that "Zimmerman deleted Slack channels and communications belonging to Intrepid on or about March 11, 2026." (ECF No. 136, p. 18, ll. 4-7.) It also claims that "Sharif has continued to remove individuals interested in Ashes of Creation from Intrepid social media accounts at Discord and Reddit." (Turnover Mtn., p. 18:9-10.) Shockingly, Intrepid provides no evidence for either of these spurious claims.

### 3. The Balance of Equities do not Favor Intrepid.

The balance of equities does not favor granting Intrepid the extraordinary relief it seeks. This case involves complex questions of corporate control, ownership, and governance. Sharif founded Intrepid and remains a shareholder. The underlying

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

derivative action alleges serious breaches of fiduciary duty by the current board. Granting Intrepid's motion would effectively resolve contested issues of control over certain assets through procedural means rather than on the merits.

Moreover, Intrepid seeks relief against Sharif without establishing that Intrepid has an ownership interest in <u>all the assets</u> at issue or that Sharif possesses any of the contested materials. Ordering Sharif to turn over materials he does not possess would be futile; ordering him to turn over property he or Moore own would be unjust.

### 4. *Intrepid Has Not Established a Showing of Public Interest.*

Intrepid argues that the public interest is served by protecting trade secrets and that "allowing 'thieves to retain and use the confidential information they purloined undermines business development and stability; preventing such conduct is in the public interest.'" (ECF No. 136, p. 19, ll. 13-18.) Inherent in that argument is that <u>all</u> the Assets at issue are trade secrets and that Sharif and the others have misappropriated – or stolen – trade secrets. As previously discussed, Intrepid's motion falls short of proving either of these premises.

In summary, Intrepid has failed to meet any of the requirements for the extraordinary injunctive relief it seeks as to Sharif or Moore under the DTSA or CUTSA.

### C. There is No Contract to Order Specific Performance as to Sharif or Moore.

The motion does not identify any contract between Sharif and Intrepid or between Moore and Intrepid that would form the basis for any relief it seeks against them. (See, e.g., ECF No. 136, p. 11, ll. 17-19 (stating, "the employment agreements, Employee Handbook acknowledgments, and non-disclosure agreements executed **by Zimmerman and Rhoades** provide an independent contractual basis for specific performance ..." (emphasis added)). Accordingly, without an underlying contractual agreement, the Court cannot order specific performance as to Sharif or Moore.

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

**D. There is No Basis for Claim and Delivery as to Sharif or Moore.**

California's claim-and-delivery statutes requires the moving party to establish probable validity of its claim to possession, wrongful detention by the opposing party, and compliance with statutory procedural requirements including a showing of the property's location and value. (Cal Code Civ Proc § 512.010, Cal Code Civ Proc § 512.060.) Moreover, as Intrepid notes, California's claim-and-delivery statutes provides a provisional remedy for recovery of specific, tangible personal property.

Intrepid presents absolutely no evidence that Sharif or Moore are in possession of any tangible assets of Intrepid. Rather, the Turnover Motion only presents evidence that Zimmerman or Rhoades are currently in possession of tangible assets of Intrepid (though the submitted evidence appears to show that Zimmerman and Rhoades have cooperated in attempts to return those assets to Intrepid and, again, there is no declaration from the IP Custodian to the contrary).

In short, California's claim-and-delivery statutes require proceedings against the person holding the property. Intrepid cannot use these statutes to obtain orders against Sharif or Moore for physical property they do not possess.

**E. There is No Basis for Intrepid's Request for Personal Devices.**

Intrepid's motion includes serious accusations of deletion and spoliation, but it provides no evidentiary support. The Turnover Motion asserts that Zimmerman deleted Slack channels and communications belonging to Intrepid on or about March 11, 2026. Intrepid also accuses Sharif of conduct involving Discord and Reddit. The Turnover Motion asserts that Sharif "has continued to remove individuals interested in Ashes of Creation from Intrepid social media accounts at Discord and Reddit" and characterizes this as evidence that records are being destroyed. But Bartels' declaration does not provide any evidence – or even a conclusory statement – to support these accusations.

Despite that lack of evidence, Intrepid seeks sweeping access to personal communication devices of Sharif, Moore, Zimmerman and Rhoades. The motion asks the Court to require "surrender" of personal-device communications, including texts,

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

WhatsApp messages, and other communications involving Sharif, Moore, Zimmerman, Rhoades, and other employees on Intrepid matters. That request goes far beyond preservation of trade-secret access credentials and risks disclosure of privileged, personal, and litigation-related communications. There is absolutely no basis or justification for this request, and the Court should deny it. Intrepid can utilize proper discovery tools if it seeks production of communications between parties.

### F. Access to Sharif's Email Account Should Be Restricted.

Intrepid identifies the Google Workspace (including company email) as one of the Assets. That would include Sharif's Intrepid email address, ssharif@intrepidstudios.com, which presents unique concerns because that account might include emails that would be protected under Sharif's right to privacy and potentially attorney-client privileged communications.

Sharif does not object to Intrepid having access to the company's Google Workspace or email accounts generally, but Sharif respectfully posits that the Court should order that Intrepid shall not permit any defendant in this action, or any agent, employee, attorney, consultant, contractor, or representative of Intrepid or any defendant, to access the contents of any email account used by Steven Sharif, including ssharif@intrepidstudios.com. Sharif further proposes that the Court order that the Parties meet and confer following its decision on this motion as to selection of an ESI vendor to maintain access of Sharif's Intrepid email account and ESI protocols that would address any party's access to emails in Sharif's Intrepid email account.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Intrepid's Turnover Motion as to Sharif and Moore. The Motion seeks mandatory affirmative relief without competent evidence that Sharif possesses, controls, withholds, or can turn over any specific asset. Intrepid's purported evidence in support of the motion (though weak) focuses on Zimmerman and Rhoades. The limited allegations against Sharif rest merely on conclusory accusations unsupported by any competent evidence.

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP

If the Court is inclined to grant any relief under this motion, however, the Motion should be denied at least as to the aforementioned Founder-owned Assets, to which Intrepid has completely failed to prove any right of ownership, control or possession.

Respectfully submitted,

Dated: July 29, 2026          **SMALL LAW PC**

By:    /s/ *William F. Small*
       WILLIAM F. SMALL (SBN 253443)
       Email: will@smalllawcorp.com
       Attorney for Plaintiff/Cross-Defendant
       STEVEN SHARIF

19

STEVEN SHARIF'S OPPOSITION TO MOTION FOR TURNOVER OF INTELLECTUAL PROPERTY

Case No. 3:26-cv-00965 LL-MMP