Theresa C. Becerra, Esq. (State Bar No. 205338)
**SPENCER FANE LLP**
201 Santa Monica Blvd., Suite 550
Santa Monica, California 90401
Telephone: (424) 217-1830
Fax: (424) 217-1854
Email: tbecerra@spencerfane.com

Vincent J. Aiello, Esq. *Pro Hac Vice*
Tyler B. Thomas, Esq. *Pro Hac Vice*
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3419
Fax: (702) 408-3401
Email:    vaiello@spencerfane.com
          tbthomas@spencerfane.com
*Attorneys for Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDINGS LLC, and JASON CARAMANIS, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.   3:26-cv-00965-LL-MMP <br><br> **INTREPID STUDIOS, INC'S REPLY IN SUPPORT OF MOTION TO COMPEL TURNOVER OF INTREPID'S INTELLECTUAL PROPERTY** <br><br> **Hearing Date:    08/11/2026** <br> **Courtroom 14B (14th Floor)** <br><br> **Action Filed:    02/14/2026** <br> **Jud. Officer:    Hon. Linda Lopez** |
| INTREPID STUDIOS, INC., a California Corporation, <br><br> Cross-Claimant, <br><br> v. <br><br> STEVEN SHARIF, an individual <br><br> Cross-Defendant. | |

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

INTREPID STUDIOS, INC., a California Corporation,

Third-Party Plaintiff,

v.

JASON ZIMMERMAN an individual, JOHN MOORE an individual, MATTHEW RHOADES an individual, DOES INDIVIDUALS 1-10; and ROE ENTITIES I-X

Third-Party Defendants.

## I.   INTRODUCTION

Sharif filed this case derivatively, in Intrepid's name, to preserve Intrepid's assets from creditors he accused of wrongfully trying to strip them away. Intrepid is now before the Court in its own name seeking the very same relief and Sharif has changed his tune. The IP assets he once argued needed protection for Intrepid's benefit suddenly now belong to him and Moore to dole out exclusively. According to this new story, Intrepid can only access them with his permission, under his control, and on his terms. As outlined below, Sharif's own admissions and filings defeat these arguments, and his requested relief should be denied.

## II.   ARGUMENT

**A.   Sharif's Admissions Judicially Estopped Him from Arguing he has an exclusive license to Company Assets.**

Sharif consents to the IP Custodian receiving and preserving every asset identified in the Motion other than the Founder-owned Assets. ECF No. 167 at 7. The Court should enter turnover as to those assets as unopposed. Regarding the purported "Founder-owned Assets" referred to in Sharif's Opposition, these are the exact same assets that Sharif previously represented to this Court were Intrepid's. ECF No. 20 at 2–3. Sharif cannot now take the opposite position: that the same categories of assets are not trade secrets or Company assets, but personal property he exclusively controls. Judicial estoppel exists to prevent exactly this. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). The doctrine applies where a

-2-

party's later position is clearly inconsistent with an earlier one, the party succeeded in persuading a court to accept the earlier position, and the party would derive an unfair advantage if not estopped. *Id*. All three are satisfied here: this Court granted a TRO and appointed an IP Custodian in reliance on Sharif's representation that these assets were Intrepid's, and he now claims them as his own while conditioning the Company's access on his permission. If the disputed assets were truly Sharif's, why didn't he seek the TRO in his individual capacity? Instead, he obtained relief by representing they belonged to Intrepid and cannot now invoke personal ownership to resist turnover.

Intrepid has attached **Exhibit 1** a demonstrative timeline evidencing Sharif's contradictory positions regarding the purported "Founder-Owned Assets" and shows the substantial overlap between the assets Sharif identified as Intrepid's trade secrets to obtain the TRO (ECF No. 20) and the assets he now claims as "Founder-owned Assets and "Licensed IP."

Moreover, this Court's previous TRO order disposes of the Opposition's particularity argument under *InteliClear* and *Skye Orthobiologics*. ECF No. 167 at 13. With respect to the purported Founder-owned Assets, both the prior TRO and the IP Custodial Order identify those assets.[1] Indeed, the Court has already found, at Sharif's urging, that the IP Assets at issue warrant trade-secret protection, ECF No. 20 at 8; ECF No. 33. Intrepid's Motion incorporated the IP Custodial Order into its definition of the IP Assets subject to turnover and identified the additional items sought. ECF No. 136 at 2-3. As such, Sharif should be precluded from now arguing that the IP Assets do not warrant trade secret protection.

**B.    The "Founder-Owned Assets" Theory Fails on Sharif's and Moore's Own Documents and Admissions.**

---

[1] *See* ECF No. 33 at 4. ("For the purposes of this Order, the accounts, platforms, and repositories containing Intrepid's trade secrets").

The threshold defect in Sharif's "Founder-owned Assets" theory is that Sharif and Moore do not own the Company's intellectual property. Intrepid was incorporated on May 20, 2015. **Exhibit 2**, Articles of Incorporation. On October 29, 2016, Intrepid, was identified as the "Owner of [the] Mark" *Ashes of Creation* in its trademark application file the United States Patent and Trademark Office (USPTO), (Serial No. 87220274), for computer game software. **Exhibit 3** at 1, 4. The application, **signed by or on Shariff's behalf**, included the following declaration, which specifically states in relevant part:

> The signatory believes that . . . **the applicant is the owner of the trademark/service mark sought to be registered** . . . . The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001 . . . declares that all statements made of his/her own knowledge are true (emphasis added).[2]

*Id.*

Eventually, Intrepid's application matured into registration with the USPTO, resulting in Intrepid being the owner of the *Ashes of Creation* mark. **Exhibit 3**.

Here, each of the "Founder-owned Assets" contains Intrepid's *Ashes of Creation* trademark or a derivative thereof. Sharif and Moore cannot license a mark to Intrepid and the related intellectual property that Intrepid has owned of record since 2016. And crucially, no assignment of the registration from Intrepid to either founder has ever been executed or recorded. *See* 15 U.S.C. § 1060(a)(3). Put simply, Intrepid holds the exclusive right to use *Ashes of Creation*. As a result, the purported License Agreement therefore could not transfer ownership of items using the "*Ashes of Creation*" name or condition Intrepid's use of it.

### ii. The License Agreement Fails to Mention the Company's Corporate Domain, Which Moore Admits He Holds in His Personal Account.

---

[2] Any "registration issued under the [Lanham Act] . . . shall be admissible in evidence and shall be prima facie evidence of . . . the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a); see also 15 U.S.C. § 1057(b).

The Founder-owned Assets defense rests on the purported March 19, 2024, Founders' Intellectual Property License Agreement. Notably though, Exhibits A, B, and C to that agreement identify only "Ashes of Creation – MMORPG . . . Phoenix Logo and name, www.AshesofCreation.com." ECF No. 167-2. However, the License Agreement does not identify IntrepidStudios.com, the Company's own corporate domain, as founder IP. Yet Moore admits that his personal GoDaddy account controls that domain too, including the DNS that routes the Company's website and e-mail. ECF No. 167-4 ¶5. Accordingly, there is zero basis whatsoever for Moore's personal control of IntrepidStudios.com.

### iii. Company-Branded Social Media Accounts Created and Operated by Company Officers for Company Business are Company Assets.

As established above, Intrepid owns the IP Assets and the *Ashes of Creation* trademark. Sharif and Moore created and maintained the purported Founder-owned Assets while serving as officers of Intrepid and for the purpose of conducting Intrepid's business. The fact that either individual may have opened or registered an account in his own name does not convert an Intrepid business asset into personal property or confer ownership of Intrepid's intellectual property.

Moreover, the Employee Non-Disclosure Agreement between Intrepid and Matthew Rhoades (the "Rhoades NDA"), **signed by Sharif on Intrepid's behalf on June 23, 2023,** defines Intrepid's trade secrets and outlines the software, databases, algorithms, and related materials as Intrepid's Trade Secrets and "***the sole property of Company***." *Id.* (emphasis added) The pre-license record confirms that Intrepid, not Sharif or Moore, owned the IP.

### iv. Sharif and Moore, Not Intrepid, are Changing the Status Quo.

The Opposition argues the Motion would "change the status quo" as to the Founder-owned Assets. ECF No. 167 at 11. However, the "status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc.*

*v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation omitted"). "The interpretation of this concept that [Sharif] advocates would lead to absurd situations, in which [a party] could never bring suit once infringing conduct had begun." *Id.*  For roughly a decade before January 2026, Intrepid personnel operated the purported Founder-owned Accounts to run the Company's business, which Sharif concedes. ECF No. 167 ¶ 13 ("I allowed Intrepid personnel to post, moderate, or otherwise use the aforementioned accounts for ordinary Company purposes"). Accordingly, Sharif's post-resignation assertion of exclusive personal control is the departure from the status quo, which would be remedied by Intrepid's request for turnover.

**D.    Sharif's E-Mail Proposal Concedes the Principle but Overreaches in Execution.**

Sharif claims a right to privacy and attorney-client privilege protections over his Intrepid email address. ECF No. 167 at 18. Sharif does not cite any case law supporting such protection. *Id.* Regardless, that argument fails. First, *prima facie*, the email is ***an Intrepid Studios company email***. An employee has no reasonable expectation of privacy in messages sent and received through a company email system maintained for business use, which is "akin to consulting [one's] lawyer in [their] employer's conference room, in a loud voice, with the door open, so that any reasonable person would expect that their discussion of [their] complaints about [their] employer would be overheard." *See Holmes v. Petrovich Development Co. LLC* 131 Cal.App.4th. 1047, 1051 119 Cal. Rptr. 3d 878, 883 (2011). Separately, an employer has access to its own servers, so an employee sending a message over the company system is "like placing a copy of that message in the company files," reviewable by anyone with lawful access. *See In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 259 (Bankr. S.D.N.Y. 2005).

Further, Intrepid's Employee Handbook ("Handbook"), forecloses any objectively reasonable expectation of privacy or confidentiality in Sharif's Intrepid email. ECF No. 136-3 at 10-156. The Handbook provides that "Email is not

-6-

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

guaranteed to be private or confidential," and that "[t]he Company reserves the right to examine, monitor, and regulate email messages" *Id.* at 55. It declares that emails are company owned and are subject to inspection, which "may occur at any time, with or without notice". *Id.* The Handbook specifically states "[i]nternal and external email messages are considered business records and may be subject to discovery in the event of litigation. *Id.* On this record, Sharif's communications are neither confidential nor privileged. Accordingly, Intrepid should receive full access to Sharif's Intrepid email account and all associated communications.[3]

**E.      Intrepid Satisfies *Winter* Under Either the Standard or Heightened Formulation.**

Sharif claims that Intrepid does not possess any evidence Sharif claims or owns certain assets. As stated above, Intrepid's evidence includes both Sharif's and Moore's own admissions of possession and control. Moreover, Intrepid meets the requirements to likely succeed on the merits of its CUTSA and DTSA claims, as outlined below. First, Sharif and Moore retained possession of the purported "Founder-owned Assets" after leaving the Company against Intrepid's consent. Each of those "Founder-owned Assets" contains Intrepid's *Ashes of Creation* trademark. Sharif himself admitted the very assets he claims are his are Intrepid's.

Second, regarding irreparable harm, the Opposition's argument is patently flawed. Sharif contends Intrepid has shown no harm because it "has not demonstrated that it is operating for any purpose beyond this litigation" (ECF No. 167 at 15), while he and the other withholding parties retain the credentials, community channels, payment systems, and hardware Intrepid needs to operate. Every week of lost access degrades the *Ashes of Creation*-customer community, the product's market position, and the value available to creditors and shareholders alike.

---

[3] Intrepid requests this Court adopt Intrepid's proposed Order providing an ESI protocol, which offers an alternative option that restricts access to communications claimed to be protected by attorney-client privilege, and reserves any remaining privacy issues for later determination.

-7-

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

Finally, the balance of the equities clearly favors Intrepid. Except for the purported Founder-owned Assets, Sharif consents to the IP Custodian receiving and preserving every asset identified in the Motion. ECF No. 167 at 7. Sharif's sole basis for opposing Intrepid's access to the purported Founder-Owned Assets is his unsupported assertion that he owns them. But Sharif has submitted no competent evidence establishing ownership. The self-dealing IP License Agreement does not establish that Sharif owns Intrepid's intellectual-property assets or trade secrets, nor does the fact that he created or retained administrator and recovery control over the purported Founder-Owned Assets. Technical control is not ownership. At most, it shows that Sharif improperly placed Company assets under accounts and credentials he controlled.

At this point, Intrepid's lack of access to its X account, YouTube channel, Reddit community, and Discord channel poses immediate and substantial harm to the Company. These platforms are established channels through which Intrepid communicates with customers, distributes official announcements and development updates, manages its brand, provides customer support, and maintains engagement with its player community. Sharif quit Intrepid and has no ownership rights to these assets. He should not be permitted to hold the Company's public voice, customer relationships, and digital infrastructure hostage after walking away from the Company.

**F.     Specific Performance Runs Against Company Employees; Turnover as to Sharif and Moore Rests on the Trade Secret Statutes, Fiduciary Duty, and the Court's Equitable Authority.**

The Opposition argues that the Non-Disclosure Agreements quoted in the Motion were not executed by Sharif or Moore and those therefore cannot be used to elicit specific performance by them. ECF No. 167 at 16. But the Turnover Motion argues specific performance against Zimmerman and Rhoades, not Sharif or Moore. ECF No. 136 at 20-21. Regardless, Sharif and Moore's turnover obligations do not

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

-8-

require such a contract. A corporate officer is an agent of a corporation. *See Michaelis v. Benavides*, 61 Cal.App.4th 681, 684 (1998). An agent's duties "arise[] not from a contract but from a relationship," and such relationships "generate rights and obligations quite independent of any contract the parties may sign." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 412, 58 Cal. Rptr. 3d 527, 537 (2007). Neither an agency nor an employment relationship "gives [one] the right to convert his principal's property." *Acme Paper Co. v. Goffstein*, 125 Cal. App. 2d 175, 181, 270 P.2d 505, 510 (1954).The purported absence of an NDA signed by Sharif or Moore is therefore beside the point: as corporate officers, they owed, and do owe, a duty to deliver the Company's property and credentials upon separation, and equity supplies the turnover remedy. Either way the IP assets are referred to as Company assets in those agreements.

### G.    Service is Both Irrelevant and Immaterial at this Juncture.

The Opposition asserts Intrepid has submitted no proof of service of the Turnover Motion to Moore, Zimmerman, and Rhoades. Regarding Moore, this is false. Moore appeared in this action on July 27, 2026, with his motion to compel arbitration. ECF No. 161. Moreover, Moore filed a declaration in support of the Opposition. ECF No. 167-4. An appearance generally occurs when a party takes an affirmative step to participate in the action, demonstrating both knowledge of the lawsuit and an intent to submit to the court's jurisdiction. *See Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir. 1986)[4]. Therefore, Moore has appeared in this case and has likewise failed to oppose Intrepid's Turnover Motion. With respect to Zimmerman and Rhoades, any issue concerning notice to them is immaterial at this stage. The assets at issue belong to the Company, not Zimmerman or Rhoades. Should this

---

[4] Intrepid reserves all rights to challenge the Master Settlement Agreement's validity and applicability to this suit. Notwithstanding, Section 12 of the Master Settlement Agreement states "the Parties acknowledge and agree that nothing in this Agreement shall prohibit the Parties from seeking temporary or preliminary injunctive relief from a court of competent jurisdiction."

REPLY ISO INTREPID STUDIOS, INC.'S MOTION FOR TURNOVER          Case No.   3:26-cv-00965-LL-MMP

Court provide the requested relief, the Turnover Order can be served to Zimmerman and Rhoades.

**H.    The Proposed Order Supplies Every Protective Function of a Custodial Intermediary and Eliminates Any Concrete Prejudice to Sharif or Moore.**

Intrepid requests that all IP Assets should be returned to it so it may commercialize its product for the benefit of all its shareholders. The transfer of assets would be subject to court-ordered preservation and follow the Purposed Order providing an ESI protocol and safeguards included as **Exhibit 5**.

Alternatively, the IP Assets should be delivered to the IP Custodian with an express directive to provide Intrepid with full operational access for business purposes. Either order protects Sharif concerns fully.

**III.    CONCLUSION**

For the foregoing reasons and those stated in the Motion, Intrepid respectfully requests that the Court grant its Motion in full.

DATED: August 4, 2026.

Respectfully Submitted,
**SPENCER FANE LLP**

*/s/ Vincent J. Aiello*
Theresa C. Becerra, Esq.
201 Santa Monica Blvd., Suite 550
Santa Monica, California 90401
Telephone: (424) 217-1830
Fax: (424) 217-1854
Email: tbecerra@spencerfane.com

Vincent J. Aiello, Esq. *Pro Hac Vice*
Tyler Thomas, Esq. *Pro Hac Vice*
Jason Smith, Esq. *Pro Hac Vice*
SPENCER FANE LLP
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3419
Fax: (702) 408-3401
Email:   vaiello@spencerfane.com
         tbthomas@spencerfane.com
         jdsmith@spencerfane.com
*Attorneys for Intrepid Studios, Inc.*

-10-