# Exhibit 5

# Exhibit 5

Theresa C. Becerra, Esq. (State Bar No. 205338)
**SPENCER FANE LLP**
201 Santa Monica Blvd., Suite 550
Santa Monica, California 90401
Telephone: (424) 217-1830
Fax: (424) 217-1854
Email: tbecerra@spencerfane.com

Vincent J. Aiello, Esq. *Pro Hac Vice*
Tyler B. Thomas, Esq. *Pro Hac Vice*
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3419
Fax: (702) 408-3401
Email:    vaiello@spencerfane.com
              tbthomas@spencerfane.com
*Attorneys for Intrepid Studios, Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDINGS LLC, and JASON CARAMANIS, <br><br> Defendants, <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No.  3:26-cv-00965-LL-MMP <br><br> **ORDER REGARDING THE PROTOCOL FOR PRODUCING ELECTRONICALLY STORED INFORMATION** <br><br> **Action Filed:**   **02/14/2026** <br> **Judge:**    **Hon. Linda Lopez** |
| INTREPID STUDIOS, INC., a California Corporation, <br> Cross-Claimant, <br><br> v. <br><br> STEVEN SHARIF, an individual <br> Cross-Defendant. | |

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

INTREPID STUDIOS, INC., a California Corporation,

                Third-Party Plaintiff,

v.

JASON ZIMMERMAN an individual, JOHN MOORE an individual, MATTHEW RHOADES an individual, DOES INDIVIDUALS 1-10; and ROE ENTITIES I-X

                Third-Party Defendants.

This Order (also referred to as the "Protocol") governs the turnover, preservation, production, and interim use of the Documents, ESI, and Company assets identified below during the pendency of this Action. The assets subject to Intrepid's Motion for Turnover [ECF No. 136] are the property of Intrepid Studios, Inc. ("Intrepid" or the "Company") and are necessary for Intrepid to preserve, operate, develop, and commercialize its business. This Order is designed to remove those assets from the unilateral control of interested individual claimants, restore the Company's operational control of its own property, and permit Intrepid to conduct legitimate business operations pendente lite. The safeguards set forth herein govern possession, preservation, and interim use of the Assets, and operate in parallel with the ESI-production specifications that follow.

**IT IS HEREBY ORDERED** that:

1.    This ESI Order shall govern the production of Documents and electronically stored information ("ESI") by the Parties in the above-captioned litigation (the "Action").

2.    This ESI Order shall also govern productions made by any third party who is subpoenaed in this Action unless otherwise agreed to by the issuing Party and the third party. Accordingly, this ESI Order shall be attached to any subpoena issued in this Action.

3.    The production specifications in this ESI Order apply to paper records and ESI that are produced in the first instance in this Action. The terms and

-2-

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

ORDER RE: ESI PROTOCOL        Case No.  3:26-cv-00965-LL-MMP

specifications of this ESI Order shall only apply to productions made after the date of entry of this ESI Order. Furthermore, productions received from third parties shall be produced to the other Parties in the format in which such Documents or information were produced by the third parties, unless the Parties agree otherwise. The Parties shall meet and confer to the extent that the Receiving Party requests that the Documents be produced in a format as described in this ESI Order.

4.    To the extent additional obligations or rights not addressed in this ESI Order arise under the Federal Rules of Civil Procedure ("FRCP"), the Civil Local Rules of the United States District Court for the Southern District of California, or applicable statutes, those rules and/or statutes shall control.

5.    Assets and Systems Within the Scope of This ESI Order. Without limiting the categories of Documents and ESI otherwise subject to discovery, the Parties acknowledge that this Action places directly at issue the Company assets, systems, and access credentials that are defined as Intrepid's IP Assets defined in Intrepid's Motion for Turnover, [ECF No. 136]. Accordingly, the preservation and production obligations under this ESI Order extend to Documents and ESI concerning the following assets, wherever located and in whatever Party's or non-party's possession, custody, or control:

a. Intrepid's source code and source-code repositories (including, without limitation, the Perforce version-control system for the Ashes of Creation source code), technical documentation, technical configuration, and build and deployment materials;

b. administrative, vendor, and platform-account credentials, authentication methods, two-factor and recovery credentials, security keys, and access controls for Company systems, including, without limitation, cloud-infrastructure and hosting, database, collaboration, communication, payment, distribution, and community-platform accounts (including, without limitation, Amazon Web Services, Atlassian/Confluence, Bitwarden, Cloudflare, Discord,

-3-

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

ORDER RE: ESI PROTOCOL          Case No.   3:26-cv-00965-LL-MMP

Docker, Docusign, Duo, GitKraken, GoDaddy, Google Workspace (G-Suite), Jira, MongoDB, Okta, Perforce, Playfab, Reddit, Sentry, Veeam, VMware/vSphere, Xsolla, YouTube, and X/Twitter accounts);

c. server and computer hardware, server chassis and components, processors, motherboards, memory modules, power supplies, networking cards, hard drives, solid-state drives, USB and external drives, storage media, computers, laptops, workstations, mobile devices, and authentication devices used to develop, preserve, operate, distribute, or commercialize Ashes of Creation; and

d. the accounts as to which Plaintiff Steven Sharif and Third-Party Defendant John Moore assert ownership rights (the "Founder-owned Assets"), namely the GoDaddy account for the domain www.ashesofcreation.com, and the Ashes of Creation Reddit, Discord, YouTube, and X accounts.

**A. DEFINITIONS:**

1.     "Attachment(s)" shall be interpreted broadly and includes, e.g., traditional email attachments and documents embedded in other documents (i.e., Excel files embedded in PowerPoint files). The Parties shall meet and confer on any modern attachments, internal or non-public documents linked, hyperlinked, stubbed, or otherwise pointed to within or as part of other ESI (including but not limited to email, messages, comments or posts, or other documents) should such documents appear to be relevant. This definition does not obligate a Party to produce the contemporaneous version of a document referenced by URL or hyperlinks if no existing technology makes it feasible to do so or if doing so would require recollection of ESI already collected prior to this Order.

2.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in FRCP Rule 34(a).

3.     "Electronically stored information," or "ESI," shall be defined as computer-generated information or data of any kind, stored in or on any storage

-4-

ORDER RE: ESI PROTOCOL          Case No.   3:26-cv-00965-LL-MMP

media located on computers, file servers, disks, tape, or other real or virtualized devices or media. Non-limiting examples of ESI shall include:

    a.  Digital communications (e.g., e-mail, instant messaging);

    b.  Word-processed documents (e.g., Word or WordPerfect files and drafts);

    c.  Spreadsheets and tables (e.g., Excel worksheets);

    d.  Image and facsimile files (e.g., .PDF, .TIFF, .JPG, .GIF images);

    e.  Sound recordings (e.g., .WAV, .MP3 files);

    f.  Databases;

    g.  Contact and Relationship Management Data (e.g., Outlook);

    h.  Calendar and Diary Application Data (e.g., Outlook PST); and

    i.  Presentations (e.g., PowerPoint).

4. "Family" means email and all related Attachments.

5. "Paper Records" or "Hard Copy Documents" means Documents existing in paper form at the time of collection.

6. "Native Format" means and refers to an electronic Document's associated file structure generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

7. "Metadata" refers to application and system information of a Document that contains data about the Document, including, without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file and that describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

8. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a Document containing, visible text within an image.

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

-5-

9.     "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

10.     "Confidentiality Designation" means the legend affixed to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" discovery material as defined by, and subject to, the terms of the Stipulated Order Governing Confidential Materials entered in this Action ("Protective Order").

11.     "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

12.     "Producing Party" means a Party or Non-party that produces discovery material in the Action.

13.     "Receiving Party" means a Party or Non-party that receives discovery material from a Producing Party.

14.     "Duplicate ESI" means exact duplicate Documents (based on MD5 or SHA-1 hash values).

**B. OCR TEXT FILES:**

Document-level OCR shall be provided as a separate text file. The file name of each text file shall correspond to the file name of the first image file of the Document with which it is associated. The text files shall not contain the redacted portions of the Documents.

**C. ESI:**

Electronically Stored Information shall be produced in the following format:

1.     Unique IDs — Bates Numbers. Each page of a Document shall be assigned a unique ID, which shall be the production Bates number. Bates numbers shall be zero-padded and contain no spaces.

2.     Images. All document images shall be delivered as single-page image files at 300 DPI resolution. Each image shall be assigned the associated Bates

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

-6-

ORDER RE: ESI PROTOCOL          Case No.   3:26-cv-00965-LL-MMP

number with no spaces.

3.    Parent-Child Relationship. The parent-child relationship (the association between an attachment and its parent record) shall be preserved.

4.    Spreadsheets. Spreadsheets originally created using common, off-the-shelf software (e.g., Microsoft Excel) shall be produced in native format. The native file shall be assigned a Bates number. In addition, a placeholder image with the associated Bates number shall be provided.

a.    All redacted spreadsheets shall not be produced in native format.

5.    Native Files. Audio, video, voicemail, and other file formats that cannot easily be converted to an image shall be provided in native format. The native file shall be assigned a Bates number. In addition, a placeholder image with the associated Bates number shall be provided.

6.    Text Files. Extracted text shall be provided for all electronic documents in document-level .txt file format. Each text file shall match the respective Document's beginning Bates number.

a.    OCR text shall be provided if extracted text is not available.

b.    To the extent specific documents or document family groups require redaction, Optical Character Recognition ("OCR") text may be provided as the "Text" for such documents.

7.    Load Files. Records and metadata shall be provided in a format compatible with the Concordance DAT file format for metadata information, and the Opticon OPT or LOG file format for images, together with a link to native files and document-level text files (Concordance default delimiter .DAT and .OPT).

8.    Metadata. ESI shall be preserved in its original format; accordingly, information about each Document shall be provided for review. The Parties shall refer to the list below for required metadata fields.

a.    Hard-copy documents may, at the option of the Producing Party, either (i) be produced as TIFF images, along with the information set forth in the metadata

-7-

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

table; or (ii) be made available for inspection and copying at a mutually agreeable time. However, some metadata fields will not be available for hard-copy documents, such as Date Last Modified, etc.

b. No Party has an obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the electronic document, except for: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) Confidentiality; and (6) Custodian.

c. Notwithstanding the foregoing, if any ESI is produced in a form that is not reasonably useable, either Party may request specific and individual records to be delivered in a different form, including, but not limited to, native form. The Parties shall meet and confer with respect to such requests.

9. Metadata Fields. The Parties shall provide the system-generated metadata fields ("Production Fields") substantially similar to those set forth in Exhibit A. No Party shall be required to manually populate any metadata fields that do not exist as part of the Document as maintained in the ordinary course of business.

**D. DOCUMENTS PROTECTED FROM DISCOVERY AND PRIVILEGE LOGS.**

1. The Parties reserve the right to withhold Documents and/or redact any information covered by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, rule, or statute prior to producing Documents in this Action. To the extent a Party redacts such information, the redaction shall be labeled with the specific type(s) of privilege, rule, or statute being asserted.

2. Any Documents or information redacted or withheld from production on the basis of the attorney-client privilege or the attorney work-product doctrine shall be included on a privilege or redaction log. The Parties shall meet and confer regarding the timing for production of privilege logs.

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

-8-

ORDER RE: ESI PROTOCOL                    Case No.   3:26-cv-00965-LL-MMP

**E. PASSWORD-PROTECTED AND ENCRYPTED FILES.**

The Parties shall use reasonable efforts to produce documents that are password-protected or encrypted, and shall meet and confer to the extent that a Producing Party asserts that it is unable to produce the content of such files, or to the extent that the Receiving Party asserts an incomplete production or otherwise determines that such content was not produced.

**F. DE-DUPLICATING DOCUMENTS AND DE-NISTING DOCUMENTS.**

1. Each Party shall de-duplicate ESI globally for exact duplicate Documents (based on MD5 or SHA-1 hash values at the parent Document level). This shall result in the Producing Party producing only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Duplicate Custodians" (or similarly named) field. The Parties shall de-duplicate stand-alone Documents against stand-alone Documents and shall de-duplicate top-level email Documents against top-level email Documents. De-duplication shall not break apart families.

2. Common system and program files, as defined by the NIST library, need not be processed, reviewed, or produced.

3. The Parties may also use email thread suppression to reduce duplicative production of email threads by producing the most recent email containing the thread of emails, together with all attachments within the thread. If an email thread splits into two separate threads, both threads shall be included in the production. If an email has an attachment and subsequent replies omit that attachment, the original email with the attachment shall also be included in the production.

**G. PROPRIETARY OR THIRD-PARTY SOFTWARE.**

To the extent that information produced pursuant to this ESI Order cannot be rendered or viewed without the use of proprietary or third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the

-9-

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

ORDER RE: ESI PROTOCOL          Case No.  3:26-cv-00965-LL-MMP

production of such information in an acceptable format.

**H. PRODUCTION MEDIA.**

The Parties shall produce Documents electronically via a secure File Transfer Protocol ("FTP") rather than through physical media (e.g., CD, DVD, or hard drive), unless such electronic transmission is impracticable, or the Parties otherwise agree on a different method of transmission. The produced Documents shall be password-protected and/or encrypted.

**I.   GENERAL PROVISIONS.**

Any practice or procedure set forth herein may be varied by agreement of the Parties or by Court order. Should any Party subsequently determine in good faith that it cannot proceed as required by this ESI Order or that the ESI Order requires modification, the Parties shall meet and confer to resolve any dispute at least fourteen (14) days before seeking Court intervention. All discovery obligations under this ESI Order are subject to the proportionality requirements of FRCP 26(b)(1), which limits the scope of discovery to that which is proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Nothing in this ESI Order shall be construed to require any Party to produce ESI that is not reasonably accessible, is duplicative of other produced materials, or is disproportionate to the needs of the case under FRCP 26(b)(1). The obligations and rights set forth in this ESI Order apply equally to all Parties.

**J.   FORENSIC EXAMINATION OF ELECTRONIC DEVICES.**

1.      No Independent Forensic Examination as of Right. No Party shall have an automatic right to conduct an independent forensic examination of any other Party's electronic devices, computers, hard drives, servers, mobile devices, or other storage media (collectively, "Electronic Devices"). Forensic examination of

-10-

Electronic Devices is not a routine discovery mechanism under this ESI Order and shall not be used as a substitute for ordinary ESI discovery or as a means to conduct a general audit of another Party's electronic systems.

2.      Good-Faith Basis Required. A Party seeking to compel forensic examination of another Party's Electronic Devices must first establish a good-faith factual basis for the examination. Such good-faith basis shall include, at a minimum, specific and articulable facts demonstrating that: (a) the responding Party's ESI productions are materially incomplete or inaccurate; (b) relevant ESI has been deleted, spoliated, or withheld and cannot be recovered through ordinary production; or (c) the Producing Party's stated inability to produce specific responsive ESI is contradicted by other evidence in the record. A general suspicion that additional documents may exist, without more, does not constitute a sufficient good-faith basis. This requirement applies equally to all Parties.

3.      Meet-and-Confer Prerequisite. Before seeking Court intervention to compel forensic examination, the requesting Party shall: (a) provide written notice to all other Parties identifying with specificity the Electronic Devices sought to be examined, the factual basis for the request, the proposed scope of examination, and the identity and qualifications of the proposed forensic examiner; (b) engage in a good-faith meet-and-confer with the responding Party or Parties within fourteen (14) days of such written notice; and (c) attempt to negotiate the scope, methodology, and cost allocation of the examination prior to seeking Court relief. The Parties shall cooperate in good faith to resolve disputes concerning forensic examination without Court intervention.

4.      Cost and Fee Allocation. When forensic examination is ordered or agreed to, the Parties shall negotiate and document a cost and fee allocation protocol prior to commencement of the examination. The default allocation shall be as follows: (a) if the Parties reach mutual agreement on the examination, the costs and fees shall be shared equally unless the Parties agree to a different allocation; or (b)

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

if forensic examination is sought unilaterally by one Party over the objection of the responding Party, and the Court grants such relief, the requesting Party shall bear all costs and fees of the examination, including the fees of the neutral forensic examiner, unless the Court orders otherwise upon a finding of bad faith, material spoliation, or other compelling circumstances. The requesting Party shall advance all examination costs regardless of the ultimate allocation determination.

5.      Neutral Examiner and Protective Protocol. Any court-ordered or agreed forensic examination shall be conducted by a neutral, qualified forensic examiner agreed upon by the Parties or appointed by the Court. The examining Party shall not conduct the examination directly. The neutral examiner shall: (a) operate pursuant to a written examination protocol agreed to by the Parties or ordered by the Court; (b) provide the responding Party an opportunity to review the proposed examination protocol before the examination commences; (c) segregate and withhold from production any materials that are privileged, confidential, or outside the agreed scope of examination; and (d) provide the examining Party only those documents or data that are within the scope ordered or agreed. The examination protocol shall be designed to minimize disruption to the responding Party's business operations and to protect privileged and confidential information. See Fed. R. Civ. P. 34(a).

6.      Preservation of Privilege and Confidentiality. The forensic examination process shall not operate as a waiver of any privilege or Confidentiality Designation. Any inadvertently disclosed privileged materials identified during forensic examination shall be subject to the claw-back procedures set forth in the Protective Order entered in this Action and shall be promptly returned, sequestered, or destroyed upon notice. The neutral forensic examiner shall execute a confidentiality agreement satisfactory to all Parties prior to commencing any examination.

## K. LITIGATION HOLD.

1.      A comprehensive litigation hold is imposed on all Assets subject to this Order. All automatic deletion, purging, rotation, expiration, auto-archiving, and

-12-

Spencer Fane LLP
Attorney at Law
Santa Monica

ORDER RE: ESI PROTOCOL          Case No.   3:26-cv-00965-LL-MMP

overwrite functions affecting any Asset shall be suspended immediately and shall remain suspended until further order of the Court.

2.     Each Party in possession or control of an Asset shall take affirmative steps to disable any feature that would delete, degrade, or overwrite data, and shall preserve all Intrepid-related communications and data pending further order of the Court.

3.     The preservation duty under this Order confirms the duty each Producing Party already owes to preserve evidence in anticipation of and during this litigation. Any Producing Party that fails to take reasonable steps to preserve an Asset, or that has altered, degraded, removed, or failed to return any Asset or component, is subject to sanctions, including cost- and fee-shifting, an adverse-inference instruction, and any other relief available under Federal Rule of Civil Procedure 37 and the Court's inherent authority, in the Court's discretion and upon the requisite findings.

## L. FORENSIC PRESERVATION COPY.

1.     Before any Party makes any use of an Asset, a write-protected forensic preservation copy of that Asset shall be created and retained, so that the pre-turnover state of every account, repository, mailbox, and storage medium is fixed, complete, and independently auditable.

2.     The preservation copy shall be made by a qualified forensic vendor, stored on write-protected media, and preserved without alteration for the duration of this Action or until further order of the Court.

3.     Within five (5) business days after turnover, each Producing Party shall file a declaration under penalty of perjury certifying that it has preserved, and delivered for preservation imaging, every Asset in its possession, custody, or control in its complete and unaltered state, and that it has not deleted, wiped, reset, re-imaged, or removed any component, data, or credential since the earlier of its notice of this litigation or its termination.

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

-13-

## M. ORDINARY-COURSE OPERATION OF THE ACCOUNTS.

Ordinary-course operation of the account Assets to conduct the Company's business, including customer communications, official announcements, development updates, brand management, customer support, and routine community engagement, is expressly permitted. Nothing in this Order shall be construed to restrict or impair Intrepid's ability to operate the account Assets (including the X, YouTube, Reddit, and Discord accounts) in the ordinary course of its business.

## N. DISPUTED MAILBOX.

1.     Default Complete Access to Intrepid. The mailbox ssharif@intrepidstudios.com (the "Disputed Mailbox") is an email account issued to Steven Sharif in his corporate capacity, hosted on Intrepid's Google Workspace, and constitutes Company property. Any attorney-client privilege attaching to communications created or received in that corporate capacity belongs to the Company, not to Mr. Sharif individually. Accordingly, the Disputed Mailbox shall be turned over to Intrepid on the same terms as the other Assets, without segregation or privilege screening, and Intrepid shall have complete access to the Disputed Mailbox and its contents. This default governs unless the Court affirmatively orders the alternative procedure set forth below.

2.     Alternative (Only If Ordered) — Segregation and Privilege Screening. Only if the Court affirmatively determines that Intrepid shall not have access to communications in the Disputed Mailbox that are subject to a valid claim of personal attorney-client privilege held by Mr. Sharif in his individual (non-corporate) capacity, the following procedures shall apply: (a) the Disputed Mailbox shall be segregated and placed under the control of a jointly retained, neutral e-discovery vendor; (b) the Disputed Mailbox shall not be released to Intrepid, in whole or in part, until the vendor has completed a privilege screening of its contents; (c) counsel for Steven Sharif shall, no later than ten (10) business days after the vendor completes its screening, prepare, serve, and file a privilege log identifying,

-14-

on a document-by-document basis, each communication withheld from Intrepid on the basis of attorney-client privilege, in the form required by Federal Rule of Civil Procedure 26(b)(5) and the Local Rules of this Court; and (d) communications withheld on a claim of attorney-client privilege shall be logged and withheld from Intrepid pending resolution of the claim, and any communication not timely and specifically logged shall be released to Intrepid without further order.

**O. COMPLETE CREDENTIAL DELIVERY.**

1.    Delivery of any credential shall not constitute compliance with this Order unless it includes every mechanism required to use and recover the account. Each Producing Party shall deliver, together with each username and password: (a) all multifactor and two-factor authentication (MFA/2FA) seeds; (b) all recovery codes; (c) all recovery email addresses and recovery telephone numbers; and (d) all other account-recovery mechanisms.

2.    Where any authentication or recovery method for an Asset is tied to a personal device, telephone number, email address, or authenticator application outside Intrepid's control, the Producing Party shall, within the turnover period, transfer or reset that method to a device, number, or address designated by Intrepid (or, in the alternative, the IP Custodian), and shall cooperate as necessary to place sole administrative control of the account with Intrepid (or the IP Custodian).

3.    Credentials delivered without their associated second factors and recovery mechanisms shall not constitute compliance with this Order or with any turnover order of the Court. Within five (5) business days after turnover, each Producing Party shall certify under penalty of perjury that it has delivered complete and working credentials and recovery mechanisms for every Asset in its possession, custody, or control and retains no residual access.

**P. PERIODIC SWORN INVENTORY REPORTING.**

1.    Each Party (other than Intrepid) in possession or control of an Asset shall provide periodic sworn inventory reports identifying the Assets in its

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

possession, custody, or control, their condition and location, and any change in status since the prior report. The first such report shall be served and filed no later than ten (10) business days after entry of this Order (or after service on a later-served person).

2.      Reports shall be served on all Parties and filed with the Court on a schedule the Court sets, and shall specifically account for the ScaleMatrix Hardware, including each item by description and serial number where available, and its completeness, condition, integrity, and location. Any item or component that is missing, incomplete, or altered shall be identified as such, with an explanation of its disposition.

3.      Intrepid Exempt; Right to Challenge Non-Business Use. Upon turnover, Intrepid shall be exempt from the periodic sworn inventory reporting obligations set forth in this Section with respect to Assets used in the ordinary course of the Company's business. Nothing in this exemption shall preclude Steven Sharif or any other Party from challenging, by motion to the Court, any use of an Asset by Intrepid that is alleged to fall outside legitimate business purposes. On any such challenge, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with the challenge. Intrepid shall likewise be entitled to recover its reasonable attorneys' fees and costs incurred in enforcing turnover, credential-delivery, preservation, or reporting obligations against any Producing Party that fails to comply with this Order.

## Q. SCALEMATRIX HARDWARE AND THIRD-PARTY COMPLIANCE.

1.      The Intrepid server hardware, computer equipment, storage media, and related components removed from the ScaleMatrix data-center facility (the "ScaleMatrix Hardware") held by Jason Zimmerman and Matthew Rhoades shall be turned over to Intrepid (or, in the alternative, the IP Custodian) pursuant to the writ of possession or turnover order, and shall be returned and made available for

-16-

inspection through the neutral forensic protocol described in Sections J and L, complete and unaltered, no later than five (5) business days after service of this Order. Return of the ScaleMatrix Hardware shall not be conditioned on payment of storage, handling, or similar fees; any such fees arising from the unauthorized removal or retention of the Hardware shall be borne by the person who removed or retained it, subject to the Court's later allocation.

2.     This Order may be served on Zimmerman, Rhoades, and any other person in possession or control of an Asset, and compliance may be enforced, if necessary, through an appropriate motion to compel, a writ of possession and turnover order, and contempt or other sanctions for noncompliance.

**R. RETAINED JURISDICTION AND ENFORCEMENT.**

1.     The Court retains jurisdiction to enforce, modify, and supervise this Order.

2.     Any alleged violation of this Order may be brought before the Court on shortened time, and the Court may impose contempt sanctions and other appropriate relief for noncompliance. The turnover, credential-delivery, and preservation obligations of this Order are self-executing and require no further order to take effect. If any Party misuses an Asset, the Court may remedy the misuse; the Assets shall not remain frozen where freezing destroys enterprise value for the shareholders, and the Court's preferred remedy shall be to place and keep the Assets in Intrepid's operational control under the safeguards set forth herein rather than to suspend the Company's operations.

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

-17-

ORDER RE: ESI PROTOCOL          Case No.   3:26-cv-00965-LL-MMP

**<u>EXHIBIT A</u>**
**Metadata Fields**

a.    BEGBATES

b.    ENDBATES

c.    BEGATTACH

d.    ENDATTACH

e.    ATTACHRANGE

f.    Author

g.    Recipient

h.    CC

i.    BCC

j.    Created Date/Time

k.    Date Last Modified/Time

l.    Sent Date/Time

m.    Received Date/Time

n.    Subject

o.    Record Type

p.    Original Source (e.g., \Personal Folders\Inbox\Case)

q.    Extracted Text

r.    Document-Level Hash Value (MD5, SHA-1, or equivalent identification)

s.    File Name

t.    File Type or Extension

u.    Text Link (path to document-level text file)

v.    NativeFile (relative path where applicable)

w.    Custodian(s)

SPENCER FANE LLP
ATTORNEY AT LAW
SANTA MONICA

-18-

ORDER RE: ESI PROTOCOL            Case No.   3:26-cv-00965-LL-MMP