John A. Schena (SBN 269597)
Riley J. Minkoff (SBN 356538)
**SCHWARTZ SEMERDJIAN CAULEY SCHENA & BUSH LLP**
101 West Broadway, Suite 810
San Diego, CA 92101
Telephone: 619.236.8821
Facsimile: 619.236.8827
Email:       john@sscelaw.com

Will Small, Esq. (SBN 253443)
Kelly Ann Tran, Esq. (SBN 254476)
**SMALL LAW PC**
402 W Broadway, Ste 1720
San Diego, CA 92101
Telephone: (619) 430-4796
Email:       will@smalllawcorp.com
             kelly@smalllawcorp.com

Attorneys for Plaintiff and Cross-Defendant Steven Sharif and Third-Party Defendant John Moore

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDINGS LLC, and JASON CARAMANIS, <br><br> Defendants. <br><br> and <br><br> INTREPID STUDIOS, INC., <br><br> Nominal Defendant. | Case No. 3:26-cv-00965-LL-MMP <br><br> **PLAINTIFF STEVEN SHARIF'S INDIVIDUAL SUPPLEMENTAL STATUS REPORT REGARDING PURPORTED SECURED DEBT AND PROMISSORY NOTES** <br><br> Judge:        Hon. Linda Lopez <br> Magistrate: Hon. Michelle M. Pettit <br><br> Complaint Filed: February 14, 2026 |
| INTREPID STUDIOS, INC., a California Corporation, <br><br> Cross-Claimant, <br><br> v. <br><br> STEVEN SHARIF, an individual <br><br> Cross-Defendant. | |

1

Case No. 3:26-cv-00965-LL-MMP
PLAINTIFF STEVEN SHARIF'S INDIVIDUAL SUPPLEMENTAL STATUS REPORT REGARDING PURPORTED SECURED DEBT AND PROMISSORY NOTES

INTREPID STUDIOS, INC., a California Corporation,

Third-Party Plaintiff,

v.

JASON ZIMMERMAN an individual, JOHN MOORE an individual, MATTHEW RHOADES an individual, DOES INDIVIDUALS 1-10; and ROE ENTITIES I-X

Third-Party Defendants.

## I.    INTRODUCTION

In Defendant ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, and TFE GAMES HOLDINGS LLC (collectively, the "Defendants") Status Report filed on July 2, 2026 ("Status Report"), they allege that there are fifty-four secured promissory notes at issue that total $78,480,831.54. Defendants' attached these notes to their Status Report, and the notes and the Status Report were filed as ECF No. 153. Defendants' Status Report does not establish an undisputed secured balance. In fact, Defendants fail to recognize several important factors that explain how all notes as issue are, in actuality, unsecured. Defendants failed to acknowledge that Defendants Dawson, Ogden and Caramanis were party to a Master Settlement Agreement ("MSA") signed on June 12, 2024, which converted the notes issues prior to June 2024 to equity. The MSA was filed under seal as ECF. No. 165. The Conversion Agreements in MSA cancelled the preexisting instruments identified in their schedules. Though later amendments purported to reverse those conversions and reinstate the "original Notes Payable," the operative reinstatement language does not expressly regrant or revive a security interest. That ambiguity together with the MSA's lien-termination provisions, all-party amendment requirement, and the original notes' express unsecured terms precludes treating a lien revival as undisputed.

Additionally, in their Status Report, Defendants admit that the contemporaneous promissory notes were unsecured and that Intrepid Studios, Inc. ("Intrepid") did not execute the historically dated "secured" versions or the Pledge and Security Agreement from March 23, 2022 until December 15, 2025. ECF No. 153 at 3-6. In other words, the documents Defendants now invoke as an $84.35 million all-assets lien were retrospectively re-papered in a single December 2025 signing event, shortly before Defendant Dawson assigned selected notes to TFE Games Holdings LLC ("TFE"), and before TFE conducted a January 2026 foreclosure that the Status Report admits was set aside on March 25, 2026. *Id*. at 3.

This is not a minor drafting discrepancy. Defendants' entire foreclosure argument depends on treating those newly assembled instruments as if they had governed years of funding. Yet Defendants provide no sworn testimony establishing their newly alleged oral agreement, no native files or transmission history, no surrender, cancellation, or note-by-note novation record, no board resolution or written consent, no disinterested approval of Defendant Dawson's insider transaction, and no reliable account of when Defendant Dawson signed the March 2022 agreement.

Plaintiff therefore disputes any alleged secured status of the notes. The Court previously observed that the validity of the notes produced at that time had not been challenged. ECF No. 134 at 2 n.1. It is challenged now. The facial terms, admitted execution history, contemporaneous email chain, and sworn testimony create substantial fact disputes that cannot be resolved by accepting Defendants' narrative in their Status Report. No portion of Defendants' asserted $84.35 million secured balance should be accepted as established or used to support a credit bid before focused discovery and an evidentiary determination. However, the Court need not determine ultimate enforceability now. For purposes of the pending receivership

motions, the claimed secured amount and corresponding credit-bid authority remain indeterminate and require neutral, note-by-note verification.

## II. THE COURT ORDERED A JOINT COMPARISON, BUT DEFENDANTS FILED A NEW THEORY UNILATERALLY

ECF No. 134 directed the parties to compare the notes they actually possessed and identify which were secured on their face. ECF No. 134 at 3. The Court emphasized that Defendants could conduct an Article 9 sale only if the defaulted loans were secured and that the amount of secured debt fixed the limits of any credit bid. Id. at 2-3.

Plaintiff moved to substitute counsel on June 30, 2026. On July 1, one day before the report deadline, Defendants sent Plaintiff's new counsel a draft individual report and a Google Drive of documents. ECF No. 153 at 1 n.1. The next day Defendants filed ECF No. 153 with fifty-eight exhibits totaling 719 pages. The Court separately continued the receiver hearing because Plaintiff's new counsel needed time to review the extensive record and substantial briefing. ECF No. 152 at 2. ECF No. 153 therefore was never a joint report, and Plaintiff did not agree to its facts or conclusions.

### A. Defendants Admit the Original Notes Were Unsecured

Defendants' Status Report admits that from March 23, 2022 through May 1, 2024, the promissory notes were "denominated as unsecured," and it labels fifty operative originals "unsecured promissory notes." ECF No. 153 at 3-4. The Court had already found three representative instruments facially unsecured. ECF No. 134 at 2-3. The additional contemporaneous notes in Plaintiff's possession, including signed notes dated October 16, November 1, December 2, and December 17, 2024, likewise state in section 7 that the indebtedness "is unsecured and subordinated" to senior indebtedness. Moreover, the MSA, executed on June 12, 2024, subsequently converted the unsecured notes owned by the signatories (including Defendants

Dawson and Ogden) issued prior to June 2024 into equity. The notes, therefore, in no event can be interpreted as secured.

**B.     Defendants' Status Report Admits Retrospective Execution on December 15, 2025**

The critical admission in Defendants' Status Report is explicit: "The Secured Notes and the 2022 Security Agreement were all executed by Intrepid on December 15, 2025, pursuant to an oral agreement between Mr. Dawson and Intrepid." ECF No. 153 at 3. The Status Report further admits that four notes bearing dates in April, June, July, and December 2025 were signed for the first time on December 15. Id. at 5-6.

The replacement instruments retain historical dates and state they were executed "as of the date first written above." They replace section 7's express unsecured language with text referencing a March 23, 2022 agreement and a filed UCC-1. That the instrument was facially effective November 23, 2020 is particularly revealing: its new section 7 refers to a 2022 agreement and a UCC filing that did not occur until May 2024. ECF No. 153-1 at 5-8. The document is therefore not a contemporaneous 2020 instrument, and Defendants now admit it was not executed in the form presented until December 2025.

That admission materially changes Defendants' earlier account. Defendant Dawson previously declared under penalty of perjury that "[e]ach of the Notes was secured by the Security Agreement." ECF No. 58-4 paragraph 7. Defendants later represented that all fifty-four notes expressly referenced the March 23, 2022 agreement. ECF No. 119 at 4-6. Neither presentation disclosed that Intrepid had executed the historically dated secured versions only on December 15, 2025, while the contemporaneous instruments stated that the debt was unsecured. The changed account bears directly on credibility and makes sworn, document-supported

discovery essential. Moreover, none of the Defendants mentioned or explained how the MSA affected that portion of the notes, whether secured or unsecured.

## III. THE ALLEGED ORAL SUPERSESSION AGREEMENT DID NOT OCCUR

### A. Plaintiff Did Not Knowingly Assent to the Transaction Defendants Describe

Though Defendants assert that an oral agreement was executed regarding the notes in December 2025, no one discussed or agreed to convert the historical unsecured debt into secured debt, supersede the original notes, retroactively execute a March 2022 agreement, or grant Defendant Dawson an all-assets lien. The December 15, 2025 board meeting addressed Early Access performance, 2026 planning, expenses and workforce issues, and foreclosure planning. It did not include notice, an agenda item, a motion, a vote, a written consent, or a disclosed conflict process for an $84 million insider lien.

Plaintiff previously testified to the physical intimidation and concealed signature-page stack by Defendant Dawson. ECF No. 78-2 paragraph 18. Moreover, Defendants never provided any proof of the alleged oral agreement, the complete documents supposedly shown to Plaintiff, an execution log, or a board record approving this particular transaction.

### B. The Documents Themselves Reject Defendants' Alleged Oral-Agreement Premise

Both purported security agreements state in all capitals that the written loan documents are the parties; final agreement, may not be contradicted by prior, contemporaneous, or subsequent oral agreements, and that "THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES." ECF No. 121-2 at 8; ECF No. 153-57 at 8. Defendants' Status Report nevertheless asks the Court to accept an unwritten agreement as the source of Intrepid's supposed

December 15, 2025 assent. It offers no declaration from Defendant Dawson, Christine Ivie, any director, or any other witness attesting to that agreement.

## IV.   THE ASSERTED INSIDER LIEN LACKS A SHOWN CORPORATE AUTHORIZATION OR FAIRNESS PROCESS

On December 15, 2025, Intrepid's board consisted of Defendants Dawson, Ogden, Fette, Bartels, and Plaintiff. ECF No. 112 paragraph 61. Defendant Dawson was both board chair and the financially interested beneficiary of the alleged all-assets lien. The lien transaction was never presented to or voted on by the board; there was no conflict disclosure, recusal, or vote; and no disinterested director or shareholder approved it.

California law places corporate power under the board's ultimate direction and defines the meeting, voting, and written-consent mechanisms for board action. Cal. Corp. Code sections 300(a), 307. Under section 310(a), if an interested-director transaction lacks informed disinterested-board or shareholder approval, the person asserting its validity bears the burden of proving it was just and reasonable to the corporation when authorized, approved, or ratified. Defendants' Status Report identifies no qualifying approval and makes no fairness showing. Their theory that approximately $2.976 million in later transfers justified encumbering all corporate assets for more than $84 million raises, rather than resolves, the statutory fairness question.

Plaintiff recognizes that a signature by an officer can support arguments concerning actual or apparent authority, and that a lack of minutes does not automatically void a transaction. However. Defendant Dawson was not an innocent third party relying on an officer's apparent authority; he was the chair, lender, counterparty, and alleged architect of the transaction. He knew whether the board had actually approved the transaction and what was or was not disclosed to Plaintiff.

///

## V.   THE MAY 2024 AGREEMENT AND UCC-1 DO NOT ESTABLISH AN $84.35 MILLION LIEN

Plaintiff does not recall knowingly executing the May 1, 2024 Pledge and Security Agreement and cannot authenticate when or how the signature image on the filed version was obtained. Even assuming authenticity for purposes of analysis, the document does not do what Defendants' Status Report claims. Exhibit A from the Status Report lists $45.163 million of obligations through May 1, 2024. ECF No. 153-57 at 9-10. Section 3(c) reaches other obligations only where a borrower-executed document states that the obligation "is secured hereby." *Id*. at 3. In fact, the later contemporaneous notes say the opposite: they are unsecured and do not state that they are secured by the May 2024 agreement.

The May 13, 2024 UCC-1 identifies Robert Dawson alone as secured party, while the Status Report claims that obligations were held by Defendant Dawson, Intrepid Creations, LLC, LKDAW, LLC, and TFE. ECF No. 153-58. A financing statement can function as notice, but it does not substitute the signed, authorized security agreement and other attachment elements required by California Commercial Code section 9203(b). The proper questions remain what obligation attached, to which secured party, under which signed agreement, with what corporate authority, and through what assignment.

The June 12, 2024 MSA creates an additional issue. It required the Equityholder parties to terminate pledge and security agreements and file UCC-3 termination statements, expressly excepting Defendant Caramanis, but not Defendant Dawson. ECF No. 165. The 2025 conversion amendments reinstated the "original Note" on its original terms; they did not state that a terminated lien or security agreement was revived, nor could it be under the terms of the MSA. Although Schedule A to the July 2025 amendment lists the May 1, 2024 Pledge and Security Agreement, the operative reinstatement language does not expressly regrant

or revive a security interest. Moreover, the original notes were unsecured. Once again, that ambiguity together with the MSA's lien-termination provisions, all-party amendment requirement, and the original notes' express unsecured terms at a minimum precludes treating any lien revival as undisputed.

Additionally, the 2024 conversion schedule identifies a May 1, 2024 security agreement, though it does not establish or determine the authenticity of the filed version, the scope asserted in the Status Report, valid corporate approval, survival after the settlement, or application to later unsecured notes. Likewise, Plaintiff's earlier verified characterization of Defendant Dawson as secured was based on the public UCC filing and incomplete information then available. It was not an admission as to the actual execution date, authenticity, authorization, scope, assignment, or continued enforceability of the instruments disclosed later.

## VI.   ARTICLE 9 CONSEQUENCES AND REQUESTED PROCESS

California Commercial Code section 9203 requires value, debtor rights in the collateral, and an authenticated security agreement describing the collateral before a security interest attaches. Section 9610 permits disposition only by a secured party after default and requires every aspect to be commercially reasonable. Section 9610(c) sharply limits a secured party's purchase at a private disposition; Defendants have not shown that Intrepid's bespoke game and intellectual property assets trade on a recognized market or are subject to widely distributed standard price quotations. Section 9625(a) authorizes a court to restrain enforcement or disposition that is not proceeding in accordance with Division 9.

Defendants' Status Report does not state a consistent total. Its heading asserts $84,480,831.54, while its body and conclusion claim $84,350,831.54 after a $130,000 payment. ECF No. 153 at 2-3; 6. More importantly, neither figure is a proven secured balance. A credit bid based on the larger figure would allow the

disputed insider claim itself to suppress cash bidding and transfer all company assets before validity is adjudicated.

## VII.   CONCLUSION

The record does not establish fifty-four historically secured notes. It establishes historically unsecured debt and a disputed December 15, 2025 effort to convert that debt into an all-assets lien through retrospectively dated instruments, an alleged oral agreement contradicted by the writings, a concealed signature-page procedure, no disclosed corporate approval or fairness process, and an MSA that converted the notes owned by the Equityholder signatories prior to June 2024 into equity, without a definitive process to convert them back. Defendants should not be permitted to use those disputed instruments to bid away Intrepid's assets before authentication, authority, assent, ownership, and secured status are adjudicated.

Dated:  August 6, 2026          **SCHWARTZ SEMERDJIAN CAULEY SCHENA & BUSH LLP**

By: _/s/ John A. Schena_
John A. Schena
Attorneys for Plaintiff and Cross-Defendant Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.

Dated:  August 6, 2026          **SMALL LAW PC**

By: _/s/ William F. Small_
William F. Small
Attorneys for Plaintiff and Cross-Defendant Steven Sharif, as an individual and derivatively on behalf of Intrepid Studios, Inc.