William F. Small (Cal. SBN: 253443)
will@smalllawcorp.com
Kelly Ann Tran (Cal SBN: 254476)
kelly@smalllawcorp.com
**SMALL LAW PC**
402 W. Broadway, Ste. 1720
San Diego, CA 92101
Tel.: (619) 430-4793
Facsimile: (619) 664-4278

*Attorneys for Plaintiff,*
STEVEN SHARIF

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN SHARIF, as an individual and derivatively on behalf of INTREPID STUDIOS, INC.,<br>Plaintiff,<br>v.<br>ROBERT DAWSON, RYAN OGDEN, THERESA FETTE, AARON BARTELS, TFE GAMES HOLDINGS LLC, and JASON CARAMANIS,<br>Defendants,<br>and<br>INTREPID STUDIOS, INC.,<br>Nominal Defendant. | Case No. 3:26-cv-00965 LL-MMP<br><br>**STEVEN SHARIF'S OPPOSITION TO INTREPID STUDIOS, INC.'S MOTION FOR AN ORDER TO SHOW CAUSE WHY SHARIF AND MOORE SHOULD NOT BE HELD IN CIVIL CONTEMPT**<br><br>**Date:** **October 15, 2026**<br>**Time:** **2:00 p.m.**<br>**Court Room.:** **14B**<br><br>**Action Filed:** **02/14/2026**<br>**Jud. Officer:** **Hon. Linda Lopez** |
| AND ALL RELATED CROSS-CLAIMS | |

Plaintiff and Cross-Defendant STEVEN SHARIF ("Sharif") and Cross-Defendant JOHN MOORE ("Moore") respectfully submit this Opposition to Cross-Claimant and Third-Party Plaintiff INTREPID STUDIOS, INC.'s ("Intrepid") Motion for an Order to Show Cause Why Sharif and Moore Should Not Be Held in Civil Contempt [ECF No. 195] ("the Contempt Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY

The Contempt Motion should be denied because Sharif and Moore have complied with the Court's August 12, 2026, turnover order [ECF No. 176] (the "Turnover Order"). They have complied because they have turned over all the ordered intellectual property assets that they have access to in their possession, custody and control. As detailed in the accompanying declarations, Sharif and Moore have cooperated extensively—both before and after the Turnover Order—to effectuate turnover of assets to the Court-appointed intellectual property custodian, Michael Kunkel. This includes cooperating to transfer the Intrepid Google workspace, which includes the company's online cloud repository and emails (including Sharif and Moore's work emails), arguably Intrepid's most important asset.

But Sharif and Moore cannot turn over property that they do not possess, control, or have the present ability to obtain. Many of Intrepid's assets are scattered and in disarray because the individual board-member defendants in this case shut Intrepid down on a dime and terminated all its employees without notice and without any off-boarding process, despite warnings from Sharif about the consequences of such actions.

Sharif and Moore have continuously communicated to Intrepid that they have provided everything to which they have access, and everything in their custody, control, and possession. Nonetheless, Intrepid has taken the position that because it has purportedly not received access to all of the company's intellectual property and systems—regardless of whether Sharif and Moore have access to, custody, control or possession of it—then Sharif and Moore have somehow violated the Court's Turnover Order. This is simply not what the Court ordered, and it is unreasonable to suggest otherwise. Sharif and Moore met and conferred with Intrepid before and after the filing of the Contempt Motion to attempt to resolve these issues, but Intrepid has refused to back off its untenable interpretation of the order.

Consequently, Intrepid did not file this motion in good faith and instead seeks to weaponize the Turnover Order against Sharif and Moore. This is plainly demonstrated by Intrepid's public, un-redacted filing of Exhibit E, a loan document that contains private financial data of Moore (not to mention Intrepid), and Intrepid's shocking misrepresentation of that information in claiming Moore has a net worth of hundreds of millions of dollars and seeking a *daily* fine of $20,000 or $30,000.

Contempt requires clear and convincing proof of disobedience, not dissatisfaction with the result of a good-faith effort to comply. The evidence here establishes compliance to the extent of Sharif and Moore's ability, not a refusal to obey the Court. The Motion should therefore be denied.

## II. BACKGROUND

### A. The Turnover Motion and Sharif's Limited Opposition

Intrepid filed the Turnover Motion. Intrepid filed its Motion to Compel Turnover of Intrepid's Intellectual Property on June 24, 2026. (ECF No. 136.)

Sharif and Moore opposed the turnover motion as to the following assets:

a. the GoDaddy account for the domain of www.ashesofcreation.com

b. the Ashes of Creation Reddit account

c. the Ashes of Creation Discord account

d. the Ashes of Creation YouTube account

e. the Ashes of Creation X account

(collectively "the Disputed Assets") (ECF No. 167, at p. 6.). They also opposed turnover of Sharif and Moore's individual work email accounts (due to concerns of privilege and privacy)

Notably, however, Sharif and Moore did not oppose the turnover of any other assets to Kunkel, the IP Custodian. Moreover, Sharif offered Intrepid limited access to the Disputed Assets as needed to run its business and proposed that the parties meet and confer about that access. (*Id.*, at p. 7.)

**B. The Court's Turnover Order**

On August 12, 2026, the Court issued its ruling and order on the Turnover Motion. (ECF No. 176.) The Court ordered that "On or before August 17, 2026, Steven Sharif and John Moore shall turnover to the IP Custodian Intrepid's intellectual property assets requested by Intrepid in its Motion **except** for [the Disputed Assets]." (*Id.* at p. 2 (emphasis added).) The Court further ordered "The IP Custodian shall preserve the assets and provide Intrepid with full operational access for business purposes. Sharif shall provide Intrepid or the IP Custodian **limited access** to the disputed assets listed above **to the extent that it is necessary for Intrepid to conduct the business of Intrepid**." (*Id.* (emphasis added).)

**C. Sharif and Moore's Compliance with the Turnover Order**

It is important to recall that even before Intrepid filed the Turnover motion, Sharif and Moore had cooperated to facilitate transfer of Intrepid-related assets to the IP Custodian after Sharif filed a motion for a temporary restraining order ("TRO"), resulting in the initial appointment of Mr. Kunkel as the IP Custodian. (See Declaration of Steven Sharif, at ¶¶ 27-31.)

On August 13, 2026, Intrepid's counsel sent a letter to counsel for Sharif identifying four "IP assets": a GoDaddy account, a Google account, a MongoDB account and a Kickstarter account. (Small Decl., ¶ 2.) The letter demanded that both Super Admin access and secondary access for all four of these accounts be transferred to Doug Bartels, an agent of Intrepid – despite the fact that the Court's Turnover Order (a) excluded the GoDaddy account and (b) ordered that IP Assets be transferred to the IP Custodian (not Intrepid).

After receiving that letter, counsel for Sharif met and conferred with counsel for Intrepid and reminded counsel for Intrepid that Sharif had previously cooperated with the IP Custodian and the vast majority of the Intrepid-related intellectual property to which Sharif and Moore had access had already been turned over to Kunkel. Sharif and

Moore asked Intrepid to identify any assets that Intrepid believed were in Sharif and Moore's possession and not turned over previously. Counsel for Intrepid stated that his August 13, 2026 letter identified such assets. (Small Decl., at ¶ 3.)

On August 17, 2026, Sharif, Doug Bartels, the IP Custodian and counsel participated on a call. (Sharif Decl., at ¶ 39.)

During the call, Mr. Sharif provided the username that he recalled being associated with the Kickstarter account and instructions explaining how Mr. Kunkel can initiate the password-reset process. Mr. Sharif also offered to assist with any multi-factor authentication associated with accessing the account. (*Id.*, at ¶ 39.)

Mr. Sharif also discussed the steps necessary to restore administrative control over Intrepid's Google Workspace to Mr. Kunkel. Mr. Sharif explained how Mr. Kunkel can initiate a Google Workspace administrator-recovery support request in his capacity as the Court-appointed IP Custodian. Sharif also provided step-by-step instructions on how the IP Custodian could work with Google to obtain administrative access to and control over the Google account (both on the call and in an email from Sharif's counsel after the call) by "pointing" the intrepidstudios.com domain to the IP Custodian (which would allow him complete access to the domain) without transferring ownership of the intrepidstudios.com domain to the IP Custodian, as Sharif and his counsel raised concerns over ownership interest in the domain being transferred to the IP Custodian. Indeed, on the call, the IP Custodian also raised concerns about having the domain transferred to him. (*Id.,* at ¶¶ 39-42.)

Nonetheless, following additional discussions with counsel, Mr. Sharif agreed to transfer the intrepidstudios.com domain to the IP Custodian, who also agreed to accept that transfer, and Mr. Sharif and Mr. Moore did in fact transfer the intrepidstudios.com domain name to the IP Custodian the next day. (*Id.,* at ¶ 43.)

The parties also discussed MongoDB account on the August 17 call. Mr. Sharif advised that this account (like many of the other accounts referenced in the turnover motion) was a development tool historically administered by Intrepid's development

personnel. (*Id.,* at ¶ 43.) He informed the IP Custodian that he does not presently possess or control usable usernames, passwords, credentials, or access information for those accounts, nor does he possess or control any associated MFA device, authenticator application, token, recovery code, or other authentication method that he can turn over. (*Id.*)

Subsequent to the call, Sharif requested that if they believe that Mr. Sharif possesses a particular credential or authentication item for a specific account, to please identify the account and the particular item so that we can investigate and respond promptly.

After the August 17 call, counsel for Intrepid sent a spreadsheet to counsel for Sharif for the first time. The spreadsheet was titled “Intrepid Studios – List of Key Systems to Gather” and included 42 items, which included two references to “GoDaddy” and Discord, Reddit, X/Twitter and YouTube – all of which are excluded from the Court’s Turnover Order. Counsel for Intrepid had previously only identified the four accounts in his letter as IP Assets that still needed to be provided to the IP Custodian. Sharif and his counsel reviewed the spreadsheet and, on August 21, Sharif’s counsel provided an annotated spreadsheet that provided all the login information that he had access to (some of which, he had previously provided, such as the username for Kickstarter) – with the exception of the Disputed Assets that are excluded from the Court’s Turnover Order. If Sharif did not have access information or login credentials for a system, he marked it with “N/A.” The annotated spreadsheet can be found at page 21 of ECF No. 195-1 (“the Systems Spreadsheet”).

Sharif marked “N/A” for the systems identified in rows 4 through 7, 9 through 13, and 15 through 37 of the Systems Spreadsheet. Neither Sharif nor Moore have any log-in information, access information or credentials for any of the systems Sharif marked with an “N/A,” despite conducting a reasonable search of his records, data, devices and other sources in my possession, custody or control. (Sharif Decl., ¶¶ 5-6, 44-45; Moore Decl., ¶¶ 5-7.) They also do not know what former Intrepid employees—or anyone—

that does have the administrative log-in information, access information or credentials for those systems. (Sharif Decl., ¶ 7; Moore Decl., ¶ 8.)

Moreover, because the root credential for all of those systems is likely an Intrepid email address, neither Sharif nor Moore have access to the root credential necessary to recover a password for those systems. (Sharif Decl., ¶¶ 8-9; Moore Decl., ¶¶ 9-10.)

Nonetheless, with Mr. Sharif's cooperation, Intrepid obtained administrative control of the Google workspace, which includes the Intrepid Google Drive (a cloud-based drive) and Intrepid's email accounts.[1] (Sharif Decl., ¶¶ 41-43, 46-51.)[2]

Sharif and Moore have also offered to cooperate with any efforts to recover assets that are to be turned over, including offering to participate in any phone call, email, or other reasonable act to confirm with any of the third-party system providers access to, or transfer of administrative access rights to the IP Custodian. (Small Decl., ¶ 5.) To date, Intrepid has never made such a request. (*Id.*)

Sharif has also offered to participate in a phone call with counsel to discuss potential former employees of Intrepid that <u>might</u> have knowledge of login or access credentials, though Sharif's counsel made it clear that neither Sharif nor Moore knew with certainty which employees have access to the systems Sharif marked as "N/A". (Small Decl., ¶ 5-6.) Intrepid's counsel stated they were not required to participate in

---

[1] Although the Turnover Order was for assets to be turned over to the IP Custodian, Intrepid made it clear that its position was that the IP Custodian should then provide all login and access credentials to Intrepid. (Small Decl., ¶ 7.) Sharif initially objected to this based on representations by counsel for the TFE Defendants that Intrepid was no longer operating and therefore had no "business needs", but, based on representations by Intrepid's counsel that Intrepid intended to restart development of the *Ashes of Creation* game, Intrepid withdrew its objections that the IP Custodian transfer administrative access to Intrepid. (*Id.*)

[2] Intrepid has hinted that Sharif delayed in causing the transfer of the Google workspace to the IP Custodian. In fact, Intrepid itself caused the Google Workspace delay. Its agent, Mr. Bartels, separately asked Google for Super Administrator access (which itself was a violation of the Court's Turnover Order since it did not seek to transfer such access to the IP Custodian). Google then declined to act in response to Sharif's authorization to transfer to the IP Custodian, citing "multiple competing requests". (ECF No. 195-1, p. 17.)

such a phone call and instead demanded that Sharif provide a list of every former employee that might have such knowledge, including the last known contact information of every employee. But Intrepid, via Ryan Ogden and Doug Bartels, has access to Gusto, Intrepid's payroll system, which has information regarding former employees, including contact information. (Sharif Decl., ¶¶ 18-19, 26.)

In short, Sharif and Moore have provided Kunkel with everything in their possession, custody, or control that the Court's Turnover order required them to provide. This includes all credentials and access information in their possession, custody, or control that are subject to those turnover requirements.

## III. <u>ARGUMENT</u>

Intrepid's motion asks the Court to (1) issue an Order to Show Cause regarding the Court's August 12, 2026 Turnover Order [ECF No. 176]; (2) impose a coercive fine of $30,000 per day, per contemnor; (3) compel signatures on provider documents and sworn declarations; and (4) award compensatory damages, including attorneys' fees and costs.

### A. Legal Standard

"'Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). "The contempt need not be willful, . . . . [b]ut a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck*, 10 F.3d at 695 (internal citations and quotations omitted).

The moving party bears the burden of showing that the "alleged contemnor violated the court's order **by 'clear and convincing evidence,'** not merely a preponderance of the evidence." *Id.* (emphasis added). Thus, to succeed on a motion for civil contempt, the movant must show that the alleged contemnor: "(1) violated the court

order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck*, 10 F.3d at 695). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *In re Dual-Deck*, 10 F.3d at 695 (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982)).

"[C]ivil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801-02 (2019) (citation omitted).

**B. Sharif and Moore Have Complied**

The Turnover Order directs that Sharif and Moore "shall turnover to the IP Custodian Intrepid's intellectual property assets requested by Intrepid in its Motion." A party can turn over only what it has. Intrepid offers no evidence that Sharif or Moore possesses a single withheld credential. It offers mere disbelief instead, arguing that Sharif's "claimed ignorance is not confusion" and that it finds it "difficult to believe" that he lacks the passwords. Suspicion is not clear and convincing evidence.

To be clear, however, Intrepid's suspicion is baseless. For instance, Intrepid argues that because Sharif was merely able to *identify* various intellectual property in his motion for a TRO, he must know the login credentials for each and every one of those systems. That is nonsense. Intrepid credentials were maintained primarily on company workstations, in Bitwarden (password manager that stores logins, passwords, and other confidential information in an encrypted digital vault), or within Intrepid's private network, which authorized remote users reached through a credentialed VPN. (Sharif Decl., ¶ 16.) IT and system administrators developed and maintained that security infrastructure over years. (*Id.*) Administrative passwords were generally complex, and Sharif did not memorize a master set of passwords for the Company systems. (*Id.*)

Intrepid's disbelief that Sharif and Moore do not have login credentials to all the assets identified in the spreadsheet also ignores the reality of the situation. Most of those assets are related to game developer platforms used exclusively by individual contributors across the many teams at Intrepid. Sharif was the CEO of the company; neither Sharif nor Moore were individual contributors on those development teams at the time of Sharif's resignation. (Sharif Dec., ¶ 5.)

Instead, those employees were terminated when the TFE defendants suddenly shut Intrepid down. (Sharif Dec., ¶¶ 20-26.) Perhaps if the TFE Defendants had not terminated all the employees of Intrepid, including the game developers, without notice or off-boarding, Intrepid would have been able to access the information it now seeks.

The uncontroverted evidence shows compliance. Sharif declares under penalty of perjury that he has provided the IP Custodian everything in his possession, custody, or control that ECF No. 176 requires, including all credentials and access information. He searched his records, data, and devices and found no credentials for the systems at issue. He believes the root credential for those accounts is an Intrepid email, and without it, he knows of no recovery method available to him or Moore. He holds no Intrepid hardware and no copy of the source code. Those credentials were managed by the personnel who used them, stored in company systems including Bitwarden (which the IP Custodian received in March), and kept on machines that Intrepid holds at its San Diego offices.

**C. Intrepid Seeks to Enforce Obligations the Order Does Not Contain**

"If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006) (citing *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996). The Turnover Order requires turnover. It does not require Sharif and Moore to investigate former employees, contact each third-party vendor, or attest to payors and access histories. Yet Intrepid demanded that Sharif personally contact "each remaining third-party provider ... and work directly with that provider ... to restore and transfer access to the IP Custodian," and it now asks the Court to impose sworn, system-by-system disclosure duties as

contempt relief (ECF No. 195 at 16). Seeking those new obligations concedes that the existing Order does not impose them. A party cannot be held in contempt of terms that do not exist.

Moreover, the Court's Turnover Order required that Sharif and Moore turnover assets and credentials in five calendar days. It is unreasonable to suggest that Sharif and Moore were required to hunt down and discover credentials and login information from people they do not control and sources they cannot access – in just five calendar days. Rather, the only reasonable interpretation of the Court's Turnover Order is that they were required to Turnover what they had in their own possession, custody or control.

**D. Sharif and Moore Cannot Turn Over What They Do Not Have.**

Even if the burden shifted under the contempt analysis, a respondent "may assert a present inability to comply," and the court "will not be blind to evidence that compliance is now factually impossible." *United States v. Rylander*, 460 U.S. 752, 757 (1983).

Where the record establishes a present inability to comply, the civil contempt inquiry is at an end, because obedience is no longer within the contemnor's power. (*Coleman v. Newsom*, 131 F.4th 948 (9th Cir. 2025); *Falstaff Brewing Corp. v. Miller Brewing Co*., 702 F.2d 770 (9th Cir. 1983)) *Falstaff* is analogous to this case. There the Ninth Circuit vacated a coercive sanction where uncontroverted evidence showed the party neither knew the location of the missing documents nor had them in its possession or control, and where the actual custodian had been counsel, not the party.

As addressed in Sharif's declaration accompanying this opposition, Sharif and Moore do not have access to the systems that housed Intrepid's passwords; nor do they have access to the root credential needed to restore or reset login information. Thus, Sharif and Moore have a present inability to turnover any of the assets that Sharif marked as "N/A" in the Systems Spreadsheet and cannot be held in contempt as a result.

**E. Alternatively, Sharif and Moore Substantially Complied in Good Faith.**

"'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Sharif's declaration in support of this opposition details his efforts to comply, including the following:

- Sharif assisted transfer of Intrepid-related assets and credentials to the IP Custodian in March, 2026;
- He participated in the August 17 turnover call, providing additional information and directions on how Kunkel to access the Google workspace;
- He and Moore transferred the intrepidstudios.com domain to the IP Custodian the next day to further facilitate the transfer of the Google workspace;
- He gave Google written authorization to provision a Super Administrator controlled solely by the IP Custodian; and
- He has offered to participate in necessary, reasonable acts to confirm with third parties the transfer of credentials to the IP Custodian.

The evidence shows reasonable and sustained efforts, coupled with delivery of everything Sharif and Moore could locate, access, and control. This is, as discussed above, total compliance with the Turnover Order – but at a minimum it is substantial compliance.

**F. There Has Been No Violation of the Order Regarding the Disputed Assets.**

Intrepid's motion treats the five Disputed Assets as part of the August 17 turnover. The Order says otherwise. Paragraph 6 of the Turnover Order contains two separate directives. The first directs that "[o]n or before August 17, 2026, Steven Sharif and John Moore shall turnover to the IP Custodian Intrepid's intellectual property assets requested by Intrepid in its Motion **except** for the following, which remain in dispute". It then lists the GoDaddy account for www.ashesofcreation.com and the Ashes of Creation Reddit, Discord, YouTube, and X accounts. Thus, the disputed assets are expressly excluded from that turnover and its deadline.

The second directive governs the disputed assets alone: "Sharif shall provide Intrepid or the IP Custodian limited access to the disputed assets listed above to the extent that it is necessary for Intrepid to conduct the business of Intrepid." This provision differs from the turnover directive in three ways that matter here. First, it requires access, not transfer, and the access is "limited." Second, it is conditional: access is owed only "to the extent that it is necessary" for Intrepid's business. Third, unlike the turnover directive, it sets no deadline. Nothing in the Order required Sharif to provide any particular form of access by August 17. Having said that, Sharif recognizes the order results in a continuing obligation to provide limited access. The dispute concerns the scope and means of that access, not whether the obligation exists.

At the hearing, the Court found that Intrepid had not shown a likelihood of success as to these contested assets, and it emphasized that its ruling is not a decision of ownership. Intrepid understood the ruling the same way. The day after the Order issued, Intrepid's counsel wrote that "[t]he Court declined to compel turnover of the five assets Mr. Sharif contends are owned by himself and Mr. Moore". (Small Decl., ¶ 8; Exh. K.) Counsel then proposed that the parties stipulate to transfer those assets to the IP Custodian, and said that otherwise Intrepid would seek leave to amend its cross-claims and move again to compel turnover. A party does not ask for a stipulation to transfer assets it believes a court has already ordered transferred.

Nonetheless, Sharif and Moore have never refused a request for limited access to the Disputed Assets, because there has not been one. (Small Decl., ¶ 9.) Rather, Intrepid and the IP Custodian have only ever requested the login credentials for the Disputed Assets, which would in turn give them **complete and unfettered** access for any purpose Intrepid or the TFE Defendants might have – not **limited** access for business purposes.

In response to the Court's order that the parties meet and confer regarding the instant motion, Sharif's counsel confirmed in writing that Sharif was "ready and willing to provide limited access to [the Disputed Assets]." (Small Decl., ¶ 10.) A person should not be held in contempt where his conduct "appears to be based on a good faith and

reasonable interpretation of the [court's order].” *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Even if that interpretation were “ultimately deemed incorrect, it was not unreasonable.” *Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1124 (9th Cir. 2009).

Finally, Intrepid's demand for full administrative control of these accounts would give it more than the Court ordered. The Order grants “full operational access” only for assets turned over to the IP Custodian. For the Disputed Assets, it grants only “limited access.” Contempt cannot be used to convert limited access into the ownership-level control the Court declined to award.

**G. Intrepid’s Wrongful Disclosure of Moore’s Private Information**

Intrepid wrongfully placed John Moore’s most sensitive personal financial information on the public docket. To support a single point, that Moore can afford a coercive fine, Intrepid filed an entire, un-redacted CommerceWest Bank loan-approval package <u>from the year 2020</u> as Exhibit E, exposing Moore’s home address, FICO credit score, Experian credit report, personal financial statement, net worth, and liquidity. It compounded the disclosure in footnote 4 of its Motion, publishing its misunderstanding of his net worth and liquidity figures in the brief itself. None of this needed to be public. The disclosure is gratuitous, exposes Moore to identity theft and financial-security risk, and violates the parties’ duty to protect personal identifiers in public filings. The Court should strike the material.

Courts have long recognized that personal identifiers warrant protection from public filings. In *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006)), the court found the “compelling reasons” standard satisfied for individuals’ home addresses and other personal information, sealing or redacting those items even while unsealing the balance of the record. Indeed, Federal Rule of Civil Procedure 5.2(a) requires that filings containing an individual’s personal data identifiers, such as financial-account numbers be redacted to the last four digits. This Court’s CM/ECF Administrative Policies impose the same requirements “from all pleadings and

documents filed with the court, including exhibits thereto," and places that responsibility "solely" on the filing party. The Advisory Committee is explicit: "[t]he responsibility to redact filings rests with counsel and the party or non-party making the filing." (Fed. R. Civ. P. 5.2) That duty fell on Intrepid, who intentionally or negligently failed to do so.

When alerted of their basic failure,[3] Intrepid filed a post-hac motion to seal the information. Appallingly, Intrepid despite being on notice left the information for public viewing by anyone who has access to Pacer. The disclosure is gratuitous, exposes Moore to identity theft and financial-security risk, and violates the parties' duty to protect personal identifiers in public filings. Moreover, it was inherently incorrect information. Had Intrepid's counsel read Exhibit E, prior to filing it would understand that "M" is accounting nomenclature for thousand and "MM" is for million. Instead, counsel ignored the substance and submitted a document falsely claiming that Moore represented liquidity in the hundreds of millions and, under its misguided logic, was seeking a loan for billions of dollars. This was either incredible folly or evidence of a malicious intent.

**H. Intrepid's Requested Relief is Criminal in Nature.**

Indirect contempt is contempt that occurs outside of the Court's presence. *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996). Indirect contempt may never be punished summarily and instead requires "more normal adversary procedures." *Bloom v. State of Ill.*, 391 U.S. 194, 210 (1968).

Indirect contempt is further broken down into two categories: civil and criminal. *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827 (1994). Monetary fines are acceptable punishments for both civil and criminal contempt. *See* 18 U.S.C. § 401. Given that fines are appropriate under both categories, the distinction between civil and criminal contempt fines is "somewhat elusive." *Bagwell,* 512 U.S. at

[3] See Small Decl., ¶ 12.

830. The relevant inquiries to determine the type of contempt at issue, therefore, are the "substance of the proceeding and the character of the relief that the proceeding will afford." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 625 (1988).

First, a civil contempt fine has one of two purposes: to (1) coerce a contemnor into compliance with a court's order; or (2) compensate the moving party for losses sustained by noncompliance. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304-305 (1947). "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Bagwell,* 512 U.S. at 829.

In contrast, criminal contempt fines are "punitive in nature and are imposed for the purpose of vindicating the authority of the court." *United Mine Workers of Am.*, 330 U.S. at 302 (*citing Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)). Fines that are paid directly to the court are generally punitive in nature. *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016). If a criminal contempt finding is made, the fine requested "may not be imposed on someone who has not been afforded the protections that the Constitution requires of criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt." *Hicks,* 485 U.S. at 625. The label affixed to a contempt "will not be allowed to defeat the applicable protections of federal constitutional law." *Bagwell,* 512 U.S. at 830.

Here, Intrepid's Motion for an Order to Show Cause why Steven Sharif and John Moore Should not be Held in Civil Contempt ("OSC Motion") seeks "coercive" relief in the form of a $30,000 fine per day, per contemnor, paid directly to the Clerk of the Court. Intrepid's characterization of these extraordinary per diem fines as "civil" and "coercive" does not cloak what it actually is – punishment. Nor does Intrepid's civil contempt label prevent the Court from recharacterizing the relief sought as criminal under *Bagwell*.

To be civil contempt, as alleged, the fine must be either (1) for the purpose of compensating Intrepid for its actual losses suffered by noncompliance; or (2) coercive. First, the fine is clearly not compensatory, which Intrepid itself concedes by labelling it

"coercive." Even without this concession, the fine is not compensatory because Intrepid seeks to recover nothing from its requested $30,000 per day, per contemnor, fines because any money paid would be paid directly to the Court, not to it. Further, Intrepid also seeks its compensatory damages, including attorneys' fees and costs in bringing its OSC Motion, which clearly shows that any losses it has allegedly sustained are viewed independently from the fines that it is seeking.

Second, the requested fines are not coercive because Sharif and Moore have no meaningful opportunity to purge. *Bagwell*, 512 U.S. at 829. Intrepid's proposed purge condition is "fully complying with the Turnover Order." But Sharif has already provided the IP Custodian everything in his possession, custody, or control that the Turnover Order requires. Intrepid does not identify any specific credential that Sharif holds and has withheld. Under Intrepid's reading, "full compliance" means producing credentials that Intrepid's own filings attribute to third parties. The proposed order does not identify what Sharif must do or who decides when he has done it. A fine that accrues until a contemnor produces something he does not have, held by people he does not control, gives him no act he can perform to end it. That fine does not coerce. It punishes.

Because the fines are not compensatory and cannot be purged, they are criminal in nature. Criminal, punitive fines may not be imposed without the protections that the Constitution requires. *Hicks*, 485 U.S. at 625. Intrepid's Motion is therefore wholly deficient, as it asks the Court to impose enormous punitive fines under the guise of "coerciveness," while evading Sharif and Moore's constitutional rights.

**I. In the Alternative, Intrepid's Requested Relief are Well Beyond the Minimum Necessary Sanction to Obtain Compliance.**

For coercive, noncompensatory, fines, the Court must use its discretion and consider the contemnor's financial resources and "seriousness of the burden" to that particular contemnor. *United Mine Workers of Am.*, 330 U.S. at 302. Further, the Court must impose "the minimum sanction necessary to obtain compliance." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).

Here, Intrepid fails to support its claim that a coercive fine of $30,000 per person, per day is a "negligible fraction" of Sharif and Moore's liquidity. Intrepid's entire argument lies in Footnote 4 of its Motion. In Footnote 4, Intrepid makes two key mistakes: (1) it does not provide any information on Steven Sharif's financial status at all; and (2) it utterly misrepresents John Moore's net worth and personal liquidity.

## IV. CONCLUSION

Intrepid's instant motion seeks to hold Sharif and Moore accountable for the acts of defendant Robert Dawson and the other board defendants in this case. As a result of those parties' actions, including the sudden layoffs of essentially all of the company's key personnel without offboarding, access to Intrepid's systems and assets was lost. Sharif warned problems like this would happen if Dawson and the board took these actions, but they did it anyway.

No accusation, repetition of that accusation, or request for sanctions can give Sharif or Moore credentials they do not possess or administrative authority they no longer have. The Court should reject this effort to punish Sharif and Moore for the TFE Defendants' own failures and deny Intrepid's motion in its entirety.

Regardless, Sharif did not contest Intrepid's motion for turnover of non-disputed assets to the IP Custodian, and he and Moore have complied with the Turnover Order by turning over everything in their possession, custody or control, and cooperated in good faith when specific requests for assistance have been made to effectuate turnover, as in the case of the Google workspace. They remain willing to continue to do so.

As for the Disputed Assets, Sharif and Moore have never turned down a request for limited access to those assets for a necessary business purpose, because there has never been such a request. They will comply with the Court's order if such a request is made.

For the reasons set forth above, Sharif respectfully requests that the Court deny Intrepid's Motion for an Order to Show Cause Why Sharif and Moore Should Not Be Held in Civil Contempt in its entirety. In the alternative, if the Court finds any remaining

gap in compliance, Sharif respectfully requests that the Court decline to impose contempt sanctions given Sharif and Moore's good faith attempts to comply with the Turnover Order.

Respectfully submitted,

Dated: October 13, 2026

**SMALL LAW PC**

By: /s/ *William F. Small*

WILLIAM F. SMALL (SBN 253443)
Email: will@smalllawcorp.com
Attorney for Plaintiff
STEVEN SHARIF, as an individual and derivatively on behalf of Intrepid Studios, Inc.